J. DAVID NICK SBN 157687
345 FRANKIN STREET
SAN FRANCISCO, CA 94133
Tel: (415) 552-4444
FAX: (415) 358-5897
EMAIL: jdavidnick@lawyer.com

ATTORNEY FOR DEFENDANT:
GOYKO KUBUROVICH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA-SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 5:16-CR-00373-EJD |
| vs. | NOTICE OF MOTION AND MOTION TO COMPEL A BILL OF PARTICULARS |
| GOYKO KUBUROVICH, ET AL. | Date: 1-29-2018<br>Time: 1:30PM<br>Judge: Honorable, E. J. Davila |

TO THE UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE that on the above referenced date and time, Defendant GOYKO KUBUROVICH, by and through counsel, will and hereby does move this court to issue an order directing the government to provide defendant with a written Bill of Particulars setting forth the information herein requested. The requested information stems from the August 25, 2016 Indictment filed against defendant.

Defendant, GOYKO KUBUROVICH hereby requests the following particulars:

As to Count One, *18 U.S.C. § 157* (bankruptcy fraud; aiding and abetting); Count Two: *18 U.S.C. §§ 152(1)* and *2* (concealment of assets in bankruptcy proceeding; aiding and abetting), Count Three: *18 U.S.C.§ 152(3)* (false statement in bankruptcy proceeding); defendant requests that the government identify, in non conclusory language, the facts that show:

1

1) defendant Goyko Kuburovich knew in December 2008, when he passed title to personal property to his daughter and co defendant, that he would be filing for Bankruptcy in May of 2010 (see, Paragraph 8-9, page 2 of Indictment, stating "prior to and in preparation for, the filing of the bankruptcy petition" that codefendant Kristel Kuburovich opened bank accounts and in December of 2008 Goyko transferred title of personal property to his daughter Kristel by making deposits into the accounts she opened);

2) that defendant Goyko "controlled" NATA LP (see, paragraph 3 of Indictment, alleging in conclusory language that NATA LP was "controlled by" Goyko);

3) that bank accounts held in the name of Kristel were instead "controlled by" Goyko Kuburovich (see, paragraph 19 of Indictment, alleging in conclusory language that bank accounts in the name of Kristel were "under his [Goyko Kuburovich's] control";

4) that a home owned by NATA LP was instead under "his [Goyko Kuburovich's] ownership and control of his residence" (see, paragraph 19 of Indictment, alleging in conclusory language that a residence owned by NATA LP was instead owned and controlled by Goyko);

5) that defendant failed to disclose real property in the name of NATA or personal property in which his daughter Kristel held title because it was "real property over which he maintained control" and "personal property over which he maintained control" (see, paragraphs 21 A, 21B, 23A, 23B, 25A, 25B of Indictment, alleging in conclusory language that a residence owned by NATA LP and bank accounts in the name of Kristel Kuburovich was instead property which Goyko "maintained control" over).

This motion is made on the grounds that the Indictment in this action is so vague, overbroad, and non-specific as to these critical and central allegations to criminal culpability which defendant has identified above (that he controlled property he did not hold title to) that it fails to provide defendant with adequate notice of the nature of the charges against which he must defend, so as to prevent surprise at trial or to allow defendant to prepare his defense, or to permit defendant to raise duplicity as a bar in any subsequent prosecution.

This motion is based on the Memorandum of Points and Authorities, the records in this action, and such additional oral and documentary evidence presented at the hearing.

Dated:12-11-17

J. David Nick
Attorney for Defendant, Goyko Kuburovich

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant is charged by indictment with the following criminal charges: Count One: *18 U.S.C. § 157* (bankruptcy fraud; aiding and abetting); Count Two: *18 U.S.C. §§ 15, subdivisions (1)* and *(2)* (concealment of assets in bankruptcy proceeding; aiding and abetting), Count Three: *18 U.S.C.§ 152(3)* (false statement in bankruptcy proceeding).

