1  ALEX G. TSE (CABN 152348)
   Acting United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  SCOTT SIMEON (NYBN 5012653)
   JONAS LERMAN (CABN 274733)
5  Assistant United States Attorneys

6      150 Almaden Boulevard, Suite 900
       San Jose, California 95113
7      Telephone: (408) 535-5061
       Fax: (408) 535-5066
8      scott.simeon@usdoj.gov
       jonas.lerman@usdoj.gov
9
   Attorneys for United States of America
10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                          SAN JOSE DIVISION
13

14 | UNITED STATES OF AMERICA,           ) No. 16-CR-373 EJD
                                         )
15 |    Plaintiff,                       ) UNITED STATES' OPPOSITION TO
                                         ) DEFENDANTS' MOTION FOR BILL OF
16 |    v.                               ) PARTICULARS AND MOTION TO DISMISS FOR
                                         ) VINDICTIVE PROSECUTION
17 | GOYKO GUSTAV KUBUROVICH and         )
   | KRISTEL KUBUROVICH,                 ) Re: ECF 43 & 68
18 |                                     )
   |    Defendants.                      ) Date:  February 26, 2018
19 |                                     ) Time:  1:30 P.M.
                                         ) Court: The Honorable Edward J. Davila
20 |_____  )

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

BACKGROUND ........................................................................................................................1
    A.    Indictment ............................................................................................................1
        1.    Introductory allegations ...........................................................................1
        2.    The indictment's counts ..........................................................................3
    B.    More than a year after arraignment, defendants move for a bill of particulars ..................3
    C.    Defendants move for discovery regarding vindictive prosecution .....................3
    D.    Defendants move to dismiss the indictment for vindictive prosecution ............4
ARGUMENT ..............................................................................................................................4
I.    THE COURT SHOULD DENY DEFENDANTS' MOTION FOR A BILL OF PARTICULARS ..................................................................................................4
    A.    The motion is untimely under Rule 7(f) ...............................................................4
    B.    The indictment and discovery provide defendants with more than sufficient notice of the charges against them .......................................................................5
II.    BECAUSE DEFENDANTS HAVE FAILED TO MAKE A PRIMA FACIE SHOWING OF VINDICTIVENESS, THE COURT SHOULD DENY THEIR MOTION TO DISMISS THE INDICTMENT .......................................................7
    A.    Separate sovereigns ..............................................................................................8
    B.    Separate federal and state interests ......................................................................9
    C.    Federal marijuana policies ..................................................................................11
    D.    Chronology ..........................................................................................................11
    E.    Communications .................................................................................................12
    F.    The strength of the government's case ...............................................................13
    G.    Defendants are not entitled to an evidentiary hearing .......................................13
CONCLUSION ........................................................................................................................14

# TABLE OF AUTHORITIES

### Federal Cases

*Abbate v. United States*, 359 U.S. 187 (1959) ................................................................. 8

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ................................................................. 7

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ......................... 9

*Heath v. Alabama*, 474 U.S. 82 (1985) ........................................................................... 8

*In re Hood*, 727 F.3d 1360 (11th Cir. 2013) ................................................................... 10

*McCleskey v. Kemp*, 481 U.S. 279 (1987) ...................................................................... 8

*Nunes v. Ramirez-Palmer*, 485 F.3d 432 ........................................................................ 8

*United States v. Armstrong*, 517 U.S. 456 (1996) .......................................................... 7

*United States v. Baker*, 63 F.3d 1478 (9th Cir. 1995) ..................................................... 10

*United States v. Bernhardt*, 831 F.2d 181 (9th Cir. 1987) .............................................. 12

*United States v. Burt*, 619 F.2d 831 (9th Cir. 1980) ....................................................... 8

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) .................................................... 6

*United States v. Dolan*, 120 F.3d 856 (8th Cir. 1997) .................................................... 10

*United States v. Figueroa-Soto*, 938 F.2d 1015 (9th Cir. 1991) ..................................... 12

*United States v. Gallegos-Curiel*, 681 F.2d 1164 (9th Cir. 1982) ................................ 8, 9, 10, 11

*United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000) ..................................... 9

*United States v. Geise*, 597 F.2d 1170 (9th Cir. 1979) ................................................. 5, 6, 7

*United States v. Goodwin*, 457 U.S. 368 (1982) ............................................................ 7, 9

*United States v. Homaune*, 898 F. Supp. 2d 153 (D.D.C. 2012) .................................... 5

*United States v. Hooton*, 662 F.2d 628 (9th Cir. 1981) .................................................. 14

*United States v. Kennedy*, 233 F.3d 157 (2d Cir. 2000) ................................................. 10

*United States v. Kent*, 649 F.3d 906 (9th Cir. 2011) ...................................................... 7, 8, 10

*United States v. Kleinman*, __ F.3d __, 2017 WL 6997333 (9th Cir. 2017) .................. 11

