ZENIA K. GILG, SBN 171922
Sausalito Plaza
1505 Bridgeway, Suite 103
Sausalito, CA 94965
Telephone: 415.324.7071
Facsimile: 415.324.7078
Email: zenia@jacksonsquarelaw.com

Attorney for Defendant
KRISTEL KUBUROVICH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 16-00373-EJD |
| Plaintiff, | REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTIONS FOR BILL OF PARTICULARS AND TO DISMISS FOR VINDICTIVE PROSECUTION |
| v. | |
| GOYKO GUSTAV KUBUROVICH and KRISTEL KUBUROVICH, | |
| Defendants. | Date: February 26, 2018<br>Time: 1:30 p.m.<br>Judge: Hon. Edward J. Davila |

COMES NOW defendant Kristel Kuburovich, by and through counsel, and hereby replies to the Government's Opposition to Defendants' Motion for Bill of Particulars and Motion to Dismiss for Vindictive Prosecution (ECF Doc. #74, filed 2/13/18, herein referred to as Opposition).

**I. REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL BILL OF PARTICULARS**

**A. Defendants' Motion May be Considered Timely.**

Whether the Court's tacit acceptance of the announced filing of the Bill of Particulars is sufficient to meet the mandate of Fed. R. Crim. P. 7(f) is left to the sound discretion of this Judge. The Government's assertion, however, that the Motion should be denied because the defense was somehow derelict in timely filing motions ignores the fact that the defense endured

these delays because the attorney for the United States repeatedly neglected to respond to defense proposals, requests and inquiries. The frustration over these delays was specifically expressed in the filings made in opposition to the United States Motion for Continuance in Due Date for Response to Defendant Kristel Kuburovich's Motion to Compel Discovery re: Vindictive Prosecution. (Doc # 45, filed 12/12/17.) In the Declaration of Counsel filed in support of Defendant's Opposition to United States Motion to Continue, the attorney for Ms. Kuburovich described the steps taken to move the case forward despite the Government's lack of due diligence and what appeared to be disingenuous efforts which unjustifiably delayed this case. (See Doc # 45 at pp. 5-8, incorporated here by reference.)

Accordingly, defendants' motion should respectfully be deemed timely under Rule 7(f).

### B. The Indictment and Discovery Fail to Identify Criminal Conduct.

In addition to alleging the timing of filing the motion precludes resolution of the issue, the Government contends the Indictment and discovery provide detailed notice of the offenses charged and further suggests that the defense ability to provide a "detailed recitation of the evidence and purported theory of the case [as it relates to the Vindictive Prosecution motion] ... fatally undermines the motion for the bill of particulars." (See Opposition at p. 13, fn 4.) Yet this conclusion ignores the central argument here presented, as it is *because* neither the Indictment nor the discovery describe an action which supports a theory of criminal liability that the bill of particulars is needed.

For instance, referring to the Indictment the Government states: "Goyko Kuburovich, with the knowing assistance of his adult daughter, codefendant Kristel Kuburovich, 'submitted a bankruptcy petition which, among other false statement and omission, concealed approximately $868,00 in assets.'*Id.* " (See Opposition at 1:19-22.) There is simply no evidence that Kristel Kuburovich, then age 20, *assisted* her father with anything having to do with the bankruptcy petition, let alone helped him to submit a fraudulent one. Similarly, while the prosecution has provided voluminous discovery, none of it demonstrates the acts supporting a notion that Mr. Kuburovich has an interest in the money he gifted his daughters. This was a

central question asked in the Motion for Bill of Particulars, and one which is still not addressed by the Government in their Opposition. In effect, the defense contends the factual allegations made in the Indictment fail to identify the acts for which the defendants can be held criminally liable and, therefore, an order requiring the prosecution to identify such acts is appropriate. (See also, Section II( C), *infra.*)

## II. REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS' VINDICTIVE PROSECUTION MOTION

Defendants' vindictive prosecution motion should be granted where the totality of the circumstances demonstrate a "reasonable likelihood" of an appearance of an improper motive sufficient to shift the burden to the government, which it has yet to overcome.[1] See, e.g., *United States v. Goodwin*, 457 U.S. 368, 373 (1982); *United States v. Jenkins*, 504 F.3d 694, 700 (9th Cir. 2007).

