1      UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3       SAN JOSE DIVISION

4  UNITED STATES OF AMERICA,

5     PLAINTIFF,    CASE NO.  CR-16-00373-EJD

6   VS.       SAN JOSE, CALIFORNIA

7  GOYKO KUBUROVICH AND KRISTEL  OCTOBER 9, 2018

8  KUBUROVICH,      PAGES 1 - 57

     DEFENDANTS.

9

10

      TRANSCRIPT OF PROCEEDINGS

11   BEFORE THE HONORABLE EDWARD J. DAVILA

     UNITED STATES DISTRICT JUDGE

12

     A-P-P-E-A-R-A-N-C-E-S

13

14  FOR THE PLAINTIFF:  OFFICE OF THE UNITED STATES ATTORNEY

        BY:   SCOTT SIMEON

15         JEFF SCHENK

        150 ALMADEN BOULEVARD, SUITE 900

16        SAN JOSE, CALIFORNIA 95113

17

  FOR DEFENDANT   LAW OFFICE OF J. DAVID NICK

18  GOYKO:     BY:   J. DAVID NICK

        345 FRANKLIN STREET

19        SAN FRANCISCO, CALIFORNIA 94102

20  FOR DEFENDANT   LAW OFFICE OF ZENIA K. GILG

  KRISTEL:    BY:   ZENIA K. GILG

21        SAUSALITO PLAZA

        1505 BRIDGEWAY, SUITE 103

22        SAUSALITO, CALIFORNIA 94965

23  OFFICIAL COURT REPORTER:  IRENE L. RODRIGUEZ, CSR, RMR, CRR

          CERTIFICATE NUMBER 8074

24

25    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,

  TRANSCRIPT PRODUCED WITH COMPUTER.

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    OCTOBER 9, 2018 |
| 2 | P R O C E E D I N G S |
| 01:36PM 3 | (COURT CONVENED AT 1:36 P.M.) |
| 01:36PM 4 | THE COURT:  LET'S CALL 16-373, THIS IS UNITED STATES |
| 01:36PM 5 | VERSUS GOYKO KUBUROVICH AND KRISTEL KUBUROVICH.  IF I COULD |
| 01:36PM 6 | HAVE THE APPEARANCES, PLEASE. |
| 01:36PM 7 | MR. SIMEON:  GOOD AFTERNOON, YOUR HONOR. |
| 01:36PM 8 | SCOTT SIMEON ON BEHALF OF THE UNITED STATES. |
| 01:36PM 9 | THE COURT:  THANK YOU. |
| 01:36PM 10 | MR. SCHENK:  AND JEFF SCHENK.  GOOD AFTERNOON. |
| 01:37PM 11 | THE COURT:  GOOD AFTERNOON. |
| 01:37PM 12 | MR. NICK:  GOOD AFTERNOON, YOUR HONOR.  DAVID NICK |
| 01:37PM 13 | FOR GOYKO KUBUROVICH WHO IS PRESENT OUT OF CUSTODY. |
| 01:37PM 14 | THE COURT:  GOOD AFTERNOON. |
| 01:37PM 15 | MS. GILG:  AND GOOD AFTERNOON.  ZENIA GILG, AND I'M |
| 01:37PM 16 | APPEARING ON BEHALF OF MS. KUBUROVICH.  AND I APOLOGIZE, I |
| 01:37PM 17 | BELIEVE I'M OVER BEING CONTAGIOUS. |
| 01:37PM 18 | THE COURT:  WELL, THAT'S WHY WE HAVE MICROPHONES. |
| 01:37PM 19 | MS. GILG:  YOU'LL HAVE TO LISTEN VERY CAREFULLY. |
| 01:37PM 20 | THE COURT:  THIS IS OUR CONTINUED HEARING REGARDING |
| 01:37PM 21 | RULE 29 MOTIONS. |
| 01:37PM 22 | LET ME INDICATE THAT I DID RECEIVE OCTOBER 4TH, I THINK |
| 01:37PM 23 | WAS THE FILING DATE, OF DOCUMENT 135, WHICH WAS THE DEFENDANT'S |
| 01:37PM 24 | REPLY TO 131 WHICH WAS THE UNITED STATES RESPONSE TO THE |
| 01:37PM 25 | DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL. |

01:37PM 1    ARE THERE ANY OTHER DOCUMENTS THAT COUNSEL WISH TO DRAW MY

01:37PM 2    ATTENTION TO BEFORE WE GO FURTHER?

01:37PM 3    MR. NICK:  NO, YOUR HONOR.  OTHER THAN JUST A FORMAL

01:37PM 4    JOINDER ON WHAT MS. GILG FILED ON BEHALF OF GOYKO KUBUROVICH.

01:37PM 5    THE COURT:  ALL RIGHT.  THANK YOU.

01:38PM 6    MS. GILG:  YOUR HONOR, THAT INCLUDES DOCUMENT 120

01:38PM 7    WHICH WAS THE ORIGINAL?

01:38PM 8    THE COURT:  YES.  THE ORIGINAL, YES.  ALL RIGHT.

01:38PM 9    WELL, I'VE READ AND REVIEWED, AS I'VE INDICATED, 135, 131, AND

01:38PM 10   THE ORIGINAL MOTION.  I KNOW I ALSO RECEIVED SOME INITIAL

01:38PM 11   COMMENTS ABOUT THE EVIDENCE, BUT THE COURT DID RESERVE RULING.

01:38PM 12   THE JURY HAS SPOKEN AS TO THEIR FINDINGS.

01:38PM 13   MS. GILG, WOULD YOU LIKE TO BE HEARD FURTHER AS TO YOUR

01:38PM 14   MOTION?

01:38PM 15   MS. GILG:  I WOULD, YOUR HONOR.

01:38PM 16   THE COURT:  CERTAINLY.

01:38PM 17   MS. GILG:  MY RECOLLECTION WHEN WE BROUGHT THE RULE

01:38PM 18   29, AND AGAIN, THIS IS AS TO PRETENDING LIKE THE JURY VERDICT

01:38PM 19   DIDN'T COME.  THIS WAS -- YOU KNOW, WE'RE NOT LOOKING FORWARD.

01:38PM 20   WE'RE LOOKING BACK TO THE POINT WHERE THE RULE 29 WAS MADE.

01:38PM 21   THE COURT:  THAT'S RIGHT.  THE MOTION IS BEING HEARD

01:38PM 22   ON THE EVIDENCE AT THE STATE -- THE STATE OF THE EVIDENCE AT

01:38PM 23   THE TIME THE MOTION WAS MADE WHICH WAS AT THE CONCLUSION OF THE

01:38PM 24   GOVERNMENT'S CASE.

01:38PM 25   MS. GILG:  CORRECT.  AND I HAD ASKED AT THAT TIME

01:38PM 1    FOR THE COURT TO FOCUS ON COUNT TWO, THE CONCEALMENT OF ASSETS,

01:39PM 2    BECAUSE I THOUGHT THAT THAT ONE WAS PARTICULARLY WEAK.

01:39PM 3    AND, OF COURSE, WE WERE ASKED TO CONSIDER WHAT THE JURY

01:39PM 4    DID BUT JURIES DO WHAT THEY DO, BUT I STILL BELIEVE THAT THAT

01:39PM 5    COUNT IS EXTREMELY WEAK.

01:39PM 6    IF I ONLY COULD SAY ONE WORD GIVEN THE STATE OF MY VOICE

01:39PM 7    THAT WORD WOULD BE MCCORMICK, AND THAT'S THE CASE OF UNITED

01:39PM 8    STATES VERSUS MCCORMICK.  IT'S A NINTH CIRCUIT CASE.  WE CITE

01:39PM 9    IT IN OUR BRIEF.  IT IS STILL GOOD LAW.  IT'S A CONCEALMENT

01:39PM 10   CASE INVOLVING A WIFE WHO WAS A PARTY TO THE PETITION.

01:39PM 11   IN THAT CASE THE COURT FOUND THAT THERE WAS INSUFFICIENT

01:39PM 12   EVIDENCE TO ESTABLISH THAT HIS WIFE WHO SIGNED THE PETITION WHO

01:39PM 13   WAS INVOLVED IN THE, IN THE -- WHO WAS AWARE OF THE ASSETS THAT

01:39PM 14   WERE NOT DISCLOSED, AND AS A MATTER OF FACT SIGNED ON A CHECK

01:39PM 15   OF THIS CHECKING ACCOUNT THAT THE HUSBAND CREATED, WHO ADMITTED

01:40PM 16   THAT SHE WAS AWARE OF THE ENTIRE SCHEME, THE COURT FOUND

01:40PM 17   INSUFFICIENT EVIDENCE BECAUSE THERE WAS NO EVIDENCE THAT THIS

01:40PM 18   WOMAN KNEW WHAT WAS CONTAINED IN THE PETITION THAT SHE SIGNED.

01:40PM 19   THE COURT:  AND THAT WAS INTERESTING FOR ME TO LOOK

01:40PM 20   AT THAT CASE, AND THERE WAS ANOTHER CASE THAT WAS CITED ALSO

01:40PM 21   REGARDING INSUFFICIENCY, REGARDING KNOWLEDGE.

01:40PM 22   AND I WAS -- I THOUGHT TO INQUIRE OF YOU ABOUT THE

01:40PM 23   DISTINCTION OF THE FACTS THERE AND YOUR CLIENT'S PARTICIPATION

01:40PM 24   OR LACK OF PARTICIPATION IN THE EVENTS HERE.

01:40PM 25   IT APPEARED TO ME -- I'LL JUST USE THIS WORD "PASSIVE"

01:40PM 1   JUST FOR DISCUSSION PURPOSES.  IT WOULD APPEAR THAT IN THE

01:40PM 2   MCCORMICK CASE THE WIFE HAD A MORE PASSIVE ROLE, SHALL WE SAY,

01:40PM 3   IN THAT BANKRUPTCY.  SHE SIGNED, SHE HAD KNOWLEDGE.

01:40PM 4       AND HERE AS I LOOK AT THIS, AND THIS IS WHAT I'M EAGER TO

01:40PM 5   HAVE YOU SPEAK ABOUT, IT APPEARS THAT YOUR CLIENT WAS INVOLVED,

01:41PM 6   THE EVIDENCE SHOWS, I THINK, THAT SHE WAS INVOLVED IN NUMEROUS

01:41PM 7   FINANCIAL TRANSACTIONS, SOME WOULD SAY SOPHISTICATED

01:41PM 8   TRANSACTIONS FOR A WOMAN OF HER TENDER YEARS THAT YOU POINT OUT

01:41PM 9   I THINK IN YOUR PLEADINGS SHE WAS 19.

01:41PM 10      AND THERE IS EVIDENCE OF THESE TRANSACTIONS, SIGNING DEEDS

01:41PM 11  OF TRUST FOR A LOAN, HAVING HER NAME PUT DOWN FOR SIGNATOR FOR

01:41PM 12  NATA AND DESTRO AND HER INVOLVEMENT IN THOSE PRIMARY SIGNATORS,

01:41PM 13  THOSE TYPES OF THINGS, AND THEN THE MULTIPLE TRANSACTIONS, THE

01:41PM 14  MOVING OF MONEY BETWEEN ACCOUNTS AT DIFFERENT TIMES.  THAT

01:41PM 15  SEEMS TO SUGGEST A LITTLE BIT MORE INVOLVEMENT THAN THE

01:41PM 16  MCCORMICK CASE.  SO I'M EAGER TO HEAR FROM YOU ABOUT THAT.

01:41PM 17      MS. GILG:  YOUR HONOR, THAT MIGHT INDICATE MORE

01:41PM 18  INVOLVEMENT IN THE TRANSACTIONS THAT UNDERLINED A SCHEME

01:41PM 19  THAT -- AND I DON'T WANT TO STEP ON MY COLLEAGUE'S TOES.

01:42PM 20      THE COURT:  NO, NO.  RIGHT.

01:42PM 21      MS. GILG:  -- BUT A SCHEME THAT MY CLIENT'S FATHER

01:42PM 22  HAD DEVISED, BUT THERE IS NO KNOWLEDGE THAT ANY OF THIS WAS

01:42PM 23  USED IN A BANKRUPTCY FRAUD -- I MEAN IN A BANKRUPTCY CASE.

01:42PM 24  THAT'S THE THING THAT IS COMPLETELY MISSING FROM THIS CASE IS

01:42PM 25  KNOWLEDGE THAT THERE WAS EVEN A BANKRUPTCY PROCEEDING.

01:42PM 1      THE GOVERNMENT PRESENTED NO EVIDENCE THAT MY CLIENT WAS AT

01:42PM 2  ANY MEETINGS WHERE BANKRUPTCY WAS DISCUSSED, THAT SHE WAS EVER

01:42PM 3  ASKED ABOUT A BANKRUPTCY, THAT SHE WAS PART OF ANY OF THE

01:42PM 4  DOCUMENTS THAT WERE SIGNED IN THE BANKRUPTCY.

01:42PM 5      SO FIRST JUST TALKING ABOUT KNOWLEDGE, AND I WILL GO BACK

01:42PM 6  AND TALK ABOUT INTENT AS WELL BECAUSE THAT'S THE SECOND PART OF

01:42PM 7  IT, BUT I DON'T EVEN KNOW HOW WE GET THERE UNDER MCCORMICK WHEN

01:42PM 8  THE COURT FOUND THAT THE WOMAN WHO SIGNED THE PETITION HAD NO

01:42PM 9  KNOWLEDGE OF WHAT ASSETS WERE CONTAINED IN THAT PETITION, AND,

01:42PM 10 THEREFORE, COULD NOT BE CONCEALING THE ASSETS.

01:43PM 11     IN WHITE, WHICH IS THE CASE THAT MCCORMICK RELIES ON, THAT

01:43PM 12 WOMAN HAD LEFT OUT HER LIFE INSURANCE POLICY ON THAT PETITION.

01:43PM 13 AND THE JUDGE SAID, WELL, THERE'S NO EVIDENCE THAT SHE KNEW

01:43PM 14 THAT IT WAS LEFT OUT.

01:43PM 15     SO HERE THERE'S ZERO EVIDENCE NOT ONLY, NUMBER ONE, THAT,

01:43PM 16 MR. --

01:43PM 17          THE COURT:  SHE WAS -- IN WHITE, SHE WAS A

01:43PM 18 CO-PETITIONER, I THINK.

01:43PM 19          MS. GILG:  SHE WAS A CO-PETITIONER.

01:43PM 20          THE COURT:  AND THE EVIDENCE WAS THAT SHE HADN'T

01:43PM 21 READ THE APPLICATION.

01:43PM 22          MS. GILG:  YEAH, SHE HADN'T READ THE -- OR THAT --

01:43PM 23 BUT SHE SIGNED IT.

01:43PM 24          THE COURT:  RIGHT.

01:43PM 25          MS. GILG:  BUT WE HAVE SO MANY LEVELS OF KNOWLEDGE

01:43PM 1     HERE.

01:43PM 2           THE COURT:  SO LET ME TELL YOU I'M GOING TO POSE TO

01:43PM 3     THE GOVERNMENT WHAT IS THEIR BEST ARGUMENT TO ESTABLISH

01:43PM 4     KNOWLEDGE.  I UNDERSTAND YOUR COMMENTS THAT IT COULD LOOK FROM

01:43PM 5     A HIGH VIEW, IT COULD BE THAT THESE, I CALL THEM SOPHISTICATED

01:43PM 6     FINANCIAL TRANSACTIONS, SUGGEST SOME CONDUCT, THERE WAS A

01:43PM 7     REASON FOR THEM.  AND YOU MIGHT ARGUE THAT, WELL, THAT WAS HER

01:43PM 8     FATHER'S DOING, HER FATHER SET IT ALL UP, HER FATHER USED HER

01:44PM 9     AS A STRAW PERSON TO DO THIS.

01:44PM 10          BUT WHAT I HEAR YOU SAYING IS BUT EVEN IF YOU ACCEPT THAT,

01:44PM 11    JUDGE, WHERE IS THE FACT THAT SHE ACTUALLY HAD KNOWLEDGE THAT

01:44PM 12    THIS WAS ALL GOING TO BE DONE NOT PERHAPS FOR MEDILEAF, WHICH I

01:44PM 13    SUPPOSE AN INFERENCE COULD BE DRAWN THAT THIS WAS ALL ENGAGED

01:44PM 14    FOR MEDILEAF, BUT THAT IT WAS CONDUCTED AND ENGAGED IN TO

01:44PM 15    CONCEAL IN THE BANKRUPTCY FILING.

01:44PM 16          IT CERTAINLY PROVIDED AN AVENUE TO DO THAT.  I DON'T THINK

01:44PM 17    THAT YOU WOULD QUARREL WITH THAT, THE CREATION OF THESE

01:44PM 18    TRANSACTIONS AND THE MOVEMENTS, THEY SEEM TO SUGGEST SOMETHING

01:44PM 19    IRREGULAR.

01:44PM 20          MS. GILG:  WELL, REMEMBER THE AIDING AND ABETTING

01:44PM 21    STATUTE REQUIRES THAT A PERSON DO MORE THAN JUST FACILITATE THE

01:44PM 22    FRAUD, OKAY?

01:44PM 23          AND THERE'S ANOTHER REALLY INTERESTING CASE, YOUR HONOR,

01:44PM 24    ON THIS TOPIC, AND WE CITE IT IN OUR BRIEF, AND THAT'S THE

01:45PM 25    UNITED STATES VERSUS KNIGHT.  AND ALTHOUGH THAT'S NOT A NINTH

CIRCUIT CASE, IT'S AN EIGHTH CIRCUIT CASE, AND IT HAS A LOT OF

SIGNIFICANT INFORMATION CONTAINED IN THAT CASE.

AND AS AN OVERVIEW, WHAT THAT COURT FOUND WHICH WAS VERY

INTERESTING IS THAT THE DEFENDANT IN THAT CASE WAS THE LAWYER

WHO FILED THE BANKRUPTCY PETITION, AND I DON'T KNOW IF THE

COURT HAS READ THAT CASE BECAUSE IT'S VERY LENGTHY, AND YOU

WANT TO TALK ABOUT SOPHISTICATED REAL ESTATE TRANSACTIONS,

THERE'S A LOT GOING ON IN THAT CASE.

AND THIS LAWYER IS NOT ONLY HELPING TO FACILITATE THE

SOPHISTICATED TRANSACTIONS, BUT HE -- THERE WAS E-MAILS.  AND I

KNOW THE GOVERNMENT SAID, WELL, THERE'S NEVER E-MAILS.  WELL,

IN THIS CASE THERE WERE E-MAILS FROM THE LAWYER TO THE DEBTOR

SAYING, HEY, IF YOU DO THIS, THEN WE CAN HIDE YOUR ASSETS FROM

CREDITORS.  NOW, THIS IS ALL BEFORE THE BANKRUPTCY FILING,

THESE PARTICULAR -- SOME OF THESE E-MAILS.