The Indictment in essence recites detailed facts that show that in a period just under 2 years prior to the filing of the bankruptcy petition, Goyko Kuburovich passed title to money to his daughter Kristel and her company (NATA LP) and that a portion of that money was used to purchase a home in which title was held in the name of NATA LP. However, of Due Process concern here is that the indictment

goes on to recite, in conclusory language, key allegations essential to establish criminal liability; i.e., that Goyko knew when he transferred title of property to his daughter that he would be filing bankruptcy 2 years later and that all the property transferred to and held in his daughter's name (or NATA, a corporation controlled by his daughter) was in actuality owned and controlled by Goyko. The indictment merely says it is so and does not state a single fact to support these allegations; the allegation that Goyko had "control" over, an "interest in" or "ownership" of property not held in Goyko's name (but instead was property in the name of NATA a corporation controlled by Kristel or Kristel) are critical because a petitioner has no duty to reveal property he does not have an interest in or title to; this is a term defined under case law.  See, *In re Hammerstein (1911, 2nd Cir.) 189 F. 37* [property transferred *prior* to filing of petition in order to avoid creditors reach need not be disclosed as defendant has no title and thus no responsibility to disclose.]; *United States v. Hale (10th Cir., 2014) 762 F.3d 1214* (same); *Parks v. Ditmar (10th Cir. 2010) 618 F.3d 1199* (same, with 3 part analysis to determine of petitioner has an "interest" in property no held in his name.); *In re Reis (1982) 22 B.R. 343* (same)*; In re Smith 11 B.R. 20* (same); *Farey v. Sanderfoot (1991)  500 U.S. 291, 299* [whether a debtor "possessed an interest in property" is "a question of state law" in the first instance.]; *In re Barigian,(2012, Bankruptcy Court, Eastern Dist CA) 2012 Bankr. LEXIS 6118* ["The Plaintiff's claims depend upon the Debtor having an interest in the Hayvenhurst Property at the time she filed her bankruptcy petition or during the avoidance period prior to filing. While the Plaintiff's ability to recover such an interest in the context of the Debtor's bankruptcy case rests in bankruptcy law, the determination of that community interest is defined by California state law."]; *In re Nistler, (2001) 259 B.R. 723* [debtor has no interest in and no duty to disclose an inheritance which the debtor

rejected and instead passed to other heirs.]; *United States v Ledee (2013, DC Puerto Rico) 967 F Supp 2d 516* [debtor that transferred property to corporation he had 100 percent control over had an interest in the property and debtor is criminally liable for not disclosing it in the petition.]

What this indictment recites is Goyko's transfer of the assets to his daughter over one year prior to the petition and that defendant failed to reveal that property,. However, the allegation of control over these assets (which the indictment alleges are not held in Goyko's name) is instead recited in the most conclusory and general terms possible-but for the conclusory allegations of control over the property Goyko did not hold title to (money and the house), the indictment would otherwise be reciting lawful transfer of property to Kristel more than one year prior to the filing of the bankruptcy petition.

The discovery includes a trail of documents showing Goyko transferred money to Kristel over one year prior to the filing of the petition (commencing in December 2008) but has no information at all of any kind that even inferentially gives defendant any indication as to exactly how it is that Goyko actually owned, controlled or had an interest in the real property in the name of NATA or the bank accounts held in the name of Kristel. And the indictment merely states that is the case and does not state any facts to support that conclusion. The government merely alleges vague allegations on these critical allegations. The need for the government to establish more than what is plead in this indictment on the issues identified has long been established:

> "The principal accusation of fraud is based upon the conveyance by the bankrupt of the Nantucket property to her father and by him to her son over two years prior to the adjudication in bankruptcy. At the time the petition was filed and the schedules verified, the legal title to this property was not in the bankrupt and had not been for two years and seven months. The transfer to her son, conceding it to be fraudulent as to then existing

creditors, has not been made by the act a sufficient ground for refusing a discharge. About this there is no disagreement. In order to establish a fraudulent concealment it must appear that the property concealed belongs to the bankrupt's estate. It must be shown that the transfer was merely a temporary expedient to place the property beyond the reach of the trustee, the title to be resumed by the bankrupt as soon as prudence will permit. in other words, it must be proved that a secret trust exists in her favor and that her son is under agreement, expressed or implied, to reconvey the property to her when the danger of attack by the creditors has passed."

*In re Hammerstein (1911, 2nd Cir.) 189 F. 37, 39.*

Essentially all defendant knows about the charges he now faces is that the government is *merely* alleging without any factual basis that he had "control" over and "interest" in or ownership of property which defendant did not hold title to. These schemes are commonly plead with specifics as for example: "the property was transferred with a secret agreement between the debtors daughter and the debtor entered into on such and such date and such location to retransfer the property back to the debtor after the debts were discharged". Accordingly, defendant respectfully requests that the Court direct the filing of a bill of particulars, as requested in the foregoing notice, so that this matter may fairly proceed in accordance with due process.