*United States v. Lanza*, 260 U.S. 377 (1922) ................................................................. 8

*United States v. Laykin*, 886 F.2d 1534 (9th Cir. 1989) ................................................. 6

*United States v. Lovasco*, 431 U.S. 783 (1977) .............................................................. 10

1 | *United States v. Lucas*, 841 F.3d 796 (9th Cir. 2016) .................................................................. 12, 13, 14
2 | *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) ........................................................................ 11
3 | *United States v. Messner*, 107 F.3d 1448 (10th Cir. 1997) .................................................................. 9, 10
4 | *United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984) ......................................................................... 5, 6
5 | *United States v. Montoya*, 45 F.3d 1286 (9th Cir. 1995) ............................................................................ 8
6 | *United States v. Nguyen*, No. 15-CR-203-BLF, 2015 WL 6747851 (N.D. Cal. Nov. 5, 2015) ................. 5
7 | *United States v. One 1985 Mercedes*, 917 F.2d 415 (9th Cir. 1990) .................................................. 4, 13
8 | *United States v. Overton*, 573 F.3d 679 (9th Cir. 2009) ........................................................................... 13
9 | *United States v. Robison*, 644 F.2d 1270 (9th Cir. 1981) ............................................................ 9, 12, 13
10 | *United States v. Ryland*, 806 F.2d 941 (9th Cir. 1986) ......................................................................... 5, 7
11 | *Yeargain v. United States*, 314 F.2d 881 (1963) ........................................................................................ 5

Federal Statutes

13 | 18 U.S.C. § 152 ............................................................................................................................................ 9
14 | 18 U.S.C. § 152(1) ....................................................................................................................................... 3
15 | 18 U.S.C. § 152(3) ....................................................................................................................................... 3
16 | 18 U.S.C. § 157 ............................................................................................................................................ 3
17 | 18 U.S.C. § 3231 ........................................................................................................................................ 10
18 | 18 U.S.C. § 3284 ........................................................................................................................................ 10

Federal Rules

20 | Fed. R. Crim. P. 7(c)(1) ............................................................................................................................... 6
21 | Fed. R. Crim. P. 7(f) ................................................................................................................................. 4, 5
22 | Fed. R. Crim. P. 16 ...................................................................................................................................... 6

Defendants Goyko Gustav Kuburovich and Kristel Kuburovich move for a bill of particulars and to dismiss the indictment. The Court should deny both motions.

## BACKGROUND

### A.     Indictment

On August 25, 2016, the grand jury returned a three-count, seven-page indictment against Goyko and Kristel Kuburovich. ECF 1. In its introductory section, the indictment alleges that, prior to May 2010, Goyko Kuburovich had accumulated a total of approximately $2,133,053.00 in debt to various financial creditors. *Id.* ¶ 2. Both defendants have been residents of the Northern District of California during the relevant period of the indictment, and they jointly control Nata, LP, a California limited partnership. *Id.* ¶¶ 1, 3.

#### 1.     Introductory allegations

As alleged in the indictment, beginning no later than December 5, 2008, and continuing to at least May 25, 2010, the Kuburoviches "knowingly devised, and intended to devise, a material scheme and artifice to defraud," and for the "purpose of executing and concealing" that scheme and artifice, and attempting to do so, knowingly filed a bankruptcy petition. *Id.* ¶ 6. The purpose of the alleged scheme was for the defendants "to enrich themselves" through Goyko Kuburovich's "filing of a Chapter 7 bankruptcy petition in United States Bankruptcy Court . . . containing materially false representations and omissions, causing the Court to discharge approximately $2,133,053.00 worth of FDIC insured debt that [Goyko Kuburovich] owed to his creditors." *Id.* ¶ 7. The indictment goes on to allege that "[i]n furtherance of the scheme to defraud," Goyko Kuburovich, with the knowing assistance of his adult daughter, codefendant Kristel Kuburovich, "submitted a bankruptcy petition which, among other false statements and omissions, concealed approximately $868,000 in assets." *Id.*

The indictment further alleges that prior to, and in preparation for, the filing of the bankruptcy petition, in December 2008, Kristel Kuburovich opened two bank accounts: United Security Bank account #xxxx0823 and Pinnacle Bank account #xxxx0569. Both accounts were in her name, and she was the sole signatory for both. *Id.* ¶ 8. Goyko Kuburovich then transferred a total of $750,000 into these two accounts. On December 18, 2016, he transferred $250,000 into the United Security Bank account (#xxxx0823); on December 26, 2008, he transferred another $250,000 into the United Security

Bank account (#xxxx0823); and on December 31, 2008, he transferred $250,000 into the Pinnacle Bank account (#xxxx0569). *Id.* ¶¶ 9-11.