The Courts have made clear, direct evidence of actual vindictiveness is not required. *Ibid*; see also, *United States v. Rusega-Martinez*, 534 F.2d 1367, 1370 (9th Cir. 1976) (dismissal of indictment where the government was unable to refute the presumption in indicting defendant following refusal to waive trial rights); *United States v. Griffin,* 617 F.2d 1342, 1347 (9th Cir. 1980) ("the appearance of vindictiveness is dependent upon the totality of the circumstances"); *United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978) (presumption

---

[1] While the instant motion has been pending, this Court Overruled the Objection to Nondispositive Order of the Magistrate Judge, thus, denying defendants discovery related to vindictive prosecution. The denial of discovery, however, should not affect this Court's independent consideration of the present potentially dispositive motion. Not only was a deferential standard applied in reviewing the Magistrate's Order (i.e.,"clearly erroneous" or "contrary to law"), but in order to compel discovery it was found defendants were required to produce "some direct evidence of the Government's improper motivation, or some evidence" of improper motive. (See Order, ECF Doc. # 75, filed 02/13/18, at pp. 3-4, citing, *United States v. One Mercedes*, 917 F.2d 415, 421 (9th Cir. 1990.) In the context of the motion here considered, the Ninth Circuit has specifically held direct evidence of actual vindictiveness is not required. (Citations provided *infra*.) Furthermore, Federal Rule of Criminal Procedure, Rule 16, applied as basis for the denial of discovery has no application to the decisions to be made in ruling on the present motion. (See Magistrate's Order, ECF Doc. #52, filed 12/22/17, at 1.) As this Court recognized, "the matter before Judge Cousins was a discovery motion ... not the motion to dismiss at which the presumption is applied. Error cannot be based on a perceived failure to apply a doctrine that does not yet apply." (Doc. # 75 at 4:21-24.)

arose when circumstantial evidence demonstrated the marijuana indictment was brought in retaliation for defendant asserting statutory speedy trial rights barred the prosecution of the cocaine complaint). Again, once the presumption applies, the Government must in turn rebut the appearance of vindictiveness producing "objective evidence justifying the prosecutor's action" demonstrating that the charging decision did "not stem from a vindictive motive[,]" but instead was "justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." *Jenkins, supra*, 504 F.3d at 701; see also, *Goodwin, supra,* 457 U.S. at 374.

The Government disregards the applicable totality of the circumstances analysis by: (1) arguing a piecemeal attack on each of the factors presented by the defense (i.e., chronology, coordination and weaknesses of this case) without considering their impact on the appearance of vindictiveness as a whole; (2) dismissing these key factors as "inapplicable" or "irrelevant" rather than affording them the scrutiny deserved; and (3) presenting additional factors (i.e., compliance with the statute of limitations, separate sovereigns, unrelated crimes, and the federal Government's interest in pursuing bankruptcy fraud cases) which do not apply under the unique circumstances present in this case, or even if found applicable, certainly do not defeat defendants' claims.

As demonstrated further below, the totality of the circumstances in this case compels finding a "reasonable likelihood" of an improper motive in charging defendant in this case, which the Government has failed to dispel.

**A.     The Chronology of Events**

Despite the Government's failed attempt to diminish the import of this critical factor (see Opposition at pp. 11-12), the "chronology of events is ... entitled to great weight" in reviewing a vindictive prosecution claim. *Griffin, supra*, 617 F.2d at 1347 (where the indictment was returned after the exercise of defendant's right within twenty days of the completion of the FBI investigation the court found timing did not support the vindictive prosecution claim); *Jenkins, supra*, 504 F.3d at 700 (whether the evidence alleged in support of

the indictment was known to the prosecution prior to the exercise of the legal right must be considered); *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982) (noting the Supreme Court, in *Goodwin*, *supra,* 457 U.S. at 381-382, reviewed the timing of the indictment in considering whether there was a realistic likelihood of vindictiveness); *Groves*, *supra*, 571 F.2d at 453 (holding the district court erred in failing to find the circumstantial evidence demonstrated an "appearance of vindictiveness" when government obtained an indictment for marijuana charges nine months after it knew of all charges, but only eight days after defendant moved to dismiss the cocaine charge for a speedy trial violation); *Rusega-Martinez*, *supra,* 534 F.2d 1367 (a sequence of events can create an appearance of vindictiveness).[2]