HE ALSO HAD, HE HAD SALES COME THROUGH HIS IOLTA ACCOUNT

AND THEN HE WOULD PAY THE DEBTOR'S DEBTS OUT OF THAT SAYING,

AGAIN, THIS IS GOING TO PROTECT YOU FROM YOUR CREDITORS KNOWING

THAT YOU HAVE MONEY.

HE HELPED SET UP ANOTHER COMPANY THAT RIGHT BEFORE, I

THINK DAYS BEFORE THE BANKRUPTCY FILING, AND HE SET IT UP SO

THAT THERE WOULD BE AN ENTITY FOR FUNDS THAT WERE COMING IN

FROM ONE OF THE REAL ESTATE SALES.

SO HE WAS REALLY INVOLVED IN ALL OF THESE ASPECTS OF IT,

AND THEN HE WAS THE ATTORNEY WHO FILED THE BANKRUPTCY PETITION

01:46PM 1    AND THE SCHEDULES.

01:46PM 2        SO THIS INDIVIDUAL, THOUGH, IT WAS FOUND THAT, WELL, MAYBE

01:46PM 3    HE DID ALL OF THESE THINGS THAT -- IN ORDER TO PROTECT AGAINST

01:46PM 4    CREDITORS WHO WERE AFTER THE DEBTOR, BUT IT WASN'T IN

01:46PM 5    ANTICIPATION.  THERE WAS NO EVIDENCE THAT HE DID THAT IN

01:46PM 6    ANTICIPATION OF THE BANKRUPTCY FILING.

01:46PM 7        AND THAT WAS -- AGAIN, I THINK IT ENDED UP BEING A NEW

01:47PM 8    TRIAL MOTION, BUT AGAIN, IT WAS FOR INSUFFICIENT EVIDENCE OF

01:47PM 9    THE PARTY'S INTENT AND KNOWLEDGE.

01:47PM 10       SO WHEN YOU HAVE A SITUATION WHERE WE HAVE NO KNOWLEDGE,

01:47PM 11   NO EVIDENCE OF ANY KNOWLEDGE OF A BANKRUPTCY PROCEEDING, LET

01:47PM 12   ALONE ANY KNOWLEDGE OF WHAT WAS INCLUDED ON THE BANKRUPTCY

01:47PM 13   DOCUMENTS.  EVEN IF YOU CAN SAY SHE KNEW THERE WAS A BANKRUPTCY

01:47PM 14   PETITION, WHICH I DON'T KNOW HOW YOU POSSIBLY CAN UNDER THESE

01:47PM 15   FACTS, THERE WAS NO EVIDENCE.  BUT EVEN IF YOU COULD SAY THAT

01:47PM 16   SHE'S THE DAUGHTER SO SHE SHOULD HAVE KNOWN -- I DON'T EVEN

01:47PM 17   KNOW IF YOU COULD SAY SHE SHOULD HAVE KNOWN, BUT SHE KNEW --

01:47PM 18   THERE'S NO EVIDENCE THAT SHE EVER LOOKED AT THAT PETITION THAT

01:47PM 19   SHE KNEW WHAT HER FATHER INCLUDED ON THAT PETITION OR NOT.

01:47PM 20       SHE NEVER SIGNS IT.  NO LAWYER CAME IN AND SAID, OH, YEAH,

01:47PM 21   SHE WAS THERE WHEN WE PREPARED THIS PETITION.

01:47PM 22       NO ONE SAID THAT SHE WAS PRESENT AT ANY MEETINGS THAT

01:47PM 23   RELATED TO THE BANKRUPTCY.  AND THEN SHE WOULD ALSO HAVE TO

01:48PM 24   KNOW THAT THE PROPERTY THAT HE LEFT OUT WAS PART OF WHAT SHOULD

01:48PM 25   HAVE BEEN PART OF HIS ESTATE.  SO SHE WOULD HAVE HAD TO HAVE

01:48PM 1    KNOWLEDGE OF ALL OF THOSE THREE THINGS, AND THAT IS JUST WHEN

01:48PM 2    YOU'RE CONSIDERING THE PRINCIPAL'S LIABILITY.

01:48PM 3        THEN YOU GO ON TO AIDING AND ABETTING WHICH REQUIRES A

01:48PM 4    WHOLE OTHER REALM OF KNOWLEDGE, AND THAT'S KNOWING THAT THE

01:48PM 5    INFORMATION IS BEING WITHHELD.  AGAIN, THERE'S JUST NOTHING

01:48PM 6    THAT INDICATES THAT SHE KNEW ANYTHING ABOUT THE BANKRUPTCY

01:48PM 7    PROCEEDINGS.

01:48PM 8        SO IF YOU HAVE NO KNOWLEDGE THERE'S A PROCEEDING, NO

01:48PM 9    KNOWLEDGE WHAT IS INCLUDED IN THE SCHEDULE, NO KNOWLEDGE OF

01:48PM 10   WHAT THE DEBTOR IS INCLUDING AS HIS ASSETS, YOU JUST HAVE NO

01:48PM 11   KNOWLEDGE OF THE AVENUE IN WHICH THE CONCEALMENT IS SUPPOSED TO

01:48PM 12   BE MADE.

01:48PM 13       NOW, ASSUMING, AND I DON'T BELIEVE THERE'S ANY EVIDENCE OF

01:48PM 14   THIS EITHER, BUT ASSUMING THAT SHE SAID, WELL, OKAY, I'LL DO

01:48PM 15   THIS, DAD, SO THAT WE CAN PROTECT THESE ASSETS AGAINST LAWSUITS

01:49PM 16   OR PEOPLE WHO MIGHT COME AFTER US IN A CIVIL ACTION, THAT'S NOT

01:49PM 17   152, AND I THINK THAT THAT'S WHAT KNIGHT MAKES VERY CLEAR IS

01:49PM 18   THAT 152 REQUIRES THAT THERE BE AN INTENT TO CONCEAL FOR THE

01:49PM 19   PURPOSES OF DEFRAUDING THE BANKRUPTCY.

01:49PM 20           THE COURT:  SO YOU'RE ARGUING THERE'S NO DIRECT

01:49PM 21   EVIDENCE OF ANY OF THIS.  I THINK THE GOVERNMENT CONCEDES THAT

01:49PM 22   IN THEIR MOTIONS.

01:49PM 23           MS. GILG:  I'M SAYING THERE'S NO CIRCUMSTANTIAL,

01:49PM 24   THERE'S NO CIRCUMSTANTIAL EVIDENCE TO SUPPORT --

01:49PM 25           THE COURT:  WELL, THERE IS CIRCUMSTANTIAL EVIDENCE

01:49PM 1    OF SOME OF THESE THINGS.  I GUESS WHAT I'M ASKING YOU TO DO IS

01:49PM 2    TO TELL ME WHY WHEN A JUROR, A RATIONAL JUROR LOOKS AT THIS,

01:49PM 3    WHY IT CAN'T BE TIED IN TOGETHER?  I GUESS THAT'S THE ANALYSIS.

01:49PM 4         MS. GILG:  BECAUSE THERE'S NO CIRCUMSTANTIAL

01:49PM 5    EVIDENCE THAT MY CLIENT WAS AWARE OF THE BANKRUPTCY

01:49PM 6    PROCEEDINGS.

01:49PM 7         YOU COULD SAY SHE WAS AWARE THAT HER FATHER HAD DEBTS.  I

01:49PM 8    MEAN, LET'S TALK ABOUT THE SHIFTING, THE SHIFTING OF FUNDS

01:49PM 9    BECAUSE THAT, I THINK, IS ONE OF THEIR THINGS, WELL, SHE WAS

01:50PM 10   DOING ALL OF THESE CRAZY THINGS.

01:50PM 11        WELL, NUMBER ONE, AND I LAID IT OUT IN MY REPORT, SHE HAD

01:50PM 12   THREE ACCOUNTS THAT WERE IN HER NAME AND THEN THE NATA AND

01:50PM 13   DESTRO.  DESTRO DID NOTHING.

01:50PM 14        HER THREE ACCOUNTS, SHE'S PUTTING MONEY INTO ACCOUNTS FROM

01:50PM 15   HER NAME OR NATA'S NAME IN MEDILEAF OR CORNERSTONE WHICH ARE

01:50PM 16   ONES THAT ARE NAMED ON THIS BANKRUPTCY PETITION.

01:50PM 17        SO AGAIN, WELL, SHE MADE ALL OF THESE TRANSACTIONS.  OKAY,

01:50PM 18   SHE MADE A LOT OF TRANSACTIONS.  BUT THE QUESTION BECOMES IS

01:50PM 19   WHAT WAS THE PURPOSE OF THOSE TRANSACTIONS?  IT'S NOT LOGICAL

01:50PM 20   THAT SHE -- IF SHE'S TRYING TO CONCEAL THESE FUNDS FROM THE

01:50PM 21   BANKRUPTCY COURT THAT SHE'S GOING TO MOVE FUNDS FROM AN ACCOUNT

01:50PM 22   WHICH IS NOWHERE MENTIONED IN THE BANKRUPTCY PROCEEDING INTO

01:50PM 23   ACCOUNTS WHERE IT IS MENTIONED IN THE BANKRUPTCY PROCEEDING.

01:50PM 24        SO AGAIN THAT, TO ME, IS NOT EVEN A REASONABLE SPECULATION

01:50PM 25   WHICH IS NOT ALLOWED.  THAT'S PURE CONTRADICTORY EVIDENCE.  IT

01:51PM 1    CONTRADICTS THE GOVERNMENT'S CASE TO SAY THAT SHE WAS

01:51PM 2    TRANSFERRING ALL OF THIS MONEY AND WHEN A LOT OF THOSE

01:51PM 3    TRANSFERS WERE GOING INTO THE ACCOUNT THAT WERE LISTED ON THE

01:51PM 4    BANKRUPTCY PROCEEDING.  SO THAT'S ONE THING THAT THEY ARGUED.

01:51PM 5         THEN THEY ALSO ARGUE THE VIDEO IN WHICH SHE SHAKES HER

01:51PM 6    HEAD TO ACCOUNTS THAT THE GOVERNMENT -- OR THAT THE

01:51PM 7    INVESTIGATOR SAYS THAT SHE KNOWS ABOUT AND SAYS I DON'T KNOW

01:51PM 8    WHO OWNS THE EAGLE RIDGE HOUSE.

01:51PM 9         WELL, AGAIN, THAT EVIDENCE CONTRADICTS THEIR POSITION.  IF

01:51PM 10   SHE WAS TRYING TO CONCEAL IT, SHE WOULD SAY THAT THAT IS OWNED

01:51PM 11   BY ME THROUGH NATA FROM AN INHERITANCE.  SHE WOULD HAVE GONE

01:51PM 12   THROUGH THE WHOLE RIGAMAROLE OF HOW IT WAS CONCEALED.

01:51PM 13        AND ON TOP OF THAT, I DON'T THINK THAT THE COURT CAN

01:51PM 14   CONSIDER JUST HER STATEMENT WITHOUT CORROBORATING EVIDENCE

01:51PM 15   UNDER OPPER VERSUS U.S., 384 U.S. AT 84.  BASICALLY IT SAYS

01:52PM 16   THAT YOU CAN'T JUST CONSIDER HER STATEMENT, EVEN IF YOU THOUGHT

01:52PM 17   THAT THAT WAS SOME EVIDENCE TENDING TO SHOW HER KNOWLEDGE OF

01:52PM 18   THE BANKRUPTCY PROCEEDING.

01:52PM 19        PLUS, WE DON'T EVEN KNOW -- ACTUALLY, IT WAS SOME TIME IN

01:52PM 20   2010.  WE DON'T EVEN KNOW WHETHER THERE WAS A BANKRUPTCY

01:52PM 21   PROCEEDING AT THAT POINT.  THE GOVERNMENT NEVER SAID WHAT THE

01:52PM 22   DATE WAS AT THAT INTERVIEW OR THE CONTEXT.  IT JUST SAID SOME

01:52PM 23   TIME IN 2010.

01:52PM 24             THE COURT:  WHAT IS THE SIGNIFICANCE OF THE PAYMENT

01:52PM 25   OF ONE OF HER FATHER'S DEBTS FROM THE LIECHTENSTEIN ACCOUNT?

01:52PM 1          MS. GILG:  WELL, FIRST OF ALL, THAT IS IN 2013, AND

01:52PM 2  SECOND OF ALL, THAT WAS PAYMENT OF ONE OF HIS DEBTS.  WE KNOW

01:52PM 3  THAT HE HAD A DEBT WITH WARDA.  I MEAN --

01:52PM 4          THE COURT:  SHE SIGNED A DEED OF TRUST FOR THAT

01:52PM 5  DEBT?

01:52PM 6          MS. GILG:  SHE SIGNED -- FOR THE WARDA, YES, WHICH

01:52PM 7  WAS NEVER PART OF THE BANKRUPTCY PROCEEDING.  THAT DEBT WAS

01:52PM 8  NEVER INCLUDED IN THE BANKRUPTCY PROCEEDING BECAUSE IT WAS

01:53PM 9  SEPARATE.

01:53PM 10         THE COURT:  NO, I UNDERSTAND.

01:53PM 11         MS. GILG:  SO THERE IS NO EVIDENCE THAT, NUMBER ONE,

01:53PM 12  THAT SHE AT THAT POINT HAD GIVEN THAT TO THE TRUSTEE, THE

01:53PM 13  BANKRUPTCY TRUSTEE.  SHE SUBMITTED IT TO PAY A DEBT.

01:53PM 14     WE KNOW THERE WAS THE FONT DEBT, WHICH WE DIDN'T TALK

01:53PM 15  ABOUT A LOT IN COURT, BUT IT WAS ONE OF THE EXHIBITS ADMITTED,

01:53PM 16  THAT WAS THE FONT DEBT, AND THE WARDA DEBT.  BOTH OF THOSE WERE

01:53PM 17  OUTSIDE OF THE BANKRUPTCY PROCEEDINGS.

01:53PM 18     AND I DON'T SEE HOW THAT -- WELL, FIRST OF ALL, IT'S LONG

01:53PM 19  AFTER ALL OF THIS HAS OCCURRED AND SHE WOULD HAVE HAD TO HAVE

01:53PM 20  FORMULATED THE INTENT BEFORE SHE COMMITTED THE CRIME.  SO I

01:53PM 21  THINK EVEN UNDER THE SCENARIO THAT SHE -- IF YOU COULD FIND

01:53PM 22  SOME EVIDENCE TO PROVE THAT THAT MONEY WENT TO PAY -- WENT TO

01:53PM 23  THE BANKRUPTCY COURT AND THAT SHE KNEW IT WENT TO THE

01:53PM 24  BANKRUPTCY COURT, THEN YOU ALSO HAVE TO PROVE THAT SHE'S THE

01:53PM 25  ONE THAT TRANSFERRED THE MONEY BECAUSE AS THE GOVERNMENT SO

01:53PM  1    DILIGENTLY PRESENTED, MR. KUBUROVICH HAD SIGNING AND POWER OF

01:54PM  2    ATTORNEY OVER THAT ACCOUNT.

01:54PM  3        SO WE DON'T EVEN KNOW IF SHE'S THE ONE THAT TRANSFERRED

01:54PM  4    THE MONEY.  ALL WE KNOW IS THAT THE MONEY THAT WAS IN THAT

01:54PM  5    ACCOUNT, LIECHTENSTEIN, WENT TO PAY MR. KUBUROVICH'S DEBT.

01:54PM  6        AGAIN, MAYBE THAT'S REASONABLE SPECULATION THAT SHE KNEW

01:54PM  7    OR THAT SHE ACTUALLY DID THE TRANSFER, BUT IT'S CLEARLY NOT

01:54PM  8    SUFFICIENT EVIDENCE TO FIND THAT SHE HAD KNOWLEDGE OF THIS

01:54PM  9    WHOLE BANKRUPTCY PROCEEDING.

01:54PM  10       AND ON TOP OF THAT, YOUR HONOR, I KEEP GOING TO THIS, EVEN

01:54PM  11   IF SHE HAD KNOWLEDGE OF THE BANKRUPTCY PROCEEDING, IT STILL

01:54PM  12   DOESN'T PROVE THAT SHE HAD KNOWLEDGE OF WHAT WAS INCLUDED IN

01:54PM  13   THE SCHEDULES.  THAT WOULD COME RIGHT BACK TO MCCORMICK.  YOU

01:54PM  14   NEED MORE THAN JUST I KNEW THERE WAS A PROCEEDING.

01:54PM  15   MS. MCCORMICK, SHE SAID I KNEW ABOUT THE WHOLE SCHEME.  I KNOW

01:54PM  16   THE ENTIRE SCHEME THAT MY HUSBAND WAS ENGAGED IN.  I KNEW ABOUT

01:54PM  17   MICHAEL BONER.  I KNEW ABOUT THE NEW ACCOUNT.  I ACTUALLY

01:54PM  18   SIGNED A CHECK OFF OF THE NEW ACCOUNT.  AND STILL THERE WAS

01:54PM  19   INSUFFICIENT EVIDENCE TO ESTABLISH THAT SHE KNEW WHAT WAS IN

01:54PM  20   THE SCHEDULE THAT SHE SIGNED.

01:54PM  21       I MEAN, I JUST THINK THAT ONCE YOU --

01:54PM  22           THE COURT:  WELL, THAT'S A DIFFERENT CIRCUMSTANCE

01:55PM  23   BECAUSE SHE ACTUALLY SIGNED THE PETITION.  SO SHE WAS LOOKED AT

01:55PM  24   THROUGH A DIFFERENT LENS, WASN'T SHE, AS AN ACTUAL PARTICIPANT

01:55PM  25   OF THE BANKRUPTCY?

01:55PM 1       HERE YOUR CLIENT WAS NOT A PARTICIPANT IN THE BANKRUPTCY.

01:55PM 2  SHE DOESN'T HAVE THAT SITUATION.  SO SHE'S NOT BEING ASKED TO

01:55PM 3  HAVE KNOWLEDGE OF, AS A PARTICIPANT, OF WHAT IS INVOLVED IN THE

01:55PM 4  PROCEEDING, BUT I DON'T THINK THAT DIMINISHES YOUR ARGUMENT

01:55PM 5  ABOUT KNOWLEDGE OF THE PROCEEDING OR NOT.