## II. ARGUMENT

### A. THE PRESENT INDICTMENT IS VAGUE AND FAILS TO PROVIDE DEFENDANT WITH ADEQUATE NOTICE OF THE NATURE OF THE CHARGES AGAINST WHICH HE MUST DEFEND, SO AS TO PREVENT SURPRISE AT TRIAL AND TO ALLOW HIM TO PREPARE HIS DEFENSE.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" In determining the sufficiency of an indictment, the United States Supreme Court has emphasized two

of the protections which an indictment is intended to guarantee.  These two protections are "reflected by two of the criteria by which the sufficiency of an indictment is to be measured."  <u>Russell v. United States</u> (1962) 369 U.S. 749, 763.  These criteria are:

> 1) [W]hether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.
>
> 2) [I]n case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction
> <u>Russell,</u> *supra* at 763-764.

To satisfy these requirements, an indictment must "set forth the elements of the offense charged and contain a statement of the <u>*facts and circumstances*</u>" such that the defendant will be apprised of the specific offense that he has been charged with.  <u>United States v. Cecil</u> (9th Cir. 1979) 608 F.2d 1294, 1296; <u>Hamling v. United States</u> (1974) 418 U.S. 87, 117-118.  Further, as the Court in <u>Russell</u> noted, it is "an elementary principal of criminal pleading" that where the definition of the criminal charge includes generic terms it is insufficient for the indictment to charge the offense in the same generic terms as in the definition; it must "state the species,- it must descend to particulars."  <u>Id.</u> quoting <u>United States v. Cruilshank</u> (1875) 92 U.S. 542, 558.

Where charges of an indictment are so general that they do not sufficiently advise defendant of the specific acts with which he is charged, a bill of particulars should be ordered.  <u>United States v. Smith</u> (W.D.MO 1954) 16 F.R.D. 372, 375; <u>United States v. Grossman</u> (D.C.N.Y. 1931) 55 F.2d 408.  Rule 7(f) of the Federal Rules of Criminal Procedure provides a defendant may move for a bill of particulars which the court then directs the government to file.  F.R.Cr.P. 7(f).  The

7

granting or refusal of a bill of particulars "is a matter within the sound discretion of the trial court." Yeargain v. United States (9th Cir. 1963) 314 F.2d 881, 882.

In United States v. Laykin (9th Cir. 1989) 886 F.2d 1534, the defendant argued the indictment in which he was charged was fatally defective because it was imprecise as to the time of the conspiracy. Id. at 1542. The indictment read, in part: "[b]eginning on a date unknown to the Grand Jury, but not later than on or about March 1, 1985, and continuously thereafter and including on or about October 14, 1986[.]" Id. The court noted the dates as specified in the indictment did not give an adequate basis for ascertaining the charges against the defendant. Id. However, the court held the indictment valid because "the overt acts alleged in the indictment before us provide a narrowing focus." Id. Indeed, the indictment listed *18 overt acts* which acted as a basis for limiting the time frame in the indictment and gave defendants notice of the scope of the charges against them. Id.

The conclusory and non factually based allegation that defendant controlled property he did not hold title to as plead in the indictment provides no indication whatsoever as to how it is that Goyko controlled these assets or how he had an interest in them; this is a critical allegation for due process to be served. "The foundation of the charge is concealment of the bankrupt's property. If the bankrupt has conveyed it, no matter how fraudulently, so that he has lost all right, title and interest therein, it is not a concealment under the provision of the act referred to. If the bankrupt has parted with all dominion over the property, if the title is gone out of him and is beyond recall, it is not his property, and therefore is not '"property belonging to his estate in bankruptcy."'" *In re Hammerstein (1911, 2nd Cir.) 189 F. 37, 39.*

In United States v. Cecil (9th Cir. 1979) 608 F.2d 1294, the two count indictment was held to be insufficient. Indeed the Ninth Circuit called the indictment "a rather barren document." Id. at 1296. The court noted the indictment, like the one here, merely tracked the language of the applicable statutes in setting out the elements of the offenses and only made two particular allegations regarding the conspiracies. Id. at 1296-1297. Specifically, that the conspiracies occurred in Arizona, Mexico, and elsewhere and offered the names of some alleged co-conspirators. "More importantly," the court noted, "the indictment fails to place the conspiracies within any time frame." Id. at 1297.

Furthermore, in Cecil the "indictment clearly lacked a statement of the facts and circumstances that would inform the accused of the specific offenses with which they were charged." Id. at 1297.