A few days later, Goyko and Kristel Kuburovich opened an account at a bank in Liechtenstein, Verwaltungs Und Private-Bank AG (account #xxxxx.104). *Id.* at ¶ 12.[1] Kristel Kuburovich then made a series of money transfers. She transferred $500,000 from her United Security Bank account (#xxxx0823) to the Verwaltungs account on January 25, 2009. And she transferred $399,975 from the Verwaltungs account back to the United Security Bank account on April 6, 2009. *Id.* ¶¶ 12-13, 15. Meanwhile, before returning the bulk of the funds back to the United Security Bank account, she opened another Pinnacle Bank account (#xxxx1277) on February 20, 2009, in the name of Nata, LP. *Id.* ¶ 14.

One day after she transferred nearly $400,000 back from Liechtenstein, Kristel Kuburovich obtained a cashier's check from the same USB account for $597,000 and deposited it into the Nata, LP account at Pinnacle Bank (#xxxx1277). *Id.* ¶ 17.

On May 11, 2009, Kristel Kuburovich authorized the wiring of $597,311.71 from that same Nata, LP account at Pinnacle Bank to Stewart Title to complete the purchase of 7170 Eagle Ridge Drive, Gilroy, California—a house the Kuburoviches subsequently used as a residence. *Id.* ¶¶ 16, 18.

Roughly a year after that real estate transaction was completed, on May 25, 2010, Goyko Kuburovich filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of California. *Id.* ¶ 19. According to the indictment, in that petition Goyko Kuburovich knowingly failed to disclose the existence of the funds he had transferred into the new accounts of Kristel Kuburovich, including United Security Bank account #xxxx0823 and Pinnacle Bank account #xxxx0569, as well as the existence of other funds in bank accounts under his and Kristel Kuburovich's control. *Id.* The indictment goes on to allege that the petition failed to disclose Goyko Kuburovich's ownership and control of the Gilroy residence, which had been purchased with the subject funds from United Security Bank account #xxxx0823 and Pinnacle Bank account #xxxx1277. *Id.*

---

[1] Liechtenstein maintains a secretive banking sector that the State Department has consistently identified as a "Jurisdiction[] of Primary Concern" and a "major money laundering countr[y]," U.S. Dept. of State, *2016 International Narcotics Control Strategy Report, Vol. II: Money Laundering and Financial Crimes*, at 2, 36, *available at* https://www.state.gov/documents/organization/253983.pdf; *see also, e.g.*, https://www.state.gov/j/inl/rls/nrcrpt/2013/vol2/204062.htm.

### 2. The indictment's counts

The indictment alleges three counts under Title 18. All three counts incorporate the indictment's introductory allegations (¶¶ 1-19). Count one charges the defendants with bankruptcy fraud and aiding and abetting, in violation of 18 U.S.C. § 157 and § 2. It alleges that the defendants, "with the intent to devise a scheme and artifice to defraud" the United States Trustee, "and for the purpose of executing and concealing" that "scheme and artifice," filed a knowingly fraudulent bankruptcy petition in the underlying bankruptcy case, *In re Goyko Gustav Kuburovich et al.*, No. 10-5547 (U.S. Bankruptcy Court, N.D. Cal.). The petition failed to disclose the Gilroy house, which the defendants bought for $647,311.71 in cash on May 11, 2009. The petition also failed to disclose personal property over which Goyko Kuburovich maintained control, including approximately $221,840.99 that had been placed in bank accounts under the names of Kristel Kuburovich and Nata, LP, along with "the existence of funds in other bank accounts under [Goyko] and [Kristel Kuburovich's] control." ECF 1 ¶¶ 20-21.

Count two charges the defendants with concealing assets in a bankruptcy proceeding and aiding and abetting, in violation of 18 U.S.C. § 152(1) and § 2. The count alleges that in the bankruptcy case, the defendants "did knowingly and fraudulently conceal" property from the United States Trustee—specifically the Gilroy house and the funds described in count one. ECF 1 ¶¶ 22-23.

Count three charges Goyko Kuburovich with making a materially false statement in the bankruptcy case, in violation of 18 U.S.C. § 152(3), "by submitting Schedules of Assets and Liabilities and a Statement of Financial Affairs" that failed to disclose the Gilroy house and the funds described in count one. ECF 1 ¶¶ 24-25.

### B. More than a year after arraignment, defendants move for a bill of particulars

The Kuburoviches were arraigned and pleaded not guilty in September 2016. ECF 7, 10. More than a year later, in December 2017, they moved for a bill of particulars. ECF 43, 46.

### C. Defendants move for discovery regarding vindictive prosecution

Also in December 2017, the Kuburoviches filed motions for discovery regarding their allegation of vindictive prosecution. ECF 39, 41. Magistrate Judge Cousins received briefing from the parties and heard oral argument on December 20, 2017. ECF 67, Ex. 2 (transcript). He ruled that the Kuburoviches failed to establish "a prima facie showing of a likelihood of vindictiveness by some evidence tending to

show the essential elements of the defense." ECF 50 at 1 (quoting *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th Cir. 1990)). Magistrate Cousins explained that only in "limited circumstances" may "individuals have the right to pursue discovery to support a claim of vindictive prosecution," and he found that this case presents no such circumstances. ECF 50 at 2.