The Government relies on, *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981), asserting the Ninth Circuit "declined to infer 'an appearance of vindictiveness' from similar chronologies" as those present in the instant case; and defendants' "have made no effort to distinguish *Robison*." (*Id.* at 12:10.) To compare the chronology at issue in *Robison* to that in the present case is absurd.[3] In *Robison,* only *after* first holding an evidentiary hearing, including testimony concerning defendant's motion to dismiss for vindictive prosecution did the court determine:

> [T]he particulars of Robison's involvement were not known to the Government until May, 1979. The court ruled that the delay from May, 1979, to March,

---

[2] The prosecution's reliance on *United States v. Kent,* 649 F.3d 906, 913 (9th Cir. 2011) for the proposition that "[m]ere allegations about the purportedly suspicious timing of charges do not suffice" is misplaced. (See Opposition at 7:25-8:1.) First, the statement appears nowhere in the decision. Second, the *Kent* court analyzed a prosecutor's latitude in adding more serious charges following defendant's rejection of a cooperation agreement, a circumstance not here relevant. Finally, defendants in the present case are not relying exclusively on the suspicious timing as a factor to support their claim, but instead present it as one of many factors triggering the presumption.

[3] *Robison* is further distinguished in that the vindictive prosecution claim also failed because there was no attempt to "'up the ante' by bringing new or more serious charges in response to the exercise of protected rights" because "the defendant exercised procedural rights in a successful attempt to avoid the death penalty." *Id.* at 1973. As the court reasoned: "The subsequent federal prosecution for a crime punishable by a maximum of ten years in prison would not deter the defendant, nor anyone similarly situated, from seeking to avoid the loss of his life." *Ibid.* This analysis has no application to the present case.

1980, was reasonable in view of the circumstances of the case. The court thus concluded that there was no appearance of vindictiveness and denied the motion to dismiss.

*Id.* at 1272.

In the present case, the offense conduct is alleged to have occurred in 2010, and the Government had been given all the evidence relied on to support the charges by the end of 2012. Yet little happened for the next four years until an Indictment was filed a mere 11 weeks after defendants' exercised their trial rights and were acquitted. This is hardly equivalent to the 10 month delay in *Robison*. In addition, the Government's knowledge of the Kuburovich's involvement is undisputable, as the federal prosecutor was gathering the evidence through the state agents investigating the Medileaf case.

While not disputing the chronology of events, the Government offers the following vague and unsubstantiated arguments as justification for the lengthy delay and suspicious timing of filing the Indictment: (1) Defendant's assertion that this case could have been indicted sooner is an irrelevant "opinion[;]" (see Opposition at 10:14-15); (2) the statute of limitations was complied with (see *Id.* at 10:14-24); and (3) in reliance on the prior Assistant United States Attorney's unsworn statements the Government claims, (a) former prosecutor AUSA Gary Fry "indicted this case when it was ready," was "working on [the case] before the acquittal," and was "planning to indict the case before the acquittal[,] (b) he had considered seeking information from Liechtenstein, and ( c) there was "a change in case agents" (see *Id.* at 14:6-13, citing 12/20/17 Tr. at 10-11 (ECF 67, Ex. 2). (See also Opposition at 11:22-12:10).

1. **Timing is a Relevant Fact - Not Opinion**

As discussed above, the chronology is certainly not "irrelevant," as Ninth Circuit case law has applied the timing of the Indictment as the most compelling factor in deciding whether there is an appearance of vindictiveness. Additionally, defendant's assertion that the Indictment could have been brought years earlier is not merely an "opinion" as it is characterized by the Government, but instead an assertion of fact based on the record in this case, including, discovery produced by the Government as supported by specific citations to the Bates numbers

and a sworn Declaration of Counsel. (See Memorandum, Doc. #68-1, at pp. 9-12; Declaration, Doc. #68-2.) The Government's inability to respond with a more specific justification or explain how these circumstances resulted in years of delay also reveals the weaknesses of their unsubstantiated claims that somehow these delays were justified.