01:55PM 6       I THINK THE GOVERNMENT SUGGESTS THAT BECAUSE OF STRONG

01:55PM 7  FAMILIAL TIES, THE FACT THAT THEY LOST ONE HOUSE IN GILROY, I

01:55PM 8  THINK IT IS, OR MAYBE IT WAS MORGAN HILL, AND THEN BOUGHT THE

01:55PM 9  OTHER HOUSE, THE EAGLE RIDGE HOUSE, THROUGH THE USE OF THESE

01:55PM 10  FINANCIAL TRANSACTIONS THAT SUGGESTS SOMETHING IRREGULAR, THAT

01:55PM 11  COMBINED WITH THREE OR FOUR OTHER FACTORS THAT WE'RE GOING TO

01:55PM 12  HEAR ABOUT FROM MR. SIMEON AND MR. SCHENK IN A MOMENT THAT

01:56PM 13  SUGGESTS YOUR CLIENT'S INVOLVEMENT.

01:56PM 14       BUT YOUR ARGUMENT IS THAT THERE'S NO EVIDENCE OF

01:56PM 15  KNOWLEDGE.

01:56PM 16       MS. GILG:  THERE IS NO -- YOUR HONOR, ALL OF THOSE

01:56PM 17  TRANSACTIONS HAPPENED A YEAR BEFORE THE BANKRUPTCY FILING, THE

01:56PM 18  EAGLE RIDGE WAS PURCHASED.  AND A LOT OF PEOPLE GO INTO

01:56PM 19  FORECLOSURE AND LOSE THEIR HOME WITHOUT FILING FOR BANKRUPTCY.

01:56PM 20  NOBODY TESTIFIED TO THAT EVERYONE WHO LOSES THEIR HOME FILES

01:56PM 21  FOR BANKRUPTCY, THEREFORE, SHE SHOULD HAVE KNOWN.

01:56PM 22       THE COURT:  NOR IS THERE TESTIMONY THAT EVERYBODY

01:56PM 23  WHO LOSES THEIR HOME SOME MONTHS AFTER ENGAGE IN FINANCIAL

01:56PM 24  TRANSACTIONS THAT ALLOWS THEM TO PURCHASE ANOTHER HOUSE IN

01:56PM 25  CASH.  I THINK THAT'S WHAT THE EVIDENCE WAS HERE.  NOT THAT

01:56PM 1    THAT HAS ANYTHING TO DO WITH THE --

01:56PM 2          MS. GILG:  BUT THAT HAS NOTHING TO DO WITH THIS

01:56PM 3    CHARGE.

01:56PM 4          THE COURT:  THAT'S RIGHT.  THAT'S RIGHT.

01:56PM 5       BUT IT'S CIRCUMSTANTIAL EVIDENCE OF FINANCIAL TRANSACTIONS

01:56PM 6    THAT I SUPPOSE THE GOVERNMENT ARGUED ALSO INDICATE PERHAPS

01:56PM 7    SUGGEST A STATE OF MIND AS TO THOSE TRANSACTIONS.

01:56PM 8       BUT --

01:56PM 9          MS. GILG:  WELL, AGAIN, I MEAN -- I'M NOT SURE -- I

01:56PM 10   DON'T -- I'VE TALKED ABOUT WHY THOSE TRANSACTIONS I DON'T

01:57PM 11   BELIEVE ARE CIRCUMSTANTIAL EVIDENCE THAT SHE KNEW ABOUT THIS

01:57PM 12   BANKRUPTCY PROCEEDING, PARTICULARLY SINCE SHE -- OR WHAT WAS

01:57PM 13   INCLUDED IN THE BANKRUPTCY PROCEEDING, AND I KNOW I'M REPEATING

01:57PM 14   MYSELF, BUT I JUST THINK IT'S SO IMPORTANT THAT SHE WAS

01:57PM 15   TRANSFERRING MONEY FROM AN ACCOUNT THAT THE BANKRUPTCY COURT

01:57PM 16   DIDN'T KNOW ABOUT INTO ACCOUNTS UNDER COMPANIES THAT THE

01:57PM 17   BANKRUPTCY COURT DID KNOW ABOUT.  THAT TO ME IS NOT

01:57PM 18   CIRCUMSTANTIAL EVIDENCE OF HER TRYING TO CONCEAL ASSETS.

01:57PM 19       AND I DON'T KNOW WHAT THE OTHER, THE OTHER CIRCUMSTANTIAL

01:57PM 20   EVIDENCE IS, BUT I WOULD BE HAPPY TO ADDRESS WHATEVER

01:57PM 21   CIRCUMSTANTIAL EVIDENCE THE GOVERNMENT PRESENTS BECAUSE I DID

01:57PM 22   GO THROUGH IT IN THE BRIEF, BUT I'M HAPPY TO DO IT ORALLY.

01:57PM 23          THE COURT:  ALL RIGHT.  THANK YOU.  LET'S HEAR FROM

01:57PM 24   YOUR COLLEAGUE.  MR. NICK.

01:57PM 25          MR. NICK:  OKAY.  YES.  YOUR HONOR, I THINK THAT TO

01:57PM 1    UNDERSTAND MY ARGUMENT I JUST WANTED TO MAKE SOME LEGAL POINTS

01:57PM 2    THAT ARE PRETTY OBVIOUS.  I THINK EVERYTHING AROUND HERE BOTH

01:57PM 3    FOR MS. KUBUROVICH AND MR. KUBUROVICH REVOLVE AROUND THE ASPECT

01:57PM 4    OF A LAW WHICH ALLOWS INFERENCES TO BE DRAWN BUT THAT THERE IS

01:58PM 5    AN UNKNOWN LINE BETWEEN REASONABLE INFERENCES AND SPECULATION

01:58PM 6    OR REASONABLE SPECULATION AS IT'S BEEN CALLED.  SUSPICION OR

01:58PM 7    SPECULATION DOES NOT RISE TO THE LEVEL OF SUFFICIENT EVIDENCE.

01:58PM 8        SECONDLY, YOUR HONOR, ANOTHER POINT TO UNDERSTAND MY

01:58PM 9    ARGUMENT IS I GO BACK TO THIS HAMMERSTEIN CASE, YOUR HONOR.

01:58PM 10   YES, IT'S NEVER BEEN EXPLAINED IN THE NINTH CIRCUIT, BUT THE

01:58PM 11   LAW IS THE SAME, YOUR HONOR.

01:58PM 12       THE NINTH CIRCUIT LAW IS THAT AN INDIVIDUAL CAN TRANSFER

01:58PM 13   HIS PROPERTY BEFORE BANKRUPTCY AS LONG AS IT'S NOT DONE FOR

01:58PM 14   FRAUDULENT PURPOSES WITH RESPECT TO THE BANKRUPTCY COURT.

01:58PM 15       HAMMERSTEIN, HOWEVER, YOUR HONOR, EXPLAINS THIS A LITTLE

01:58PM 16   BIT FURTHER, WHICH I THINK IS THE CAUSE OF THE RESULT HERE

01:58PM 17   MEANING THAT WHAT HAMMERSTEIN SAYS IS YOU CAN TRANSFER PROPERTY

01:59PM 18   WITH THE INTENT TO DEFRAUD YOUR CREDITORS TO HIDE THE ASSETS

01:59PM 19   FROM THE CREDITORS AND TO MAKE IT SO THAT THEY DON'T KNOW WHERE

01:59PM 20   THEY ARE, BUT THAT IS TOTALLY DIFFERENT, AND IT IS NOT A CRIME

01:59PM 21   IF THAT'S ALL YOU DO.  IT HAS TO BE COMBINED WITH AN INTENT TO

01:59PM 22   DEFRAUD THE BANKRUPTCY COURT.

01:59PM 23       SO WHAT I WOULD SAY HERE, YOUR HONOR, IS I EXPLAINED THIS

01:59PM 24   IS THAT ALL OF THE EVIDENCE THAT WE HAVE HEARD IN THIS CASE, IF

01:59PM 25   YOU JUST REMOVE THE BANKRUPTCY COURT OUT OF THE EQUATION FOR A

01:59PM 1    MOMENT, NO FINANCIAL TRANSACTION HERE WAS ILLEGAL.  THESE ARE

01:59PM 2    THINGS THAT PEOPLE CAN DO.  SOMEBODY CAN MAKE A MILLION

01:59PM 3    DOLLARS, HAVE VERY HIGH CREDIT CARD BILLS, AND SAY TO

01:59PM 4    THEMSELVES, HEY, I DON'T KNOW WHAT IS GOING TO HAPPEN IN THE

02:00PM 5    FUTURE, LET ME JUST GIVE ALL OF THE MONEY TO MY DAUGHTER AND

02:00PM 6    HAVE HER BUY A HOUSE UNDER THE NAME OF AN LLC.  THAT IS NOT

02:00PM 7    ILLEGAL CONDUCT, YOUR HONOR, EVEN IF YOU WERE TO DECLARE

02:00PM 8    BANKRUPTCY ONE, TWO, THREE YEARS LATER.

02:00PM 9        SO WHAT THIS CASE REALLY COMES DOWN TO, YOUR HONOR, IS CAN

02:00PM 10   A COURT AND A JURY FAIRLY, AND THAT'S THE KEY WORD, DISTINGUISH

02:00PM 11   BETWEEN AN INTENT TO REMOVE THE ASSETS FROM THE VIEW OF

02:00PM 12   CREDITORS VERSUS THE INTENT TO REMOVE THE ASSETS FROM THE VIEW

02:00PM 13   OF THE BANKRUPTCY COURT, YOUR HONOR?

02:00PM 14       HERE, YOUR HONOR, WE HAVE A DRASTIC AMOUNT OF TIME THAT

02:00PM 15   GOES BY BETWEEN THE TRANSFER OF THE PROPERTY AND THE FILING OF

02:00PM 16   BANKRUPTCY, YOUR HONOR.  IT'S ALMOST TWO YEARS.

02:00PM 17       AND AS I ARGUED TO THE JURY, NOT ONE SINGLE PIECE OF

02:01PM 18   EVIDENCE IN THIS CASE, WHILE I UNDERSTAND THAT YOU CAN RELY ON

02:01PM 19   INFERENCES, TWO YEARS GO BY AND NO STATEMENT IS MADE TO A

02:01PM 20   PERSON, NO E-MAIL IS WRITTEN, NO TEXT OF ANY KIND, NO EVIDENCE

02:01PM 21   AT ALL THAT THIS TRANSFER WAS DONE FOR THE PURPOSES OF FILING

02:01PM 22   BANKRUPTCY IN TWO YEARS.  THAT'S WHAT THE INDICTMENT ALLEGED IN

02:01PM 23   THIS CASE, YOUR HONOR.

02:01PM 24       AND WHAT THE GOVERNMENT IN ESSENCE USED IN THIS CASE TO

02:01PM 25   TRY TO CONVINCE THE JURY OF THE FACT WAS NOT ONLY THE TRANSFERS

02:01PM 1    OF PROPERTY, WHICH AGAIN I SAY ARE LEGITIMATE AND LEGAL, BUT

02:01PM 2    FOR AN INTENT TO DEFRAUD A BANKRUPTCY COURT.  THEY RELIED ON

02:01PM 3    THE HIGH CREDIT CARD BILLS THAT WERE WHIRLING AROUND RIGHT

02:02PM 4    AROUND THE TIME THAT MR. KUBUROVICH TRANSFERRED ALL OF HIS

02:02PM 5    PROPERTY OVER TO HIS DAUGHTER.

02:02PM 6         EVERY SINGLE TRANSACTION THAT OCCURRED THERE AFTER THE

02:02PM 7    SIGNATURE OF MS. KUBUROVICH WAS USED.

02:02PM 8         WHILE SHE DID APPEAR AT THE SIGNING OF THE WARDA LOAN, SHE

02:02PM 9    DID APPEAR AND SIGN, YOUR HONOR, DESPITE HER FATHER HAVING HAD

02:02PM 10   NEGOTIATED IT.

02:02PM 11        THE COURT:  WHAT IS THE SIGNIFICANCE OF THAT?

02:02PM 12        MR. NICK:  WELL, THE SIGNIFICANCE OF THAT, YOUR

02:02PM 13   HONOR, IS THAT TO ME ANYWAY, IF SHE'S JUST A STRAW PERSON, SHE

02:02PM 14   DOESN'T NEED TO SHOW UP TO SIGN.  IT'S THE MOST LUDICROUS THING

02:02PM 15   TO DO OF THEM ALL.

02:02PM 16        IF SHE'S IN FACT JUST A STRAW PERSON AND ALL OF THE MONEY

02:02PM 17   IS CONTROLLED BY MR. KUBUROVICH, WHY NOT JUST ISSUE HIM A POWER

02:02PM 18   OF ATTORNEY TO ACT FOR THE CORPORATION?  WHY NOT JUST PUT HIM

02:02PM 19   IN THE MINUTES?  WHY NOT JUST PUT HIM IN THE OPERATING

02:03PM 20   AGREEMENT AS SOMEBODY THAT CAN EXECUTE CONTRACTS ON BEHALF OF

02:03PM 21   NATA AND DESTRO?  AND THAT'S WHY IT'S IMPORTANT, YOUR HONOR,

02:03PM 22   BECAUSE THAT'S WHAT YOU WOULD NATURALLY EXPECT IF IN FACT

02:03PM 23   KRISTEL KUBUROVICH WAS A STRAW PERSON AND ALL OF THE MONEY WAS

02:03PM 24   REALLY BEING CONTROLLED BY MR. KUBUROVICH.

02:03PM 25        SO I THINK, YOUR HONOR, HERE THAT --

THE COURT:  SO SHE WAS A MORE ACTIVE PLAYER THAN YOUR COLLEAGUE SUGGESTS?

MR. NICK:  NO, I WOULDN'T, I WOULDN'T -- WHAT SHE IS TALKING ABOUT IS A DIFFERENT ISSUE WHETHER SHE HAS KNOWLEDGE OF THE BANKRUPTCY PROCEEDINGS, AND I DON'T BELIEVE THAT HER SHOWING UP TO SIGN THE DOCUMENTS FOR THE WARDA LOAN SHOW ANY KNOWLEDGE OF WHAT IS GOING ON IN BANKRUPTCY COURT.  SO I DON'T BELIEVE IT'S ANY DIFFERENT IN THAT SENSE, YOUR HONOR.

SO, YOUR HONOR, I THINK WHEN YOU LOOK AT THIS CASE, YOU KNOW, FACT FINDERS AND LAWYERS CAN FIND REASONABLE INFERENCES IN ANYTHING, IN JUST ABOUT ANYTHING.

AND I WOULD SAY IT'S THE MOST DIFFICULT THING TO DO FOR A COURT TO DECIDE AT WHAT POINT IT IS THAT THE INFERENCE IS SPECULATION VERSUS IT'S REASONABLE, AND I WOULD JUST SIMPLY ASK THE COURT HERE TO QUESTION ITSELF WHEN YOU LOOK AT THIS ENTIRE CASE WHETHER THERE'S ANY RATIONAL WAY OF SAYING, YES, THE EVIDENCE CLEARLY SHOWS TWO YEARS BEFORE THE FILING HE TRANSFERRED ALL OF THESE FUNDS TO KRISTEL KUBUROVICH FOR THE SOLE PURPOSE OF DEFRAUDING THE BANKRUPTCY COURT TWO YEARS LATER.

AND I RESPECTFULLY SAY, YOUR HONOR, YOU HAVE TO COMPLETELY ENGAGE IN SPECULATION GIVEN THE STATE OF THE EVIDENCE IN THIS CASE AND THE LENGTH OF TIME THAT PASSED FROM THESE TRANSFERS TO THE FILING OF BANKRUPTCY TO SAY THAT THAT WAS THE INTENT WHEN THE TRANSFERS WERE MADE.  IT JUST IS SHEER SPECULATION, YOUR

02:04PM 1    HONOR.

02:05PM 2         IF IT DOESN'T RISE TO THE LEVEL OF SHEER SPECULATION, YOUR

02:05PM 3    HONOR, THEN IT'S CLEARLY AN UNJUST VERDICT THAT IS NOT

02:05PM 4    SUPPORTED BY THE EVIDENCE.

02:05PM 5         AND UNDER RULE 33, YOUR HONOR, I WOULD ALSO ASK THE COURT

02:05PM 6    TO CONSIDER GRANTING MR. KUBUROVICH A NEW TRIAL ON THAT GROUND

02:05PM 7    THAT THE VERDICT IS UNJUST AND DOES NOT COMPORT WITH THE

02:05PM 8    EVIDENCE IN THE CASE.

02:05PM 9         THANK YOU, YOUR HONOR.  I'LL SUBMIT THAT.

02:05PM 10        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

02:05PM 11        ANYTHING FURTHER BEFORE I TURN TO THE GOVERNMENT?

02:05PM 12        MS. GILG:  I JUST -- I DON'T THINK THAT ANYTHING

02:05PM 13   THAT MR. NICK SAID WOULD INDICATE THAT MY CLIENT WAS ACTUALLY

02:05PM 14   INVOLVED IN ANY MORE OF THE SCHEME THAN WHAT THE EVIDENCE HAS

02:05PM 15   SHOWN, WHICH AGAIN IS LIMITED TO ACTIONS TAKEN THAT REALLY SOME

02:05PM 16   ACTIONS ARE CONSISTENT WITH HER NOT KNOWING ABOUT THE

02:05PM 17   BANKRUPTCY, IN OTHER WORDS, PUTTING MONEY INTO ACCOUNTS THAT

02:05PM 18   ARE KNOWN TO THE BANKRUPTCY.  AND AGAIN, I'LL WAIT UNTIL

02:06PM 19   MR. SIMEON --

02:06PM 20        THE COURT:  THANK YOU.  MR. SIMEON, MR. SCHENK.

02:06PM 21        MR. SIMEON:  THANK YOU, YOUR HONOR.  I GUESS I'LL

02:06PM 22   JUST START BY DISCUSSING THE APPLICABLE LAW SINCE DEFENSE

02:06PM 23   COUNSEL RELIES HEAVILY ON MCCORMICK AND MCCORMICK IS SIMPLY A

02:06PM 24   DIFFERENT CASE APPLYING THE LAW TO DIFFERENT FACTS THAT DO NOT

02:06PM 25   EXIST HERE.

02:06PM 1    MCCORMICK, LIKE WHITE, INVOLVED TWO CODEFENDANTS, BOTH

02:06PM 2    CHARGED AS PRINCIPALS.  THEY WERE HUSBAND AND WIFE IN EACH

02:06PM 3    CASE.  AND IN EACH CASE THE COURT FOUND THAT THERE WAS

02:06PM 4    SUFFICIENT CIRCUMSTANTIAL EVIDENCE TO UPHOLD THE CONVICTIONS OF

02:06PM 5    THE HUSBAND'S.