The instant indictment does exactly what the court in Cecil found to be insufficient; it tracks the language of the statute and states in conclusory language that Goyko either had an interest in, control over or ownership over property he did not hold title to and makes no specific allegations as to exactly how Goyko had an interest in, control over or ownership of property not held in his name but in his daughter or NATA a company controlled by her. Moreover, this indictment makes other critical conclusory statements without a single fact to support the allegation, that NATA LP (a company controlled by Kristel, and established by private counsel for Kristel) was instead controlled by Goyko as well. Additionally the indictment here recites in conclusory language that over one year prior to the filing of the petition that Goyko knew he was going to file bankruptcy and that is why he transferred all the property to Kristel but does not state a single fact to support this conclusion (that Goyko knew over one year prior to filing bankruptcy that he was going to do so and specifically transferred the property for the purpose of

accomplishing bankruptcy fraud), the government merely alleges that is the case and nothing in thier discovery even inferentially supports that conclusion.

In addition to merely following the language of the statutes, the instant indictment lacks a statement of the facts and circumstances that would inform the defendant of the specific offenses with which he has been charged, as has long been held to be necessary in criminal pleading; the defects are the same conclusory allegations of controlling property that Goyko did not own, that he planned bankruptcy over a year prior to filing and that he controlled NATA-the government must identify some fact upon which it bases this sweeping conclusion. Russell, *supra;* Cruikshank, *supra;* Cecil *supra;* Hamling v. United States (1974) 418 U.S. 87, 117-118; Morissette v. United States (1952) 342 U.S. 246, 270; United States v. Petrillo (1947) 332 U.S. 1, 10-11.

The present danger of such a vague indictment is clear: a defendant who does not sufficiently know or understand the charges against him cannot adequately prepare a defense or avoid unfair surprise at trial-how exactly the government is going to go about establishing the conclusory allegations in the indictment of controlling property that Goyko did not own, that Goyko planned bankruptcy over a year prior to filing and that he controlled NATA .

### B. THE DEFENDANT IS ENTITLED TO A BILL OF PARTICULARS TO REMEDY THE INSUFFICIENT INDICTMENT AT ISSUE IN THE PRESENT CASE.

Where an indictment is deemed too vague, a bill of particulars serves the purposes of: 1) informing the defendant of the nature of the charges against him with sufficient particularity so that he may prepare for trial, 2) avoiding the danger of surprise at trial, and 3) eliminating the risk of being prosecuted again for the same offense. Geise, *supra* at 1180; United States v. Birmley (9th Cir. 1976) 529 F.2d 103, 108. A bill of particulars provides due process notice where the

indictment is incomplete or nonspecific. Cruikshank, *supra* at 558-559. Such a bill is "intended to supplement the indictment by providing more detail of the facts upon which the charges are based." United States v. Inryco, Inc. (9th Cir. 1981) 642 F.2d 290, 295.

"It seems quite clear that where charges in an indictment are so general that they do not sufficiently advise the defendant of the specified acts with which he is charged, a bill of particulars should be ordered." Smith, *supra*. A bill of particulars is an appropriate vehicle for a defendant to learn, as the law entitles him, "the theory of the government's case." United States v. Geise (9th Cir. 1979) 597 F.2d 1170, 1181, quoting Yeargain, *supra* at 882.

Determining whether a bill of particulars should be ordered calls for "discrete decisions properly infused with the ambience of the trial scene and tailored to fit the facts before the trial judge." United States v. Davis (5th Cir. 1978) 582 F.2d 947, 951. In resolving areas of doubt when the competing interests of the government and the defendant are closely balanced, the interests of the defendant in disclosure and proper notice must prevail. United States v. Thevis (N.D. Ga. 1979) 474 F.Supp. 117, 124 (stating that the law governing the request for a bill of particulars "requires that the defendant be given the benefit of the doubt in gray areas."). Due to the fundamental connection a bill of particulars has to the Sixth Amendment right to counsel, any doubt should be resolved in favor of disclosure and the right of the accused to mount a defense. United States v. Tanner (N.D. Ill. 1969) 279 F. Supp. 457, 474; United States v. Manetti (D.C. Del. 1971) 323 F. Supp. 683, 696.

In Geise the trial court did not grant a bill of particulars where the indictment listed over 13 overt acts and the government had provided full discovery. Geise, *supra* at 1180. The court found that because of the alleged overt

acts, the extensive discovery, and evidence previously disclosed, that the information already available to the defense was more than the defendant had a right to. Id.