On January 4, 2018, the Kuburoviches filed what they described as "objections" to Magistrate Judge Cousins' order. ECF 55. On January 21, 2018, the United States responded to the Kuburoviches' "objections," explaining that the defendants' filing failed to conform to the Local Rules and did not establish that Magistrate Judge Cousins' decision was either "clearly erroneous or contrary to law." ECF 67 at 8-10.

### D. Defendants move to dismiss the indictment for vindictive prosecution

On January 29, 2018—more than 500 days after their arraignments—the Kuburoviches moved to dismiss the indictment for vindictive prosecution and requested an evidentiary hearing. ECF 68.

## ARGUMENT

### I. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

#### A. The motion is untimely under Rule 7(f)

A defendant "may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). The Kuburoviches have not complied with this timing requirement. Goyko Kuburovich was arraigned on September 12, 2016, and Kristel Kuburovich was arraigned on September 14, 2016. ECF 7, 10. More than one year later, on December 11, 2017, Goyko Kuburovich filed his motion for a bill of particulars, which Kristel Kuburovich joined on December 12, 2017. ECF 43, 46.

Although the docket shows that the Kuburoviches requested a *continuance* on November 30, 2017, "to allow for discovery motion and bill of particular motions to be heard" and that the government did not object to a continuance, ECF 38, there is no indication that the Kuburoviches have ever sought leave of the Court to file the present motion beyond Rule 7(f)'s 14-day limit. Nor is the Kuburoviches' motion accompanied by any request for permission to file late. The motion refers to Rule 7(f) only once, without quoting it or mentioning the 14-day requirement. *See* ECF 43 at 7. The motion also fails

to explain why the Kuburoviches chose to wait more than 400 days after arraignment to move for a bill of particulars. *See United States v. Homaune*, 898 F. Supp. 2d 153, 165 (D.D.C. 2012) (denying untimely motion for bill of particulars filed "fifty-two days after arraignment—far beyond Rule 7(f)'s fourteen-day default—with no explanation for why his request took so long to lodge"). The Court should deny the motion as untimely.

### B. The indictment and discovery provide defendants with more than sufficient notice of the charges against them

If the Court considers the defendants' motion for a bill of particulars despite the motion's untimeliness, the Court should deny it on the merits.

Rule 7(f) grants courts the discretion to "direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The "three functions" served by the bill of particulars are (1) "to inform the defendant of the nature of the charges with sufficient precision to enable him to prepare for trial," (2) "to avoid or minimize the danger of surprise at the time of trial," and (3) "to enable him to plead his conviction or acquittal in bar of another prosecution for the same offense when the indictment is too vague, and indefinite for such purposes." *United States v. Geise*, 597 F.2d 1170, 1180-81 (9th Cir. 1979) (internal quotation marks omitted).

However, "[a] defendant is not entitled to know all the evidence the government intends to produce"—"only the theory of the government's case." *Yeargain v. United States*, 314 F.2d 881, 882 (1963). A bill of particulars thus does not permit a defendant to obtain "complete discovery of the government's evidence," such as the "'when, where, and how' of every act in furtherance of the conspiracy," *Geise*, 597 F.2d at 1181, or "the content of the testimony of each of the government witnesses," *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986). Instead, a bill of particulars "is intended to give the defendant *only that minimum amount of information necessary* to permit the defendant to conduct his *own* investigation." *United States v. Nguyen*, No. 15-CR-203-BLF, 2015 WL 6747851, at *2 (N.D. Cal. Nov. 5, 2015) (internal quotation marks omitted).

Here, the indictment more than satisfies these requirements. The indictment is "reasonably detailed." *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984). In fact, it includes significantly more detail than the required "plain, concise, and definite written statement of the essential facts

constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  This indictment's specificity and detail, as summarized above, make a bill of particulars "unnecessary." *Geise*, 597 F.2d at 1180.

The extensive discovery produced by the government further "obviates the need for a bill of particulars." *Id.*  The Kuburoviches make "no allegation that full discovery was not afforded pursuant to Fed. R. Crim. P. 16." *Mitchell*, 744 F.2d at 705.  Nor could they assert such a claim: to date, the government has produced approximately 15,000 pages of discovery, and the underlying bankruptcy case is a matter of public record.  Indeed, the Kuburoviches rely on the government's extensive discovery to support their motion to dismiss the indictment for vindictive prosecution.  ECF 68.  That motion, discussed below, includes a lengthy attack on the government's evidence.  ECF 68 at 12-16.  Clearly, then, the indictment and the discovery produced by the government have already "minimize[d] the danger of surprise at trial" and provided the defendants "sufficient information on the nature of the charges to allow preparation of a defense." *Mitchell*, 744 F.2d at 705.