2. **Statute of Limitations Does Not Defeat a Vindictive Prosecutions Claim.**

Compliance with the statute of limitations cannot be used to defeat a vindictive prosecution claim; to do so would, for all practical purposes, eliminate the doctrine. For if a vindictive prosecution claim is brought against an Indictment filed within the statute of limitations the Government can assert compliance, and if it is filed outside of the limitations there would be no need to bring any motion other than the clearly defined violation of the statute of limitations. Be that as it may, in the present case the conduct attributed to Kristel Kuburovich, and forming the basis of the charges against her, occurred outside the general statute of limitations and are only made timely due to the fact that the bankruptcy proceeding in which she had no part did not conclude for five years after her alleged actions. Accordingly, even if the statute of limitations had some relevance, it would tend to support rather than defeat the vindictive prosecution claim brought by Kristel Kuburovich.

3. **Unsworn Statements of Prior Government Counsel do Not Rebut the Presumption**

AUSA Fry's conclusory and vague statements fail to adequately justify the delay in seeking an indictment in this case. For example, simply "contemplating" whether or not to obtain foreign documents is a weak excuse for the lengthy delay and timing of the Indictment. Even if the Government had decided to obtain foreign documents, they have failed to provide any information regarding how long this endeavor took or even how it would, or could, have furthered the investigation. As the defense has repeatedly pointed out noone hid money overseas, and the money which was held in a Liechtenstein bank was done so for a very short time and was back in the United States *a year* before the bankruptcy petition was filed.[4]

---

[4] The Government had no trouble determining that the funds came from a Merrill Lynch account in Goyko and Patricia Kuburovich's name; there was no problem tracing these

In addition, the Government has failed to provide any explanation regarding the question of changing the case agent and how it may have affected the timing of the Indictment. It appears that Santa Clara County Narcotics Enforcement Team (SCCNET) Officer Sandra Munoz has always been a key, if not the lead, law enforcement officer driving and furthering the prosecution of the Kuburovichs, and her participation began when she was investigating the failed state marijuana prosecution in 2010.

In effect, the reasons for the suspicious timing of the filing of the Indictment articulated by AUSA Fry bolster defendants' vindictive prosecution claim; as they demonstrates that there is no rational justification for the delay and, thus, tend to support the presumption of vindictiveness.

### B. Unprecedented Coordination Between the Federal and State Authorities

The Government asserts the coordination between sovereigns is permissible and the only exception applies to double jeopardy claims. (See Opposition, Doc. #74, at pp. 12-13, citing, *United States v. Lucas*, 841 F.3d 796, 803 (9th Cir. 2016).) Defendant did not argue, however, that such coordination is not permitted, but instead asserts that the circumstances here presented are highly unusual, if not unprecedented, and the type and extent of coordination should raise concerns.

The Government does not dispute defendants' claim that: (1) Sandra Munoz, who is a Santa Clara County Probation Officer, assigned to SCCNET, is the case agent in this federal bankruptcy case; (2) that she has no noted prior training or experience with bankruptcy fraud investigations; (3) she personally produced most of the documents, including, for example, boxes of bank records to the federal government which it relied upon to procure the Indictment; and (4) she delivered to the federal government property secured and held by the state court in

---

funds into the Pinnacle and USB accounts in the name of Nata LP, an entity formed for the Kuburovich children and named after Natalie the younger daughter. There was also no problem following the funds to Liechtenstein and back, and no issue tracing it to the purchase of the Eagle Ridge property. In addition the loans taken on this property were done so through a reputable title company in a transparent manner. In effect, there was no attempt to hide assets.

violation of state law. (See Defendant's Memorandum, Doc. # 68-1, at pp. 17-19; Opposition at pp. 12-13.) Furthermore, the Government has not contested defendants' factual assertions showing the Deputy District Attorneys who prosecuted the state case provided information directly to the FBI, including documents seized pursuant to the state search warrants, and urged the federal Government to file charges for the same conduct now forming the basis for this Indictment, which was rejected until after the defendants were acquitted. (See *Ibid*.)