02:06PM 6        NOW, REGARDING THE WIFE.  IN MCCORMICK THE COURT STATES,

02:06PM 7    "THE EVIDENCE CONVINCINGLY DEMONSTRATES THAT MRS. MCCORMICK WAS

02:06PM 8    FULLY INFORMED OF THIS SCHEME TO CREATE THE FICTITIOUS IDENTITY

02:07PM 9    OF MR. BONER'S."  THAT WAS THE FAKE IDENTITY OF THE

02:07PM 10   HUSBAND/DEFENDANT IN THAT CASE.

02:07PM 11       IT DOES NOT SAY SHE WAS FULLY INFORMED OF THE ENTIRE

02:07PM 12   SCHEME TO DEFRAUD.  IN FACT, THAT'S THE WHOLE POINT OF THE

02:07PM 13   CASE, SHE WAS AWARE OF THE OTHER IDENTITY AND THE FACT THAT HER

02:07PM 14   HUSBAND HAD USED THAT IDENTITY TO OPEN A BANK ACCOUNT.

02:07PM 15       SHE WASN'T AWARE OF WHAT WAS OMITTED OR INCLUDED IN THE

02:07PM 16   BANKRUPTCY PETITION BECAUSE THE COURT STATES, "THE EVIDENCE IS

02:07PM 17   UNCONTROVERTED THAT MRS. MCCORMICK DID NOT READ THE BANKRUPTCY

02:07PM 18   DOCUMENTS BEFORE SHE SIGNED THEM."

02:07PM 19       SO ALL THOSE CASES STAND FOR IS THE PROPOSITION THAT

02:07PM 20   MERELY SIGNING A DOCUMENT DOES NOT MEAN THAT AN INDIVIDUAL

02:07PM 21   KNOWS WHAT WAS FRAUDULENTLY INCLUDED OR OMITTED FROM THOSE

02:07PM 22   DOCUMENTS.

02:07PM 23           THE COURT:  THERE HAS TO BE ADDITIONAL PROOF OF THAT

02:07PM 24   KNOWLEDGE.

02:07PM 25           MR. SIMEON:  THAT'S CORRECT, AND IT COULD BE

02:07PM 1     CIRCUMSTANTIAL.

02:08PM 2         NOW, THE ANALOGOUS INDIVIDUAL IN THIS CASE WOULD BE

02:08PM 3     MRS. PATRICIA KUBUROVICH, AND THE GOVERNMENT AGREES THAT THERE

02:08PM 4     IS INSUFFICIENT EVIDENCE TO FIND HER GUILTY AS A PRINCIPAL OF

02:08PM 5     BANKRUPTCY FRAUD.  SHE WASN'T CHARGED IN THIS CASE.

02:08PM 6         SO THAT'S NOT THE RIGHT CASE FOR KRISTEL KUBUROVICH.

02:08PM 7         SHE WAS AN ACTIVE PARTICIPANT IN A SCHEME TO DEFRAUD AND

02:08PM 8     THE PROPER LEGAL STANDARD IS VIEWING ALL OF THE EVIDENCE, NOT

02:08PM 9     JUST LOOKING AT WHETHER THERE WAS A FORECLOSURE OR A SPECIFIC

02:08PM 10    TRANSACTION, BUT LOOKING AT THE TOTALITY OF THE EVIDENCE AND

02:08PM 11    FROM THAT TOTALITY DRAWING ALL INFERENCES IN FAVOR OF THE

02:08PM 12    GOVERNMENT WHETHER THERE'S SUFFICIENT EVIDENCE --

02:08PM 13    CIRCUMSTANTIAL EVIDENCE, AS MCCORMICK SAYS, IS OFTEN THE CASE

02:08PM 14    AND CAN BE USED TO FIND INTENT TO DEFRAUD -- TO FIND

02:08PM 15    KRISTEL KUBUROVICH GUILTY OF AIDING AND ABETTING, NOT AS A

02:08PM 16    PRINCIPAL.

02:08PM 17        ONE OF THE THINGS THAT CAN BE USED AS CIRCUMSTANTIAL

02:09PM 18    EVIDENCE IS THE SCHEME TO DEFRAUD ITSELF, AND THERE ARE A

02:09PM 19    COUPLE OF THINGS.  I WON'T GO THROUGH EVERY DETAIL.  IT'S ALL

02:09PM 20    IN THE GOVERNMENT'S BRIEFING.

02:09PM 21        BUT THE SCOPE OF THIS SCHEME TO DEFRAUD EXTENDS FROM AT

02:09PM 22    LEAST AS EARLY AS NOVEMBER 2008 WHEN DESTRO WAS FORMED, IT WAS

02:09PM 23    ONE OF TWO SHELL COMPANIES IN THE NAME OF KRISTEL KUBUROVICH,

02:09PM 24    AND IT EXTENDED UNTIL AUGUST 2015.  THAT'S WHEN THE DISCHARGE

02:09PM 25    OCCURRED.  SO IT'S ALMOST SEVEN YEARS THAT WE'RE TALKING ABOUT

02:09PM 1    FOR THE SCOPE OF THE SCHEME TO DEFRAUD.

02:09PM 2        AND MS. KRISTEL KUBUROVICH SHARES A RESIDENTIAL ADDRESS AT

02:09PM 3    THE BEGINNING OF THE SCHEME.  SHE SHARES A BUSINESS ADDRESS

02:09PM 4    WITH HER FATHER'S BUSINESSES, AND WHEN THEY MOVE AND SHE BUYS A

02:09PM 5    HOUSE UNDER THE NAME OF NATA, THEY AGAIN MOVE TOGETHER AND

02:09PM 6    SHARE THE SAME RESIDENTIAL ADDRESS.

02:09PM 7        SO THEY'RE UNDER THE SAME ROOF.  THEY HAVE MULTIPLE

02:09PM 8    PERSONAL AND BUSINESS TRANSACTIONS TOGETHER, AND THE SCHEME TO

02:09PM 9    DEFRAUD, MOVING FROM THE SCOPE TO THE PURPOSE, IS NOT SIMPLY TO

02:10PM 10   HIDE ASSETS BECAUSE THE ONLY WAY THAT THE SCHEME WORKS IS IF

02:10PM 11   THE DEBT IS DISCHARGED.

02:10PM 12       WHILE THE ASSETS ARE CONCEALED, INTEREST IS ACCUMULATING

02:10PM 13   AND THE DEBT IS ACTUALLY INCREASING.

02:10PM 14       SO FOR THERE TO BE A PRODUCTIVE SCHEME TO DEFRAUD, THEY

02:10PM 15   HAVE TO HIDE THE ASSETS BUT ALSO GET THE DEBTS DISCHARGED.

02:10PM 16   THAT'S WHAT THE BANKRUPTCY PROCEEDING IS FOR.

02:10PM 17       AND THE EVIDENCE SHOWS FOR THE 0569 ACCOUNT,

02:10PM 18   MS. KRISTEL KUBUROVICH IS THE ONLY SIGNATORY ON THAT ACCOUNT,

02:10PM 19   AND THAT IS THE ACCOUNT THAT IS VERY ACTIVE IN THE WEEKS

02:10PM 20   LEADING UP TO THE BANKRUPTCY PETITION, INCLUDING $34,000 BEING

02:10PM 21   WITHDRAWN FROM THAT ACCOUNT ON THE DAY OF THE BANKRUPTCY

02:10PM 22   FILING.  THIS IS NOT A MERE COINCIDENCE.

02:10PM 23       AND GOING BACK SEVERAL WEEKS BEFORE THAT THERE ARE OTHER

02:10PM 24   25,000 AND OTHER LARGE WITHDRAWALS INTO CASH.

02:11PM 25           THE COURT:  IS SHE THE ONLY SIGNATOR ON THOSE

02:11PM 1    ACCOUNTS?

02:11PM 2         MR. SIMEON:  SHE IS THE ONLY SIGNATORY ON THOSE

02:11PM 3    ACCOUNTS AND SCHEDULE 8 SHOWS THAT SHE IS THE ONE WHERE IT

02:11PM 4    ANNOTATES WHO DIRECTED THE MONEY.  HERS IS THE ONLY NAME THAT

02:11PM 5    IS LISTED.

02:11PM 6         SO SHE'S THE ONLY SIGNATORY.  SHE'S THE ONLY ONE,

02:11PM 7    ACCORDING TO THE BANK RECORDS, WHO EVER DIRECTED ANY OF THOSE

02:11PM 8    FUNDS, AND THERE'S HUGE AMOUNTS OF MONEY BEING TRANSFERRED

02:11PM 9    TIMED WITH THE BANKRUPTCY FILING ITSELF.

02:11PM 10        I WANT TO CORRECT A COUPLE OF THINGS.  MS. GILG SAID THE

02:11PM 11   OPPOSITE INFERENCE SHOULD BE DRAWN BECAUSE THE MONEY IS MOVED

02:11PM 12   FROM THAT ACCOUNT TO ACCOUNTS THAT WERE LISTED ON THE

02:11PM 13   BANKRUPTCY PETITION.

02:11PM 14        THAT'S NOT TRUE.  THERE WERE FOUR ACCOUNTS LISTED ON THE

02:11PM 15   BANKRUPTCY FILING.  THEY WERE ALL PERSONAL ACCOUNTS IN THE NAME

02:11PM 16   OF MR. GOYKO KUBUROVICH.  NONE OF THESE ACCOUNTS, MEDILEAF, ET

02:11PM 17   CETERA, THOSE WERE NOT LISTED ON THE PETITION.  SO THAT IS

02:11PM 18   INCORRECT.

02:11PM 19        THE ENTITIES, THE BUSINESS ENTITIES WERE LISTED UNDER THE

02:12PM 20   SCHEDULE WHERE BUSINESSES WERE REQUIRED TO BE LISTED, BUT THIS

02:12PM 21   WAS A PERSONAL BANKRUPTCY FILING.  SO THE ACCOUNTS FOR HIS

02:12PM 22   BUSINESSES WERE NOT LISTED ON THE FILING.

02:12PM 23        SECOND, THE LIECHTENSTEIN TRANSFER, IT WAS HER ACCOUNT AND

02:12PM 24   SHE AGAIN WAS ONE OF TWO SIGNATORIES ON THE ACCOUNT.  IT'S

02:12PM 25   TRUE, THERE WAS NO EVIDENCE WHO DIRECTED THAT MONEY TO BE

02:12PM 1   MOVED, BUT IT IS TRUE THAT THE ONLY DEBTS OF MR. KUBUROVICH

02:12PM 2   THAT ARE IN EVIDENCE ARE THE DEBTS THAT WERE LISTED ON HIS

02:12PM 3   BANKRUPTCY PETITION.

02:12PM 4       I'M A BIT CONFUSED BY DEFENSE COUNSEL'S STATEMENT THAT THE

02:12PM 5   FONT AND WARDA LOANS WERE MR. KUBUROVICH'S DEBTS.  ON PAPER

02:12PM 6   THEY WERE NOT HIS DEBTS, AND IF THE DEFENSE ARGUMENT IS THAT,

02:12PM 7   IN FACT, THEY WERE MR. KUBUROVICH'S DEBTS, THEN THAT JUST

02:12PM 8   BOLSTERS THE PROOF THAT THERE WAS A SCHEME TO DEFRAUD, THAT HE

02:13PM 9   PUT THE MONEY IN SOMEONE ELSE'S NAME AND THEN USED THOSE ASSETS

02:13PM 10  FOR HIMSELF.

02:13PM 11      THE GOVERNMENT AGREES THAT THOSE DEBTS WERE IN THE NAME OF

02:13PM 12  NATA LP.  AND AS DEFENSE COUNSEL BROUGHT OUT ON

02:13PM 13  CROSS-EXAMINATION OF MR. WARDA, HAD HE NEEDED TO PURSUE THOSE

02:13PM 14  DEBTS RECEIVING THE MONEY THAT HE WAS OWED, HE WOULD HAVE TO GO

02:13PM 15  AFTER NATA LP, NOT MR. KUBUROVICH.

02:13PM 16      SO IT SEEMS LIKE THE ARGUMENT THAT IS BEING MADE NOW IS

02:13PM 17  NOT ACTUALLY THE ARGUMENT THAT WAS BEING MADE BEFORE, AND, IN

02:13PM 18  FACT, IF THAT WERE THE CASE, I THINK THE STIPULATION WOULD HAVE

02:13PM 19  READ DIFFERENTLY.  IT READS THE WAY IT IS FOR THE REASONS THAT

02:13PM 20  DEFENSE COUNSEL COULD HAVE ARGUED THAT IN FACT THEY WERE NOT LP

02:13PM 21  DEBTS, NOT MR. KUBUROVICH'S DEBTS.

02:13PM 22      REGARDLESS, THE ONLY DEBTS OF MR. KUBUROVICH IN HIS NAME

02:13PM 23  AT TRIAL WERE THE DEBTS IN HIS BANKRUPTCY FILING AND OVER

02:13PM 24  $100,000 FROM AN ACCOUNT IN THE NAME OF MS. KRISTEL KUBUROVICH

02:13PM 25  WAS WIRED IN 2013 TO PAY FOR THOSE DEBTS.

02:13PM 1          THE COURT:  HE HAD ACCESS TO THAT, HE WAS A

02:14PM 2    SIGNATORY ON THAT AS WELL.

02:14PM 3          MR. SIMEON:  HE DID.  THAT'S CORRECT.

02:14PM 4          THE COURT:  SO THAT SOMEWHAT DILUTES -- WELL, I

02:14PM 5    GUESS IT'S 50/50 AS TO THAT ACCOUNT, ISN'T IT?  MAYBE HE DID,

02:14PM 6    MAYBE SHE DID.  WE JUST DON'T KNOW.

02:14PM 7          MR. SIMEON:  THAT'S CORRECT, YOUR HONOR, WE DON'T

02:14PM 8    KNOW AND THAT'S WHY THE POINT IS THAT IN DRAWING AN INFERENCE

02:14PM 9    IN FAVOR OF THE GOVERNMENT VIEWING EVERYTHING TOGETHER, NOT IF

02:14PM 10   THAT WERE THE ONLY PIECE OF EVIDENCE, THAT WOULD PROBABLY BE

02:14PM 11   INSUFFICIENT, BUT IT'S NOT THE ONLY PIECE OF EVIDENCE.  IT IS

02:14PM 12   ONE PIECE IN MANY.

02:14PM 13         THE COURT:  SO THE QUESTION THAT I HAD SAID I WAS

02:14PM 14   GOING TO POSE TO THE GOVERNMENT WAS -- AND THIS IS SOMETHING

02:14PM 15   THAT I THINK IS IMPORTANT TO HEAR COMMENT ON FROM THE

02:14PM 16   GOVERNMENT IS THE ACTUAL PROOF OF KNOWLEDGE, AND I UNDERSTAND

02:14PM 17   IT'S -- PERHAPS IT'S CIRCUMSTANTIAL, AND I DON'T THINK THERE'S

02:14PM 18   ANY STATEMENT, THERE'S ANY WITNESS, THERE'S ANY REAL EVIDENCE

02:14PM 19   THAT IS DOCUMENTARY EVIDENCE OF HER KNOWLEDGE OF THIS AND OF

02:14PM 20   THE BANKRUPTCY.

02:14PM 21         SO IT APPEARS THAT THE GOVERNMENT'S CASE RELIES ON, AS YOU

02:15PM 22   SAY, A TOTALITY OF THE CIRCUMSTANCES THAT A REASONABLE JUROR

02:15PM 23   COULD RELY ON TO PERHAPS WITHDRAW AN INFERENCE THAT SHE DID

02:15PM 24   HAVE KNOWLEDGE OF THE BANKRUPTCY BECAUSE I THINK YOU AGREE

02:15PM 25   THAT'S A KEY ELEMENT, THAT'S ONE OF THE KEY ELEMENTS.  AND

02:15PM 1    CANDIDLY, THAT'S AN ELEMENT THAT I'M FOCUSSED ON IN REGARDS TO

02:15PM 2    THIS MOTION.  IT REALLY IS FOR ME, IT'S THE KNOWLEDGE PART OF

02:15PM 3    IT AND WHAT IS IT THAT SHOWS THAT SHE HAD ACTUAL KNOWLEDGE OF

02:15PM 4    THE BANKRUPTCY?

02:15PM 5            MR. SIMEON:  AS YOUR HONOR CORRECTLY STATES, THERE'S

02:15PM 6    NO DIRECT EVIDENCE OF THAT WHICH IS UNSURPRISING.  THE DEFENSE

02:15PM 7    ARGUES, WELL, SHE WASN'T PRESENT AT ANY BANKRUPTCY PROCEEDING,

02:15PM 8    SHE DIDN'T SIGN ANY BANKRUPTCY FORMS, AND THE RESPONSE TO THAT

02:15PM 9    IS OF COURSE NOT.  THE SCHEME TO DEFRAUD IS TO HIDE THE MONEY

02:15PM 10   UNDER THE NAME OF SOMEONE WHO IS SEPARATE FROM THE BANKRUPTCY

02:15PM 11   PROCEEDING.

02:15PM 12           THE ACCOUNTS, THESE TRANSACTIONS, THE GOVERNMENT HAS

02:15PM 13   EVIDENCE OF THEM FROM FBI SUBPOENAS AND ANALYSIS OF THOSE

02:16PM 14   ACCOUNTS.

02:16PM 15           DEFENSE SPEAKS AS IF IT'S JUST EASY TO SEE AND TRACE THIS

02:16PM 16   MONEY.  THE ACCOUNTS ARE NOT LISTED ON THE BANKRUPTCY FILING.

02:16PM 17   THE MONEY IS HIDDEN IN THE COUNTS, NOT LISTED IN THE BANKRUPTCY

02:16PM 18   FILING, IN THE NAME OF MS. KUBUROVICH.

02:16PM 19           FOR SEVERAL OF THOSE ACCOUNTS SHE IS, IN FACT, FOR ALL OF

02:16PM 20   THE ACCOUNTS OTHER THAN THE LIECHTENSTEIN ACCOUNT, WHICH IS

02:16PM 21   EVEN MORE DIFFICULT TO GET RECORDS FOR BECAUSE AN MLAT REQUEST

02:16PM 22   HAS TO BE FILED, FOR ALL OF THE U.S. BANK ACCOUNTS, SHE IS THE

02:16PM 23   ONLY SIGNATORY, AND THAT MEANS THAT SHE IS THE ONE WHO IS

02:16PM 24   ACTUALLY CONTROLLING THE ASSETS.