However, the government does not fulfill its obligation to inform the defendant of the theory of the prosecution and the nature of the charges by "merely providing mountains of documents to defense counsel[.]" United States v. Bortnovsky (2<sup>d</sup> Cir. 1987) 820 F.2d 572, 575. The production of a large number of documents in discovery may weigh in favor of granting a bill of particulars.

In United States v. Taylor (S.D.N.Y 1989) 707 F.Supp 696, the defense was provided with the indictment, a criminal complaint, and the affidavit in support of a search warrant. Yet the court ordered the government to provide the following particulars:

1. The names of all persons whom the government will claim at trial were co-conspirators…if incarcerated, that fact should be made known.

2. The dates, to the extent known, that each of the defendants allegedly joined the conspiracy.

3. The approximate dates and locations of any meetings or conversations at which the government will contend that [defendant] joined the conspiracy. Exact dates shall be given if known…

See, United States v. Taylor (S.D.N.Y. 1989) 707 F.Supp 696, 699-700; *cf.* United States v. Orozco (S.D. CA 1985) 108 F.R.D. 313, 318 (denying requested particulars as to conspiracy counts where said counts named the alleged co-conspirators, listed numerous overt acts, and "outlined how each defendant allegedly contributed to the conspiracy")

In Taylor the defendant had substantially more meaningful information than in the instant indictment yet the bill of particulars was granted in part.

While the prosecution has provided voluminous discovery, none of it answers the questions posed by the lack of any facts plead to provide notice as to how exactly that Goyko has an interest over property he transferred title to Kristel over one year prior to the filing. Therefore the discovery disclosed hardly supplements the vague indictment in giving defendant the required notice of the charges against him.

As exemplified in United States v. Cecil, a conspiracy charge that merely lists the object offense and alleges the existence of a criminal agreement is insufficient. Cecil, *supra* at 1296-1297. Furthermore, a motion for a bill or particulars cannot be denied on the theory that a defendant "knows" what he or she "did" as such reasoning would effectively stand the presumption of innocence on its head. *See United States v. Tanner* (N.D. Ill. 1969) 279 F. Supp. 457, 474, n.13; *United States v. Manetti* (D.C. Del. 1971) 323 F. Supp. 683, 695-96.

### C. DEFENDANT IS ENTITLED TO A BILL OF PARTICULARS TO OBTAIN THE FACTS THE GOVERNMENT RELIES ON FOR ITS ALLEGATION THAT DEFENDANT CONTROLLED PROPERTY NOT IN HIS NAME AND FOR WHICH TITLE WAS HELD BY SOMEONE ELSE.

"A bill of particulars is a proper procedure for discovering the names of unindicted coconspirators who the government plans to use as witnesses." United States v. Barrentine (5th Cir. 1979) 591 F.2d 1069, 1077; *See also:* Will v. United States (1967) 389 U.S. 90, 99. Furthermore, "where a defendant seeks legitimate information, he may not be denied it merely because the *effect* of providing it is to divulge the names of government witnesses[.]" United States v. Addonnizio (3rd Cir. 1971) 451 F.2d 49, 65.

In United States v. Rogers the court held that the government is required to disclose by way of bill of particulars unindicted co-conspirators, stating "to do otherwise is to guarantee prejudicial surprise to the defendant if the government is

allowed to produce undisclosed, unknown members of the enterprise and its activities to testify against the defendant." United States v. Rogers (D.C. Colo. 1985) 617 F.Supp. 1024, 1028, quoting United States v. Thevis (N.D. Ga. 1979) 474 F.Supp. 117, 125.

Because nothing has been disclosed which would apprise Goyko of the conduct the government relies on to conclude he had control over property he transferred to Kristel, that he planned to file bankruptcy over a year prior to the filing of the petition and that he controlled NATA, defendant is unable to adequately prepare for trial. Essentially everything at trial will be a surprise; defendant is left to guess as to what actions the government claims was criminal or show he was in control over property not held in his name. As the indictment is woefully barren and, even with the discovery, fails to provide defendant with notice of the conduct for which he has been charged.

## **CONCLUSION**

The present indictment fails to give adequate notice of the specific acts for which defendant is being charged. In order to avoid the prejudice that would result from his being forced to defend himself against and ambiguous indictment, defendant respectfully requests that the court order the government to provide a bill of particulars as to that count.

Dated: December 11, 2017                              Respectfully Submitted,

                                                      _____
                                                      J. David Nick
                                                      Attorney for Defendant
                                                      Goyko Kuburovich