In arguing for a bill of particulars, the defendants rely principally on two cases.  ECF 43 at 8-9 (citing *United States v. Laykin*, 886 F.2d 1534 (9th Cir. 1989); *United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979)).  Neither case helps them.  Both of those cases involved indictments that failed to allege the duration of the charged conspiracy with sufficient particularity.  The indictment here presents no such problem.

In *Laykin*, the indictment was defective as to the time of a charged conspiracy because the timing language was "open-ended in both directions."  886 F.2d at 1542.  That indictment's "beginning date," according to the Ninth Circuit, "t[old] the defendants nothing—just that the conspiracy started at some time before a particular date" and that "the conspiracy did not end prior to October 14, 1986." *Id.*  But despite that vagueness as to timing, *Laykin* held that the overt acts charged in the indictment "serve as a basis for limiting the time frame covered by the indictment and giving the defendants notice of the scope of the charges against them," since the overt acts "occurred in a discrete time period." *Id.*  In *Cecil*, which the Kuburoviches also cite, the "open-ended" timing problem was even more serious.  608 F.2d at 1297.  The *Cecil* indictment used timing language that "fail[ed] to place the conspiracies within any time frame" because the language was "open-ended in both directions." *Id.*

The Kuburoviches argue that "[t]he instant indictment does exactly what the court in *Cecil* found

U.S. OPP. TO MOT. FOR BILL OF PARTICULARS & MOT. TO DISMISS
16-CR-373 EJD                                               6

to be insufficient." ECF 43 at 9.  That is false.  The indictment here is not "open-ended in both directions"—the problem identified in *Cecil* and *Laykin*.  To the contrary, this indictment charges that the Kuburoviches' scheme to defraud began "on a date unknown to the Grand Jury, but no later than December 5, 2008, and continu[ed] until at least May 25, 2010." ECF 1 ¶ 6.  The indictment goes on to list specific acts committed on dates within that period, including December 18, 2008; December 26, 2008; December 31, 2008; January 5, 2009; January 25, 2009; February 20, 2009; April 6, 2009; March 30, 2009; April 7, 2009; May 11, 2009; and May 25, 2010.  ECF 1 at 2-5.  This indictment is therefore unlike the *Cecil* or *Laykin* indictments, and the Kuburoviches' reliance on those cases is misplaced.

In reality, the Kuburoviches' motion is a "request for complete discovery of the government's evidence," which the Ninth Circuit has emphasized "is not the purpose of a bill of particulars." *Giese*, 597 F.2d at 1181.  The Kuburoviches are "not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case." *Ryland*, 806 F.2d at 942.  The indictment and discovery here more than satisfy that standard.

## II. BECAUSE DEFENDANTS HAVE FAILED TO MAKE A PRIMA FACIE SHOWING OF VINDICTIVENESS, THE COURT SHOULD DENY THEIR MOTION TO DISMISS THE INDICTMENT

The Kuburoviches have not made a prima facie showing of vindictive prosecution.  The Court should therefore deny their motion to dismiss the indictment and deny their request for an evidentiary hearing.  The United States has already explained in detail why the defendants' vindictive-prosecution theory lacks merit.  ECF 67.  Those points and authorities are incorporated here by reference.

"In our system, so long as the prosecutor has probable cause to believe the accused committed the offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  "[I]n the absence of clear evidence to the contrary, courts presume that [federal prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either direct evidence of vindictiveness or circumstances establishing a "reasonable likelihood of vindictiveness." *United States v. Kent*, 649 F.3d 906, 912 (9th Cir. 2011) (quoting *United States v. Goodwin*, 457 U.S. 368, 373 (1982)).  Mere allegations about the purportedly suspicious timing of

charges do not suffice. *Id.* at 913. "If there is a sufficient prima facie showing of vindictiveness, the burden shifts to the prosecution to show that any increase in the severity of the charges did not stem from a vindictive motive, or was justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982). But "[t]he appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *Id.* at 1169.

Before a court will infer an abuse of prosecutorial discretion, a defendant must adduce "exceptionally clear proof." *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 411 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987)). The Kuburoviches have adduced none. They fail to identify any "direct evidence of actual vindictiveness" or any "facts that warrant an appearance of such." *Nunes*, 485 F.3d at 411 (quoting *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995)). They instead rely on conjecture, conspiracy theories, and overheated rhetoric. All of their arguments are meritless.