Accordingly, the coordination and driving force of the state authorities in the present federal prosecution should be considered a key factor supporting application of the presumption.

    **C.    The Weaknesses of this Case and Unprecedented Charging of a Third Party, Kristel Kuburovich, Who Was Not a Party to the Bankruptcy Proceedings, Raise Questions Regarding the Justification of the Indictment**

In response to defendant's detailed analysis of the insufficiencies of the evidence presented in her moving papers, the Government argues that the weaknesses of the case should not be considered a factor because these are "trial argument" lending "no support" to this instant Motion. Thus, the prosecution not only fails to respond to the merits of defendant's arguments,[5] but also ignores Supreme Court precedent which clearly provides that showing the charges are not justified by the evidence may lend support to an application of a presumption of vindictive prosecution. See *Goodwin, supra,* 457 U.S. at 377, citing *Bordenkircher, supra*, 434 U.S. 357. Furthermore, no case has limited the circumstances a court may consider, including, the weaknesses of a case, in deciding if there is an appearance of vindictiveness. Accordingly, the Government's failure, and likely inability, to respond to defendants' demonstration of the case's weaknesses is a further basis for finding an appearance of vindictiveness supporting the presumption.

The following occurrences form the basis of the Indictment:

1.    On or about December 12, 2008, Nata, LP was a limited partnership created by an attorney on behalf of Natalie and Kristel Kuburovich. Goyko Kuburovich had no legal or equitable interest in this partnership.

---

[5] See Memorandum, Doc. #68-1, at 12-16; Opposition, Doc.# 74, at 13:12-19.

2. Also, in December of 2008, Goyko Kuburovich gave his teenage daughters Natalie and Kristel a sum of $750,000, by making three deposits of $250,000, the amount that is FDIC insured, from Merrill Lynch funds into Nata accounts. (See, e.g., Government's Opposition at 1:23-2:2, citing Indictment at ¶¶ 8-11.)[6]

3. A bank account was opened in Liechtenstein, and on January 25, 2009 Kristel Kuburovich transferred $500,000 to this account, and a few months later, on or about April 6, 2009, the vast majority was transferred back to her account at United Security Bank (See Opposition at 2:3-6, citing Indictment at ¶¶ 12, 13 and 15.)[7]

4. Kristel Kuburovich obtained a cashier's check and transferred monies from her and Nata's, LP accounts to Stewart Title for the purchase of a residence at 7170 Eagle Ridge Drive, Gilroy, California, by Nata, LP, in May of 2009.[8] (See Opposition at 2:10-15, citing Indictment ¶¶ 16, 17 and 18.)

5. Nata, LP used the Eagle Ridge property to secure loans on December 11, 2009, and May 7, 2010, in the amounts of $176,603 and $149,037, respectively, through a line of credit taken on the Eagle Ridge property, significantly reducing the equity in this property. The Indictment fails to include this important and uncontested information.

6. Nearly 1½ years after the initial gift was made and over a year after the real estate transaction was completed, on May 25, 2010 Goyko Kuburovich filed for Chapter 7 bankruptcy. (See Opposition at 2:16-18, citing Indictment ¶¶ 19.)

As a matter of law, these facts and circumstances do not support the charges in this case. There are no allegations included in the Indictment, nor supported by any of the discovery produced or even any unsupported arguments in response made by the Government, to show that the petitioner, Goyko Kuburovich, retained any legal or equitable interest in the assets transferred to his daughters over a year prior to the bankruptcy filing which would have required disclosure. As such, the assets alleged to have been concealed were not part of the bankruptcy estate, as defined under *11 U.S.C. § 541*, and thus, cannot form the basis for the fraud charges alleged in Counts One and Two (*Title 18 U.S.C §§ 157(1)* and *152(1)*,

---

[6] This gift was to carry out the wish their grandfather after he passed.

[7] It is important to note that this action took place at a time when U.S. banks were failing.