02:16PM 25           EVEN IF SHE'S BEING DIRECTED BY SOMEONE ELSE, SHE HAS TO

02:16PM 1    HAVE KNOWLEDGE OF WHAT IS HAPPENING WITH THAT MONEY BECAUSE

02:16PM 2    SHE'S THE ONLY ONE WHO IS LEGALLY IN CONTROL OF THOSE ACCOUNTS.

02:16PM 3        THE COURT:  SO IN THIS CASE IF -- THERE'S EVIDENCE

02:16PM 4    IN THE RECORD OBVIOUSLY OF THE FAMILIAL RELATIONSHIP.  IT'S HER

02:16PM 5    FATHER.  AND SHE'S 19, PERHAPS 20, AT THE TIME OF ALL OF THIS.

02:16PM 6    IT'S A SUBSTANTIAL AMOUNT OF MONEY FOR A TEENAGER OR SOMEONE 20

02:17PM 7    YEARS OLD TO HAVE CONTROL OVER.  IT SEEMS LIKE A NATURAL

02:17PM 8    INFERENCE IS THAT THE FATHER CONTROLLED THIS.  THE FATHER WAS

02:17PM 9    PULLING THE STRINGS.

02:17PM 10   WAS SHE A STRAW PERSON OR WAS SHE JUST DOING WHATEVER HER

02:17PM 11   FATHER SAID?  THAT MAY BE TRUE.  I THINK THERE WAS A STRONG

02:17PM 12   INFERENCE THAT -- AT LEAST THAT'S ONE EXPLANATION OF IT.

02:17PM 13   I THINK IT'S HARDER -- THE EVIDENCE SEEMS TO BE MORE

02:17PM 14   DIFFICULT TO DISCERN THAT SHE WAS AN ACTIVE PARTICIPANT, THAT

02:17PM 15   SHE PERHAPS WAS IN HER FATHER'S ROLE, PUTTING THE SCHEME

02:17PM 16   TOGETHER AND ALL OF THAT.

02:17PM 17   I'M NOT CERTAIN THE EVIDENCE IS STRONG ENOUGH TO PUT HER

02:17PM 18   IN THAT POSITION BUT MAYBE SHE'S SOMEWHERE IN BETWEEN, AND

02:17PM 19   THAT'S WHAT I'M STRUGGLING WITH HERE IS WHERE DOES SHE FIT

02:17PM 20   THERE?  WHAT DOES THE EVIDENCE SHOW?  IT SHOWS, AS I CALL IT,

02:17PM 21   FINANCIAL SOPHISTICATION IN MOVING THE FUNDS AROUND, BUT ABSENT

02:17PM 22   THE SOPHISTICATION OR ACTUALLY INCLUDING THE SOPHISTICATION,

02:18PM 23   WHAT IS IT THAT ATTACHES THAT SOPHISTICATION TO THE BANKRUPTCY?

02:18PM 24   THE TIMING OF THE TRANSFERS, I THINK I UNDERSTAND THAT THE DAY

02:18PM 25   BEFORE THAT, THE 24TH OF MAY.

02:18PM 1          MS. GILG:  DAY OF.

02:18PM 2          THE COURT:  AND THE DAY OF.  AND THAT'S

02:18PM 3   SOPHISTICATION.

02:18PM 4          MS. GILG:  I THINK THAT'S SILLY.

02:18PM 5          THE COURT:  WHAT DOES THAT -- HOW DOES THAT SPEAK TO

02:18PM 6   SCIENTER, TO KNOWLEDGE OF THE BANKRUPTCY?

02:18PM 7          MR. SIMEON:  SO, YOUR HONOR, I'M NOT SURE THAT

02:18PM 8   SOPHISTICATION IS THE RIGHT STANDARD FOR AIDING AND ABETTING.

02:18PM 9   AIDING AND ABETTING SHE SIMPLY NEEDS TO KNOW OF THE BANKRUPTCY,

02:18PM 10  AND I THINK THERE'S AMPLE EVIDENCE TO SHOW THAT SHE

02:18PM 11  PARTICIPATED IN THE SCHEME.  SHE PARTICIPATED IN THE

02:18PM 12  CONCEALMENT OF ASSETS WHICH IS ONE OF THE ELEMENTS.

02:18PM 13      SO I BELIEVE REALLY THE ONLY QUESTION IS DID SHE KNOW THAT

02:18PM 14  THERE WAS A BANKRUPTCY PROCEEDING?

02:18PM 15         THE COURT:  RIGHT.  THAT'S IT.  THAT'S REALLY THE

02:18PM 16  KNOWLEDGE PART.

02:18PM 17         MR. SIMEON:  SO I DON'T BELIEVE THAT HOW

02:18PM 18  SOPHISTICATED SHE WAS IS REALLY NECESSARY TO FIGURE THAT OUT.

02:18PM 19      BUT IT WASN'T JUST THE DAY OF MAY 25TH.  THERE WERE TWO

02:19PM 20  TRANSACTIONS THAT DAY, BUT THERE WAS ANOTHER ONE MAY 24TH;

02:19PM 21  THERE WERE OTHER CASH TRANSACTIONS ON MAY 7TH, APRIL 8TH.  SO

02:19PM 22  THERE ARE MULTIPLE TRANSACTIONS.  AND AGAIN, THE TIMING IS TOO

02:19PM 23  MUCH TO SIMPLY BE COINCIDENTAL.  AND SO WHAT IS THE INFERENCE

02:19PM 24  THAT CAN BE DRAWN FROM THAT?  IT'S THE SAME DAY AND THE DAY

02:19PM 25  BEFORE THE BANKRUPTCY FILING.  THAT'S THE ONLY SIGNIFICANT

02:19PM  1     EVENT ON THAT DATE IN THIS CASE THAT IS IN EVIDENCE.

02:19PM  2          AND THAT'S WHEN THE FINANCIAL TRANSACTIONS CULMINATE.

02:19PM  3          BUT AGAIN GOING BACK, WE HAVE THE OPENING OF THE TWO SHELL

02:19PM  4     COMPANIES.  WE KNOW THAT DESTRO AND NATA DID NOT EXIST FOR THE

02:19PM  5     STATED PURPOSE.  THE OPERATING AGREEMENT FOR DESTRO STATED THAT

02:19PM  6     IT WAS FOR REAL ESTATE INVESTMENT.

02:19PM  7          THE FAMILY HOME WAS PURCHASED USING THAT.  THE FAMILY

02:19PM  8     MOVED INTO THE HOME, AND THEN THE HOME WAS USED AS COLLATERAL

02:19PM  9     FOR ADDITIONAL LOANS FOR MEDILEAF WHICH WE KNOW THAT

02:20PM 10     MS. KRISTEL KUBUROVICH WAS PART OF.

02:20PM 11          AND LOOKING AT THE FINANCIAL RECORDS, SHE WAS ENGAGED IN

02:20PM 12     THESE FINANCIAL TRANSACTIONS WITH MEDILEAF OVER A PERIOD OF

02:20PM 13     TIME INCREASING JUST BEFORE AND THE DAY OF THE BANKRUPTCY

02:20PM 14     FILING.

02:20PM 15          SO WE HAVE THE OPENING OF THOSE ACCOUNTS.  WE HAVE THE

02:20PM 16     LIECHTENSTEIN TRIP.  WE HAVE HER PERVASIVENESS WHEN SHE'S BEING

02:20PM 17     QUESTIONED ABOUT FOREIGN BANK ACCOUNTS AND ABOUT THE OWNER OF

02:20PM 18     THE HOME.

02:20PM 19          THE ISSUE THERE IS NOT WHAT ANSWER SHE GAVE.  THE POINT IS

02:20PM 20     THAT THE ANSWER SHE GAVE WAS NOT TRUE AND THAT SHE WAS BEING

02:20PM 21     EVASIVE.

02:20PM 22          PEOPLE WHEN THEY'RE UNDER PRESSURE AND THEY KNOW THE TRUTH

02:20PM 23     IS INCRIMINATING MIGHT SAY A LOT OF THINGS.

02:20PM 24          THE POINT IN THAT SITUATION WITH THE INTERVIEW IS THAT

02:20PM 25     WHAT SHE SAID WAS NOT TRUE, AND WE KNOW THAT SHE KNEW THE TRUTH

01 AT THAT POINT.

02 AND THESE THINGS TOGETHER EVIDENCE THE CONSCIOUSNESS OF

03 GUILT. SHE KNOWS THAT SHE'S PART OF A FRAUDULENT SCHEME AND

04 THAT COMBINED WITH THE TIMING OF THESE TRANSACTIONS AT THE TIME

05 OF THE BANKRUPTCY FILING, THE FACT THAT OVER $100,000 IN HER

06 NAME WAS USED TO PAY BANKRUPTCY DEBTS SHOWS THAT SHE MUST HAVE

07 HAD SOME KNOWLEDGE.

08 AND AGAIN GOING BACK TO THE SCOPE OF THE SCHEME,

09 SEVEN YEARS HER FATHER AND HER MOTHER WERE THE CO-DEBTORS WHO

10 FILED THIS BANKRUPTCY PETITION. BECAUSE OF THEIR BANKRUPTCY

11 DEBTS, THEY LOST THEIR HOME. THEY HAD TO MOVE TO A NEW HOME.

12 SHE BOUGHT THAT HOME IN THE NAME OF THE SHELL COMPANY. THERE

13 DOESN'T SEEM TO BE ANY OTHER EXPLANATION.

14 THE COURT: OKAY. THANK YOU. MS. GILG.

15 MS. GILG: YOUR HONOR, FIRST OF ALL, I DON'T -- I

16 JUST WANT TO DEAL WITH MCCORMICK FOR A MINUTE THERE BECAUSE

17 THIS CASE IS SO SIGNIFICANT TO THE PRESENT CASE.

18 AND WHAT MR. SIMEON SEEMS TO BE ARGUING IS THAT IT'S MUCH

19 HARDER TO BE FOUND GUILTY OF BEING THE PRINCIPAL OF AN OFFENSE

20 THAN AS AN AIDER AND ABETTOR. I MEAN, THAT'S BASICALLY WHAT

21 HIS ARGUMENT IS.

22 AIDER AND ABETTOR REQUIRES ADDITIONAL ELEMENTS, ADDITIONAL

23 KNOWLEDGE AND ADDITIONAL INTENT. AND SO IT'S ACTUALLY MORE

24 DIFFICULT FOR THE EVIDENCE TO BE SUPPORTED.

25 THE COURT: SO AS I SAID, I THINK THE QUESTION IS

02:22PM 1    REALLY KNOWLEDGE.

02:22PM 2              MS. GILG:  SO WHEN WE TALK ABOUT THE THINGS THAT

02:22PM 3    MR. SIMEON MENTIONED, WHICH ARE THE SAME ONES HE MENTIONED IN

02:22PM 4    HIS REPORT.  HE TALKED ABOUT THE TIMING OF THE TRANSFERS.

02:22PM 5         THE TIMING OF THE TRANSFERS -- ALSO REMEMBER MAY 7TH WAS

02:22PM 6    THE DATE THAT THE WARDA LOAN WENT INTO THE NATA ACCOUNT.  NOW,

02:22PM 7    IT WENT FROM THE NATA ACCOUNT TO KRISTEL KUBUROVICH AND THEN TO

02:22PM 8    MEDILEAF.

02:22PM 9         NOW, I NEVER SAID -- I NEVER REPRESENTED THAT THE MEDILEAF

02:22PM 10   ACCOUNTS WERE PART OF THE PETITION.  WHAT I SAID IS WHAT IS

02:22PM 11   TRUE, MEDILEAF WAS LISTED AS ONE OF THE ENTITIES FOR WHICH

02:22PM 12   MR. KUBUROVICH WAS THE PRESIDENT.

02:23PM 13        THAT BANKRUPTCY COURT SEES THAT AND THEY'RE LIKE, OH,

02:23PM 14   WELL, THIS IS AN ENTITY AND HE'S PRESENT.  MAYBE THEY'LL

02:23PM 15   INQUIRE ABOUT ACCOUNTS.

02:23PM 16        SO IT DOESN'T MAKE SENSE IF SHE KNOWS THAT WHAT IS

02:23PM 17   CONTAINED IN THE PETITION AND SHE KNOWS THAT THERE'S A PETITION

02:23PM 18   THAT SHE'S GOING TO BE TRANSFERRING FUNDS ON THE DAY OF THE

02:23PM 19   BANKRUPTCY?  I MEAN, TO ME, THAT'S NOT EVIDENCE OF INTENT OR

02:23PM 20   KNOWLEDGE.  IF YOU KNOW THAT YOUR FATHER IS FILING FOR

02:23PM 21   BANKRUPTCY ON A CERTAIN DAY AND THAT YOU'RE SUPPOSED TO BE

02:23PM 22   HIDING THESE FUNDS, YOU WOULD DO IT BEFORE THE DAY OF THE

02:23PM 23   BANKRUPTCY.  YOU WOULD DO IT LONG BEFORE.

02:23PM 24        YOU WOULDN'T DO ALL OF THESE, ALL OF THESE TRANSACTIONS

02:23PM 25   THAT RELATE TO THE WARDA LOAN, DIRECTLY RELATE TO THE WARDA

02:23PM 1    LOAN BECAUSE IT CAME INTO NATA, INTO KRISTEL'S, AND THEN IT

02:23PM 2    GOES TO MEDILEAF.

02:23PM 3        SO THE TIMING ACTUALLY, I THINK, MAKES IT LOOK LESS LIKELY

02:23PM 4    THAT SHE KNEW BECAUSE IF SHE KNEW, WHY IS SHE DOING IT -- WHY

02:24PM 5    IS SHE TRANSFERRING FUNDS ON THE DAY THAT HE FILED FOR

02:24PM 6    BANKRUPTCY OR EVEN AFTERWARDS?

02:24PM 7        I MEAN, THAT DOESN'T MAKE SENSE.  THAT DOESN'T --

02:24PM 8    THAT'S --

02:24PM 9            THE COURT:  I UNDERSTAND, I UNDERSTAND WHAT YOU'RE

02:24PM 10   SAYING.  AND IN CASES WE SOMETIMES SEE PEOPLE DO THINGS, COMMIT

02:24PM 11   OFFENSES AND PEOPLE SAY WHY DID YOU BRING -- WHY DID YOU LEAVE

02:24PM 12   YOUR WALLET WITH YOUR DRIVER'S LICENSE AT THE SCENE OF THE

02:24PM 13   OFFENSE?  YOU KNOW, THOSE KINDS OF THINGS HAPPEN, AND WE DON'T

02:24PM 14   KNOW WHY THEY DO.

02:24PM 15           MS. GILG:  RIGHT.  BUT IT DOESN'T SHOW A

02:24PM 16   CONSCIOUSNESS OF INTENT TO DEFRAUD THE BANKRUPTCY COURT.

02:24PM 17       THAT MONEY IS PART OF THE ORIGINAL $750,000 THAT WAS GIVEN

02:24PM 18   BACK IN 2008.  IT'S NOT LIKE OVER THE COURSE OF THE 18 MONTHS

02:24PM 19   MR. KUBUROVICH WAS FEEDING MORE MONEY INTO THOSE ACCOUNTS.  WE

02:24PM 20   HAVE THAT MONEY DELIVERED IN DECEMBER OF 2008, AND SO THAT'S

02:24PM 21   WHEN THIS WHOLE THING STARTED.

02:24PM 22       SO ANY OF THE TRANSACTIONS THAT ARE GOING ON, SHE COULD

02:25PM 23   HAVE MADE ALL OF THESE TRANSACTIONS AT ANY TIME DURING THE

02:25PM 24   COURSE OF THIS INTENT TO CONCEAL IT FROM THE BANKRUPTCY COURT

02:25PM 25   ON MAY 25TH.

02:25PM 1    SO THE FACT THAT THERE'S TRANSACTIONS GOING ON, ON

02:25PM 2 MAY 25TH IN MY MIND, IT JUST DOESN'T SUPPORT THE INFERENCE THAT

02:25PM 3 THE GOVERNMENT WANTS YOU TO DRAW THAT SHE KNEW HE WAS FILING

02:25PM 4 THAT DAY.  I MEAN, I DON'T SEE HOW YOU GET FROM I'M TAKING THIS

02:25PM 5 MONEY OUT AND I'M PUTTING IT INTO MEDILEAF BECAUSE I KNOW MY

02:25PM 6 FATHER IS FILING FOR BANKRUPTCY TODAY, AND I KNOW THAT MEDILEAF

02:25PM 7 IS LISTED.

02:25PM 8    I MEAN, THE INFERENCE DOESN'T FOLLOW.

02:25PM 9         THE COURT:  SO I'M SUPPOSED TO USE THE STANDARD OF

02:25PM 10 LOOKING AT THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE

02:25PM 11 GOVERNMENT, I BELIEVE?

02:25PM 12         MS. GILG:  RIGHT.

02:25PM 13         THE COURT:  I THINK THAT'S HOW I'M SUPPOSED TO LOOK

02:25PM 14 AT IT.

02:25PM 15         MR. NICK:  YES, YOUR HONOR, BUT GOING BACK TO MY

02:25PM 16 STATEMENT.  BUT THE ROADBLOCK FOR THE COURT BEGINS AT WHERE THE

02:25PM 17 SPECULATION OR WHERE THE INFERENCES ARE SPECULATIVE.

02:25PM 18         THE COURT:  WELL, THAT'S WHAT WE'RE TALKING ABOUT.

02:26PM 19         MS. GILG:  RIGHT.

02:26PM 20         MR. NICK:  YES.  SO YOU CAN DRAW IT IN THE LIGHT

02:26PM 21 MOST FAVORABLE TO THE GOVERNMENT, BUT THAT'S KIND OF LIKE THE

02:26PM 22 DEAD END.  YOU CANNOT GO INTO REASONABLE SPECULATION.

02:26PM 23    IN OTHER WORDS, THE INFERENCE HAS GOT TO BE REASONABLE,

02:26PM 24 YOUR HONOR, AND I THINK THAT THIS CASE IS JUST LOADED WITH

02:26PM 25 SPECULATION AS TO WHAT THESE DEFENDANTS WERE DOING.

02:26PM 1             MS. GILG:  AND WITH REGARD TO WHETHER YOU'RE TAKING

02:26PM 2 THAT PARTICULAR PIECE OF EVIDENCE IN THE LIGHT MOST FAVORABLE

02:26PM 3 TO THE GOVERNMENT, I STILL DON'T BELIEVE THAT YOU DRAW THE

02:26PM 4 INFERENCE FROM SHE DOES CASH TRANSACTIONS ON THE DAY THAT HE

02:26PM 5 FILES FOR BANKRUPTCY, AND, THEREFORE, SHE KNEW ABOUT THE

02:26PM 6 BANKRUPTCY.  I DON'T KNOW HOW YOU MAKE THAT JUMP.  I MEAN,

02:26PM 7 THAT, THAT, TO ME, IS NOT A REASONABLE INFERENCE.