### A. Separate sovereigns

First, the dual-sovereignty doctrine fundamentally undermines the Kuburoviches' vindictive-prosecution claim. Under that doctrine, separate sovereigns may successively prosecute someone even "for the same course of conduct." *Heath v. Alabama*, 474 U.S. 82, 88 (1985). Separate sovereigns, "deriving power from different sources," are "capable of dealing with the same subject-matter within the same territory," and "[e]ach government in determining what shall be an offense against its peace and dignity in exercising its own sovereignty, not that of the other." *United States v. Lanza*, 260 U.S. 377, 382 (1922). "It must be remembered that 'a federal prosecution is not barred by a prior state prosecution of the same person for the same acts.'" *United States v. Burt*, 619 F.2d 831, 837 (9th Cir. 1980) (quoting *Abbate v. United States*, 359 U.S. 187, 194 (1959)).

Here, separate sovereigns have prosecuted the Kuburoviches for *different acts* and *unrelated crimes*. After California prosecuted them for assorted marijuana offenses, the federal government indicted them for bankruptcy fraud, concealment of assets in a bankruptcy proceeding, and making a materially false statement in a bankruptcy proceeding. ECF 1. The federal indictment also includes a

forfeiture allegation under which they must forfeit property constituting or deriving from proceeds traceable to 18 U.S.C. § 152, the bankruptcy-fraud statute. ECF 1 at 6-7.

The federal charges, in short, have nothing to do with the state marijuana charges that the Kuburoviches litigated in state court. And there is no evidence the federal government brought these bankruptcy-fraud charges because—and certainly not *solely* because—the Kuburoviches defended themselves in their state marijuana trial. *See Goodwin*, 457 U.S. at 380 n.11 ("A charging decision does not levy an improper 'penalty' unless it results *solely* from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." (emphasis added)); *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000) ("A prosecutor violates due process when he seeks additional charges *solely* to punish a defendant for exercising a constitutional or statutory right." (emphasis added)).

That the present federal prosecution "arose from events separate and distinct from those on which the earlier" state prosecution was based is "one of the key indicia" this Court must "scrutinize[]" when assessing the Kuburoviches' vindictive-prosecution claim. *United States v. Robison*, 644 F.2d 1270, 1272-73 (9th Cir. 1981). The Kuburoviches' claim is further "weakened by the fact that the instant prosecution is based on a different set of facts from [the] previous prosecution[]." *Id.* at 1273. In short, the dual-sovereignty principle, together with the unrelated nature of the state and federal charges, fatally undermines the Kuburoviches' vindictive-prosecution claim.

**B.     Separate federal and state interests**

The United States Attorney does not act vindictively where, as here, he decides to prosecute someone to vindicate a federal interest and makes that decision based on "the prosecutor's normal assessment of the societal interest in prosecution." *Gallegos-Curiel*, 681 F.2d at 1169 (internal quotation marks omitted).

As courts have consistently recognized, "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001) (citation and emphasis omitted). Therefore, the federal government has a compelling interest in "protecting the integrity of the bankruptcy system" from fraud. *United States v. Messner*, 107 F.3d 1448, 1457 (10th Cir. 1997). "Bankruptcy fraud undermines the whole concept of

allowing a debtor to obtain protection from creditors, pay debts in accord with the debtor's ability, and thereby obtain a fresh start," and a debtor who lies about assets in a bankruptcy proceeding "works a fraud on the entirety of the proceeding" and "violates the spirit as well as the purpose of bankruptcy." *United States v. Kennedy*, 233 F.3d 157, 162 (2d Cir. 2000) (quoting *Messner*, 107 F.3d at 1457).

The United States thus has a compelling interest in prosecuting the Kuburoviches. And it is a uniquely *federal* interest, since "[b]ankruptcy fraud is a criminal matter in which federal courts have original jurisdiction." *In re Hood*, 727 F.3d 1360, 1363 (11th Cir. 2013); *see* 18 U.S.C. § 3231 (providing exclusive federal jurisdiction for "all offenses against the laws of the United States"). The United States Attorney, exercised his "broad discretion," determined that this societal interest and the evidence obtained in the government's investigation warranted prosecuting the Kuburoviches. *See Gallegos-Curiel*, 681 F.2d at 1169. That is a quintessential exercise of prosecutorial discretion that "should not be burdened with presumptions of vindictiveness." *Id.*; *see also Kent*, 649 F.3d at 913 ("For good reasons, the Supreme Court has urged deference to pretrial charging decisions.").

The Kuburoviches believe this case could have been indicted sooner. ECF 68 at 11. Their opinion is irrelevant. Given that the grand jury returned this indictment well within the statute of limitations,[2] the Kuburoviches may not second-guess the government's determination of when this case was ready to be indicted. "[S]ince the government bears the burden of proving its case beyond a reasonable doubt, it must be permitted to exercise its own judgment in determining at what point in an investigation enough evidence has been obtained." *United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995) (rejecting defense claim "that the government stretched out its investigation after it had sufficient evidence to indict"). To rule otherwise "would unnecessarily and unfairly restrict the discretion and judgment of investigators and prosecutors." *Id.*; *see United States v. Lovasco*, 431 U.S. 783, 792 (1977) (rejecting defense claim that the government is required to indict as soon as it has "assembled sufficient evidence to prove guilt beyond a reasonable doubt").