[8] Six months later, and after having suffered several unexpected financial setbacks the Kururovich family moved into this home. These financial losses were a result of the impact of the "Great Recession" on financial investments, as well as the City of Gilroy's decision to ban medical cannabis dispensaries.

respectively). See, *§ 541(a)(1)* (a debtor's estate consists only of "all legal or equitable interests of the debtor in property as of the commencement of the case"); *§ 541(b)* ("[p]roperty of the estate does not include (1) any power that the debtor may exercise solely for the entity other than the debtor"); *In re Hammerstein,* 189 F. 37 (1911).

As to Count Three (*Title 18 U.S.C § 152(3)*), in which only Goyko Kuburovich is named, the allegation fails to establish as a matter of law that he made a false statement since he was not required to disclose a gift made well over a year prior to filing a bankruptcy petition.[9] Rather than address this argument or dispute the facts, the Government asserts these are issues to be dealt with at trial. While the defense agrees these are trial issues, they are also relevant to the present motion as whether the charges are justified is a factors which may here be considered. (*Goodwin, supra,* 457 U.S. at 377 (citing *Bordenkircher, supra*).)

Further, assuming arguendo sufficient evidence supports the charges against Goyko Kuburovich, there are no facts alleged, nor any arguments made by the Government demonstrating that Kristel Kuburovich had any knowledge of her father's plan to file for bankruptcy a year and a half after receiving her grandfather's inheritance, and willfully and knowingly participated in a scheme to protect a fraction of her father's assets, as is required to prove she aided and abetted in the alleged fraudulent scheme. Furthermore, not only do Counts One and Two fail as a matter of law, but the unprecedented charging of a third party, Kristel Kuburovich should also be considered. The Government has not responded with any argument or precedent in which an individual who was not a party to the underlying bankruptcy proceeding has been charged with bankruptcy fraud. Even in cases wherein one spouse gifts property to the other prior to filing for bankruptcy the non-petitioning spouse has not been prosecuted. It, therefore, appears that the charges against the young daughter of a bankruptcy petitioner is highly unusual if not unprecedented, and this is one more fact lending support to

---

[9] The Statement of Financial Affairs, accompanying Goyko Kuburovich's bankruptcy petition required him to disclose "gifts ... made within *one year* immediately proceeding the commencement of this case[.]" (See Case # 10-55471, Doc. #1, filed 05/25/10, at page 37, Item 7 (emphasis in the original).)

No. 16-CR-373 EJD
Reply to Opposition to Defendants' Motions     11

the vindictive prosecution claim.

### D. Separate Sovereigns

The Government asserts that there can be no vindictive prosecution where the defendants are charged by the United States with offenses different from those for which they were acquitted in state court, and based on this contention advances the doctrine of dual-sovereignty in an attempt to undermine defendants' claim. (See Opposition at pp. 8-9.) Such an argument, however, ignores the defense's central argument: The Government's decision to seek the Indictment and prosecute this *bankruptcy* case was intended to punish the defendants for succeeding at trial on charges the federal Government is unable to prosecute, i.e., "assorted marijuana offenses." (Opposition at 8:26.) This in not a case where the dual-sovereign doctrine applies, because it is not a case where the federal government could attempt to succeed where the state failed. But rather is one in which the appearance of vindictiveness is based on the federal government's *inability* to invoke the dual-sovereign doctrine.

Moreover, as the Ninth Circuit has squarely held, a presumption of vindictiveness can arise when the conduct giving rise to the charges are unrelated. *Jenkins*, *supra*, 504 F.3d at 700-701; see also, *Groves*, *supra*, 571 F.2d at 453 ("We ... do not regard the factual similarity/dissimilarity of the two charges as dispositive on the question of vindictiveness; rather, we regard it as only one of the factors bearing on the issue."). Again the Government's reliance on *United States v. Robison*, *supra*, fails to recognize the fact that the court there actually held an evidentiary hearing before concluding that based on the materially distinguishable facts vindictiveness was not found.[10] Additionally, as the Government concedes the fact that the prosecutions are brought by separate sovereigns on unrelated matters is not a dispositive of the issue. (See Opposition at 9:12-16, citing *Robison, supra,* 644 F.2d at 1272-1273.) Accordingly, under the unique circumstances of this case (i.e., where the Government was precluded from charging defendants with marijuana offenses following their state court

---

[10] The defendant in *Robison* was not facing an enhancement of charges nor a threat to enhance them in response to his exercise of his right to appeal a death sentence. Here, the defendants' threatened liberty is certainly enhanced by this federal prosecution.

acquittals) successive prosecutions by different sovereigns based on different facts does not defeat the application of the presumption of vindictive prosecution.