02:26PM 8             THE COURT:  IS THAT A REASONABLE INFERENCE,

02:26PM 9 MR. SIMEON?

02:26PM 10             MR. SIMEON:  THAT'S THE GOVERNMENT'S POSITION, YOUR

02:26PM 11 HONOR, AND I THINK PART OF THAT SUPPORTING THAT INFERENCE IS

02:26PM 12 THE FACT THAT THAT ACCOUNT HAD BEEN OPENED FOR I BELIEVE A YEAR

02:26PM 13 AND A HALF AND THOSE UNUSUAL LARGE TRANSACTIONS TO CASH INTO

02:26PM 14 MEDILEAF ONLY OCCURRED IN THE WEEKS LEADING UP TO THE

02:27PM 15 BANKRUPTCY FILING WHICH IMPLIES THAT PERHAPS THE DEFENDANTS

02:27PM 16 DIDN'T KNOW EXACTLY WHEN THEY WERE GOING TO FILE FOR BANKRUPTCY

02:27PM 17 AND WHEN THEY DECIDED ON THE SPECIFIC DATE, THAT'S FOR THEM TO

02:27PM 18 MAKE THOSE FINANCIAL TRANSACTIONS AT THAT SPECIFIC TIME.

02:27PM 19             MS. GILG:  BUT, YOUR HONOR, THAT'S WHEN THE WARDA

02:27PM 20 LOAN CAME THROUGH.

02:27PM 21             THE COURT:  LET HIM FINISH.

02:27PM 22             MS. GILG:  I'M SORRY.

02:27PM 23             MR. SIMEON:  JUST ONE ADDITIONAL POINT, YOUR HONOR.

02:27PM 24 THAT IS, WITH REGARD TO MEDILEAF, THAT ACCOUNT WAS NOT LISTED

02:27PM 25 ON THE BANKRUPTCY FILING.

02:27PM 1       AS DEFENSE COUNSEL ELICITED ON CROSS-EXAMINATION OF

02:27PM 2   MS. KIKUGAWA, THERE WERE MULTIPLE PARTIES WHO WERE SIGNATORIES

02:27PM 3   TO THE MEDILEAF ACCOUNT WHICH WAS A BUSINESS.  THIS WAS A

02:27PM 4   PERSONAL BANKRUPTCY FILING.

02:27PM 5       SO MOVING THE MONEY INTO CASH THAT WAS UNTRACEABLE OR

02:27PM 6   MOVING IT INTO MEDILEAF SERVED THE SAME PURPOSE IN THE SENSE

02:27PM 7   THAT THE DEFENDANT, THE DEFENDANTS, BUT PARTICULARLY

02:27PM 8   MR. KUBUROVICH, COULD HAVE USED THAT MONEY BUT IT WASN'T PART

02:28PM 9   OF THE BANKRUPTCY FILING BECAUSE IT WASN'T HIS PERSONAL

02:28PM 10  ACCOUNT.  THERE WAS AMPLE REASON AND MOTIVATION TO DO THAT JUST

02:28PM 11  BEFORE THE FILING OF THE PETITION.

02:28PM 12          MS. GILG:  BUT IT WAS IN AN ACCOUNT THAT WAS NOT HIS

02:28PM 13  PERSONAL ACCOUNT OR LISTED ANYWAY SO THAT'S THE POINT.

02:28PM 14      IT WOULD BE DIFFERENT, YES, IF IT WAS IN A JOINT ACCOUNT

02:28PM 15  OF MR. KUBUROVICH'S AND HIS DAUGHTER AND THEN IT MOVED OUT.

02:28PM 16      BUT THIS WAS IN AN ACCOUNT THAT WAS NOT GOING TO BE ON

02:28PM 17  THE BANKRUPTCY FILING, WAS NOT ON THE BANKRUPTCY FILINGS, AND

02:28PM 18  IT MOVED INTO AN ACCOUNT THAT WAS, IN FACT, OF AN ENTITY WHICH

02:28PM 19  MR. KUBUROVICH LISTED HIMSELF AS A PRESIDENT.

02:28PM 20      NOW, IF MS. KUBUROVICH KNEW ALL OF THAT -- I MEAN, I JUST

02:28PM 21  DON'T KNOW HOW YOU GET FROM THAT TO THE INFERENCE THAT SHE KNEW

02:28PM 22  THAT THERE WAS A BANKRUPTCY FILING OR SHE KNEW WHAT WAS

02:28PM 23  CONTAINED IN THE BANKRUPTCY FILING.

02:28PM 24      REMEMBER, IT'S NOT ONLY JUST KNOWING THAT THERE'S A

02:28PM 25  FILING.  SHE HAS TO KNOW WHAT IS CONTAINED, AND THAT'S WHAT

02:28PM 1    MCCORMICK SAYS.  SHE HAS TO KNOW WHAT IS CONTAINED IN THOSE

02:29PM 2    FILINGS.  SHE HAS TO KNOW WHETHER OR NOT HE, HE DID LIST THOSE

02:29PM 3    ASSETS OR NOT.

02:29PM 4            THE COURT:  WELL, AS A CO-PARTICIPANT.

02:29PM 5            MS. GILG:  RIGHT.

02:29PM 6            THE COURT:  I THINK THERE'S A DISTINCTION BETWEEN

02:29PM 7    SHE -- THE WIFE IN THE MCCORMICK CASE WAS A CO-FILER, I THINK,

02:29PM 8    AND THE ISSUE WAS TO HER KNOWLEDGE OF WHAT WAS PUT IN.  I

02:29PM 9    SUPPOSE YOU'RE SAYING BUT THAT SHOULD APPLY TO YOUR CLIENT AS

02:29PM 10   WELL.

02:29PM 11           MS. GILG:  YES, BECAUSE SHE HAS TO SHOW -- THEY HAVE

02:29PM 12   TO SHOW THAT SHE HAD KNOWLEDGE OF WHAT WAS IN THE PETITION JUST

02:29PM 13   LIKE THE CO-PETITIONER WOULD HAVE TO SHOW THAT SHE HAD

02:29PM 14   KNOWLEDGE.

02:29PM 15       THEY HAD A LITTLE BIT MORE EVIDENCE ON MS. MCCORMICK

02:29PM 16   BECAUSE SHE ACTUALLY SIGNED THE DOCUMENT.  SO THEY HAD SOME

02:29PM 17   EVIDENCE, AND THEY STILL FOUND THE REST WAS INSUFFICIENT.

02:29PM 18       SO AGAIN, I THINK THAT THIS NOTION THAT THE TIMING OR THE

02:29PM 19   WAY THAT THE FUNDS WERE TRANSFERRED IN MAY OF 2010 DON'T

02:29PM 20   SUPPORT A REASONABLE INFERENCE THAT SHE HAD KNOWLEDGE OF ANY OF

02:29PM 21   THESE THINGS RELATING TO THE BANKRUPTCY.

02:29PM 22       THEN WE HAVE THIS NOTION THAT JUST BECAUSE IT WENT OVER

02:30PM 23   THE COURSE OF SEVEN YEARS, THAT SHE MUST HAVE KNOWN.  I MEAN,

02:30PM 24   THERE'S NO, THERE'S NO -- I MEAN, THEY CAN FIND ANY CASE THAT

02:30PM 25   SUPPORTS THE FACTOR THAT IF SOMETHING GOES ON FOR A CERTAIN

02:30PM 1    AMOUNT OF TIME IMPUGNS KNOWLEDGE ON AN AIDER AND ABETTOR, I

02:30PM 2    MIGHT CHANGE MY ARGUMENT BUT ALL OF THE CASES THAT WE'VE GONE

02:30PM 3    THROUGH SHOW NOTHING.

02:30PM 4        AND THE TRUTH IS, IS THAT MOST OF THESE BANKRUPTCY CASES

02:30PM 5    DO HAPPEN OVER A COURSE OF YEARS.  YOU KNOW, KNIGHT WAS FIVE

02:30PM 6    YEARS.  SOME OF THESE OTHER CASES WERE MANY YEARS.  SO AGAIN, I

02:30PM 7    THINK THAT THAT ALONE HAS NO BEARING.

02:30PM 8        THEN YOU HAVE THE LIECHTENSTEIN TRANSFER.  AGAIN, THE

02:30PM 9    EVIDENCE SHOWED THAT MONEY WAS TRANSFERRED FROM THAT

02:30PM 10   LIECHTENSTEIN ACCOUNT TO PAY SOME OF MR. KUBUROVICH'S DEBTS.

02:31PM 11       NOW, MS. KUBUROVICH MAY HAVE KNOWN ABOUT DEBTS OF HER

02:31PM 12   FATHER'S.  I'M NOT SAYING SHE DIDN'T.  BUT THAT DOESN'T MEAN

02:31PM 13   THAT SHE KNEW THAT THERE WAS A BANKRUPTCY PROCEEDING.

02:31PM 14       SO EVEN IF YOU COULD SHOW THAT 50/50 IT WAS HER MAKING THE

02:31PM 15   TRANSFER, YOU WOULD STILL HAVE TO BE ABLE TO SHOW THAT SHE KNEW

02:31PM 16   THAT HE HAD DEBTS IN BANKRUPTCY PROCEEDINGS.  PEOPLE HAVE DEBTS

02:31PM 17   IN ALL KINDS OF THINGS AND THEY DON'T HAVE A BANKRUPTCY FILING,

02:31PM 18   PETITION FILED.

02:31PM 19       SO AGAIN, THAT'S -- THERE'S NO REASONABLE INFERENCE THAT

02:31PM 20   YOU CAN DRAW THAT THAT GIVES HER KNOWLEDGE OF THE BANKRUPTCY.

02:31PM 21   AND THEN AGAIN IT DOESN'T GIVE HER KNOWLEDGE OF WHAT WAS

02:31PM 22   CONTAINED IN THE BANKRUPTCY.

02:31PM 23       SO EVEN IF YOU SAY, OKAY, SHE WAS THE ONE WHO TRANSFERRED

02:31PM 24   IT, SHE KNEW ABOUT THE BANKRUPTCY, AND SHE PAID THE DEBT, WE

02:31PM 25   STILL DON'T KNOW IF SHE DIDN'T KNOW THAT THE WHOLE $750,000

02:31PM 1   THAT WENT TO NATA WAS PART OF THE BANKRUPTCY PROCEEDING.  WE

02:31PM 2   DON'T KNOW THAT.  THERE'S NO EVIDENCE THAT SHE HAS KNOWLEDGE OF

02:31PM 3   THAT.

02:31PM 4           THE COURT:  OKAY.

02:32PM 5           MS. GILG:  SO AGAIN, IT'S SO EASY FOR THE GOVERNMENT

02:32PM 6   TO SAY A TOTALITY OF THE CIRCUMSTANCES BUT YOU DON'T -- YOU

02:32PM 7   CAN'T ADD A BUNCH OF ZEROS AND COME UP WITH ONE, AND I THINK

02:32PM 8   RIGHT HERE WE HAVE A BUNCH OF ZEROS.

02:32PM 9           THE COURT:  OKAY.  ALL RIGHT.

02:32PM 10      WELL, LET ME INDICATE THAT, AS I THINK COUNSEL POINT OUT

02:32PM 11  IN YOUR PLEADINGS, THAT ON A RULE 29 MOTION OF COURSE THE

02:32PM 12  EVIDENCE MUST BE VIEWED IN THE LIGHT MOST FAVORABLE TO THE

02:32PM 13  GOVERNMENT NOTWITHSTANDING AND INCLUDING YOUR COMMENTS,

02:32PM 14  MR. NICK, OF COURSE THOSE ARE APPROPRIATE COMMENTS TO MAKE,

02:32PM 15  THEN THE COURT MUST DETERMINE WHETHER OR NOT ANY RATIONAL TRIER

02:32PM 16  OF FACT COULD FIND THE ESSENTIAL ELEMENTS OF THE OFFENSE AS

02:32PM 17  BEYOND A REASONABLE DOUBT.

02:32PM 18      IN THIS CASE THE EVIDENCE HERE -- AND LET ME TALK ABOUT

02:32PM 19  MR. KUBUROVICH FIRST.  WE KNOW THAT THE BANKRUPTCY, AND LOOKING

02:32PM 20  AT MY NOTES, WAS FILED MAY 25, 2010, AND DISCHARGE WAS GRANTED

02:32PM 21  I THINK IN AUGUST OF 2015, EARLY AUGUST OF 2015.

02:33PM 22      IN THE ALLEGATIONS OF THIS SCHEME INCLUDE THE FACT THAT IN

02:33PM 23  2008 THAT CASTLE LAKE DRIVE, THE MORTGAGE CEASED PAYMENT, THEY

02:33PM 24  WERE BEHIND AND THEN HE CEASED PAYMENT ON THAT.  THERE WAS

02:33PM 25  $200,000-PLUS DEBT ON CREDIT CARDS.  HE WAS MAKING MINIMAL

02:33PM 1    PAYMENTS ON THAT, AND THEN ULTIMATELY STOPPED PAYMENT ON THOSE

02:33PM 2    I THINK TWO ITEMS ARE LISTED IN HIS BANKRUPTCY PETITION.

02:33PM 3        IT APPEARS THAT AROUND THIS SAME TIME THAT'S WHEN NATA LP

02:33PM 4    AND DESTRO WERE CREATED.  AT THAT POINT I THINK KRISTEL WAS THE

02:33PM 5    LOAN SIGNATORY.  THERE WAS TRAVEL, WE KNOW, TO LIECHTENSTEIN TO

02:33PM 6    OPEN UP THIS ACCOUNT IN KRISTEL'S NAME, AND BOTH OF THEM HAD

02:33PM 7    SIGNATORY RESPONSIBILITIES AND ACCESS TO THAT ACCOUNT.

02:33PM 8        I BELIEVE THERE WERE THREE TRANSFERS OF $250,000 FROM THAT

02:33PM 9    ACCOUNT FROM HIS PERSONAL BANK ACCOUNTS TO KRISTEL'S U.S. BANK

02:34PM 10   ACCOUNTS AND THEN 500,000 OF THAT WAS TRANSFERRED TO THE

02:34PM 11   LIECHTENSTEIN ACCOUNT.  THAT IS WHAT THE EVIDENCE SHOWED.

02:34PM 12       IN MARCH OF 2009 GOYKO RECEIVES, AND I MEAN NO DISRESPECT,

02:34PM 13   MR. KUBUROVICH RECEIVES NOTICE OF FORECLOSURE OF THE MORGAN

02:34PM 14   HILL HOME AND THEN SOME SHORT TIME AFTER THAT $50,000 IS

02:34PM 15   TRANSFERRED FROM ONE ACCOUNT TO ANOTHER.

02:34PM 16       AS I SAID, I THINK THE DESTRO AND NATA ACCOUNTS WERE

02:34PM 17   CREATED SOMEWHERE AROUND THERE.

02:34PM 18       WE KNOW THAT THE MONEY THAT WAS TRANSFERRED BACK FROM ONE

02:34PM 19   OF THE U.S. ACCOUNTS WAS USED FOR THE CASH PURCHASE OF THE

02:34PM 20   EAGLE RIDGE HOME.  I THINK $400,000 WAS WIRED BACK AND THEN

02:34PM 21   THERE WAS 200,000, ANOTHER TRANSFER OF 200,000 THAT WAS USED

02:35PM 22   FOR THE PURCHASE OF THE EAGLE RIDGE HOME.

02:35PM 23       NOW, THIS IS JUST A BRIEF SUMMARY OF WHAT THE EVIDENCE

02:35PM 24   SHOWED AND THE COURT RECALLS THE EVIDENCE SHOWING, THERE WERE

02:35PM 25   DEBTS PAID, I THINK MR. KUBUROVICH'S DEBTS WERE PAID FROM THE

02:35PM 1    ACCOUNTS.  I THINK THE SUMMATION OF THE EVIDENCE SHOWS AND A

02:35PM 2    REASONABLE JUROR COULD FIND THAT ALL OF THAT SUGGESTS THAT

02:35PM 3    THOSE FUNDS WERE TRACEABLE BACK TO AT LEAST HIM OR A MAJORITY

02:35PM 4    OF THOSE FUNDS WERE TRACED BACK TO HIM.

02:35PM 5        WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO THE GOVERNMENT,

02:35PM 6    THE COURT DOES FIND THAT THERE IS SUFFICIENT EVIDENCE TO ALLOW

02:35PM 7    ANY RATIONAL JUROR, TRIER OF FACT, TO FIND THE ESSENTIAL

02:35PM 8    ELEMENTS OF THE CRIMES AS TO MR. KUBUROVICH BEYOND A REASONABLE

02:35PM 9    DOUBT.

02:35PM 10       AND AS TO GOYKO, THE COURT WILL RESPECTFULLY DENY THE

02:35PM 11   MOTION, THE 29 MOTION AS WELL AS THE RULE 33 MOTION.  THE COURT

02:36PM 12   FINDS THAT BASED ON THE EVIDENCE PRESENTED, AS PRESENTED IN THE

02:36PM 13   HEARING AND AS HEARD BY THE JURY PURSUANT TO THE COURT'S

02:36PM 14   INSTRUCTIONS, THE JURY COULD FIND, ANY RATIONAL JUROR COULD

02:36PM 15   FIND GUILT BEYOND A REASONABLE DOUBT.

02:36PM 16       NOW, TURNING TO KRISTEL, AND THIS IS WHERE I THINK THE

02:36PM 17   DISCUSSION IS A LITTLE MORE DESERVING OF SOME MORE CLARITY, AND

02:36PM 18   THAT WAS REALLY THE ISSUE THAT I FOUND HERE IS WHAT IS THE

02:36PM 19   KNOWLEDGE?  WHAT KNOWLEDGE IS IT THAT THE EVIDENCE ESTABLISHES

02:36PM 20   THAT SHE ACTUALLY HAD KNOWLEDGE OF THE BANKRUPTCY?

02:36PM 21       IT'S VERY CLEAR THAT I CALLED IT SOPHISTICATED

02:36PM 22   TRANSACTIONS.  MAYBE THAT'S OWING TO MY LACK OF SOPHISTICATION,

02:36PM 23   BUT AS I OBSERVED THE TRANSACTIONS, BUT THEY WERE, THEY WERE

02:36PM 24   SIGNIFICANT TRANSACTIONS, INCLUDING INTERNATIONAL TRAVEL TO

02:36PM 25   OPEN THESE ACCOUNTS, SUBSEQUENT TRANSFER OF FUNDS TO OTHER

02:37PM 1    ACCOUNTS HERE IN THE UNITED STATES, THE CREATION OF

02:37PM 2    CORPORATIONS, ENTITIES THAT WERE USED, AND MAYBE IT'S NOT

02:37PM 3    SOPHISTICATED BECAUSE IT'S LEGAL, IT'S ENTIRELY LEGAL TO

02:37PM 4    CONDUCT BUSINESS THAT WAY.