---

[2] The underlying bankruptcy case was discharged on or about August 5, 2015. The five-year statute of limitations for a charge arising out of a bankruptcy filing is set by the date of discharge or denial. 18 U.S.C. § 3284. Concealment is a continuing offense that further extends the statute of limitations. *E.g.*, *United States v. Dolan*, 120 F.3d 856, 867 (8th Cir. 1997). Thus, the statute of limitations for the alleged criminal conduct here would have run at least until August 5, 2020. The grand jury indicted the Kuburoviches on August 16, 2016, almost four years before the statute of limitations had run.

### C. Federal marijuana policies

Instead of acknowledging the federal government's independent and compelling interest in combatting bankruptcy fraud, the Kuburoviches' attempt to tie this case to irrelevant policy issues regarding federal marijuana prosecutions. ECF 68 at 19-20. A congressional budget rider presently limits the Justice Department's ability to expend funds on marijuana prosecutions in cases where defendants prove that the conduct underlying their federal prosecution was conduct that "strictly compl[ied] with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana." *United States v. McIntosh*, 833 F.3d 1163, 1178 (9th Cir. 2016).

The budget rider has no bearing here. And the Kuburoviches have no basis for claiming that because the United States Attorney dislikes the rider, the United States Attorney "retaliated" against the Kuburoviches for doing something they claim they are "entitled" to do: "operate a lawful California state medical cannabis collective." ECF 68 at 12; *see id.* at 19.

That is pure conjecture, and it is false. Federal law, of course, "still prohibits the use or sale of marijuana, even if distributed and possessed pursuant to state-approved medical marijuana programs." *United States v. Kleinman*, __ F.3d __, 2017 WL 6997333, at *3 (9th Cir. 2017); *see also McIntosh*, 833 F.3d at 1179 n.5. But more to the point, this case is about bankruptcy fraud and related crimes; the charges in this indictment have nothing to do with marijuana. The Kuburoviches' purported compliance with California's medical marijuana laws does not give them immunity to commit bankruptcy fraud. And there is no evidence that the present federal prosecution "would not have occurred but for hostility or a punitive animus towards" the Kuburoviches "because [they] exercised" their right to defend themselves in state court on marijuana charges. *Gallegos-Curiel*, 681 F.2d at 1169.

### D. Chronology

The Kuburoviches' motion to dismiss rests on a logical fallacy: that because one event followed an earlier event, the first event caused the second. But "[t]he appearance of vindictiveness does not embody the post hoc ergo propter hoc fallacy," and "the link of vindictiveness cannot be inferred simply because the prosecutor's actions followed the exercise of a right, or because they would not have been taken but for exercise of a defense right." *Gallegos-Curiel*, 681 F.2d at 1168.

The Kuburoviches emphasize that the federal indictment for bankruptcy fraud and related

charges was filed after their acquittal in state court on the state marijuana charges. ECF 68 at 9-12. But the Ninth Circuit has declined to infer "an appearance of vindictiveness" from similar chronologies. *Robison*, 644 F.2d at 1273. And it has emphasized that when "a second prosecution [is] brought by a different sovereign," that fact "further weakens" a chronology-based claim of vindictiveness. *Id.*

In *Robison*, the defendant "failed to demonstrate any connection between the exercise of protected procedural rights in prior prosecutions and the federal prosecution challenged here," where he claimed—like the Kuburoviches—that the federal prosecution "was brought in retaliation for his exercise of procedural rights" in a prior state case. *Id.* at 1272-73. Because the *Robison* defendant failed to establish even "an appearance of vindictiveness," the Ninth Circuit made "no inquiry into the motives of the prosecution." *Id.* Notably, the Kuburoviches have made no effort to distinguish *Robison*.

### E. Communications

Even if there were communication between state and federal authorities here regarding the two sovereigns' respective cases, ECF 68 at 17-18, that would not be evidence of vindictiveness or collusion.

The Ninth Circuit has stressed that "it is extremely difficult and highly unusual" for a defendant to show that one sovereign's prosecution was in reality a "tool," "sham," or "cover" for the other sovereign. *United States v. Lucas*, 841 F.3d 796, 803 (9th Cir. 2016) (internal quotation marks omitted). Even when two sovereigns prosecute someone for the *same offense*—a scenario not present here—communication between the two sovereigns "is constitutional." *Id.* In fact, the Fifth Amendment in that circumstance permits "very close coordination in the prosecutions," including "in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns." *Id.* (quoting *United States v. Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991)). And the federal government can wait until the state prosecution concludes before proceeding with the federal prosecution:

> A government's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another sovereign's enforcement of *its* own laws. Thus, the federal government always has the right to decide that a state prosecution has not vindicated a violation of federal law. Such a decision is necessarily made only after the state prosecution has ended.