### E. Separate Federal and State Interests

Understanding the Government's interest in the "integrity of the bankruptcy system" which requires "honest disclosure by debtors of all of their assets" (see Opposition pp. 9-10), the Indictment in the present case, particularly regarding Kristel Kuburovich, in no way serves those interests. (See Section II( C), *supra.*) Furthermore, the Government argues these are "uniquely *federal* interest[s]" for which the federal Government has "exclusive jurisdiction" (see Opposition at 10:5-8), yet the driving force in this federal bankruptcy fraud investigation and apparent case agent is the same state officer, with no bankruptcy fraud investigation experience, who also investigated the failed state marijuana prosecution. Therefore, in this case, the separate interests argument does not defeat, but in fact supports defendants' claim, particularly since the federal Government could not pursue a successive marijuana prosecution.

### F. Federal Marijuana Policies

While the federal law "still prohibits the use or sale of marijuana, even if distributed and possessed pursuant to state-approved medical marijuana programs," (see Opposition at 11:13-14) the Department of Justice, which includes the office of the United States Attorney is not permitted to spend *any* money on investigating or prosecuting those whose conduct is in compliance with the state's medical cannabis laws. Thus, this Office of the United States Attorney was, and is, prohibited from bringing charges like those for which the defendants were acquitted. *United States v. McIntosh,* 833 F.3D 1163, 1179 (9th Cir. 2015)

### G. Further Inquiry and an Evidentiary Hearing Is Warranted, or Alternatively, Due Process Requires Dismissal.

Considering the totality of the circumstances, defendants have made a sufficient showing of an appearance of vindictiveness. The Government has not offered any objective evidence of independent reasons or intervening circumstances sufficient to dispel the appearance of a vindictive motive to justify its decisions. Accordingly, further inquiry must be

made and an evidentiary hearing is warranted.[11] If the Government cannot overcome their burden the Due Process Clause requires that the case be dismissed.

Dated: February 21, 2018

                                                */s/ Zenia K. Gilg*
                                                ZENIA K. GILG
                                                Attorney for Defendant
                                                KRISTEL KUBUROVICH

---

[11] The Government again cites to *Robison, supra,* as support for a denial of any further inquiry or an evidentiary hearing be held. (See Opposition at 13:21-24). In *Robison,* however, the district court held an evidentiary hearing and "heard testimony concerning the motion to dismiss." 644 F.2d at 1271. On appeal, the Government did not challenge the decision to grant an evidentiary hearing. *Id.* at 1271-1272. Therefore, *Robison,* supports rather than defeats defendant's request for a hearing in this case. The Government also relies on *United States v. One 1985 Mercedes,* 9127 F.2d 415, 421 (9th Cir. 1990), however, in this case only the discovery request was at issue and there was no request made for an evidentiary hearing.

Certificate of Service

I hereby certify that on February 21, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all attorneys of record, including:

> Scott Simeon
> Jonas Lerman
> U.S. Attorney's Office
> NDCA, San Jose Branch
> 150 Almaden Blvd., Suite 900
> San Jose, CA 95113
> Telephone: 408-535-5061
> Facsimile: 408-535-5066
> scott.simeon@usdoj.gov
> jonas.lerman@usdoj.gov
>
> J. David Nick (CAL SBN 157687)
> Law Office of J. David Nick
> 345 Franklin Street
> San Francisco, ca 94102
> Telephone: (415) 552-4444
> Fax: (415) 358-5897
> jdavidnick@lawyer.com

/s/ Zenia K. Gilg
ZENIA K. GILG
Cal. SBN 171922
Law Office of Zenia K. Gilg
Sausalito Plaza
1505 Bridgeway, Suite 103
Sausalito, CA 94965
Telephone: 415.324.7071
Facsimile: 415.324.7078
zenia@jacksonsquarelaw.com