02:37PM 5        DO WE LOOK TO THE AGE OF THE INDIVIDUAL?  PROBABLY NOT.

02:37PM 6    THE FACT THAT SHE'S 19.  I KNOW YOU IN YOUR ARGUMENT SUGGESTED,

02:37PM 7    MS. GILG, THAT IN POINTING OUT YOUR CLIENT'S BLOG WHEN SHE

02:37PM 8    TALKED ABOUT THE LOVE OF HER CATS AND SHE WANTS TO GO HOME AND

02:37PM 9    SHE MISSES HOME, YOU POINT TO HER, PERHAPS, INNOCENCE AND

02:37PM 10   NAIVETY ABOUT TRAVEL AND THOSE TYPES OF THINGS, AND THAT

02:37PM 11   CERTAINLY IS ONE INTERPRETATION OF THAT.  SHE'S A YOUNG WOMAN

02:37PM 12   WHO LACKS THAT SOPHISTICATION AND THAT THEN COMPARED WITH THE

02:37PM 13   FINANCIAL RECORDS THAT WE KNOW, THE PAPER TRAILS SHOW THAT

02:37PM 14   THESE TRANSACTIONS OCCURRED.

02:38PM 15       I SUPPOSE, AND WHAT I HEAR, AND I'M HAPPY TO HEAR FROM YOU

02:38PM 16   AGAIN AND HEAR FROM COUNSEL AGAIN IN THE SECOND ROUND OF

02:38PM 17   ARGUMENT ABOUT KNOWLEDGE, I SUPPOSE THE TIMING, PERHAPS THE

02:38PM 18   BEST ARGUMENT FOR KNOWLEDGE AND THE JURY, A RATIONAL JUROR

02:38PM 19   FINDING KNOWLEDGE IS THE FINANCIAL TRANSACTIONS CLOSE IN TIME

02:38PM 20   TO THE ACTUAL BANKRUPTCY.

02:38PM 21       PERHAPS THAT'S THE STRONGEST EVIDENCE OF AN INFERENCE THAT

02:38PM 22   CAN BE DRAWN THAT OF COURSE SHE HAD KNOWLEDGE BECAUSE THE MONEY

02:38PM 23   WAS MOVED SO CLOSE IN TIME TO THE FILING, AND THAT WOULDN'T

02:38PM 24   HAVE HAPPENED BY COINCIDENCE, AND A RATIONAL JUROR COULD SO

02:38PM 25   FIND THAT THAT IS NOT JUST COINCIDENTAL, BUT RATHER IT WAS

02:38PM 1    BECAUSE OF THE TIMING WITH THE BANKRUPTCY WAS INTENDED TO ACT

02:38PM 2    ON THAT.

02:38PM 3        SO LET ME TURN TO THE GOVERNMENT, AND I'LL HEAR FROM YOU

02:38PM 4    AGAIN, MS. GILG, AS TO THE ISSUE OF KNOWLEDGE.

02:38PM 5        YOU SEE THE ISSUE THAT I'M HERE GRAPPLING WITH, IT'S

02:39PM 6    KNOWLEDGE.  AND DOES THE EVIDENCE -- IS THERE SUFFICIENT

02:39PM 7    EVIDENCE TO SHOW THAT KRISTEL KUBUROVICH ACTUALLY DID HAVE

02:39PM 8    KNOWLEDGE SUCH THAT THE JURY HAS TO FIND?  THAT'S ONE OF THE

02:39PM 9    ELEMENTS OF THE OFFENSE.

02:39PM 10       AND IT'S CIRCUMSTANTIAL.  WE KNOW THAT CIRCUMSTANTIAL

02:39PM 11   EVIDENCE IS NOT -- TYPICALLY NOT AS GREAT AS DIRECT EVIDENCE,

02:39PM 12   BUT IT CAN SERVE AND IT'S GIVEN THE SAME WEIGHT.  IT CAN BE

02:39PM 13   GIVEN THE SAME WEIGHT AS DIRECT EVIDENCE BY A JURY.

02:39PM 14       SO, MR. SCHENK, MR. SIMEON.

02:39PM 15           MR. SCHENK:  THANK YOU, YOUR HONOR.  AT THE CLOSE OF

02:39PM 16   THE GOVERNMENT'S CASE THE EVIDENCE THAT THE JURY HAD WAS THAT

02:39PM 17   THERE WAS AN ACCUMULATION OF DEBT AND KIND OF FOR LACK OF A

02:39PM 18   BETTER WORD NOT A CARE ABOUT THAT.  THAT IT WASN'T NECESSARY TO

02:39PM 19   PAY OFF DEBT BECAUSE THE SOLUTION IS GOING TO COME THROUGH

02:39PM 20   BANKRUPTCY.

02:39PM 21       AND IN ORDER FOR AN INDIVIDUAL TO PRESERVE ASSETS AFTER

02:40PM 22   THE BANKRUPTCY, THEY NEED TO PUT THEM IN A PLACE WHERE THEY

02:40PM 23   WON'T BE CAPTURED AS PART OF THE BANKRUPTCY ESTATE.

02:40PM 24       AND WHAT A RATIONAL JURY COULD CONCLUDE AFTER HEARING THE

02:40PM 25   GOVERNMENT'S CASE WAS THAT MR. KUBUROVICH DEVELOPED A SCHEME TO

ACCOMPLISH THAT, TO CONCEAL CERTAIN ASSETS OF VALUE FROM HIS

BANKRUPTCY ESTATE THAT WOULD BE CREATED THROUGH THE FILING.

AND IN ORDER TO DO THAT, HE NEEDS A PLACE TO PARK THE

ASSETS, AND THE EVIDENCE THAT THE GOVERNMENT PRESENTED WAS THAT

THE INDIVIDUAL THAT HE PARKED THESE ASSETS WITH WAS HIS

DAUGHTER.

A RATIONAL JURY COULD CONCLUDE I WOULD NEVER EXPECT TO SEE

E-MAILS DISCUSSING THIS ARRANGEMENT, ESPECIALLY BECAUSE IT'S A

FATHER AND DAUGHTER.

IF IT WAS AMONG BUSINESS PARTNERS, A RATIONAL JURY MIGHT

EXPECT A LITTLE MORE E-MAIL COMMUNICATION, MAYBE SOME CARELESS

INTERACTION OR A NEED ONE DAY TO TALK AT 9:00 O'CLOCK AND NOT

BE NEXT TO THE PERSON SO THE JURY MIGHT EXPECT THAT TO OCCUR IN

WRITING.

IN A CASE, THOUGH, LIKE THIS, A RATIONAL JURY REALLY COULD

SAY I WOULD NEVER EXPECT TO SEE ANY DIRECT EVIDENCE OF

KNOWLEDGE OF THIS KIND OF FAMILY SITUATION.

A RATIONAL JURY COULD CONCLUDE THAT IN ORDER FOR

MR. KUBUROVICH TO SUCCESSFULLY PARK HIS ASSETS, HE MUST HAVE A

TRUSTED SOURCE TO PARK THEM WITH AND WHEN THE JURY SEES THE

FINANCIAL TRANSACTIONS DONE FOR HIS BENEFIT, A HOUSE PURCHASED

THAT HE LIVES IN BY HIS DAUGHTER THROUGH A COMPANY THAT HE

HELPED TO ESTABLISH, A RATIONAL JURY COULD CONCLUDE THAT SHE

WAS PART OF THIS SCHEME; THAT SHE WAS A NECESSARY ACCOMPLICE, A

NECESSITY PART IN ORDER TO KEEP THE ASSETS FROM THE ESTATE, AND

THAT THE CONVERSATIONS ABOUT HOW THIS WAS GOING TO HAPPEN WHERE
MR. KUBUROVICH WOULD PUT THE ASSETS, ABOUT WHEN MR. KUBUROVICH
WOULD TELL HER TO MAKE FINANCIAL TRANSACTIONS NEVER OCCURRED IN
WRITING, BUT THAT THE JURY WAS PERSUADED BY THE CLOSE FAMILY,
FAMILIAL TIES BETWEEN THE TWO AS A LOT GOES UNSAID HERE.

WE WOULD NOT EXPECT AS A RATIONAL JURY TO SEE ANY OF THESE
INTERACTIONS IN WRITING THAT MR. KUBUROVICH TELLS HIS DAUGHTER
THE DATE OF A BANKRUPTCY FILING OR SHOWS HER A PAPER FROM THE
BANKRUPTCY FILING OR INVITES HER TO A MEETING WITH THE
BANKRUPTCY ATTORNEY BECAUSE ALL OF THOSE CONVERSATIONS HAPPEN
IN PERSON.

AND THE WAY YOU WOULD FIND EVIDENCE OF HER KNOWLEDGE OF
THE BANKRUPTCY FILING WOULD BE THROUGH HER ACTIONS AND WHAT THE
RATIONAL JURY WOULD WANT TO LOOK TO IS I WOULD NEVER EXPECT TO
SEE IT IN WRITING, BUT I WOULD EXPECT TO SEE HER DO THINGS TO
BENEFIT HIM.

AND THAT'S HOW I, AS A RATIONAL JURY, WOULD FIND THAT SHE
WAS AWARE OF THE BANKRUPTCY FILING WAS BECAUSE I WOULD EXPECT
HER TO SEE HER DOING THINGS THAT WOULD BENEFIT HIM THAT
WOULDN'T OTHERWISE MAKE SENSE.

AND WHAT THEY SEE IS RIGHT IN TIME THAT YOUR HONOR JUST
MENTIONED IT, THE FINANCIAL TRANSACTIONS, THAT PAIR UP RIGHT
AROUND THE TIME OF THE FILING, BUT ALSO KIND OF MORE BROADLY
FINANCIAL TRANSACTIONS THAT BENEFIT A DEFENDANT IN BANKRUPTCY
LIKE THE WARDA LOAN, LIKE THE PURCHASE OF A HOME THAT HE LIVES

02:43PM 1    IN.  THERE ARE FINANCIAL TRANSACTIONS THAT MS. KUBUROVICH DOES

02:43PM 2    THAT THE RATIONAL JURY SAYS THOSE ONLY MAKE SENSE IF HE IS IN

02:43PM 3    BANKRUPTCY, HE NEEDS A PLACE TO PARK HIS MONEY, AND THEN HE AND

02:43PM 4    HER TOGETHER CAN TALK AS A FATHER AND DAUGHTER WOULD DO ABOUT

02:43PM 5    WHEN CERTAIN TRANSACTIONS SHOULD BE MADE AND WHAT THOSE

02:43PM 6    TRANSACTIONS SHOULD ENTAIL.

02:43PM 7         SO WE AGREE WITH YOUR HONOR THAT IT IS THE TIMING OF THE

02:44PM 8    FINANCIAL TRANSACTIONS THAT'S A BIG PART OF THE CIRCUMSTANTIAL

02:44PM 9    EVIDENCE OF HER KNOWLEDGE, BUT IT ALSO IS THE FAMILY

02:44PM 10   RELATIONSHIP AND WHAT A JURY WOULD EXPECT TO SEE IF THE

02:44PM 11   DAUGHTER KNEW OF THE BANKRUPTCY FILING.

02:44PM 12        THE COURT:  OKAY.  THANK YOU.

02:44PM 13        MS. GILG:  YOUR HONOR, THE ONLY EVIDENCE OF THE

02:44PM 14   FAMILY RELATIONSHIP WAS IN THE BLOG WHICH SHOWED THAT THEY

02:44PM 15   FOUGHT ALL OF THE TIME AND THEY HAVE A TYPICAL FATHER/DAUGHTER

02:44PM 16   RELATIONSHIP, NOT THAT THEY HAD SOME EXTRAORDINARILY TIGHT

02:44PM 17   BUSINESS, YOU KNOW, RELATIONSHIP BETWEEN THE TWO OF THEM.  AND

02:44PM 18   AT THE TIME THAT THE GOVERNMENT CLOSED THEIR CASE, THERE WASN'T

02:44PM 19   EVEN EVIDENCE THAT MS. KUBUROVICH WAS INVOLVED IN MEDILEAF.

02:44PM 20        SO WHAT WE'RE TALKING ABOUT IS THE EVIDENCE THAT THE JURY

02:44PM 21   HAD WHEN THE CASE WAS CLOSED WAS THAT THE WARDA AND FONT LOANS

02:44PM 22   CAME IN AT THE BEGINNING OF MAY, AND, THEREFORE, IT MAKES SENSE

02:44PM 23   THAT THAT'S WHEN THE TRANSACTIONS WOULD HAPPEN THAT WOULD BE

02:44PM 24   GOING TO MEDILEAF.

02:44PM 25        I MEAN, IT MAKES PERFECT SENSE WHY MAY WAS FULL OF

FINANCIAL TRANSACTIONS AND BECAUSE THAT'S WHEN THE MONEY CAME

IN FROM THE TITLE COMPANY ON THOSE LOANS.

SO AGAIN, I'M NOT EVEN TRYING TO DRAW TWO REASONABLE

INFERENCES BECAUSE I FIND ONE OF THE INFERENCES IS NOT

REASONABLE WHEN YOU CONSIDER THAT THIS WAS MONEY THAT WAS

ALREADY IN HER ACCOUNT OR ALREADY PART OF THE MONEY THAT WAS

PARKED, FOR LACK OF A BETTER WORD, WITH HIS DAUGHTER, OKAY, SO

HE COULD PROCEED.  SO THIS MONEY IS PARKED WITH HER.

HOW IS SHUFFLING IT BETWEEN ACCOUNTS GOING TO HIDE IT

ANYMORE?  I MEAN, THE LOGICAL -- HOW IS PUT -- YOU KNOW, I KNOW

I KEEP SAYING THIS, BUT HOW IS PUTTING MONEY FROM AN ACCOUNT

THAT THERE IS NO REFERENCE TO, OR I'M SORRY, AN ENTITY THAT

THERE IS NO REFERENCE TO IN THE BANKRUPTCY COURT INTO AN

ACCOUNT WHERE THERE IS A REFERENCE, HOW DOES THAT SHOW THAT MY

CLIENT KNEW THAT THERE WAS GOING TO BE A BANKRUPTCY FILING AT

THAT POINT?

I DON'T THINK THAT THE LOGICAL SENSE OF THE TIMING PANS

OUT WHEN YOU GO THROUGH WHAT THESE TRANSACTIONS WERE, AND I

WENT THROUGH THEM A LITTLE BIT IN MY BRIEF ON PAGES 14 AND 15

WHERE I TALKED ABOUT, YOU KNOW, THESE TRANSACTIONS WERE

OCCURRING IN MAY BECAUSE THE LOANS -- THE MONEY CAME FROM THE

LOANS IN MAY, AND I CAN'T REMEMBER WHETHER IT WAS THE FONT OR

THE WARDA LOAN THAT CAME ON MAY 7TH, AND THAT'S WHEN MONEY GOES

INTO THE ACCOUNTS, AND THEN IT COMES OUT, AND A LOT OF IT GOES

TO MEDILEAF.

02:46PM 1    SO THERE'S NO EVIDENCE THAT IT WENT ANYWHERE OTHER THAN

02:46PM 2    MEDILEAF, AND THAT'S THE ONLY ACTUAL TRANSACTIONS THAT WENT

02:46PM 3    INTO A DIFFERENT ACCOUNT.

02:46PM 4    SO WHEN YOU SAY THAT THESE TRANSACTIONS SUPPORT THE

02:46PM 5    POSITION THAT A REASONABLE JURY COULD FIND THAT BASED ON THAT

02:46PM 6    ALONE THAT MY CLIENT HAD KNOWLEDGE THAT THERE WAS A BANKRUPTCY

02:46PM 7    FILING AND KNEW WHAT WAS CONTAINED IN THE BANKRUPTCY FILING, I

02:46PM 8    JUST, I DON'T FIND THAT TO BE -- I DON'T EVEN FIND THAT

02:47PM 9    REASONABLE SPECULATION.  I THINK THAT THE INFERENCE TO BE DRAWN

02:47PM 10   FROM THAT IS NOT THAT SHE KNEW BUT RATHER THAT SHE DIDN'T KNOW

02:47PM 11   WHAT HER FATHER WAS DOING.

02:47PM 12   I MEAN, THERE'S NO EVIDENCE THAT SHE HAD ANY DISCUSSIONS

02:47PM 13   WITH HER FATHER ABOUT FINANCIAL STUFF.  WHEN YOU READ THE BLOG,

02:47PM 14   IT'S NOT ABOUT PEOPLE TALKING ABOUT THE FINANCIAL SITUATIONS.

02:47PM 15   THEY'RE TALKING ABOUT WHAT THEY SEE AT THE AIRPORT, WHAT THEY

02:47PM 16   EAT, THE CUTE BOY SHE SEES.  I MEAN, THIS IS NOT A RELATIONSHIP

02:47PM 17   THAT IS CONDUCIVE TO THIS, YOU KNOW, FATHER AND DAUGHTER,

02:47PM 18   "BONNIE AND CLYDE" SORT OF ASPECT.

02:47PM 19   AND I JUST WANT TO POINT TO ONE OF THE CASES THAT CITES

02:47PM 20   TO -- WELL, WE DID CITE U.S. VERSUS PERSFULL, P-E-R-S-F-U-L-L,

02:48PM 21   AND AT PAGE 294 THE COURT TALKS ABOUT CONCEALMENT OF ASSETS AND

02:48PM 22   IT SAYS, YOU KNOW, IT REVIEWS SOMEONE'S ASSETS AND SAYS THIS

02:48PM 23   STATUTE IS THE CONGRESSIONAL ATTEMPT TO COVER ALL OF THE

02:48PM 24   POSSIBLE METHODS BY WHICH A DEBTOR OR ANY OTHER PERSON MAY

02:48PM 25   ATTEMPT TO DEFEAT THE ATTEMPT AND EFFECT OF THE BANKRUPTCY LAW

THROUGH THE TYPE OF EFFORT TO KEEP ASSETS FROM BEING EQUITABLY DISTRIBUTED AMONGST CREDITORS.  IT'S THE ATTEMPT TO EFFECT THE BANKRUPTCY COURT.  THAT IS WHAT WE HAVE TO HAVE HERE.

IT CAN'T BE, WELL, SHE INTENDED TO BENEFIT HER FATHER WHO WAS LOSING HIS SHIRT.  THAT'S NOT ENOUGH, AND THAT'S ALL I'M HEARING HERE.  SHE WAS INTENT ON BENEFITTING HER FATHER BECAUSE HE WAS LOSING HIS SHIRT AND MAYBE, MAYBE THAT'S WHAT HAPPENED.  MAYBE IT WAS TO PREVENT CREDITORS FROM COMING AFTER THEM.