*United States v. Bernhardt*, 831 F.2d 181, 183 (9th Cir. 1987) (internal quotation marks and brackets

omitted). Accordingly, even if it were true that the United States Attorney decided to indict after the resolution of the state marijuana case—which it is not[3]—that would not be evidence of improper collusion or vindictiveness. The Kuburoviches have identified zero evidence that the federal government's bankruptcy-fraud prosecution was "not pursued to vindicate the separate interests of" the federal government and was instead a "sham" prosecution resulting from improper state-federal collusion. *Lucas*, 841 F.3d at 803.

At any rate, the "collusion" theory advanced by the Kuburoviches is inapplicable here because that "narrow exception to [the] dual-sovereign doctrine" applies only to Fifth Amendment double-jeopardy claims. *Lucas*, 841 F.3d at 803. The Kuburoviches do not allege any double-jeopardy violation. Nor could they, since the state and federal prosecutions here are for distinct crimes and separate conduct. *See, e.g.*, *United States v. Overton*, 573 F.3d 679, 697-98 (9th Cir. 2009).

### F.  The strength of the government's case

Nor is there any merit to the Kuburoviches' attack on the supposed "weakness" of the government's trial evidence. ECF 68 at 12-16. These are arguments the Kuburoviches can make to a jury. At trial, the Kuburoviches will be free to challenge the government's evidence and argue to the jury that the government has not proven its case beyond a reasonable doubt. But such trial arguments lend no support to the Kuburoviches' dismissal motion. Indeed, in their motion to dismiss (ECF 68 at 12-16), the Kuburoviches fail to cite any case where any court has found actual or apparent vindictiveness based on the supposed weakness of the government's evidence.[4]

### G.  Defendants are not entitled to an evidentiary hearing

Finally, because the Kuburoviches have failed to make a prima facie showing of vindictiveness, the Court should reject the defendants' request for an evidentiary hearing and decline to make any further "inquiry into the motives of the prosecution." *Robison*, 644 F.2d at 1272; *see One 1985 Mercedes*, 917 F.2d at 421.

---

[3] As the AUSA who indicted the case explained in the hearing before Magistrate Judge Cousins, "I was planning to indict the case before the acquittal." 12/20/17 Tr. 11 (ECF 67, Ex. 2).

[4] Moreover, the Kuburoviches' detailed recitation of the evidence and purported theory of the case, ECF 68 at 12-16, fatally undermines their arguments for a bill of particulars, as discussed above.

U.S. OPP. TO MOT. FOR BILL OF PARTICULARS & MOT. TO DISMISS
16-CR-373 EJD                                    13

Even if the Kuburoviches could make that prima facie showing, the United States has already overcome any presumption of vindictiveness as a matter of law. As discussed above, the federal government had its own reasons for pursuing this prosecution, including to protect the integrity of the federal bankruptcy system. Such independent reasons "dispel the appearance of vindictiveness and justify [the U.S. Attorney's] decisions." *United States v. Hooton*, 662 F.2d 628, 633 (9th Cir. 1981). At oral argument before Magistrate Judge Cousins, AUSA Gary Fry—the veteran prosecutor originally assigned to this case[5]—explained that he "indicted this case when it was ready to be indicted," that the United States Attorney's Office was "working on [the case] before the acquittal," and that "I was planning to indict the case before the acquittal." 12/20/17 Tr. 10-11 (ECF 67, Ex. 2). AUSA Fry also pointed out that during the pre-indictment period, when the federal investigation was ongoing, he considered seeking information from Liechtenstein,[6] and there was "a change in case agents." *Id.* at 10. He reiterated that the government indicted when it "was ready" to do so, and he rejected the assertion that the charging decision had anything to do with marijuana or the budget rider. *Id.* at 10-11.

Accordingly, just as the Kuburoviches are not entitled to discovery, ECF 50, they are also not entitled to an evidentiary hearing to pursue their speculative theories. *See, e.g.*, *Lucas*, 841 F.3d at 804 (denying evidentiary hearing where defendant made "'conclusory allegations' of collusion").

## CONCLUSION

The Court should deny the defendants' motion for a bill of particulars, deny their motion to dismiss the indictment, and deny their request for an evidentiary hearing.

Dated: February 13, 2018

Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

 */s/*
SCOTT SIMEON
JONAS LERMAN
Assistant United States Attorneys

---

[5] AUSA Fry recently retired after 26 years of service in the United States Attorney's Office.

[6] The transcript refers to "an inlet to Liechtenstein," 12/20/17 Tr. 10, but this appears to be a mistranscription of the acronym "MLAT" (Mutual Legal Assistance Treaty).