BUT EVEN IF THAT WAS HER INTENT, IT STILL WOULD NOT BE A VIOLATION OF THE LAW FOR WHICH WE'RE TALKING ABOUT, THE CONCEALMENT OF ASSETS IN A BANKRUPTCY PROCEEDING.

THERE IS SIMPLY NO CIRCUMSTANTIAL EVIDENCE WHERE A REASONABLE JUROR COULD DRAW AN INFERENCE THAT MY CLIENT KNEW WHAT WAS IN THE PETITION LET ALONE THAT THERE WAS A PETITION.

AND I KEEP GOING BACK TO MCCORMICK BUT IN THAT CASE THE COURT FOUND THAT TRACY, THAT'S THE WIFE, KNEW THAT HER HUSBAND HAD CREATED THE MICHAEL PARIS BONER IDENTITY.  SHE ALSO KNEW OF THE EXISTENCE OF THE BONER BANK ACCOUNT AT THE VALLEY BANK, AND SHE RECEIVED AND ENDORSED A $50 CHECK DRAWN BY HER HUSBAND ON THAT ACCOUNT.

THEN IT SAYS THAT THE UNCONTROVERTED EVIDENCE, HOWEVER, SHOWED THAT TRACY DID NOT READ THE BANKRUPTCY DOCUMENTS BEFORE SHE SIGNED THEM.  ALTHOUGH THE BANKRUPTCY ATTORNEY TESTIFIED THAT IT WAS HIS OR IT WAS HER PRACTICE TO HAVE HER PARALEGALS GO OVER THE BANKRUPTCY PETITION AND SCHEDULES WITH CLIENTS

02:50PM 1    BEFORE CLIENTS SIGNED THEM.  SO THERE WAS EVEN COUNTER EVIDENCE

02:50PM 2    THAT SHE DID READ THEM, AND THE COURT FOUND IT INSUFFICIENT.

02:50PM 3         AND I JUST -- I FEEL THAT IF THE KNOWLEDGE ELEMENT WAS NOT

02:50PM 4    PROVEN AND MCCORMICK AND WHITE AND KNIGHT -- I MEAN, KNIGHT IS

02:50PM 5    ANOTHER CASE WHERE, WHERE IT'S JUST -- THE ATTORNEY IS ALL OVER

02:50PM 6    THE PLACE.  HE KNOWS ABOUT THE COUNTS THAT ARE NOT BEING --

02:50PM 7    IT'S HIS OWN IOLTA ACCOUNT THAT IS NOT BEING DISCLOSED, AND IN

02:50PM 8    THAT CASE THEY DIDN'T FIND SUFFICIENT KNOWLEDGE AND INTENT.

02:50PM 9         SO, YOUR HONOR, I JUST FEEL THAT THIS IS A CASE WHERE THE

02:50PM 10   GOVERNMENT HAS COMPLETELY FAILED TO PROVE THAT, THAT ESSENTIAL

02:50PM 11   ELEMENT.

02:50PM 12        THE COURT:  ALL RIGHT.  THANK YOU.  WELL, I

02:50PM 13   APPRECIATE THE CONVERSATION ON THIS BECAUSE IT REALLY BOILS

02:50PM 14   DOWN TO THE EVIDENCE THAT DOES, IN MY MIND, THE EVIDENCE THAT

02:50PM 15   WOULD SUGGEST THAT CAN A REASONABLE JUROR FIND THAT THERE WAS

02:51PM 16   KNOWLEDGE, AN ESSENTIAL ELEMENT OF THIS CASE?  IT'S

02:51PM 17   CIRCUMSTANTIAL EVIDENCE, AND THE GOVERNMENT SUGGESTS THAT.  THE

02:51PM 18   GOVERNMENT SUGGESTS THAT, AND I THINK THEIR STRONGEST ARGUMENT

02:51PM 19   IS THE TIMING OF THE TRANSACTIONS VIS-A-VIS THE FILING OF THE

02:51PM 20   BANKRUPTCY.

02:51PM 21        AND I THINK A REASONABLE JUROR COULD LOOK AT THAT AND SAY,

02:51PM 22   THAT SUGGESTS SOMETHING.  THAT SUGGESTS THAT THE MONIES WERE

02:51PM 23   TRANSFERRED IN A WAY CONCURRENT WITH AND IS SO INTIMATE TO THE

02:51PM 24   DATE OF THE BANKRUPTCY FILING THAT IT WOULD INFER KNOWLEDGE OF

02:51PM 25   THE BANKRUPTCY FILING.

02:51PM 1    WHY ELSE WOULD A -- A JURY MIGHT SAY THERE COULD BE OTHER

02:51PM 2    REASONS, BUT THAT'S A RATIONAL AND REASONABLE REASON FOR THAT

02:51PM 3    TRANSFER AND A REASON FOR US TO SO FIND GIVEN THE OTHER

02:51PM 4    TRANSACTIONS THAT KRISTEL WAS INVOLVED WITH.

02:51PM 5    I DO THINK IT IS SIGNIFICANT THAT SHE DID TRAVEL TO

02:52PM 6    LIECHTENSTEIN TO OPEN THE ACCOUNT; THAT SHE WAS PUT ON THE

02:52PM 7    ACCOUNT.  HER FATHER TOOK HER.  IT WASN'T A FAMILY VACATION.

02:52PM 8    IT WAS A SPECIFIC PURPOSE.  THEY WENT TO LIECHTENSTEIN, AND

02:52PM 9    THEY DID SOME OTHER TRAVEL, I BELIEVE, BUT IT APPEARS, THE

02:52PM 10   EVIDENCE COULD SHOW, AND I THINK A REASONABLE JUROR COULD FIND,

02:52PM 11   THAT THAT TRIP WAS SCHEDULED TO OPEN A BANK ACCOUNT OFFSHORE,

02:52PM 12   OFFSHORE FROM THE UNITED STATES, IF YOU WILL, FOR SOME PURPOSE.

02:52PM 13   THEN THE EVIDENCE SHOWED THAT MONIES WERE TRANSFERRED FROM

02:52PM 14   THAT ACCOUNT.  THEY BOTH HAD SIGNATORY RIGHTS TO THAT ACCOUNT,

02:52PM 15   BUT A REASONABLE JURY COULD FIND THAT WHAT WAS THE NECESSITY?

02:52PM 16   WHY DID KRISTEL NEED TO BE ON THE ACCOUNT IF THEY BOTH HAD

02:52PM 17   SIGNATORY?  PERHAPS THAT'S THE FATHER'S INTENT TO PROVIDE HIS

02:53PM 18   DAUGHTER WITH SOME FINANCIAL LIBERTIES, AND WE DON'T KNOW ABOUT

02:53PM 19   THAT.  BUT WHAT WE DO KNOW, THE EVIDENCE SHOWS, IS THAT

02:53PM 20   ACCOUNT, THE LIECHTENSTEIN ACCOUNT, WAS USED TO MOVE MONIES

02:53PM 21   AROUND ULTIMATELY FOR THE EAGLE RIDGE PURCHASE.

02:53PM 22   MR. SCHENK SUGGESTS THAT THERE IS NO DIRECT EVIDENCE OF

02:53PM 23   THIS, TAPES, OTHER WITNESSES WHO TESTIFIED, BUT HE SUGGESTS

02:53PM 24   THAT THE REALITY OF LIFE IS THAT A FATHER AND DAUGHTER ARE

02:53PM 25   GOING TO HAVE CONVERSATIONS ABOUT BUSINESS TRANSACTIONS, THAT A

REASONABLE JURY COULD FIND THAT OCCURS, AND THAT DOESN'T OCCUR

THROUGH THE COURSE OF E-MAILS, IT DOESN'T OCCUR THROUGH

LETTERS, IT DOESN'T OCCUR THROUGH COURIERS AND THAT TYPE OF

THING.  IT OCCURS THROUGH A FATHER TELLING HIS DAUGHTER TO DO

CERTAIN THINGS, AND THOSE THINGS HAPPEN ON THE ACCOUNTS THAT

SHE HAS ACCESS TO.

        I THINK THERE'S STRONG EVIDENCE THAT SHOWS THAT THERE WAS

SOME TYPE OF AN INFLUENCE TO DO THOSE THINGS AND THAT SHE ACTED

IN THAT WAY.  I THINK A REASONABLE JURY COULD FIND THAT.

        THE QUESTION THEN BECOMES, DOES ALL THAT THEN EQUATE TO OR

DO ALL OF THOSE, I'LL CALL THEM BRICKS THAT WE BUILD A WALL

WITH, DO THEY EQUATE TO SHOWING KNOWLEDGE OF THE BANKRUPTCY?

AND I THINK MR. SCHENK'S POINT IS WELL TAKEN THAT WE DON'T HAVE

DIRECT EVIDENCE OF THAT, BUT THE TIMING OF IT AND HER CONTROL

OF THOSE ACCOUNTS WOULD CERTAINLY ALLOW A REASONABLE JUROR TO

SO FIND THAT BECAUSE THE MONIES WERE MOVED IN SUCH A WAY WHERE

SHE HAD ACCOUNTS, CONTROL, RATHER, SHE DID THAT EITHER ON HER

OWN OR SHE DID THAT BECAUSE OF DIRECTION OF HER FATHER.  THERE

WAS NO EVIDENCE OF ANY OF THAT.

        WHAT THERE IS EVIDENCE OF IS THAT IT HAPPENED AND I

SUPPOSE COULD A REASONABLE JURY LOOK AT THAT AND MAKE THE

INFERENCE THAT IT HAPPENED CLOSE IN TIME TO THE BANKRUPTCY,

THOSE TRANSACTIONS HAPPENED SO CLOSE IN TIME AND NOT OUT OF

ACCIDENT BUT FOR A REAL PURPOSE?

        AND IF A REASONABLE JURY COULD FIND THAT THERE WAS SOME

02:55PM 1    PURPOSE IN THE TIMING OF THOSE, COULD A REASONABLE JURY FIND

02:55PM 2    THAT THAT PURPOSE WAS CONNECTED TO THE BANKRUPTCY SUCH THAT

02:55PM 3    KRISTEL KNEW ABOUT THE BANKRUPTCY?

02:55PM 4        WELL, I KNOW, MS. GILG, YOU SUGGEST THAT'S NOT ENOUGH.

02:55PM 5            MS. GILG:  WELL, IT'S ALSO NOT ENOUGH TO SHOW THAT

02:55PM 6    SHE KNEW WHAT WAS CONTAINED IN THE PETITION IN THE BANKRUPTCY.

02:55PM 7            THE COURT:  I KNOW YOU KEEP COMING BACK TO THE

02:55PM 8    MCCORMICK SITUATION, AND I THINK THAT'S WHAT MCCORMICK STANDS

02:55PM 9    FOR.  I APPRECIATE THAT.

02:55PM 10       I'M FOCUSSED MORE ON JUST THE KNOWLEDGE OF THE BANKRUPTCY

02:55PM 11   ITSELF, AND I THINK THAT'S WHAT THE GOVERNMENT HAS TO PROVE,

02:55PM 12   AND THEY PROVED IT THROUGH CIRCUMSTANTIAL EVIDENCE.

02:56PM 13       AS I SAID, I THINK A REASONABLE JUROR COULD MAKE THAT --

02:56PM 14   THEY COULD MAKE THAT DECISION JUST BASED ON THE TIMING.  I

02:56PM 15   THINK THAT'S POSSIBLE THAT THEY COULD SAY THAT, WELL, BECAUSE

02:56PM 16   THIS HAPPENED SO CLOSE IN TIME, SHE MUST HAVE HAD KNOWLEDGE.

02:56PM 17       NOW, ON THE OTHER HAND, I ALSO LOOK AT THIS AND I THINK IS

02:56PM 18   THAT, IS THAT INFERENCE AN INFERENCE TOO FAR GIVEN THE EVIDENCE

02:56PM 19   HERE, NOTWITHSTANDING THE TIMING OF THIS?  NOTWITHSTANDING THE

02:56PM 20   CLOSE TIMING OF THIS, THERE ISN'T ANYTHING ELSE BUT, AS

02:56PM 21   MR. NICK SUGGESTS, IS CONJECTURE AND SPECULATION?  AND DOES

02:56PM 22   THAT CROSS THE BRIDGE TOO FAR THAT MR. NICK TALKED ABOUT THAT,

02:56PM 23   WELL, JUDGE, THEY HAVE TO HAVE MORE THAN THIS SPECULATION?

02:56PM 24   THERE HAS TO BE MORE EVIDENCE OF THAT.

02:56PM 25       I THINK THE EVIDENCE IS HERE THAT WOULD ALLOW A JURY TO

02:57PM 1   THINK ABOUT THAT ISSUE, BUT IS IT ENOUGH FOR A JURY TO FIND

02:57PM 2   BEYOND A REASONABLE DOUBT THAT SHE HAD ACTUAL KNOWLEDGE?  I

02:57PM 3   HAVE SOME DOUBT ABOUT THAT.  I HAVE TO CONFESS, I DO, I HAVE

02:57PM 4   SOME REAL DOUBT ABOUT THAT.

02:57PM 5        I DO THINK THAT THE EVIDENCE SHOWS THAT SHE MOVED THIS

02:57PM 6   MONEY, PERHAPS AT HER FATHER'S DIRECTION, PERHAPS AT HER OWN

02:57PM 7   BECAUSE SHE FELT THAT IT WAS THE RIGHT TIME TO DO IT.  WE DON'T

02:57PM 8   KNOW.  THE EVIDENCE IS VACANT ON THAT.

02:57PM 9        BUT FOR THE HIGH STANDARD OF PROOF BEYOND A REASONABLE

02:57PM 10  DOUBT, I THINK THAT IT DOESN'T MEET THAT.  I'M GOING TO GRANT

02:57PM 11  THE RULE 29 MOTION AS TO KRISTEL.

02:57PM 12       MS. GILG:  THANK YOU, YOUR HONOR.  YOUR HONOR, I

02:57PM 13  WOULD ALSO LIKE TO MAKE A RULE 33 MOTION IN CASE THE GOVERNMENT

02:57PM 14  APPEALS.  IT'S VERY PERFUNCTORY.  COULD WE HAVE UNTIL THE END

02:57PM 15  OF THE WEEK TO FILE IT, OR CAN I JUST DO IT ORALLY?

02:57PM 16       THE COURT:  YOU CAN DO IT ORALLY TO PRESERVE IT FOR

02:57PM 17  THE RECORD.  ANYTHING ELSE YOU WANT TO HEAR ON THAT?  DO YOU

02:57PM 18  INCORPORATE BY REFERENCE YOUR ARGUMENTS MADE?

02:57PM 19       MS. GILG:  YES.  THANK YOU.

02:57PM 20       THE COURT:  DOES THE GOVERNMENT WISH TO BE HEARD ON

02:57PM 21  RULE 33?

02:57PM 22       MR. SCHENK:  NO.

02:57PM 23       THE COURT:  ALL RIGHT.  THANK YOU.  I'M GOING TO

02:58PM 24  RESPECTFULLY DECLINE THAT MOTION AT THIS TIME.

02:58PM 25       WE'LL SET A SENTENCING DATE.

02:58PM 1               MR. NICK:  YEAH.  COULD I GRAB MY CALENDAR, YOUR

02:58PM 2    HONOR?

02:58PM 3               THE COURT:  YES.

02:58PM 4          (PAUSE IN PROCEEDINGS.)

02:58PM 5               MR. NICK:  I'M READY, YOUR HONOR.

02:58PM 6               THE COURT:  TELL ME WHAT LOOKS GOOD FOR YOUR --

02:58PM 7               MR. NICK:  HOW LONG IS PROBATION TAKING?

02:58PM 8               THE COURT:  WELL, IT IS OUT OF CUSTODY.  WE SHOULD

02:58PM 9    PROBABLY SET SOMETHING IN DECEMBER, I THINK.

02:58PM 10              MR. NICK:  ALL RIGHT.

02:58PM 11              THE COURT:  SO THE 17TH?  THE 10TH?

02:58PM 12              MR. NICK:  HOW IS --

02:58PM 13              THE CLERK:  THE 10TH, YOUR HONOR, YOU CURRENTLY HAVE

02:58PM 14    TWO SENTENCINGS SET THAT DAY.

02:58PM 15              THE COURT:  OH, THAT'S PROBABLY TOO MANY.

02:58PM 16              THE CLERK:  ON THE 17TH YOU HAVE ONE CURRENTLY.

02:59PM 17              THE COURT:  HOW ABOUT THE 17TH?

02:59PM 18              MR. NICK:  IS THE AFTERNOON POSSIBLE, YOUR HONOR?

02:59PM 19              THE COURT:  IT WOULD BE 1:30 ON THE 17TH.

02:59PM 20              MR. NICK:  YES.  THANK YOU.

02:59PM 21              MR. SIMEON:  THAT'S FINE FOR THE GOVERNMENT.

02:59PM 22              THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.  ANYTHING

02:59PM 23    FURTHER?

02:59PM 24              MR. SIMEON:  NO, YOUR HONOR.

02:59PM 25              MS. GILG:  THANK YOU VERY MUCH, YOUR HONOR.

02:59PM 1          DEFENDANT GOYKO MR. KUBUROVICH:  THANK YOU, YOUR

02:59PM 2   HONOR.

02:59PM 3          MR. NICK:  YOUR HONOR, DOES THE COURT HAVE A RULE

02:59PM 4   WITH RESPECT TO HOW SOON IT WANTS THE SENTENCING BRIEF FILED?

02:59PM 5          THE COURT:  OUR LOCAL RULES SPEAK TO THAT, BUT LET

02:59PM 6   ME JUST SUGGEST THAT YOU SHOULD TAKE YOUR CLIENT DOWNSTAIRS TO

02:59PM 7   PROBATION NOW TO FILL OUT SOME INITIAL PAPERWORK.

02:59PM 8          MR. NICK:  SO WHATEVER THE LOCAL RULES ARE.

02:59PM 9          THE COURT:  THAT'S RIGHT.

02:59PM 10          MR. NICK:  THANK YOU.

02:59PM 11          MR. SIMEON:  THANK YOU.

02:59PM 12          MR. SCHENK:  THANK YOU.

02:59PM 13      (COURT CONCLUDED AT 2:59 P.M.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     IRENE RODRIGUEZ, CSR, RMR, CRR
     CERTIFICATE NUMBER 8074

17

18
            DATED:  OCTOBER 17, 2018
19

20

21

22

23

24

25