1
                    UNITED STATES DISTRICT COURT
2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE DIVISION
3

4      UNITED STATES OF AMERICA,

5              PLAINTIFF,              CASE NO.  CR-16-00373-EJD

6         VS.                         SAN JOSE, CALIFORNIA

7      GOYKO KUBUROVICH AND KRISTEL    SEPTEMBER 24, 2018
8      KUBUROVICH,
                                       VOLUME 4
              DEFENDANTS.
9                                      PAGES 657 - 848

10

                    TRIAL TRANSCRIPT OF PROCEEDINGS
11           BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
12
                    A-P-P-E-A-R-A-N-C-E-S
13

14     FOR THE PLAINTIFF:    OFFICE OF THE UNITED STATES ATTORNEY
                             BY:   SCOTT SIMEON
15                                 JEFF SCHENK
                             150 ALMADEN BOULEVARD, SUITE 900
16                           SAN JOSE, CALIFORNIA 95113

17
       FOR DEFENDANT         LAW OFFICE OF J. DAVID NICK
18     GOYKO:                BY:   J. DAVID NICK
                             345 FRANKLIN STREET
19                           SAN FRANCISCO, CALIFORNIA 94102

20     FOR DEFENDANT         LAW OFFICE OF ZENIA K. GILG
       KRISTEL:              BY:   ZENIA K. GILG
21                           SAUSALITO PLAZA
                             1505 BRIDGEWAY, SUITE 103
22                           SAUSALITO, CALIFORNIA 94965

23     OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                   CERTIFICATE NUMBER 8074
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
       TRANSCRIPT PRODUCED WITH COMPUTER.

INDEX OF PROCEEDINGS

DEFENDANTS'

DEFENDANT GOYKO KUBUROVICH'S OPENING      P. 695

**SHAWN PARR**
DIRECT EXAM BY MS. GILG                   P. 703
CROSS-EXAM BY MR. SIMEON                  P. 716
REDIRECT EXAM BY MR. NICK                 P. 737

**NEIL FORREST**
DIRECT EXAM BY MR. NICK                   P. 746
DIRECT EXAM BY MS. GILG                   P. 754
CROSS-EXAM BY MR. SCHENK                  P. 759
REDIRECT EXAM BY MR. NICK                 P. 765

INDEX OF EXHIBITS

|                              | IDENT. | EVIDENCE |
|------------------------------|--------|----------|
| GOVERNMENT'S:                |        |          |
| 60                           | 727    | 727      |
| 51-5, 51-78, 51-209 & 58     |        | 775      |
| DEFENDANTS':                 |        |          |
| O & P                        |        | 703      |
| F                            |        | 757      |

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    SEPTEMBER 24, 2018 |
| 2 | P R O C E E D I N G S |
| 08:48AM 3 | (JURY OUT AT 8:48 A.M.) |
| 08:48AM 4 | THE COURT:  WE ARE ON THE RECORD OUTSIDE OF THE |
| 08:48AM 5 | PRESENCE OF THE JURY.  ALL COUNSEL ARE PRESENT, AND THE JURY IS |
| 08:48AM 6 | NOT PRESENT, AND THE DEFENDANTS ARE PRESENT. |
| 08:49AM 7 | I THINK WE NEED TO TAKE UP SOME ITEMS.  I THINK YESTERDAY |
| 08:49AM 8 | SOME ITEMS WERE FILED BY THE DEFENDANT, DOCUMENTS 120, AND |
| 08:49AM 9 | 120-1 ARE JUDGMENT FOR MOTIONS FOR ACQUITTAL AND POINTS AND |
| 08:49AM 10 | AUTHORITIES IN SUPPORT THEREOF. |
| 08:49AM 11 | I ALSO RECEIVED AN AMENDED PROPOSED JURY INSTRUCTIONS FROM |
| 08:49AM 12 | THE GOVERNMENT AND PROPOSED JURY INSTRUCTION OBJECTIONS TO |
| 08:49AM 13 | GOVERNMENT'S PROPOSED INSTRUCTIONS AND REQUEST FOR |
| 08:49AM 14 | MODIFICATIONS FROM THE DEFENDANTS, AND THEN A RESPONSE |
| 08:49AM 15 | DOCUMENT 121, A RESPONSE TO DEFENDANT'S MOTION IN LIMINE. |
| 08:50AM 16 | ALL RIGHT.  WELL, WHY DON'T WE TALK ABOUT THAT, THE LAST |
| 08:50AM 17 | ONE FIRST, THE LATTER ONE, THE 1203.4 ISSUE.  I THINK WE |
| 08:50AM 18 | DISCUSSED THIS AS TO WHETHER OR NOT CERTAIN CONVICTIONS OF |
| 08:50AM 19 | GOYKO KUBUROVICH COULD BE USED AS IMPEACHMENT. |
| 08:50AM 20 | I THINK FRIDAY LAST I INDICATED THAT 1203.4, IT LOOKS LIKE |
| 08:50AM 21 | THAT RELIEF WAS GRANTED BY THE STATE COURT, AND THE COURT |
| 08:50AM 22 | INDICATED THAT IT APPEARED THAT THAT MET THE REQUIREMENTS OF |
| 08:50AM 23 | 609 TO EXCLUDE, BUT I INDICATED THAT I WANTED TO HEAR FROM THE |
| 08:50AM 24 | GOVERNMENT ON THAT ISSUE AS WELL. |
| 08:50AM 25 | I RECEIVED YOUR PLEADINGS. |

08:50AM 1     WHAT IS THE GOVERNMENT'S OPINION OF THE LAW IN THE NINTH

08:50AM 2  CIRCUIT ON THIS TOPIC?

08:50AM 3     MR. SIMEON:  GOOD MORNING, YOUR HONOR.  SCOTT SIMEON

08:50AM 4  FOR THE UNITED STATES.

08:50AM 5     THE GOVERNMENT'S POSITION IS THAT IT'S CLEAR FROM THE

08:50AM 6  NINTH CIRCUIT LAW EXTENDING ALL OF THE WAY BACK TO 1967 THAT

08:51AM 7  EVEN UNDER 1203.4 IF A CONVICTION IS SET ASIDE, IT STILL MAY BE

08:51AM 8  USED FOR OTHER PURPOSES AT TRIAL.  IN FACT, IT STILL COUNTS FOR

08:51AM 9  A FELON IN POSSESSION CHARGE IF IT REMAINS A FELONY, AND IT MAY

08:51AM 10  BE USED FOR IMPEACHMENT AS THE NINTH CIRCUIT HAS HELD ON

08:51AM 11  MULTIPLE OCCASIONS AND, IN FACT, ACCORDING TO THE GOVERNMENT'S

08:51AM 12  RESEARCH, EVERY COURT THAT HAS CONSIDERED THE ISSUE IN THE

08:51AM 13  NINTH CIRCUIT, AND I'M REFERRING TO THE DISTRICT COURTS AND

08:51AM 14  EVEN OTHER CIRCUITS THAT HAVE REFERRED TO 1203.4, HAVE STATED

08:51AM 15  THE SAME CONCLUSION THAT IT IS STILL POSSIBLE TO USE THAT.

08:51AM 16  IT'S PROPER TO USE IT AS IMPEACHMENT.

08:51AM 17     THE COURT:  AND THE THEORY BEING THAT, WELL, 1203.4,

08:51AM 18  THE RELIEF IN 1203.4 PROVIDES A DEFENDANT TO INDICATE ON A JOB

08:51AM 19  APPLICATION, FOR EXAMPLE, IN RESPONSE TO A QUESTION "HAVE YOU

08:51AM 20  BEEN PREVIOUSLY CONVICTED OF AN OFFENSE?" AN INDIVIDUAL IS

08:52AM 21  PERMITTED TO ANSWER NO TO THAT QUESTION.

08:52AM 22     WE KNOW FROM THE STATUTE THAT AN INDIVIDUAL MUST STILL

08:52AM 23  IDENTIFY THE CONVICTION IF THEY ENTER, FOR EXAMPLE, INTO

08:52AM 24  CONTRACT WITH, AS I UNDERSTAND THE STATUTE, THE CALIFORNIA

08:52AM 25  LOTTERY, THEY'RE REQUIRED TO DISCLOSE THEIR CONVICTION IN THAT

08:52AM 1    SENSE AS WELL AS IF THEY ARE APPLYING FOR ANY STATE LICENSE, I

08:52AM 2    BELIEVE, I THINK THEY HAVE TO DISCLOSE.  IN OTHER WORDS, 1203.4

08:52AM 3    DOES NOT PERMIT RELIEF FROM THOSE SECTIONS, AS I UNDERSTAND IT.

08:52AM 4        IS THAT YOUR UNDERSTANDING AS WELL?

08:52AM 5            MR. SIMEON:  YES, YOUR HONOR, THAT IS CORRECT, THERE

08:52AM 6    ARE LIMITATIONS TO THE RELIEF THAT IT PROVIDES EXPLICITLY, BUT

08:52AM 7    AGAIN, AS THE COURT HAS HELD THAT RELIEF IS VERY LIMITED, AND

08:52AM 8    AS ONE OF THE HOLDINGS EXPLAINED, THERE IS GOOD REASON FOR THAT

08:52AM 9    THAT IS NOT MEANT AS SOMETHING THAT COMPLETELY WIPES AWAY OR

08:53AM 10   ERASES THE CONVICTION, BUT IT'S SIMPLY AN OPPORTUNITY FOR AN

08:53AM 11   INDIVIDUAL TO GET A FRESH START AND TO CONTINUE WITH HIS LIFE

08:53AM 12   AS A PRODUCTIVE MEMBER OF SOCIETY.

08:53AM 13       BUT THEN THE IMPEACHMENT STATUTE ALSO HAS THE SAME PURPOSE

08:53AM 14   OR, EXCUSE ME, THE IMPEACHMENT RULE ALSO HAS THE SAME PURPOSE

08:53AM 15   IS THAT IF AN INDIVIDUAL DOES COMMIT ANOTHER OFFENSE, THE FACT

08:53AM 16   THAT HE HAS THAT SET ASIDE UNDER 1203.4, THE PROSECUTOR DOES

08:53AM 17   NOT PROHIBIT HIM FROM INTRODUCING THAT.

08:53AM 18           THE COURT:  THANK YOU.  MR. NICK.

08:53AM 19           MR. NICK:  JUST REAL BRIEFLY, YOUR HONOR.  I THINK

08:53AM 20   THERE'S A CONFLATING OF TWO DIFFERENT AREAS OF 1203.4, YOUR

08:53AM 21   HONOR, AND FAILURE TO DIFFERENTIATE BETWEEN FEDERAL RULES OF

08:53AM 22   EVIDENCE 403 OR 404 AND 608 AND THAT IS THAT WHEN YOU SET ASIDE

08:53AM 23   THE CONVICTION UNDER 1203.4, THE STATUTE, AS THE COURT NOTED,

08:54AM 24   IT DESCRIBES A LIST OF AREAS THAT THE CONVICTION STILL AFFECTS,

08:54AM 25   AND ONE OF THEM IS THAT IT CAN BE USED AS A PRIOR, FOR EXAMPLE.

08:54AM 1     AND THE CASES THAT THE GOVERNMENT CITES TALKS ABOUT USING

08:54AM 2     THE CONDUCT AS CONDUCT TO SHOW MOTIVE, INTENT, SIGNATURE,

08:54AM 3     IDENTITY, ALL OF THOSE DIFFERENT VARIOUS THINGS UNDER 404.  AND

08:54AM 4     SO I THINK THAT THE MORE APPROPRIATE FEDERAL RULE OF EVIDENCE

08:54AM 5     HERE, YOUR HONOR, IS 608 WHICH, AS THE COURT HAD NOTED, IT HAS

08:54AM 6     A SUBSECTION THAT TENDS TO TELL THE COURT TO EXCLUDE ANY

08:54AM 7     CONVICTIONS WHERE SOME STATE LAW THAT PROVIDES SOMETHING

08:54AM 8     SIMILAR TO A PARDON OR SET ASIDE HAS IN FACT BEEN APPLIED.

08:54AM 9     THE COURT:  WHAT IS YOUR OPINION OF WHAT THE LAW IN

08:54AM 10    THE NINTH CIRCUIT IS IN THE -- CAN YOU TELL ME ABOUT THAT?

08:55AM 11    MR. NICK:  WELL, I JUST BELIEVE, YOUR HONOR, THAT

08:55AM 12    THE CASES THAT THE GOVERNMENT CITES TEND TO AFFECT THE USE OF

08:55AM 13    THE EVIDENCE FOR MOTIVE, INTENT, PLAN, AND SO FORTH, BUT IF

08:55AM 14    YOU'RE GOING TO FOLLOW THE STATUTE UNDER CALIFORNIA LAW, AND

08:55AM 15    THE SUBSECTION UNDER 608, WHICH TELLS THE COURT THAT THE OTHER

08:55AM 16    PERSON HAS RECEIVED THE EQUIVALENT OF A PARDON OR A SET ASIDE,

08:55AM 17    AND THAT IT SHOULD NOT BE USED, THEN THE CASES IN THE NINTH

08:55AM 18    CIRCUIT, THE NINTH CIRCUIT CASES IN ESSENCE REFER TO THE USE OF

08:55AM 19    THE EVIDENCE AS MOTIVE, INTENT, PLANNING, ET CETERA, BUT DO NOT

08:55AM 20    SPEAK AS TO THE USE FOR A DEFENDANT TO IMPEACH A DEFENDANT WHO

08:55AM 21    IS TESTIFYING.

08:55AM 22    AND SO --

08:55AM 23    THE COURT:  WELL, THE GOVERNMENT CITES ON PAGE 3 THE

08:55AM 24    MACGILLIVRAY CASE, M-A-C-G-I-L-L-I-V-R-A-Y, AND THEY SUGGEST

08:56AM 25    THAT THAT CASE INDICATES THAT IT CAN BE USED FOR IMPEACHMENT

08:56AM 1    PURPOSE.

08:56AM 2            MR. NICK:  WELL, AGAIN, YOUR HONOR, I WOULD -- I

08:56AM 3    THINK IT'S JUST A DIFFERENCE OF HOW YOU USE THE WORD

08:56AM 4    "IMPEACHMENT."

08:56AM 5        I SUPPOSE IF YOU PUT IN A BUNCH OF DIFFERENT FRAUDULENT

08:56AM 6    ACTS TO SHOW INTENT, THAT'S A FORM OF IMPEACHMENT, YOUR HONOR.

08:56AM 7        BUT WHEN THAT'S NOT WHAT IS AT ISSUE, WHAT IS AT ISSUE

08:56AM 8    HERE IS CAN THE CONVICTION BE USED SIMPLY TO IMPEACH?  NOTHING

08:56AM 9    MORE.  I MEAN TO SAY YOU MUST NOT BE TELLING THE TRUTH BECAUSE

08:56AM 10   YOU HAVE BEEN CONVICTED OF THIS BEFORE.

08:56AM 11       SO THAT'S THE WAY I READ THE CASE, YOUR HONOR.  I CAN SEE

08:56AM 12   SOMEONE READING IT DIFFERENTLY, BUT I WOULD SUBMIT IT ON THAT.

08:56AM 13           THE COURT:  OKAY.  THANK YOU.  MS. GILG, ANYTHING ON

08:56AM 14   THIS?

08:56AM 15           MS. GILG:  NO, YOUR HONOR.

08:56AM 16           THE COURT:  ALL RIGHT.  THANK YOU.

08:56AM 17           MS. GILG:  WELL, JUST BECAUSE I ALWAYS HAVE TO SAY

08:56AM 18   SOMETHING.

08:56AM 19       IT WOULD SPILL OVER TO MY CLIENT, WHICH WOULD BE UNFAIR TO

08:56AM 20   ALLOW IMPEACHMENT OF THE CODEFENDANT.  SO IF THERE'S A

08:57AM 21   BALANCING TEST AT ALL AS FAR AS PREJUDICE GOES, I WOULD ASK THE

08:57AM 22   COURT TO CONSIDER THE PREJUDICE THAT WOULD INURE TO MY CLIENT

08:57AM 23   AS WELL.

08:57AM 24           THE COURT:  ALL RIGHT.  THANK YOU.

08:57AM 25       MR. SIMEON, DO THE CASES, INCLUDING THE ONES THAT I CITED,

08:57AM 1    DO THEY SUGGEST THAT A CONVICTION THAT HAS RECEIVED 1203.4

08:57AM 2    RELEASE CAN NONETHELESS BE USED FOR PURE IMPEACHMENT, NOT AS

08:57AM 3    COUNSEL HAS INDICATED THAT IT WOULD BE USED FOR 404 PURPOSES TO

08:57AM 4    SHOW MOTIVE, LACK OF MISTAKE, INTENT?

08:57AM 5         MR. SIMEON:  YES, YOUR HONOR, THAT'S CORRECT.  IN

08:57AM 6    FACT, ALL OF THE CASES CITED SPEAK DIRECTLY TO THAT ISSUE, AND

08:57AM 7    I DON'T THINK ANY OF THEM EVEN DISCUSS MOTIVE, INTENT, PURPOSE,

08:57AM 8    OR ANY OTHER 404 ISSUES AND AS TO BALANCING, OF COURSE, UNDER

08:57AM 9    THE RULES, CRIMES OF DISHONESTY ARE NOT SUBJECT TO THAT

08:58AM 10   BALANCING TEST.

08:58AM 11        THE COURT:  ALL RIGHT.  THANK YOU.  WHY DON'T WE

08:58AM 12   REVIEW AGAIN WHAT THE GOVERNMENT SEEKS TO USE THEN SHOULD

08:58AM 13   MR. KUBUROVICH TESTIFY?  WHAT CONVICTIONS WOULD THE GOVERNMENT

08:58AM 14   SEEK TO USE?

08:58AM 15        MR. SIMEON:  YES, YOUR HONOR.  IT'S THE DEFENDANT'S

08:58AM 16   SEPTEMBER 5TH, 2014, CONVICTIONS FOR TWO COUNTS OF GRAND THEFT

08:58AM 17   BY FALSE PRETENSES AND ONE COUNT OF GRAND THEFT BY AN EMPLOYEE.

08:58AM 18      THERE'S ALSO AN AGGRAVATED WHITE COLLAR CRIME ENHANCEMENT

08:58AM 19   FOR LOSS IN EXCESS OF $5,000.

08:58AM 20        THE COURT:  SO IF HE WERE TO TESTIFY, YOU WOULD --

08:58AM 21   THE QUESTION THAT WOULD BE POSED ON CROSS-EXAMINATION WOULD BE

08:58AM 22   "ISN'T IT A FACT THAT YOU WERE CONVICTED OF?" AND THEN FILL IN

08:58AM 23   THE BLANK FORM?

08:58AM 24        MR. SIMEON:  YES, YOUR HONOR, TWO COUNTS OF GRAND

08:58AM 25   THEFT BY FALSE PRETENSES AND ONE COUNT OF GRAND THEFT BY AN

08:58AM 1    EMPLOYEE.

08:58AM 2          THE COURT:  OKAY.  MR. NICK, IF THE COURT WERE TO

08:59AM 3    ALLOW THE USE OF THESE FOR IMPEACHMENT, AND YOU'VE HEARD HOW

08:59AM 4    THE GOVERNMENT WISHES TO PHRASE THEM, DO YOU WISH TO COMMENT?

08:59AM 5          MR. NICK:  YES, YOUR HONOR, OTHER THAN I WOULD SAY

08:59AM 6    THAT I WOULD MOVE TO EXCLUDE IT AS MORE PREJUDICIAL THAN

08:59AM 7    PROBATIVE.

08:59AM 8          THE COURT:  ALL RIGHT.  THANK YOU.  WELL, THANK YOU

08:59AM 9    FOR THE DISCUSSION ON THIS.  I INVITED THIS FRIDAY AND IN LIEU

08:59AM 10   OF THE PLEADINGS HERE, DOCUMENT 121, THE GOVERNMENT HAS

08:59AM 11   INDICATED THAT IN THE NINTH CIRCUIT THE RELIEF OF 1203.4 DOES

08:59AM 12   NOT EXTEND TO ELIMINATE OR OTHERWISE PREVENT A DEFENDANT WHO

08:59AM 13   HAS SUFFERED CONVICTIONS AND YET RECEIVED THE STATE RELIEF AND

08:59AM 14   NONETHELESS BE IMPEACHED FOR HIS FELONY CONVICTIONS.

08:59AM 15       THE COURT WILL, THEREFORE, PERMIT THE GOVERNMENT TO

09:00AM 16   IMPEACH MR. KUBUROVICH WITH THE TWO FELONY CONVICTIONS.  THE

09:00AM 17   ENHANCEMENT WOULD NOT BE PERMITTED, BUT THE TWO CONVICTIONS AS

09:00AM 18   STATED BY COUNSEL COULD BE USED FOR IMPEACHMENT PURPOSES SHOULD

09:00AM 19   YOUR CLIENT TESTIFY, MR. NICK, AND I'LL NOTE YOUR OBJECTION.

09:00AM 20         MR. NICK:  YES, YOUR HONOR.  JUST ONE OTHER INQUIRY

09:00AM 21   BECAUSE THE COURT NOTED FELONY CONVICTIONS, WHEN THEY'RE

09:00AM 22   REDUCED UNDER PENAL CODE SECTION 717, IT'S FOR ALL PURPOSES.

09:00AM 23         THE COURT:  YES.

09:00AM 24         MR. NICK:  GOING BACK INTO TIME.

09:00AM 25         THE COURT:  SO THE QUESTION IS HAVE YOU BEEN

09:00AM 1  CONVICTED OF GRAND THEFT AS INDICATED, THAT'S HOW THE QUESTION

09:00AM 2  WOULD BE PHRASED.

09:00AM 3  　　　　MR. NICK:  THANK YOU.

09:00AM 4  　　　　THE COURT:  AND YOU UNDERSTAND THAT.

09:00AM 5  　　　　MR. SIMEON:  YES, YOUR HONOR.

09:00AM 6  　　　　THE COURT:  ALL RIGHT.  THANK YOU.  I'M NOT GOING TO

09:00AM 7  TALK ABOUT THE JURY INSTRUCTIONS RIGHT NOW, BUT I THOUGHT WE

09:00AM 8  WOULD MOVE TO THE RULE 29 MOTION, AND WHY DON'T I HEAR FROM

09:00AM 9  DEFENSE COUNSEL ABOUT THAT.

09:01AM 10  　　　　MS. GILG:  THANK YOU, YOUR HONOR.  ON BEHALF OF

09:01AM 11  KRISTEL KUBUROVICH I WOULD REFER TO THE MOTION.  I THINK THAT

09:01AM 12  THE PARTICULARLY COUNT TWO IN MS. KUBUROVICH'S CASE IS

09:01AM 13  COMPLETELY LACKING OF ANY EVIDENCE WHATSOEVER, AND SO I WOULD

09:01AM 14  LIKE THE COURT TO CONSIDER THAT ONE OUT OF THE BOX IN THE SENSE

09:01AM 15  THAT THERE'S BEEN A COMPLETE FAILURE OF ANY EVIDENCE TO SUPPORT

09:01AM 16  THAT.

09:01AM 17  　　　IN REGARD TO THE OTHER MATTER, I MEAN, I FILED THE MOTION

09:01AM 18  UNDERSTANDING I FILED IT YESTERDAY AND THAT THE GOVERNMENT

09:01AM 19  HASN'T HAD TIME TO RESPOND IN WRITING.  I WOULD LIKE TO RESERVE

09:01AM 20  ANY COMMENTS UNTIL AFTER I HAVE HEARD WHAT THE GOVERNMENT HAS

09:01AM 21  SAID IF THAT'S OKAY.

09:01AM 22  　　　　THE COURT:  WELL, THANK YOU.

09:01AM 23  　　　　MS. GILG:  UNLESS YOU HAVE ANY QUESTIONS.

09:01AM 24  　　　　THE COURT:  WELL, I -- LET ME JUST TELL YOU, I'M

09:01AM 25  PERHAPS MORE INTRIGUED WITH THE COUNT TWO AS TO YOUR CLIENT,

09:02AM 1    JUST TO ALERT THE GOVERNMENT AND ALL PARTIES.

09:02AM 2         THE ISSUES THAT YOU RAISE THERE I THINK ARE ONES THAT I

09:02AM 3    HAVE SOME INTEREST IN, AND I DO THINK IT'S APPROPRIATE TO ALLOW

09:02AM 4    THE GOVERNMENT TO RESPOND TO THIS.

09:02AM 5         WHAT I CAN DO -- UNLESS THE GOVERNMENT WISHES TO RESPOND

09:02AM 6    TO OR DO YOU WANT SOME ADDITIONAL TIME TO LOOK AT THIS?

09:02AM 7              MR. SIMEON:  IF YOUR HONOR WOULD ALLOW, SINCE

09:02AM 8    THERE'S A WRITTEN FILING, THE GOVERNMENT WOULD LIKE AN

09:02AM 9    OPPORTUNITY FOR A WRITTEN RESPONSE.

09:02AM 10             THE COURT:  SURE.  SO, LET ME DO THIS, MR. NICK,

09:02AM 11   ANYTHING FURTHER ON THE RULE 29 AS TO YOUR CLIENT?

09:02AM 12             MR. NICK:  YES, YOUR HONOR, SUBMITTED.

09:02AM 13             THE COURT:  WHAT I INTEND TO DO IS I'LL TAKE THIS

09:02AM 14   UNDER SUBMISSION AT THIS POINT.  I'LL ASK THE GOVERNMENT TO

09:02AM 15   FILE A RESPONSIVE PLEADING IF THEY WISH TO DO SO, AND LET ME

09:02AM 16   NOW MOVE TO SCHEDULING SO I CAN TELL YOU WHEN THAT BRIEFING

09:02AM 17   SHOULD BE DUE.

09:02AM 18        WHAT IS OUR STATUS AS FAR AS SCHEDULING GOES?  AND LET ME

09:02AM 19   JUST TELL YOU I REALIZED TOMORROW WE HAVE TO BREAK AT ABOUT

09:03AM 20   PROBABLY 11:30, I THINK, AND THEN WE'RE GOING TO BE DARK FOR

09:03AM 21   THE REST OF THE DAY.  I CAN'T BE HERE IN THE AFTERNOON.  I'M

09:03AM 22   NOT CERTAIN IF I LET YOU KNOW THAT BEFORE.  MAYBE NOT.  BUT

09:03AM 23   THAT'S OUR ONLY HICCUP IN THE SCHEDULE FOR THIS WEEK AS FAR AS

09:03AM 24   I UNDERSTAND IT.

09:03AM 25        SO FOR THIS MORNING, I THINK YOU HAVE A WITNESS?

09:03AM 1    MR. NICK: YES, YOUR HONOR. WE MAY HAVE TWO

09:03AM 2 WITNESSES NOW. WE'VE DECIDED TO ADD ONE NOW, AND MS. GILG CAN

09:03AM 3 SPEAK TO THAT.

09:03AM 4    THE COURT: WHY DON'T YOU JUST IDENTIFY WHO THE

09:03AM 5 WITNESSES ARE.

09:03AM 6    MS. GILG: YOUR HONOR, JUST THIS MORNING -- WE'VE

09:03AM 7 BEEN DISCUSSING THIS SINCE YESTERDAY, BUT NEIL FORREST, WHO IS

09:03AM 8 AN INDIVIDUAL WHOSE NAME HAS COME UP IN THE CONTEXT OF THE CASE

09:03AM 9 AND PARTICULARLY IN THE CONTEXT OF THE MEDILEAF BANK RECORDS

09:03AM 10 AND BANK ACCOUNTS.

09:03AM 11    AND WHAT WE WOULD LIKE HIM TO TESTIFY TO, AND HE KNOWS NOT

09:03AM 12 TO SAY ANYTHING ABOUT MEDICAL MARIJUANA DISPENSARY OR ANYTHING

09:04AM 13 IN THAT REGARD, BUT THERE WERE TWO AREAS THAT I THINK WERE

09:04AM 14 RAISED BY THE GOVERNMENT AND THAT THEY'RE GOING TO TRY TO INFER

09:04AM 15 THAT MY CLIENT WAS JUST LIKE THE SIGNOR ON THE LOAN; SHE HAD

09:04AM 16 NOTHING TO DO WITH ANYTHING HAVING TO DO WITH THE BUSINESS;

09:04AM 17 THAT IT WAS MR. KUBUROVICH'S BUSINESS THAT THE WARDA MONEY WAS

09:04AM 18 GOING TO; AND, SHE WAS JUST KIND OF LIKE HER FATHER'S PUPPET.

09:04AM 19    AND WHAT MR. FORREST WILL TESTIFY TO IS THAT

09:04AM 20 MS. KUBUROVICH WAS AN ACTIVE MEMBER AT THE -- I GUESS WE'LL

09:04AM 21 CALL IT THE ENTITY FOR LACK OF A BETTER WORD. THAT SHE WORKED

09:04AM 22 THERE. THERE WAS SOME TALK ABOUT PUTTING HER ON THE BOARD OF

09:04AM 23 DIRECTORS AND THAT SHE, IN FACT, LOANED, SHE LOANED THE MONEY

09:04AM 24 THAT SHE RECEIVED FROM THE WARDA LOAN AND THE FONT LOAN WHICH

09:04AM 25 IS SOMETHING WE DIDN'T HAVE A WITNESS FOR, BUT THERE'S

09:04AM 1     DOCUMENTARY EVIDENCE SHOWING A SECOND LOAN AND THAT SHE LENT

09:05AM 2     THAT MONEY TO MEDILEAF AT A 20 PERCENT INTEREST RATE, AND WE

09:05AM 3     HAVE THE DOCUMENTS THAT HE CAN AUTHENTICATE THAT SHOW PART OF

09:05AM 4     OUR EXHIBITS THAT SHOW THAT IT WAS, IN FACT, A LOAN FROM

09:05AM 5     KRISTEL KUBUROVICH.

09:05AM 6         SO IT TAKES HER OUT OF THIS PUPPET ROLE AND PUTS HER RIGHT

09:05AM 7     IN THE ROLE OF SOMEONE WHO WAS ACTIVELY INVOLVED IN THIS

09:05AM 8     BUSINESS, AND, THEREFORE, WASN'T JUST MOVING THE MONEY AT HER

09:05AM 9     FATHER'S DIRECTION.

09:05AM 10         THE COURT:  CAN YOU TELL ME -- THANK YOU.

09:05AM 11         CAN YOU TELL ME, DOES HE HAVE PERSONAL KNOWLEDGE OF THE

09:05AM 12     LOAN?

09:05AM 13         MS. GILG:  YES.

09:05AM 14         THE COURT:  AND HOW IS THAT GOING TO BE ESTABLISHED?

09:05AM 15         MS. GILG:  HE WAS ON THE BOARD OF DIRECTORS.  HE WAS

09:05AM 16     ONE OF THE DIRECTORS FOR MEDILEAF.

09:05AM 17         THE COURT:  I SEE.

09:05AM 18         MS. GILG:  AND HE ALSO CAN TESTIFY AS TO -- THERE'S

09:05AM 19     ONE OTHER AREA I WOULD LIKE HIM TO TESTIFY TO AND THAT IS THAT

09:05AM 20     THERE'S BEEN, YOU KNOW, THE SUMMARY CHARTS SHOW CASH

09:05AM 21     WITHDRAWALS, AND THE GOVERNMENT HAS IMPLIED THAT AND THE

09:05AM 22     GOVERNMENT WITNESS, I'M SORRY, IMPLIED THAT, WELL, WE DON'T

09:05AM 23     KNOW WHERE THESE CASH WITHDRAWALS WENT.

09:05AM 24         AND, YEAH, THERE WERE SOME CHECKS WRITTEN TO

09:06AM 25     MR. KUBUROVICH, BUT THERE WERE ALSO ALL OF THESE CASH

09:06AM 1  WITHDRAWALS.

09:06AM 2      THE GOVERNMENT'S EXHIBIT ITSELF SHOWS NUMEROUS CASH

09:06AM 3  WITHDRAWALS AND SO WHAT WE WOULD LIKE TO ASK IS BECAUSE -- HOLD

09:06AM 4  ON ONE SECOND.

09:06AM 5      (DISCUSSION OFF THE RECORD.)

09:06AM 6          MS. GILG:  HE WASN'T THE BOOKKEEPER, BUT THEY

09:06AM 7  HAD VERY RIGID, AS THE BOARD OF DIRECTORS -- I'LL LET MR. NICK

09:06AM 8  ELABORATE A LITTLE BIT.  BUT HE WOULD TESTIFY THAT ANY CASH

09:06AM 9  THAT WENT OUT WAS ACCOUNTED FOR AND ACCOUNTABLE TO THE BOARD OF

09:06AM 10 DIRECTORS AND THAT, IN FACT, IT DID NOT GO TO MR. KUBUROVICH.

09:06AM 11 HE CAN TESTIFY TO THAT DIRECTLY.

09:06AM 12     AND I THINK WE CAN DO THAT, AND IT WOULD BE VERY QUICK,

09:06AM 13 AND WE CAN DO THAT WITH AVOIDING ANY DISCUSSION OF WHAT THE

09:06AM 14 ENTITY WAS.

09:06AM 15         THE COURT:  OKAY.

09:06AM 16         MS. GILG:  NOW, I DO KNOW THAT THE GOVERNMENT

09:06AM 17 RIGHTFULLY POINTS OUT THAT WE DID NOT GIVE THEM THE 24-HOUR

09:07AM 18 NOTICE.  LITERALLY THIS CAME UP -- AS I WAS PREPARING MY

09:07AM 19 CLOSING ARGUMENT, I SAW THIS HOLE.  I CALLED MR. NICK.  THIS IS

09:07AM 20 LIKE YESTERDAY AFTERNOON, AND I RUSHED THE IDEA BY HIM, AND IT

09:07AM 21 WASN'T UNTIL THIS MORNING THAT I GOT CONFIRMATION.

09:07AM 22     AND THIS IS PURELY REBUTTAL, AND I THINK IN THE SENSE THAT

09:07AM 23 WE HAVE BEEN VERY FORTHRIGHT WITH ALL OF OUR WITNESSES AND ALL

09:07AM 24 OF OUR EXHIBITS.  AND I THINK THAT THIS IS JUST ONE WITNESS, A

09:07AM 25 VERY SHORT WITNESS.

09:07AM 1        THEY HAVE KNOWN ABOUT MR. FORREST BECAUSE MR. FORREST IS

09:07AM 2    ALL OVER THE MEDILEAF INVESTIGATION DOCUMENTS THAT HAVE BEEN

09:07AM 3    PRODUCED TO US THROUGH THEIR INVESTIGATION.  SO HE'S NOT A

09:07AM 4    SURPRISE TO THEM.

09:07AM 5        THE COURT:  DO YOU HAVE ANY INDEPENDENT DISCOVERY TO

09:07AM 6    PROVIDE TO THE GOVERNMENT?

09:07AM 7        MS. GILG:  I DON'T.  I TOLD HIM -- I LITERALLY SPOKE

09:07AM 8    TO THEM ON THE PHONE FOR FIVE MINUTES, AND I TOLD THE

09:07AM 9    GOVERNMENT EXACTLY WHAT -- I REALLY CALLED THEM TO SAY CAN HE

09:07AM 10    TESTIFY?

09:07AM 11        YOU KNOW, HE TESTIFIED AT THE MEDILEAF TRIAL.  SO THERE'S

09:08AM 12    THAT TESTIMONY OUT THERE.  I DON'T HAVE IT.

09:08AM 13        AND ONE OTHER THING, YOUR HONOR.  I DO THINK WHEN

09:08AM 14    DEAN ACKEMANN WAS GOING TO TESTIFY, BECAUSE I DID ACTUALLY GET

09:08AM 15    HIS TESTIMONY FROM THE MEDILEAF TRIAL, THAT I WOULD BE ABLE TO

09:08AM 16    GET SOME OF THIS INFORMATION OUT OF HIM HOW HE TESTIFIED.

09:08AM 17        SO IT TRULY IS REBUTTAL IN THE SENSE THAT IT'S NOT

09:08AM 18    SOMETHING THAT I HAVE BEEN PLANNING TO DO ALL ALONG,

09:08AM 19    PARTICULARLY IN THE WAY THAT THEY CHARACTERIZE MY CLIENT'S

09:08AM 20    INVOLVEMENT IN MEDILEAF AND MEDILEAF BEING MR. KUBUROVICH'S

09:08AM 21    BUSINESS.

09:08AM 22        THE COURT:  THANK YOU.  MR. NICK, ANYTHING FURTHER?

09:08AM 23        MR. NICK:  YOUR HONOR, I THINK JUST THE ISSUE OF

09:08AM 24    MR. FORREST -- I MEAN, WE WANT TO PRESENT THE TESTIMONY THAT

09:08AM 25    MS. GILG OUTLINED BUT MY FURTHER CONCERN REGARDING THIS ISSUE

09:08AM 1    AND WHAT I WOULD OBJECT TO IS ARGUMENT BY THE GOVERNMENT THAT

09:09AM 2    IS NOT GROUNDED ON EVIDENCE, AND IT IS GROUNDED ON SPECULATION

09:09AM 3    IN THE FOLLOWING REGARD:

09:09AM 4        WHAT THE GOVERNMENT HAS DONE IS THAT THEY HAVE TAKEN THE

09:09AM 5    MEDILEAF ACCOUNTS, AND THEY HAVE MADE, AS THEY TESTIFIED, AS

09:09AM 6    MS. KIKUGAWA TESTIFIED, SCHEDULES WHICH IN ESSENCE DETAILS

09:09AM 7    CHECKS GOING OUT OF THE MEDILEAF ACCOUNT AND WHO THE PAYEE IS.

09:09AM 8        THE EVIDENCE STOPS THERE, YOUR HONOR.

09:09AM 9        THESE ARE NOT CHECKS WRITTEN OUT TO GOYKO KUBUROVICH WHICH

09:09AM 10   ARE THEN DEPOSITED INTO GOYKO KUBUROVICH'S OWN PERSONAL

09:09AM 11   ACCOUNT.

09:09AM 12       YOU LOOK AT THE SCHEDULES, YOUR HONOR, I WOULD JUST GIVE

09:09AM 13   IT A ROUGH ESTIMATE AND CALL IT A CHARITABLE ONE.  85 PERCENT

09:09AM 14   OF EVERYTHING IS TO -- FOR OBVIOUS BUSINESS EXPENSES SUCH AS

09:09AM 15   PAYROLL, SUCH AS CONSTRUCTION.  I MEAN, THESE ARE THE NOTES

09:10AM 16   THAT ARE PLACED IN THERE.

09:10AM 17       AND SO WHAT I FEAR THE GOVERNMENT IS GOING TO DO AT

09:10AM 18   CLOSING ARGUMENT IS ARGUE THAT MR. KUBUROVICH TOOK ALL OF THIS

09:10AM 19   MONEY AND USED IT TO PAY HIS OWN PERSONAL EXPENSES WITHOUT

09:10AM 20   THERE BEING ANY EVIDENCE AS TO WHO THESE PAYEES ARE.  AND NOT

09:10AM 21   ONLY THAT, IT WOULD BE -- ACTUALLY, THAT WOULD NOT BE THE CASE

09:10AM 22   AND THAT WOULD NOT BE THE TRUTH SO WHAT I WOULD OBJECT TO, YOUR

09:10AM 23   HONOR, IS ANY ARGUMENT REGARDING THIS MONEY GOING TO THE

09:10AM 24   POSSESSION OF MR. KUBUROVICH FOR HIS OWN PERSONAL USE WITHOUT

09:10AM 25   THERE BEING ANY EVIDENCE OF THAT.

09:10AM 1      THE COURT: AND YOU'RE SAYING THAT MR. FORREST WILL

09:10AM 2  PROVIDE SOME EVIDENCE OF?

09:10AM 3      MR. NICK: YES, IF IN FACT THE GOVERNMENT IS ALLOWED

09:10AM 4  TO MAKE THIS ARGUMENT, WHICH I ASSUME THAT THEY MAY OR -- WELL,

09:10AM 5  I DON'T WANT TO ASSUME ANYTHING, BUT THEY MAY BE ABLE TO,

09:11AM 6  MR. FORREST IS GOING TO COME IN AND EXPLAIN HOW THE BUSINESS IS

09:11AM 7  RUN GENERALLY, AND THERE'S VERY STRICT CONTROL OVER THE

09:11AM 8  EXPENSES AND THAT ALL OF THE EXPENSES WERE CHECKED BY A BOARD

09:11AM 9  AND THAT HE'S NOT AWARE OF MR. KUBUROVICH USING THE EXPENSES

09:11AM 10  FOR ANY OWN PERSONAL USE.

09:11AM 11      HE CAN GO THROUGH THE SCHEDULES THAT THE GOVERNMENT HAS

09:11AM 12  LAID OUT AND HE CAN SAY, YES, I'VE RECOGNIZED I KNOW WHO TORO,

09:11AM 13  LLC IS, THAT'S A NO. AND THEY'LL SAY THAT'S A SECURITY COMPANY

09:11AM 14  FOR OUR BUSINESS.

09:11AM 15      SO HE CAN GO THROUGH ALL OF THESE EXPENSES AND LAY A

09:11AM 16  FURTHER LAYER AS TO WHAT THEY'RE FOR AND THAT THEY'RE NOT FOR

09:11AM 17  MR. KUBUROVICH'S PERSONAL EXPENSES, BUT I'M JUST KIND OF

09:11AM 18  SAYING, YOUR HONOR, IS THAT WITNESS REALLY NECESSARY SEEING

09:11AM 19  THAT THE GOVERNMENT WOULD HAVE TO SPECULATE TO BE ABLE TO ARGUE

09:11AM 20  THAT MR. KUBUROVICH WAS USING THIS MONEY FOR HIS OWN PERSONAL

09:11AM 21  USE?

09:11AM 22      THE COURT: WELL, YOUR COCOUNSEL WANTS TO CALL --

09:12AM 23      MR. NICK: YES, I UNDERSTAND THAT. I GUESS I WOULD

09:12AM 24  OBJECT TO THAT ARGUMENT BY THE GOVERNMENT, BY THE GOVERNMENT,

09:12AM 25  YOUR HONOR, AS NOT SUPPORTED BY EVIDENCE, AND THAT WOULD BE THE

09:12AM 1    EXTENT OF WHAT I HAVE TO SAY.

09:12AM 2              THE COURT:  OKAY.

09:12AM 3              MS. GILG:  AND IF I MAY JUST BY MY COLLEAGUE'S

09:12AM 4    COMMENTS, AND YOU CAN SEE WHY WE DECIDED THIS MORNING THAT WE

09:12AM 5    WANTED TO CALL THIS WITNESS.

09:12AM 6         I THINK IT'S IMPORTANT THAT I SHOW THAT MY CLIENT IS

09:12AM 7    INVOLVED IN THAT BUSINESS, AND THAT'S WHY SHE LENT THE MONEY.

09:12AM 8    SO I HAVE A SEPARATE PROFFER THAT HAS TO DO WITH HOW THE

09:12AM 9    EVIDENCE CAME OUT WITH REGARD TO MY CLIENT'S INVOLVEMENT IN

09:12AM 10   MEDILEAF.

09:12AM 11             THE COURT:  YOU WOULD CALL HIM AS A WITNESS?

09:12AM 12             MS. GILG:  YES.

09:12AM 13             THE COURT:  AND YOU WOULD ASK MR. FORREST, IN

09:12AM 14   ESSENCE, WHAT I UNDERSTAND YOU TO SAY IS THAT YOU WOULD ASK HIM

09:12AM 15   GENERALLY HIS KNOWLEDGE, EXPERIENCE OF YOUR CLIENT'S

09:12AM 16   INVOLVEMENT WITH THE BUSINESS?

09:12AM 17             MS. GILG:  RIGHT.

09:12AM 18             THE COURT:  AND THE ACTIVITIES HE WITNESSED AND HE

09:12AM 19   PERSONALLY OBSERVED OF HER VIS-À-VIS THE BUSINESS?

09:12AM 20             MS. GILG:  RIGHT.

09:12AM 21             THE COURT:  WITHOUT IDENTIFYING THE BUSINESS AS A

09:13AM 22   CANNABIS BUSINESS?

09:13AM 23             MS. GILG:  CORRECT.

09:13AM 24             THE COURT:  AND ARE WE GOING TO GET INTO THIS

09:13AM 25   COOPERATIVE ISSUE AT ALL, IDENTIFYING WHAT THE NATURE OF THE

09:13AM 1     BUSINESS IS?  ARE YOU GOING TO ASK HIM THAT?

09:13AM 2          MS. GILG:  I WOULD ONLY ASK HIM WHETHER OR NOT IT

09:13AM 3     WAS A MUTUAL -- I WOULD LIKE TO SHOW HIM THE ARTICLES OF

09:13AM 4     INCORPORATION, BUT IT SAID MEDICAL CANNIBIS DISPENSARY ON IT SO

09:13AM 5     WE MIGHT HAVE TO REDACT THAT.

09:13AM 6          MR. NICK:  EXCUSE ME A SECOND.  I'M SORRY, MS. GILG.

09:13AM 7      YOUR HONOR, THE GOVERNMENT HAS INTRODUCED BANK RECORDS IN

09:13AM 8     THIS CASE FROM PINNACLE BANK THAT HAD STAMPED ON IT IN 14 POINT

09:13AM 9     COURIER TYPE THAT THE BANK ACCOUNT IS FOR A BUSINESS THAT IS A

09:13AM 10     MEDICAL MARIJUANA COLLECTIVE.

09:13AM 11          THE COURT:  IS THAT IN EVIDENCE?

09:13AM 12          MR. NICK:  THAT'S IN EVIDENCE BY THE GOVERNMENT'S

09:13AM 13     OWN EXHIBITS, YOUR HONOR.

09:13AM 14          THE COURT:  OKAY.

09:13AM 15      MS. GILG.

09:13AM 16          MS. GILG:  THERE'S ONE OTHER THING THAT I THINK --

09:13AM 17     AND IT'S THE SAME EVIDENCE BUT TO ADDRESS -- THAT WE WILL

09:13AM 18     ADDRESS THAT CHART THAT SHOWED THE $775,000 IN THE BANK

09:14AM 19     ACCOUNTS, THE MAJORITY OF THAT MONEY IS FROM THE MEDILEAF

09:14AM 20     ACCOUNTS AND SO THAT'S ANOTHER IMPLICATION THAT THIS IS MONEY

09:14AM 21     THAT MR. KUBUROVICH HAD ACCESS TO AND SO WHAT -- AGAIN, THAT

09:14AM 22     GOES BACK TO WHAT WERE THESE CASH WITHDRAWALS FOR.

09:14AM 23      SO I THINK THAT BECOMES IMPORTANT.

09:14AM 24          THE COURT:  WELL, NOW YOU'RE ENHANCING THIS

09:14AM 25     WITNESS'S TESTIMONY, AREN'T YOU?  YOU'RE ASKING HIM TO TESTIFY

09:14AM 1    ABOUT MORE THINGS THEN?

09:14AM 2            MS. GILG:  NO, NOT AT ALL.  THAT'S WHY I SAID, IT'S

09:14AM 3    THE SAME EVIDENCE.  BUT I CAN ARGUE, I CAN ARGUE AT CLOSING

09:14AM 4    THAT THAT $775,000, YOU KNOW, THIS MUCH WAS IN THE MEDILEAF

09:14AM 5    BANK ACCOUNTS WHICH YOU HAVE EVIDENCE TO INDICATE THAT THIS WAS

09:14AM 6    A MUTUAL BENEFIT CORPORATION AND THIS WAS MONEY -- I WOULD NOT

09:14AM 7    ASK MR. FORREST THAT.  I WOULD BE ABLE TO INFER, AND I WOULD BE

09:14AM 8    ABLE TO ARGUE THAT FROM THE EVIDENCE.

09:14AM 9            THE COURT:  OKAY.  THANK YOU.  SO MY CONCERN ABOUT

09:14AM 10   THIS FROM IN LIMINE WAS I DIDN'T WANT THE MARIJUANA -- I

09:14AM 11   CERTAINLY DIDN'T WANT THE TRIAL IN STATE COURT TO COME INTO

09:15AM 12   EVIDENCE AND IN ANY WAY THE EVIDENCE IN THIS CASE AS FOR OR

09:15AM 13   AGAINST THE GOVERNMENT.  I JUST DIDN'T FIND THE RELEVANCE OF

09:15AM 14   THAT.

09:15AM 15       WE'VE HAD DISCUSSIONS ABOUT IDENTIFYING THIS BUSINESS AS A

09:15AM 16   MARIJUANA BUSINESS AND THE ASPECTS OF THAT AND I, I HAVE, AS

09:15AM 17   YOU KNOW, I DON'T THINK THAT'S PARTICULARLY RELEVANT OR

09:15AM 18   IMPORTANT UNDER A 403 ANALYSIS.

09:15AM 19       I'M CONCERNED ABOUT THE PREJUDICE, UNFAIR PREJUDICE THAT

09:15AM 20   COULD ARISE FROM THAT SHOULD THE JURY DISCOVER THAT THIS ALL

09:15AM 21   INVOLVED A CANNABIS COLLECTIVE, WHATEVER IT WAS.  THAT'S BEEN A

09:15AM 22   CONCERN OF MINE FOR BOTH SIDES, ACTUALLY.

09:15AM 23       IF THERE IS EVIDENCE NOW THAT THESE BANK RECORDS HAVE

09:15AM 24   IDENTIFIED MEDILEAF AS A CANNIBUS COOPERATIVE OR A BUSINESS OF

09:16AM 25   SOME SORT, WELL, THE JURY IS GOING TO HAVE THAT ALREADY THEN

09:16AM 1    AND SO SOME OF THIS CONCERN I HAVE MIGHT BE TEMPERED BY THE

09:16AM 2    FACT THAT THE CAT IS OUT OF THE BAG, IF YOU WILL.

09:16AM 3        HOWEVER, I STILL THINK WE CAN, EVEN ASSUMING THAT THAT

09:16AM 4    EXISTS, THAT THIS IS ON THE RECORDS AND THAT THE JURY WILL

09:16AM 5    HAVE, AGAIN, IT'S A BUSINESS, IT'S THE TYPE OF BUSINESS.  I

09:16AM 6    DON'T WANT -- THE TYPE OF BUSINESS IT IS.

09:16AM 7        BUT I DON'T WANT THIS JURY TO SPECULATE AND MAKE

09:16AM 8    DECISIONS, AS YOU ALL WERE CONCERNED ABOUT IN THE VOIR DIRE

09:16AM 9    JUST BASED ON THE FACT THAT IT IS A MARIJUANA BUSINESS.

09:16AM 10       SO IF THIS WITNESS IS PERMITTED TO TESTIFY, ANY WITNESS IS

09:16AM 11   PERMITTED TO TESTIFY, I REALLY WANT TO LIMIT THAT TYPE OF

09:16AM 12   INFORMATION ABOUT, WELL, IT WAS A CANNIBUS, WE ALL GOT TOGETHER

09:16AM 13   AND THOUGHT WE COULD MAKE MONEY SELLING MARIJUANA, AND SO WE

09:16AM 14   PUT THESE ARTICLES TOGETHER VERY CAREFULLY SO EACH OF US OWNED,

09:17AM 15   ET CETERA, ET CETERA.

09:17AM 16       THERE'S SOME INTERACTION BETWEEN THE STRUCTURE AND THE

09:17AM 17   FOCUS OF THE BUSINESS, AND THAT'S WHAT I DON'T THINK IS

09:17AM 18   RELEVANT FOR THE JURY.

09:17AM 19       BUT LET ME HEAR FROM THE GOVERNMENT AS TO THIS WITNESS,

09:17AM 20   MR. FORREST, AND THE OTHER ISSUES.

09:17AM 21           MR. SCHENK:  THANK YOU, YOUR HONOR.  A FEW POINTS.

09:17AM 22   FIRST, ONCE AGAIN, THE DEFENSE HAS INCORRECTLY STATED THAT THE

09:17AM 23   GOVERNMENT INTRODUCED BANK RECORDS THAT REVEALED OR, AS THE

09:17AM 24   COURT SAID, LET THE CAT OUT OF THE BAG THAT IT IS A MEDICAL

09:17AM 25   CANNIBUS BUSINESS.

09:17AM 1    IT'S EXHIBIT 33.  THE DEFENSE MOVED EXHIBIT 33 INTO

09:17AM 2    EVIDENCE THROUGH THE GOVERNMENT'S WITNESS, MS. KIKUGAWA.

09:17AM 3    THEY SHOULDN'T NOW GET TO, BECAUSE THEY OPENED THE DOOR,

09:17AM 4    ADDRESS SOMETHING THEY FEEL THEY NEED TO ADDRESS.

09:17AM 5    SECOND, I'M NOT SURE HOW MR. FORREST SATISFIES THE 401

09:17AM 6    ANALYSIS.  WHAT IS THE FACT THE JURY IS GOING TO BE TASKED WITH

09:17AM 7    DECIDING THAT MR. FORREST PROVIDES RELEVANT TESTIMONY ON?

09:17AM 8    MY RECOLLECTION IS THAT HE WAS NOT ON THE DEFENSE'S

09:18AM 9    WITNESS LIST, AND MY RECOLLECTION IS THAT HE WASN'T ON THE LIST

09:18AM 10   OF WITNESSES THAT THE COURT READ TO THE JURY DURING VOIR DIRE

09:18AM 11   AS POTENTIAL WITNESSES.

09:18AM 12   I DON'T KNOW WHAT IN FACT THE JURY IS GOING TO DELIBERATE

09:18AM 13   OVER AND BE ASSISTED BY THE TESTIMONY OF MR. FORREST AS THEY

09:18AM 14   THINK ABOUT THE EVIDENCE IN THE CASE.

09:18AM 15   WE HAD THIS DISCUSSION AT SIDE-BAR ON FRIDAY.

09:18AM 16   THE TESTIMONY OF MR. WARDA WAS RELEVANT BECAUSE MR. WARDA

09:18AM 17   DESCRIBED A NEGOTIATION THAT HE HAD WITH MR. KUBUROVICH TO LOAN

09:18AM 18   MONEY AND IN ORDER TO SECURE THE LOAN THAT HE NEGOTIATED WITH

09:18AM 19   MR. KUBUROVICH ABOUT RECEIVING SECURITY THROUGH REAL PROPERTY,

09:18AM 20   REAL PROPERTY THAT DIDN'T APPEAR ON THE BANKRUPTCY PETITION.

09:18AM 21   THAT'S WHAT THE GOVERNMENT INTENDS TO ARGUE.

09:18AM 22   HOW THE MONEY WAS SPENT?  MR. WARDA GAVE MONEY.  HOW THAT

09:18AM 23   MONEY WAS SPENT AND THE ROLE OF THE BUSINESS IN THE CASE IS

09:18AM 24   SOMETHING THAT THE DEFENSE HAS BEEN TRYING TO GET IN FRONT OF

09:18AM 25   THE JURY SINCE VOIR DIRE.

09:19AM 1      BUT NOT BECAUSE IT'S RELEVANT EVIDENCE, BUT BECAUSE THEY

09:19AM 2  BELIEVE IT'S A POWERFUL ARGUMENT FOR THEM, BUT THAT IS NOT THE

09:19AM 3  TEST.

09:19AM 4      MOREOVER, WE HAVE NOT RECEIVED JENCKS, AND THEY VIOLATED

09:19AM 5  THE COURT'S RULE ABOUT 24-HOUR NOTICE, AND THEY TOLD ME THIS

09:19AM 6  MORNING THAT THEY JUST DECIDED THIS MORNING THAT MR. FORREST

09:19AM 7  WAS GOING TO TESTIFY.  BUT IF THAT'S TRUE, HOW DO THEY KNOW

09:19AM 8  HE'S AVAILABLE TODAY?  THEY MUST HAVE HAD A CONVERSATION SO

09:19AM 9  THAT THEY KNOW HE'S A WITNESS THAT THEY COULD CALL TODAY.  WHEN

09:19AM 10  THAT CONVERSATION HAPPENED, THEY COULD HAVE PROVIDED NOTICE.

09:19AM 11      I THINK WE PROVIDED NOTICE TWO, THREE DAYS IN ADVANCE AT

09:19AM 12  TIMES FOR OUR WITNESSES.  WE'VE PROVIDED JENCKS SIGNIFICANTLY

09:19AM 13  IN ADVANCE.

09:19AM 14      WE DIDN'T RECEIVE JENCKS.  WHAT THEY TOLD US IS THAT YOU

09:19AM 15  HAVE THE ORIGINAL UNDERLYING CASE DISCOVERY SO YOU HAVE WHAT HE

09:19AM 16  WOULD SAY, BUT ALL THAT TELLS ME IS THAT HE DOESN'T HAVE

09:19AM 17  RELEVANT EVIDENCE.  HE IS PART OF THE STATE CASE, AND YOU'VE

09:19AM 18  HEARD FROM THE DEFENSE THAT THEIR PITCH IS GROUNDED IN

09:19AM 19  TESTIMONY THAT HE PROVIDED IN THE STATE CASE.

09:20AM 20      THIS SEEMS TO BE, ONCE AGAIN, AN OPPORTUNITY TO RELITIGATE

09:20AM 21  A SANTA CLARA COUNTY CASE HERE IN THE FEDERAL COURT AND NOT TO

09:20AM 22  INTRODUCE RELEVANT EVIDENCE FOR THE FEDERAL CASE.

09:20AM 23      THE COURT:  THANK YOU.

09:20AM 24      MS. GILG:  YOUR HONOR, FIRST OF ALL, I THINK THE

09:20AM 25  COURT RECOGNIZES THAT THIS MARIJUANA THING CUTS BOTH WAYS.

09:20AM 1   THERE'S SOME PEOPLE ON THE JURY WHO HATE MARIJUANA, ONE OF THE

09:20AM 2   ALTERNATES.  I MEAN, IT'S NOT LIKE WE'RE TRYING TO INFUSE

09:20AM 3   MARIJUANA INTO THIS CASE.

09:20AM 4        THE THING IS THAT THE GOVERNMENT SAYS, WELL, ALL WE PROVED

09:20AM 5   WAS THAT MR. WARDA TOOK OUT A LOAN, NEGOTIATED WITH

09:20AM 6   MR. KUBUROVICH, AND WHERE, WHERE IT WENT WAS IT WAS ALL

09:20AM 7   ABOUT -- THAT'S WHAT I'M TRYING TO REFUTE IS THAT IT WAS NOT A

09:20AM 8   LOAN FOR MR. KUBUROVICH'S BUSINESS.  IT WAS A LOAN THAT WENT TO

09:20AM 9   A BUSINESS THAT MY CLIENT WAS VERY INVOLVED IN AND THAT IN TURN

09:20AM 10  FROM GETTING THE MONEY FROM MR. WARDA, IT WAS THROUGH HER THAT

09:20AM 11  SHE LOANED THE MONEY TO MEDILEAF.

09:21AM 12       THE COURT:  I'M SORRY.  THE LOAN WAS FROM -- THE

09:21AM 13  LOAN -- MR. WARDA TESTIFIED THAT THE LOAN WAS NEGOTIATED

09:21AM 14  BETWEEN HE AND THE CODEFENDANT?

09:21AM 15       MS. GILG:  RIGHT.

09:21AM 16       THE COURT:  MR. KUBUROVICH?

09:21AM 17       MS. GILG:  RIGHT.

09:21AM 18       THE COURT:  SO YOU'RE GOING TO ASK MR. FORREST ABOUT

09:21AM 19  THAT TRANSACTION?

09:21AM 20       MS. GILG:  NO.  I'M GOING TO ASK WHETHER OR NOT THE

09:21AM 21  BOARD OF DIRECTORS WAS AWARE THAT A LOAN WAS EXTENDED TO NATA

09:21AM 22  OR TO MS. KUBUROVICH AND THAT SHE TURNED AROUND AND EXTENDED

09:21AM 23  THAT LOAN TO MEDILEAF AND WHETHER OR NOT SHE WAS ACTUALLY AN

09:21AM 24  ACTIVE MEMBER OF THAT ENTITY.

09:21AM 25       THE COURT:  SO YOU HAD NOTHING TO DO WITH

09:21AM 1      MR. WARDA'S LOAN.  YOU'RE NOT GOING TO ASK HIM ABOUT THAT.  HE

09:21AM 2      DOESN'T HAVE KNOWLEDGE ABOUT THAT.

09:21AM 3          WHAT HE HAS KNOWLEDGE ABOUT IS POTENTIALLY YOUR CLIENT'S

09:21AM 4      INVOLVEMENT WITH THE COMPANY.

09:21AM 5              MS. GILG:  WELL, ACTUALLY HE DOES HAVE KNOWLEDGE OF

09:21AM 6      THE WARDA LOAN BECAUSE HE DOES HAVE KNOWLEDGE OF THAT BECAUSE

09:21AM 7      IT WAS PART OF WHAT WAS GOING ON AT THE --

09:22AM 8              THE COURT:  SO YOU'RE GOING TO ASK HIM LIMITED

09:22AM 9      QUESTIONS JUST ABOUT YOUR CLIENT?

09:22AM 10             MS. GILG:  YES.

09:22AM 11             THE COURT:  AND HER INVOLVEMENT AS A MEMBER OF THE

09:22AM 12     BOARD OR WHATEVER SHE WAS?

09:22AM 13             MS. GILG:  WELL, THE DISCUSSIONS IN MAKING HER A

09:22AM 14     MEMBER, BUT SHE WORKED THERE.

09:22AM 15             THE COURT:  SO WHAT IS THE RELEVANCE OF HER GIVING A

09:22AM 16     LOAN OR NOT?

09:22AM 17             MS. GILG:  BECAUSE IT'S THE MONEY THAT CAME FROM THE

09:22AM 18     TWO LOANS THAT THE GOVERNMENT HAS PUT INTO EVIDENCE WAS LOANED

09:22AM 19     TO MEDILEAF AND YOU COULD TRACK, YOU COULD TRACK THAT MONEY.  I

09:22AM 20     MEAN, IT COMES TO HER AND THEN IT GOES TO MEDILEAF.

09:22AM 21         SO IN THE GOVERNMENT'S OWN EXHIBITS, THAT'S HOW THE MONEY

09:22AM 22     IS TRACED.

09:22AM 23         SO I CAN ARGUE JUST LIKE THEY CAN ARGUE THAT THE MONEY

09:22AM 24     WENT TO MR. KUBUROVICH.  I CAN ARGUE, NO, IT DIDN'T, IT WENT TO

09:22AM 25     MY CLIENT, AND THEN IT WENT TO MEDILEAF, AND MEDILEAF IS NOT

09:22AM 1    MR. KUBUROVICH'S BUSINESS.

09:22AM 2         THE COURT:  IT'S A LOAN THAT HE NEGOTIATED, THE

09:22AM 3    CODEFENDANT NEGOTIATED, WENT TO YOUR CLIENT?

09:22AM 4         MS. GILG:  THAT'S WHAT I CAN ARGUE FROM THE BANK

09:22AM 5    RECORDS.  I'M NOT GOING TO ASK MR.  --

09:23AM 6         THE COURT:  SO LET ME ASK YOU THIS, PUTTING THIS

09:23AM 7    EVIDENCE IN, I'M JUST ASKING THIS OBSERVATION, DOES THIS DO

09:23AM 8    VIOLENCE TO YOUR MOTION, YOUR 29 MOTION AS TO I THINK IT'S

09:23AM 9    COUNT TWO OF YOUR CLIENT?  IT SEEMS LIKE THIS INTERJECTS YOUR

09:23AM 10   CLIENT A LITTLE MORE INVOLVED THAN SHE MIGHT ALREADY BE.  IS

09:23AM 11   THAT JUST -- I'M JUST --

09:23AM 12        MS. GILG:  INVOLVED IN MEDILEAF, YOUR HONOR, BUT NOT

09:23AM 13   INVOLVED IN FILING OR CONCEALING ANYTHING WHEN THE BANKRUPTCY

09:23AM 14   WAS FILED IN 2010.

09:23AM 15      I MEAN, THEY'RE TWO --

09:23AM 16        THE COURT:  I DON'T WANT TO RE-VISIT THAT ISSUE NOW,

09:23AM 17   BUT IT SEEMS LIKE IT CONNECTS YOUR CLIENT A LITTLE BIT MORE.

09:23AM 18   MAYBE I'M NOT LOOKING AT IT PROPERLY.

09:23AM 19        MS. GILG:  YOUR HONOR, MAY -- MAY I FINISH,

09:23AM 20   MR. NICK, ONE MOMENT?

09:23AM 21      YOUR HONOR, FIRST OF ALL, THE RULE 29, WE'VE DONE IT AT

09:23AM 22   THE CLOSE OF THE GOVERNMENT'S CASE SO I'D LIKE TO KEEP IT LIKE

09:23AM 23   THAT FOR NOW.

09:23AM 24        THE COURT:  SURE.

09:23AM 25        MS. GILG:  JUST TO MAKE THAT CLEAR.  BUT AGAIN, THIS

09:23AM 1    IS ABOUT HER INVOLVEMENT, MY CLIENT'S INVOLVEMENT WITH MEDILEAF

09:24AM 2    AND WITH THE LOANS, NOT WITH WHAT WAS HAPPENING IN THE

09:24AM 3    BANKRUPTCY COURT, WHICH I THINK COUNT TWO REALLY GOES TO WHAT

09:24AM 4    PHYSICALLY WAS DONE IN THE BANKRUPTCY COURT.

09:24AM 5         THE COURT:  FAIR ENOUGH.

09:24AM 6      MR. NICK.

09:24AM 7         MR. NICK:  YES, YOUR HONOR.  WE DID NOT INTEND TO

09:24AM 8    CALL MR. FORREST, AND I DIDN'T INTEND TO CALL HIM UNTIL I

09:24AM 9    RECEIVED A CALL ON SUNDAY, AND I DISCUSSED IT WITH MS. GILG.

09:24AM 10   AND IT WAS ON SUNDAY THAT MR. FORREST WAS IN FACT CONTACTED TO

09:24AM 11   FIND OUT IF HE IS AVAILABLE.

09:24AM 12     SO THIS ALL TRANSPIRED OVER THE WEEKEND.  WHAT REALLY

09:24AM 13   BROUGHT THIS TO LIGHT, YOUR HONOR, AND WHY THIS EVIDENCE IS

09:24AM 14   RELEVANT ON ANOTHER PART THAT HAS NOT BEEN DISCUSSED, BUT LET

09:24AM 15   ME DISCUSS THIS PART AS WELL WHY MS. KUBUROVICH'S INVOLVEMENT

09:24AM 16   WITH THE BUSINESS, WHICH CAN BE PRESENTED JUST LIKE THAT, WAS

09:24AM 17   SHE INVOLVED IN MEDILEAF, PERIOD.  IT DOESN'T NEED TO BE

09:24AM 18   DISCUSSED WHETHER IT WAS CANNIBIS AND WHAT IT ALL INVOLVED IS

09:25AM 19   THAT THE GOVERNMENT'S COUNT ONE IS THAT A SCHEME WAS

09:25AM 20   PERPETRATED TO HIDE ADDRESSES FROM THE TRUSTEE, AND THAT PART

09:25AM 21   OF THAT SCHEME CAN BE SEEN WHEN MR. KUBUROVICH GOES OUT, DOES

09:25AM 22   ALL OF THE NEGOTIATING FOR THE LOAN FOR A BUSINESS THAT THE

09:25AM 23   WITNESS BELIEVED WAS HIS WITHOUT REALLY IDENTIFYING THE

09:25AM 24   STRUCTURE OF THE BUSINESS, AND THAT HIS DAUGHTER WAS MERELY

09:25AM 25   SOMEBODY WHO JUST SHOWED UP AND SIGNED THE PAPERS, AND THAT

09:25AM 1    THEN MY CLIENT ENDS UP TAKING ALL OF THAT MONEY TO DO WHATEVER

09:25AM 2    HE WANTS WITH IT, WHICH IS EVIDENCE THAT SOME SORT OF SCHEME

09:25AM 3    WAS ALREADY AFOOT.

09:25AM 4        THAT'S THE GOVERNMENT'S CASE.

09:25AM 5        MR. FORREST DIRECTLY COUNTERS THAT EVIDENCE, YOUR HONOR,

09:25AM 6    WITH RESPECT TO THAT ASPECT OF THE CASE.  WHY?  BECAUSE HE,

09:25AM 7    NUMBER ONE, WILL EXPLAIN, WELL, HOW CAN IT BE A SHAM IF, IN

09:26AM 8    FACT, MS. KUBUROVICH IS ON THE BOARD OR WAS DISCUSSED ON BEING

09:26AM 9    ON THE BOARD, IS ACTIVELY INVOLVED IN THE BUSINESS, IS THERE

09:26AM 10   EVERY DAY?  SHE DISCUSSED THE LOAN TO THE BUSINESS WITH US.

09:26AM 11   SHE'S THE ONE THAT AUTHORIZED IT AND SIGNED THE PAPERS.

09:26AM 12       THAT, I THINK, YOUR HONOR, DISINTEGRATES AND GIVES THE

09:26AM 13   GOVERNMENT'S THEORY LESS WEIGHT BECAUSE A NATURAL OBJECTIVE

09:26AM 14   OBSERVER WOULD NATURALLY SCRATCH THEIR HEAD AND GO, WAIT A

09:26AM 15   MINUTE, IT'S NOT JUST THE DAD WHO IS CALLING THE SHOTS, THE

09:26AM 16   DAUGHTER SEEMS TO BE INVOLVED IN THIS BUSINESS AND BEING

09:26AM 17   ACTIVELY INVOLVED IN SAYING, YES, LET ME LOAN THIS MONEY TO

09:26AM 18   THIS BUSINESS SO THAT IT CAN GET BY ITS INITIAL STARTUP HARD

09:26AM 19   TIMES.

09:26AM 20       SECONDLY, YOUR HONOR, WHAT REALLY INSPIRED THE CALLING OF

09:26AM 21   MR. FORREST -- AND FIRST OF ALL, LET ME INDICATE, YOUR HONOR,

09:27AM 22   IN THE GOVERNMENT'S BANK RECORDS THAT THEY INTRODUCED OF

09:27AM 23   SCHEDULES, IT DOES NOTE THAT MR. NEIL FORREST IS ONE OF THE

09:27AM 24   SIGNORS ON THE PINNACLE ACCOUNTS THAT BELONG TO MEDILEAF.

09:27AM 25       SO THE GOVERNMENT -- IT'S NOT LIKE THEY NEVER HEARD OF

09:27AM 1     THEM.  IT IS IN THEIR OWN DOCUMENTS.  IT IDENTIFIES HIM AS A

09:27AM 2     SIGNOR FOR THE ACCOUNTS.

09:27AM 3         BUT I THINK I MENTIONED THIS BEFORE, YOUR HONOR, IS THERE

09:27AM 4     IS ALSO A THEORY BY THE GOVERNMENT THAT THIS BUSINESS OF

09:27AM 5     MEDILEAF IS STARTED AFTER THE BANKRUPTCY PROCEEDINGS ARE

09:27AM 6     COMMENCED, AND THAT MR. KUBUROVICH SOMEHOW CONTROLLED ALL OF

09:27AM 7     THIS MONEY, EVEN THOUGH THEY INDICATED THAT THERE ARE OTHER

09:27AM 8     SIGNORS, THEY HAVE LEFT THIS SPECTER IN THE AIR THAT ALL OF

09:27AM 9     THESE CHECKS OR WITHDRAWALS THAT GO TO ANYBODY, WHOEVER IT MAY

09:27AM 10    BE, IS FOR MY CLIENT'S PERSONAL EXPENDITURES.

09:27AM 11        THE COURT:  WHAT IS INTERESTING TO ME, AND MS. GILG

09:28AM 12    DID NOT TALK ABOUT THE NOTICE WHEN SHE WAS SPEAKING, 24 HOURS.

09:28AM 13    AND THIS IS POWERFUL EVIDENCE, AS YOU SUGGEST, AND MS. GILG

09:28AM 14    SUGGESTS.  HOW COULD YOU NOT KNOW THAT THIS WITNESS HAD THIS

09:28AM 15    INFORMATION AND WOULD SO TESTIFY SUCH THAT YOU COULDN'T GIVE

09:28AM 16    NOTICED WITHIN 24 HOURS?

09:28AM 17        MR. NICK:  WELL, I DID KNOW, YOUR HONOR, BUT I

09:28AM 18    DIDN'T FORM THE INTENT ON CALLING THE WITNESS OR WAS THERE ANY

09:28AM 19    NEED FOR IT UNTIL LAST NIGHT OR YESTERDAY IS WHAT I'M TRYING TO

09:28AM 20    SAY.

09:28AM 21        AND LIKE I SAID, MR. FORREST'S NAME IS ON THE SIGNATURE

09:28AM 22    CARD.  MS. KIKUGAWA IDENTIFIED HIM AS ONE OF THE SIGNORS FOR

09:28AM 23    THE ACCOUNT.

09:28AM 24        SO WHAT HAPPENS, YOUR HONOR, IS THAT THE GOVERNMENT RAISES

09:28AM 25    THIS SPECTER OF, WELL, MR. KUBUROVICH IS ON THE ACCOUNT, AND

09:28AM 1    THERE'S A BUNCH OF EXPENDITURES AND SOME OF THEM LOOK LIKE

09:28AM 2    PERSONAL EXPENSES WITHOUT INDICATING HOW OR WHERE IT WENT.  AND

09:28AM 3    SO THAT, YOUR HONOR, PROMPTS THE NEED TO CLARIFY THE RECORD AND

09:28AM 4    THE CALLS THAT CAN SAY, THAT IS NOT CORRECT, I CONTROLLED ALL

09:29AM 5    OF THE EXPENSES WITH THE BOARD, ALL OF THESE EXPENSES WERE

09:29AM 6    PREAUTHORIZED, ALL OF THESE EXPENSES THAT ARE LISTED IN THE

09:29AM 7    SCHEDULES WERE FOR THE MEDILEAF BUSINESS, AND I CAN IDENTIFY --

09:29AM 8    MEANING, I'M JUST SPEAKING AS A THIRD PERSON IF I WAS

09:29AM 9    MR. FORREST, THAT HE WILL BE ABLE TO IDENTIFY MANY OF THESE

09:29AM 10   EXPENDITURES.

09:29AM 11           THE COURT:  HOW LONG IS THIS TESTIMONY GOING TO

09:29AM 12   REQUIRE, DO YOU THINK?

09:29AM 13           MR. NICK:  I WOULD ANTICIPATE ABOUT A HALF HOUR.

09:29AM 14           MR. SIMEON:  YOUR HONOR, THE GOVERNMENT WAS VERY

09:29AM 15   CAREFUL ON THE DIRECT EXAMINATION OF MS. KIKUGAWA TO NOT IMPLY

09:29AM 16   HOW THESE FUNDS WERE BEING USED.  SHE STATED VERY CLEARLY THAT

09:29AM 17   SHE WAS TRACING THE MOVEMENT OF FUNDS, AND, IN FACT, PRIOR TO

09:29AM 18   HER TESTIMONY THAT DAY OR THE PRIOR DAY THE DEFENSE COUNSEL

09:29AM 19   SAID, WELL, IF THE GOVERNMENT WANTS TO INTRODUCE THESE CASH

09:29AM 20   WITHDRAWALS IN MAY OR APRIL IN 2010, THAT WE, IN THEIR OPINION,

09:29AM 21   CAN OPEN THE DOOR EXPLAINING HOW THAT CASH WAS USED.  WE DIDN'T

09:30AM 22   GO THERE, AND WE STOPPED WITH THE PURCHASE OF THE EAGLE RIDGE

09:30AM 23   HOUSE AND THE TRACING.  WE DIDN'T DISCUSS ON DIRECT EXAMINATION

09:30AM 24   ANY OF THOSE CASH WITHDRAWALS.

09:30AM 25           AND AGAIN, MS. KIKUGAWA MADE IT CLEAR THAT ALL SHE WAS

09:30AM 1    DOING WAS TRACING THE MONEY FROM A TO B TO C, AND SHE EVEN

09:30AM 2    LISTED ON THE SCHEDULE HERE ARE THE ACCOUNTS WHERE

09:30AM 3    MR. KUBUROVICH WAS THE SIGNATORY, AND HERE'S THE ACCOUNTS WHERE

09:30AM 4    HE WAS NOT.  THAT WAS CLEAR FROM THEIR SCHEDULES.

09:30AM 5        IT WAS ON CROSS-EXAMINATION THAT DEFENSE STARTED TALKING

09:30AM 6    ABOUT WHO WAS SIGNING THESE CHECKS AND WHERE THIS MONEY WENT

09:30AM 7    AND HOW IT WAS USED.

09:30AM 8        AND AGAIN, THEY'RE TRYING TO USE INFORMATION THAT THEY

09:30AM 9    ELICITED AND NOW SAY THEY WANT TO REBUT IT.  IT DOESN'T MAKE

09:30AM 10   SENSE.

09:30AM 11        MS. GILG:  YOUR HONOR, I WANT TO REFER THE COURT TO

09:30AM 12   EXHIBIT 258-215 WHICH IS ENTITLED "GOYKO KUBUROVICH CREDIT CARD

09:30AM 13   AND BANK ACCOUNT BALANCES MARCH OF 2009," AND IT HAS THE

09:31AM 14   $775,000.  AND I THINK MR. NICK WAS LIKE, WELL, THAT'S MONEY

09:31AM 15   THAT HE HAS ACCESS TO.

09:31AM 16        MR. NICK:  THAT WAS THE CHART THAT THE GOVERNMENT

09:31AM 17   PRESENTED AS TO ALL OF THE ACCOUNTS CONTROLLED BY

09:31AM 18   MR. KUBUROVICH.

09:31AM 19        MS. GILG:  AND THE IMPLICATION WAS THAT THIS WAS

09:31AM 20   CLEARLY MR. KUBUROVICH'S MONEY AND SO EVEN IF --

09:31AM 21        THE COURT:  THIS WAS INTRODUCED ON FRIDAY, I

09:31AM 22   BELIEVE.

09:31AM 23        MR. NICK:  WHEN AGENT KIKUGAWA WAS TESTIFYING.

09:31AM 24        MS. GILG:  AND SHE TESTIFIED.

09:31AM 25        THE COURT:  I ASKED THAT BECAUSE, AGAIN, HAD YOU

09:31AM 1    RAISED THIS WE WOULD HAVE HAD RESOLUTION ABOUT THIS 24-HOUR

09:31AM 2    NOTICE.  THAT'S MY CONCERN HERE IS THAT THIS IS NOW COMING UP

09:31AM 3    ON MONDAY MORNING, AND I UNDERSTAND YOU JUST THOUGHT OF THIS

09:31AM 4    YESTERDAY, YOU CONTACTED THE WITNESS YESTERDAY SOME TIME, I

09:31AM 5    DON'T KNOW WHEN YOU -- IT SOUNDS LIKE YOU CONTACTED THE

09:31AM 6    GOVERNMENT OR SPOKE TO THE GOVERNMENT THIS MORNING HERE IN

09:31AM 7    COURT ABOUT THIS.

09:32AM 8         MS. GILG:  AND, YOUR HONOR, MR. NICK AND I WERE

09:32AM 9    DISCUSSING IT, AND IT WAS A SITUATION WHERE HIS POWER WAS OUT,

09:32AM 10   WE WERE GETTING A LOT OF DISCUSSION, AND THERE WAS TEXT.  IT

09:32AM 11   JUST WASN'T.  I GOT THE FEELING HE WAS OPPOSED TO IT, AND

09:32AM 12   THAT'S WHY I DIDN'T WANT TO DISCLOSE SOMETHING THAT MY

09:32AM 13   COLLEAGUE WAS GOING TO SAY I OPPOSE THAT.

09:32AM 14        SO WHEN I WENT BACK THERE THIS MORNING AND I TALKED TO HIM

09:32AM 15   HE SAID, YEAH, AND THEN I CAME RIGHT OUT AND SAID SOMETHING.

09:32AM 16        AND I UNDERSTAND, YOUR HONOR.  BUT THIS IS THE DEFENSE.

09:32AM 17   YOU KNOW, THINGS COME UP.  WITNESSES COME FORWARD.

09:32AM 18        I NEVER THOUGHT OF MR. FORREST AS BEING ABLE TO PROVIDE

09:32AM 19   THIS INFORMATION UNTIL DISCUSSING IT WITH MR. NICK AND I SAID,

09:32AM 20   OH, YEAH, LET'S SEE IF WE CAN GET A HOLD OF HIM.

09:32AM 21        SO IT'S NOT LIKE I'VE KEPT THIS WITNESS HIDDEN.  AND IT'S

09:32AM 22   VERY LIMITED TO INFORMATION THAT THE GOVERNMENT KNOWS ABOUT.

09:33AM 23   THEY KNOW ABOUT THIS WITNESS.  HE'S NOT A SURPRISE WITNESS.

09:33AM 24   HE'S NOT -- YOU KNOW, HIS EXISTENCE IS NOT A SURPRISE, AND

09:33AM 25   WE'VE MADE IT VERY CLEAR WHAT WE'D LIKE TO ASK HIM.  IT WILL BE

09:33AM 1    VERY --

09:33AM 2              THE COURT:  HAVE YOU IDENTIFIED THE DOCUMENTATION

09:33AM 3    THAT YOU INTEND TO USE IN EXAMINING THIS WITNESS?

09:33AM 4              MS. GILG:  YES.  IT WOULD BE -- IT'S ONE OF THE

09:33AM 5    DEFENSE INITIAL EXHIBITS WHICH WAS EXHIBIT F AS IN FRANK WHICH

09:33AM 6    I BELIEVE HAS BEEN ADMITTED BY STIPULATION.  AND THAT WOULD BE

09:33AM 7    THE ONLY EXHIBIT THAT I WOULD ASK HIM ABOUT.  AND I'M NOT GOING

09:33AM 8    THROUGH -- I HAVE NO INTENTION OF GOING THROUGH THE ACTUAL

09:33AM 9    FINANCES.  I JUST WANT TO ASK WAS THIS A BUSINESS THAT MY

09:33AM 10   CLIENT WAS INVOLVED IN?  DID SHE MAKE THIS LOAN?  AND WAS SHE

09:33AM 11   AN ACTIVE MEMBER OF THE ENTITY?

09:33AM 12             THE COURT:  OKAY.  MR. NICK, WHAT ARE YOU GOING TO

09:33AM 13   DO WITH THIS WITNESS?

09:33AM 14             MR. NICK:  YES, YOUR HONOR.  I WOULD SIMPLY ASK THE

09:33AM 15   WITNESS HOW ARE THE EXPENSES OF THE BUSINESS CONTROLLED?  I

09:34AM 16   WOULD ASK THE WITNESS WHETHER MR. KUBUROVICH WAS KNOWN TO WRITE

09:34AM 17   CHECKS TO PAY FOR THE EXPENSES AND WHETHER HE'S EVER BEEN KNOWN

09:34AM 18   TO USE ANY OF THE BUSINESS'S MONEY FOR HIS OWN PERSONAL

09:34AM 19   FINANCES?

09:34AM 20             THE COURT:  WHETHER THIS WITNESS HAS PERSONAL

09:34AM 21   KNOWLEDGE OF THAT?

09:34AM 22             MR. NICK:  HE WILL, YOUR HONOR.  HE WAS IN ESSENCE A

09:34AM 23   BOARD OF DIRECTOR.  ALL FINANCIAL DECISIONS WERE REVIEWED BY

09:34AM 24   HIM.  HE WORKED VERY CLOSELY HAND IN HAND WITH MR. KUBUROVICH.

09:34AM 25   HE WAS PRESENT AT THAT BUSINESS ALMOST ON A DAILY BASIS AND

09:34AM 1    REVIEWED THE BOOKS, DISCUSSED IT WITH THE BOOKKEEPER, AND IS

09:34AM 2    GOING TO HAVE INTIMATE KNOWLEDGE OF THE SUBJECT, YOUR HONOR.

09:34AM 3        THE COURT:  HAVE YOU PROVIDED SUFFICIENT INFORMATION

09:34AM 4    SO THAT THE GOVERNMENT COULD DO A RECORDS CHECK ON THIS WITNESS

09:34AM 5    TO SEE IF THERE'S ANY IMPEACHMENT INFORMATION?

09:34AM 6        MR. NICK:  AS I SAID, YOUR HONOR, HIS NAME APPEARS

09:34AM 7    ON THE GOVERNMENT'S EXHIBIT AS ONE OF THE SIGNORS WHO HAS

09:34AM 8    AUTHORITY OVER THE PINNACLE ACCOUNTS FOR MEDILEAF, AND SO TO

09:35AM 9    OBLIQUELY ANSWER YOUR QUESTION, YOUR HONOR, NO, BUT I AM PRETTY

09:35AM 10   CONFIDENT THAT THE GOVERNMENT HAS ALL OF THE INFORMATION THAT

09:35AM 11   THEY NEED TO DO THAT.

09:35AM 12       HOWEVER, IF THEY NEED ANYTHING, I'LL MEET AND CONFER WITH

09:35AM 13   THEM.  I CAN PROVIDE DATES OF BIRTH AND THINGS OF THAT NATURE.

09:35AM 14       MS. GILG:  I BELIEVE THERE'S A RAP SHEET OF

09:35AM 15   NEIL FORREST IN THE DISCOVERY THAT THEY PROVIDED THAT WAS

09:35AM 16   PRODUCED AT THE MEDILEAF TRIAL, BUT THAT WOULD ONLY GO UP TO

09:35AM 17   2016, I SUPPOSE.

09:35AM 18       THE COURT:  OKAY.  AND LET ME JUST ASK, WITHOUT

09:35AM 19   REVIEWING, IF YOUR CLIENTS ARE GOING TO TESTIFY OR NOT, I'M

09:35AM 20   JUST CURIOUS, DOES THE DEFENSE HAVE ANY OTHER EVIDENCE TO

09:35AM 21   OFFER?  I'M JUST TRYING TO LOOK AT OUR SCHEDULE.

09:35AM 22       MS. GILG:  YOUR HONOR, I WOULD -- I AM NOT INCLINED

09:35AM 23   TO CALL MY CLIENT TO TESTIFY.

09:35AM 24       THE COURT:  I'M NOT ASKING YOU TO REVEAL THAT AT

09:35AM 25   THIS POINT.  I SPECIFICALLY SAID WITHOUT INFORMING ME IF YOUR

09:35AM 1    CLIENT IS GOING TO TESTIFY.  I'M JUST CURIOUS ABOUT OTHER

09:35AM 2    EXHIBITS AND WITNESSES THAT MIGHT COME UP.

09:36AM 3            MR. NICK:  OTHER THAN MY CLIENT, I DO NOT EXPECT ANY

09:36AM 4    OTHER WITNESSES OR ANY OTHER EXHIBITS.

09:36AM 5            THE COURT:  OKAY.

09:36AM 6            MS. GILG:  YOUR HONOR, I HAVE AN UPDATED EXHIBIT

09:36AM 7    BINDER THAT I INCLUDED THE ONES THAT THE COURT HAS ALREADY

09:36AM 8    EXCLUDED, AND I NOTED WHICH ONES THOSE WERE, AND THEN I JUST

09:36AM 9    HAVE JUST THE TWO, O AND P, WHICH I DID PROVIDE TO COUNSEL

09:36AM 10   YESTERDAY WITH AN UPDATED MEMO ON THE NEXT WITNESS, MR. PARR,

09:36AM 11   AND I DIRECTED THEM TO.

09:36AM 12           THE COURT:  OKAY.  IS MR. PARR HERE?

09:36AM 13           MS. GILG:  PROBABLY.  HE'S PROBABLY OUT IN THE HALL.

09:36AM 14           THE COURT:  OKAY.  THANK YOU.

09:36AM 15       AS TO MR. FORREST TESTIFYING, ANYTHING FURTHER?

09:36AM 16           MR. SCHENK:  SUBMIT IT, YOUR HONOR.

09:36AM 17           THE COURT:  ALL RIGHT.  THANK YOU.  I WILL PERMIT

09:36AM 18   MR. FORREST TO TESTIFY PURSUANT TO THE LIMITATIONS THAT WE'VE

09:36AM 19   DISCUSSED THIS MORNING, MS. GILG AND MR. NICK, I'M GOING TO

09:36AM 20   ALLOW HIM TO TESTIFY ON THOSE SPECIFIC TOPICS.  YOU HEARD ME

09:37AM 21   EXPRESS MY THOUGHTS ON THE MEDILEAF AND ALL OF THAT.  I REALLY

09:37AM 22   DON'T WANT THE JURY TO BE INFECTED WITH ANY INFORMATION LIKE

09:37AM 23   THAT.

09:37AM 24       AS MS. GILG POINTS OUT, THERE MAY BE POTENTIAL JURORS WHO

09:37AM 25   HAVE EXPRESSED OPINIONS ON THAT, MARIJUANA, AND I KNOW THE JURY

09:37AM 1    WILL FOLLOW AND THE PRESUMPTION IS THAT THEY'LL FOLLOW THE

09:37AM 2    INSTRUCTIONS OF THE COURT, BUT NONETHELESS I WANT TO BE

09:37AM 3    PROPHYLACTIC ABOUT KEEPING ANY ISSUES THAT ARE NOT RELEVANT

09:37AM 4    FROM THEM.  SO THAT'S WHY I'M CONCERNED ABOUT THIS MARIJUANA

09:37AM 5    ISSUE.

09:37AM 6         ALL RIGHT.

09:37AM 7              MS. GILG:  AND, YOUR HONOR, SO IF WE COULD JUST HAVE

09:37AM 8    A MOMENT BEFORE MR. FORREST GETS ON THE STAND SO WE CAN MAKE IT

09:37AM 9    VERY CLEAR TO HIM.

09:37AM 10             THE COURT:  OF COURSE.  WHY DON'T WE BRING THE NEXT

09:37AM 11   WITNESS IN.  I KNOW WE WANTED TO GET A WAIVER, AN

09:37AM 12   ATTORNEY-CLIENT PRIVILEGE WAIVER OUTSIDE OF THE PRESENCE OF THE

09:37AM 13   JURY.

09:37AM 14        LET'S DO THAT NOW.

09:37AM 15             MR. SIMEON:  YOUR HONOR, COULD WE TAKE A SHORT BREAK

09:37AM 16   BEFORE WE START?

09:37AM 17             THE COURT:  WE'RE JUST GOING TO DO THIS AND THEN

09:37AM 18   WE'RE GOING TO TAKE A BREAK.

09:38AM 19             MR. SIMEON:  RIGHT.

09:38AM 20             THE COURT:  OKAY.

09:38AM 21        (PAUSE IN PROCEEDINGS.)

09:38AM 22             THE COURT:  ALL RIGHT.  SIR, IF YOU COULD PLEASE

09:38AM 23   COME FORWARD.  I'LL ASK YOU TO STAND AT THE LECTERN.  WE'RE NOT

09:38AM 24   GOING TO CALL YOU TO THE STAND YET.

09:38AM 25             THE WITNESS:  OKAY.

09:38AM 1     THE COURT:  AND I'M GOING TO HAVE YOU SWORN IN JUST

09:38AM 2  A MOMENT.  LET'S HAVE YOU SWORN NOW.  I'LL DO IT AGAIN IN FRONT

09:38AM 3  OF THE JURY, BUT LET'S HAVE YOU SWORN NOW, PLEASE.

09:38AM 4     **(DEFENDANTS' WITNESS, SHAWN PARR, WAS SWORN.)**

09:38AM 5     THE WITNESS:  I DO.

09:38AM 6     THE CLERK:  THANK YOU.

09:38AM 7     THE COURT:  THANK YOU, SIR.  COULD YOU PLEASE STATE

09:38AM 8  YOUR NAME AND SPELL IT.

09:38AM 9     THE WITNESS:  SHAWN PARR.  S-H-A-W-N.  LAST NAME

09:38AM 10  PARR.  P-A-R-R.

09:38AM 11     THE COURT:  THANK YOU.  AND YOU'RE ABOUT TO BE

09:39AM 12  CALLED AS A WITNESS BY THE DEFENSE IN THIS CASE.  IT'S MY

09:39AM 13  UNDERSTANDING THAT YOU REPRESENTED ONE OF THE DEFENDANTS IN

09:39AM 14  THIS CASE?

09:39AM 15     THE WITNESS:  I DID, YOUR HONOR.

09:39AM 16     THE COURT:  MS. KUBUROVICH?

09:39AM 17     THE WITNESS:  I DID.

09:39AM 18     THE COURT:  AND IT'S MY UNDERSTANDING, MS. GILG,

09:39AM 19  YOU'RE GOING TO CALL THIS WITNESS?

09:39AM 20     MS. GILG:  CORRECT.

09:39AM 21     THE COURT:  AND THERE'S SOME CONCERNS THAT THE COURT

09:39AM 22  HAS ABOUT ANY ATTORNEY-CLIENT PRIVILEGE ISSUE THAT MIGHT BE

09:39AM 23  RAISED.  IT'S MY UNDERSTANDING, SIR, THAT MS. GILG HAS TALKED

09:39AM 24  TO HER CLIENT, YOUR FORMER CLIENT.

09:39AM 25     LET ME ASK YOU, DO YOU CURRENTLY REPRESENT MS. KUBUROVICH?

09:39AM 1        THE WITNESS:  I DO NOT.

09:39AM 2        THE COURT:  AND IT'S MY UNDERSTANDING THAT

09:39AM 3   MS. KUBUROVICH IS -- WILL WAIVE ANY ATTORNEY-CLIENT PRIVILEGE

09:39AM 4   IN REGARDS TO TESTIMONY FROM THIS WITNESS AND HIS FORMER

09:39AM 5   CLIENT, MS. GILG?

09:39AM 6        MS. GILG:  THAT'S CORRECT, YOUR HONOR.

09:39AM 7        THE COURT:  AND, MS. KUBUROVICH, DO YOU UNDERSTAND

09:39AM 8   THAT YOU ARE THE HOLDER OF THE ATTORNEY-CLIENT PRIVILEGE; THAT

09:39AM 9   IS, YOU HAVE THE ABILITY TO OBJECT TO ANY TESTIMONY BY ANY

09:40AM 10  ATTORNEY WHO HAS PREVIOUSLY REPRESENTED YOU IN THAT CAPACITY AS

09:40AM 11  THAT'S PRIVILEGED ATTORNEY-CLIENT INFORMATION THAT CANNOT BE

09:40AM 12  REVEALED ABSENT A WAIVER?

09:40AM 13     DO YOU UNDERSTAND THAT?

09:40AM 14       THE DEFENDANT:  I DO, YOUR HONOR.

09:40AM 15       THE COURT:  AND YOU'VE HAD SUFFICIENT TIME TO

09:40AM 16  DISCUSS THAT WITH YOUR ATTORNEY, MS. GILG?

09:40AM 17       THE DEFENDANT:  YES, YOUR HONOR.

09:40AM 18       THE COURT:  AND AT THIS TIME DO YOU WISH TO WAIVE,

09:40AM 19  GIVE UP, WAIVE THAT PRIVILEGE SUCH THAT YOUR FORMER ATTORNEY

09:40AM 20  CAN BE ASKED QUESTIONS ABOUT YOUR COMMUNICATIONS WITH HIM?

09:40AM 21       THE DEFENDANT:  YES, YOUR HONOR.

09:40AM 22       THE COURT:  DO YOU HAVE ANY QUESTIONS ABOUT THAT?

09:40AM 23       THE DEFENDANT:  NO.

09:40AM 24       THE COURT:  ALL RIGHT.  SIR, DOES THAT -- DO YOU

09:40AM 25  HAVE ANY QUESTIONS?

09:40AM 1          THE WITNESS:  I DO NOT, YOUR HONOR.  THAT SATISFIES

09:40AM 2   ME.

09:40AM 3          THE COURT:  ALL RIGHT.  THANK YOU.  WE'LL BE IN

09:40AM 4   RECESS FOR ABOUT TEN MINUTES, AND THEN WE'LL CALL OUR JURY IN.

09:40AM 5   AND WE'LL COME BACK, SIR, AND WE'LL HAVE YOU RE-SWORN IN.

09:40AM 6          THE WITNESS:  THANK YOU.

09:40AM 7          THE CLERK:  COURT IS IN RECESS.

09:40AM 8      (RECESS FROM 9:40 A.M. UNTIL 9:53 A.M.)

09:53AM 9      (JURY IN AT 9:53 A.M.)

09:53AM 10         THE COURT:  WE'RE BACK ON THE RECORD IN THE

09:53AM 11  KUBUROVICH MATTER.  ALL COUNSEL ARE PRESENT, AND THE DEFENDANTS

09:53AM 12  ARE PRESENT, AND THE JURY IS PRESENT.

09:53AM 13     GOOD MORNING, LADIES AND GENTLEMEN.  THANK YOU FOR YOUR

09:53AM 14  PRESENCE.

09:53AM 15     LET ME ASK -- THE GOVERNMENT HAS RESTED.  LET ME ASK

09:53AM 16  MR. NICK, DO YOU HAVE ANY EVIDENCE TO OFFER?

09:54AM 17         MR. NICK:  I DO, YOUR HONOR.

09:54AM 18         THE COURT:  WOULD YOU LIKE TO MAKE YOUR OPENING

09:54AM 19  STATEMENT AT THIS POINT?

09:54AM 20         MR. NICK:  YES, YOUR HONOR.  IT WILL BE VERY BRIEF.

09:54AM 21  THANK YOU.

09:54AM 22     **(COUNSEL FOR DEFENDANT GOYKO KUBUROVICH GAVE THEIR OPENING**

09:54AM 23  **STATEMENT.)**

09:54AM 24         MR. NICK:  OKAY.  GOOD MORNING.  I JUST WANTED TO

09:54AM 25  REMIND YOU THAT THE OPENING STATEMENT IS BASICALLY THE LAWYERS

PRESENTING KIND OF A ROADMAP OR AN OUTLINE OR A SUMMARY OF THE

EVIDENCE AND HOW IT'S USEFUL FOR YOU.  I WILL REMIND YOU ALSO

AT THE VERY END OF THE CASE WE GET TO DO OUR PERSUADING OR OUR

ARGUMENT WHERE THERE'S A LITTLE BIT MORE DISCUSSION AS TO WHAT

WE BELIEVE THE EVIDENCE SHOWS OR WHETHER THERE'S A FAILURE TO

PROVE ANY PARTICULAR ELEMENT OF THIS CASE.

SO WHAT I KIND OF WANTED TO REMIND YOU SO YOU CAN

UNDERSTAND THIS PORTION OF THE CASE IS TO KIND OF GENERALLY

SPEAKING WITHOUT GETTING INTO THE NITTY GRITTY DETAILS AND

RULES WHAT THE OFFENSES ARE THAT ARE CHARGED HERE, ALL RIGHT?

AND THE FIRST OFFENSE, GENERALLY SPEAKING, ALLEGES THAT

MR. KUBUROVICH, MY CLIENT, FORMED SOME SORT OF A SCHEME, SOME

SORT OF DEVICE OR A PLAN ALMOST TWO YEARS PRIOR TO THE

BANKRUPTCY PETITION BEING FILED TO ACTUALLY AT SOME POINT IN

THE FUTURE PROCEED TO BANKRUPTCY COURT AND BE ABLE TO HIDE

THOSE ASSETS.

YOU'VE SEEN SO FAR THAT THE GOVERNMENT'S CASE, WITH

RESPECT TO THAT, IS CENTERED AROUND THE TRANSFER OF MONEY,

$750,000 IN SEVERAL DEPOSITS AND TRANSFERS TO HIS DAUGHTER, AND

IT WAS DONE I THINK IT'S LIKE 22 MONTHS BEFORE THE BANKRUPTCY.

IT'S JUST SHORT OF TWO YEARS.

AND SO WHAT IN ESSENCE THE GOVERNMENT IS CLAIMING WITH

THAT, OR THEIR CASE IS THAT THAT WAS THE SCHEME.  THAT HE KNEW

ALREADY THAT HE WAS GOING TO FILE BANKRUPTCY, AND HE WANTED TO

TRANSFER THAT MONEY TO HIS DAUGHTER SO THAT IT WOULD BE

PROTECTED.  ALL RIGHT?

THE SECOND ALLEGATION IS THAT, IN FACT, HE WITHHELD ASSETS FROM THE TRUSTEE.  AND WE GOT INTO THAT, AS YOU RECALL, WITH RESPECT TO THE ISSUE OF THE GIFT.  DID HE HAVE TO REVEAL A GIFT THAT HE PROVIDED TO HIS DAUGHTER?

NOW, WE SAW THE FORM.  THE FORM SHOWS THAT THE GIFT WAS MADE PRIOR TO A YEAR BEFORE THE FILING.  YOU DON'T HAVE TO REVEAL IT.  WE SAW THAT FROM THE TESTIMONY OF THE TRUSTEE WHO EXPLAINED THAT, AND WE SAW THAT BEING THE CASE FROM MR. CHARLES GREENE, A 35-YEAR, YOU MIGHT AS WELL CALL HIM, AN EXPERT IN BANKRUPTCY LAW, EXPLAIN HOW HE WOULD HAVE ADVISED HIS CLIENTS ON THIS ISSUE.

SO IN ORDER TO -- AND LASTLY IS THAT THE THIRD COUNT IS KIND OF A VARIATION OF THE SECOND ONE IS THAT A FALSE STATEMENT WAS MADE IN THE PETITION.

SO THE FALSE STATEMENT HERE BY THE GOVERNMENT'S CLAIM IS EITHER HE DIDN'T REVEAL A GIFT OR HE DIDN'T REVEAL THIS DEVICE THAT HE HAD FORMED ALMOST TWO YEARS BEFORE TO TRANSFER THE ASSETS TO HIS DAUGHTER AND KEEP THEM FROM THE TRUSTEE.

SO THE DEFENSE WITNESS, SHAWN PARR, IS GOING TO CONTRADICT ALL OF THIS.  IN PARTICULAR HE'S GOING TO CONTRADICT THE ALLEGATION THAT THE TRANSFER OF THIS MONEY IS A SCHEME.

IF YOU RECALL THE EVIDENCE, THE TRANSFER STARTS WHEN MR. KUBUROVICH EARNS JUST OVER A MILLION DOLLARS.  SO I THINK THE EVIDENCE PRETTY CLEARLY ESTABLISHES THAT WHENEVER THIS

09:58AM 1    TRANSFER OCCURRED, HE WAS DOING FINE.  THAT, IN FACT, HIS

09:58AM 2    DEVELOPMENT, PROPERTY DEVELOPMENT BUSINESS HAD NOT HIT THE

09:58AM 3    TANK, THE BOTTOM OF THE TANK YET; THAT THE AFFECTS OF THE

09:58AM 4    RECESSION HAD NOT YET GOTTEN TO HIM.

09:58AM 5        AND WHAT MR. PARR IS GOING TO EXPLAIN TO YOU IS THAT RIGHT

09:58AM 6    AT THAT TIME -- LET ME TELL YOU A LITTLE BIT ABOUT WHO HE IS.

09:58AM 7    HE IS AN ATTORNEY.  HE IS CONCENTRATED ON ESTATE PLANNING, ON

09:59AM 8    CREATING CORPORATIONS FOR INDIVIDUALS IN FAMILIES TO BE ABLE TO

09:59AM 9    HOLD ASSETS THAT ARE TRANSFERRED TO THEM FOR THE PURPOSES OF

09:59AM 10   EITHER AVOIDING BANKRUPTCY OR DOING IT AS A TRUST, WHATEVER THE

09:59AM 11   CASE MAY BE.

09:59AM 12       AND MR. PARR IS GOING TO EXPLAIN TO YOU THAT AROUND THE

09:59AM 13   SAME TIME THAT THE $1 MILLION IS EARNED BY MR. KUBUROVICH, THAT

09:59AM 14   MS. KUBUROVICH, KRISTEL, HIRED HIM AS AN ATTORNEY FOR THE

09:59AM 15   PURPOSES OF FORMULATING A BEQUEST THAT HAD BEEN MADE BY

09:59AM 16   MR. KUBUROVICH'S FATHER WHO HAD LEFT A SUBSTANTIAL AMOUNT OF

09:59AM 17   MONEY FOR THE DAUGHTERS TO BE HELD BY THE SON, MR. KUBUROVICH,

09:59AM 18   UNTIL A CERTAIN TIME, WHICH WAS IN ESSENCE WHEN THEY REACHED

09:59AM 19   18.

09:59AM 20       ONE OF THE DAUGHTERS WAS OVER 18.  ONE OF THEM WAS NOT,

10:00AM 21   WAS A MINOR STILL.

10:00AM 22       THAT HE IN ESSENCE SET UP THE CORPORATIONS NATA AND

10:00AM 23   DESTRO.  NATA WOULD BE WHERE THE HOLDINGS OF THIS BEQUEST WOULD

10:00AM 24   BE KEPT AND THAT DESTRO WOULD BE THE COMPANY THAT WOULD MANAGE

10:00AM 25   THE AFFAIRS OF NATA.

THAT HE DID THIS STRICTLY FOR MS. KUBUROVICH.  THAT HE WAS HER CLIENT.  THAT HE MET WITH HER IN PRIVATE, AND THAT HE SET IT UP SPECIFICALLY FOR ONE PURPOSE, AND ONE PURPOSE ONLY, SO THAT THE DAUGHTERS WOULD BE ABLE TO HAVE ABSOLUTE CONTROL OVER THESE EARNINGS, OVER THIS MONEY, I SHOULD SAY, OVER THIS BEQUEST, OVER THIS THREE-QUARTERS OF A MILLION DOLLARS THAT WERE GIVEN TO HER BY HER FATHER.

WE BELIEVE THIS EVIDENCE BELIES THE CLAIM THAT THIS IS SOME SORT OF AN ARTIFICE OR A SCHEME CREATED ALMOST TWO YEARS PRIOR TO THE BANKRUPTCY.

THE GOVERNMENT HAS ALSO ALLUDED IN THEIR CASE THAT THE BUSINESS, MEDILEAF, WHICH WAS STARTED AFTER THE BANKRUPTCY PROCEEDING WAS COMMENCED, AND WHICH WAS DISCLOSED IN THE STATEMENT OF FINANCIAL AFFAIRS THAT WAS AMENDED AND PRESENTED TO THE BANKRUPTCY COURT IN JUNE OF 2011, THAT SOMEHOW OR ANOTHER THOSE BANK RECORDS SHOW THAT MR. KUBUROVICH HAD CONTROL OF THE AFFAIRS OF THOSE BANK ACCOUNTS AND THAT IT WAS ALL FOR HIS PERSONAL EXPENDITURES.

SO IN ORDER TO BELIE THAT AND CONTRADICT THAT WE'RE GOING TO PRESENT ANOTHER WITNESS WHICH WILL ALSO TIE IN THIS ISSUE OF THE LOAN MADE BY MR. WARDA.  THAT'S NEIL FORREST.

IF YOU RECALL, JUST REAL QUICKLY, DURING THE TESTIMONY OF SPECIAL AGENT KIKUGAWA SHE HAD MENTIONED THE NAME NEIL FORREST AS BEING ONE OF THE INDIVIDUALS WHO HAD A SIGNATURE POWER OVER THE PINNACLE ACCOUNTS THAT WERE IN THE NAME OF MEDILEAF,

10:02AM 1    INCORPORATED.

10:02AM 2        MR. FORREST IS GOING TO EXPLAIN TO YOU SEVERAL THINGS,

10:02AM 3    BOTH IN RELATION TO MY CLIENT, MR. KUBUROVICH, AND HIS DAUGHTER

10:02AM 4    AS WELL.

10:02AM 5        SO LET ME TAKE IT ONE BY ONE.

10:02AM 6        FIRST IS THE ISSUE OF THE BANK ACCOUNTS KEPT BY MEDILEAF

10:02AM 7    AND THE GOVERNMENT'S ALLEGATION THAT THIS MONEY REALLY BELONGED

10:02AM 8    TO MR. KUBUROVICH AND THAT HE'S THE ONE THAT CONTROLLED IT AND

10:03AM 9    WHATEVER CHECKS WERE WRITTEN OUT OF THERE ARE FOR HIS OWN

10:03AM 10   PERSONAL EXPENDITURES.

10:03AM 11       NUMBER ONE, THE BANK RECORDS DON'T SHOW THAT.  BUT MORE

10:03AM 12   IMPORTANTLY, MEANING THAT IF YOU JUST READ WHAT THE CHECKS ARE

10:03AM 13   MADE OUT OF, SOME OF THEM ARE OBVIOUS THAT IT'S FOR

10:03AM 14   EXPENDITURES FOR THE CORPORATION, COSTS, EXPENSES, PAYROLL,

10:03AM 15   SECURITY, INSTRUCTION, THINGS OF THAT NATURE.

10:03AM 16       MR. FORREST IS GOING TO EXPLAIN TO YOU THAT HE WAS ON THE

10:03AM 17   BOARD OF DIRECTORS OF MEDILEAF; THAT AS A BOARD MEMBER, HE KEPT

10:03AM 18   VERY TIGHT CONTROL OVER THE EXPENSES OF THE COMPANY; THAT HE

10:03AM 19   SUPERVISED WHAT EXPENSES WERE PAID; THAT HE WAS AWARE OF THE

10:03AM 20   EXISTENCE OF THE FINANCIAL RECORDS OF THE COMPANY AND THE

10:03AM 21   EXPENSES THAT WERE MADE.

10:03AM 22       AND HE'S GOING TO EXPLAIN TO YOU THAT MR. KUBUROVICH,

10:04AM 23   INSTEAD OF WRITING CHECKS, IS SIMPLY A PAYOR FOR THE EXPENSES

10:04AM 24   OF THE CORPORATION AND NOTHING MORE.  THAT MR. KUBUROVICH HAS

10:04AM 25   NEVER BEEN KNOWN BY ANYBODY IN THE CORPORATION AS HAVING BEEN

USING ANY OF THE FUNDS FOR HIS OWN PERSONAL EXPENSES.

AND AGAIN, I WILL REMIND YOU THAT MEDILEAF, INCORPORATED, IS REVEALED IN THE AMENDED STATEMENT OF FINANCIAL AFFAIRS, AND SO IT'S NOT LIKE A HIDDEN ENTITY FROM THE BANKRUPTCY TRUSTEE.

ADDITIONALLY, MR. FORREST IS GOING TO EXPLAIN TO YOU THAT KRISTEL WAS NOT JUST SOME PAWN IN THE BORROWING OF THE MONEY FROM MR. WARDA.  THAT THE BUSINESS WAS HAVING FINANCIAL ISSUES, AND THAT THERE WERE MANY ANTICIPATED EXPENSES, AND THAT THERE WAS A NEED TO BORROW THIS MONEY; THAT KRISTEL KUBUROVICH WAS AN ACTIVE PARTICIPANT IN THE BUSINESS; THAT SHE WAS THERE REGULARLY; THAT SHE HAD BEEN DISCUSSED AS BECOMING A MEMBER OF THE BOARD IN THE FUTURE; THAT SHE HAD OFFERED TO DO THIS FOR THE MEDILEAF CORPORATION IN ORDER TO BE ABLE TO LOAN THEM THIS MONEY, AND THAT THE LOAN WENT TO NATA AND THAT NATA MADE THE LOAN DIRECTLY TO MEDILEAF.

SO THIS WILL ALSO -- I'M SORRY -- BELIE AND CONTRADICT THIS CLAIM BY THE GOVERNMENT THAT YOU CAN SEE THE ARTIFICE OR THE SCHEME OR THE DEVICE TO HIDE ASSETS FROM THE TRUSTEE BY THE FACT THAT KRISTEL KUBUROVICH IS JUST SHOWING UP AND SIGNING PAPERS FOR A LOAN.

AND YOU'RE GOING TO FIND OUT THAT HER INVOLVEMENT WITH THAT LOAN THROUGH MR. FORREST IS A LOT MORE INTEGRAL THAN THE GOVERNMENT WOULD LIKE YOU TO BELIEVE.

AND SO I'LL HAVE MORE TO SAY AT THE END OF THIS CASE WHEN IT'S TIME FOR ME TO ARGUE MY CASE.  THE RULES GIVE ME MORE

10:06AM 1      LATITUDE IN WHAT I HAVE TO SAY, AND I JUST ASK YOU TO CONTINUE

10:06AM 2      TO NOT FORM AN OPINION AND WAIT FOR THE EVIDENCE TO COME IN AND

10:06AM 3      WAIT FOR THAT POINT.

10:06AM 4          THANK YOU VERY MUCH.

10:06AM 5              THE COURT:  THANK YOU.  MR. NICK, DO YOU HAVE A

10:06AM 6      WITNESS TO CALL?

10:06AM 7              MR. NICK:  YES, YOUR HONOR.  MS. GILG WILL ACTUALLY

10:06AM 8      CALL SHAWN PARR.  WE'LL CALL HIM JOINTLY, YOUR HONOR.

10:06AM 9              THE COURT:  ALL RIGHT.  YOU'RE GOING TO EXAMINE

10:06AM 10     FIRST, MS. GILG?

10:06AM 11             MS. GILG:  I AM, YOUR HONOR.

10:06AM 12             THE COURT:  ALL RIGHT.

10:06AM 13             MS. GILG:  I'LL GO GET HIM.

10:06AM 14             THE COURT:  MR. NICK, COULD YOU COLLECT THE WITNESS

10:06AM 15     WHILE MS. GILG --

10:06AM 16             MR. NICK:  OH, YES.

10:06AM 17             MS. GILG:  THANK YOU, YOUR HONOR.

10:07AM 18             THE COURT:  SIR, IF YOU COULD JUST STAND OVER HERE

10:07AM 19     WHILE YOU FACE OUR COURTROOM DEPUTY AND RAISE YOUR RIGHT HAND,

10:07AM 20     SHE HAS A QUESTION FOR YOU.

10:07AM 21         **(DEFENDANTS' WITNESS, SHAWN PARR, WAS SWORN.)**

10:07AM 22             THE WITNESS:  I DO.

10:07AM 23             THE COURT:  PLEASE HAVE A SEAT HERE, SIR, AND MAKE

10:07AM 24     YOURSELF COMFORTABLE.  ADJUST THE CHAIR AND MICROPHONE AS YOU

10:07AM 25     NEED.  WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE STATE YOUR

10:07AM  1    NAME AND THEN SPELL IT.

10:07AM  2              THE WITNESS:  SHAWN PARR.  LAST NAME IS PARR.

10:07AM  3    P-A-R-R.

10:07AM  4              THE COURT:  AND SHAWN IS SPELLED?

10:07AM  5              THE WITNESS:  S-H-A-W-N.

10:07AM  6              THE COURT:  THANK YOU.  COUNSEL.

10:07AM  7              THE WITNESS:  THANK YOU.

10:07AM  8              MS. GILG:  YOUR HONOR, BEFORE WE BEGIN, I WOULD JUST

10:07AM  9    LIKE TO STATE ON THE RECORD THAT DEFENDANTS' EXHIBITS O AND P

10:07AM 10    HAVE BEEN PROFFERED, AND I BELIEVE THERE'S NO OBJECTION.

10:07AM 11              THE COURT:  TO THEIR ADMISSION?

10:07AM 12              MR. SIMEON:  NO OBJECTION, YOUR HONOR.

10:07AM 13              THE COURT:  THEY MAY BE RECEIVED AND PUBLISHED.

10:08AM 14         (DEFENDANTS' EXHIBITS O AND P WERE RECEIVED IN EVIDENCE.)

10:08AM 15              MS. GILG:  THANK YOU.

10:08AM 16                        **DIRECT EXAMINATION**

10:08AM 17    BY MS. GILG:

10:08AM 18    Q.   GOOD MORNING, MR. PARR.

10:08AM 19    A.   GOOD MORNING.

10:08AM 20    Q.   HOW ARE YOU EMPLOYED?

10:08AM 21    A.   I'M AN ATTORNEY IN SAN JOSE.

10:08AM 22    Q.   AND HOW LONG HAVE YOU BEEN AN ATTORNEY IN SAN JOSE?

10:08AM 23    A.   PROBABLY CLOSE TO 20 YEARS.

10:08AM 24    Q.   AND DO YOU HAVE A PARTICULAR FOCUS IN YOUR PRACTICE OF

10:08AM 25    LAW?

10:08AM 1    A.   WE FOCUS ON CIVIL MATTERS, BUSINESS MATTERS, AND ESTATE

10:08AM 2    PLANNING.

10:08AM 3    Q.   AND AS IT RELATES TO ESTATE PLANNING, DID YOU HAVE THE

10:08AM 4    OPPORTUNITY TO MEET MY CLIENT, KRISTEL KUBUROVICH, ON A -- FOR

10:08AM 5    AN ISSUE WITH REGARD TO ESTATE PLANNING?

10:08AM 6    A.   YES.

10:08AM 7    Q.   AND COULD YOU DESCRIBE WHAT THAT WAS?

10:08AM 8    A.   MS. KUBUROVICH CAME TO ME REGARDING AN INHERITANCE THAT

10:08AM 9    SHE WAS GOING TO RECEIVE AND WANTED SOME ESTATE PLANNING ADVICE

10:08AM 10   ON HOW TO HANDLE IT.

10:08AM 11   Q.   AND DID YOU SPEAK TO MR. KUBUROVICH, HER FATHER?

10:08AM 12   A.   YES.

10:08AM 13   Q.   AND DO YOU KNOW MR. KUBUROVICH?

10:09AM 14   A.   I DO.

10:09AM 15   Q.   DID HE ALSO DISCUSS THIS PLAN WITH YOU?

10:09AM 16   A.   BRIEFLY.  HE REFERRED MS. KUBUROVICH TO ME AND ACTUALLY

10:09AM 17   BROUGHT HER TO THE OFFICE.

10:09AM 18   Q.   SO HE CAME WITH HER TO THE OFFICE?

10:09AM 19   A.   HE DID.

10:09AM 20   Q.   AND WHEN YOU DISCUSSED HER -- WELL, LET ME ASK YOU THIS

10:09AM 21   WAY.  WHEN YOU HAD HER AT THE OFFICE, DID YOU DISCUSS HER

10:09AM 22   VARIOUS OPTIONS FOR THE INHERITANCE?

10:09AM 23   A.   IT WAS A LONG TIME AGO.  I DON'T RECALL SPECIFIC

10:09AM 24   INSTRUCTIONS OR DISCUSSIONS REGARDING THAT.  I DO RECALL THEM

10:09AM 25   COMING TOGETHER, AND I DO RECALL SITTING WITH MS. KUBUROVICH

10:09AM 1     SEPARATELY TO DISCUSS THE MATTERS AS WELL.

10:09AM 2     Q.   OKAY.  SO ALTHOUGH HER FATHER WAS THERE, YOU DIDN'T

10:09AM 3     DISCUSS EVERYTHING WITH HIM?

10:09AM 4     A.   NO.  AGAIN, I DON'T RECALL SPECIFICALLY, BUT IT'S MY

10:09AM 5     COMMON PRACTICE WHEN SOMEBODY COMES IF IT'S RELATED TO

10:09AM 6     ONE PERSON, I ALWAYS MAKE SURE THEIR NEEDS OR WISHES ARE WHAT

10:10AM 7     THEY'RE GOING TO DO AND NOT BEING AFFECTED BY ANYONE ELSE.

10:10AM 8     Q.   AND IT'S YOUR RECOLLECTION IN THIS CASE THAT THAT'S HOW

10:10AM 9     YOU TREATED MS. KUBUROVICH?

10:10AM 10    A.   YES.

10:10AM 11    Q.   NOW, YOU HAD KNOWN MR. KUBUROVICH PREVIOUSLY, YOU HAD DONE

10:10AM 12    SOME WORK FOR HIM.  AND WITHOUT TELLING ME WHAT THE -- THE

10:10AM 13    NATURE OF YOUR DISCUSSIONS, YOU HAD DONE SOME WORK FOR HIM?

10:10AM 14    A.   YES.

10:10AM 15    Q.   AND DO YOU HAVE THE DEFENSE BINDERS UP THERE?

10:10AM 16    A.   I DO.

10:10AM 17    Q.   COULD YOU LOOK AT DEFENSE EXHIBIT I -- I HAVE I HERE, BUT

10:10AM 18    I DON'T THINK THAT'S THE RIGHT ONE.  DEFENSE EXHIBIT G.

10:10AM 19    A.   OKAY.

10:10AM 20    Q.   AND THAT'S A DOCUMENT ENTITLED A LIVING TRUST FOR GOYKO

10:10AM 21    AND PATTY KUBUROVICH; IS THAT CORRECT?

10:11AM 22    A.   THAT'S CORRECT.

10:11AM 23    Q.   AND IS THAT A DOCUMENT THAT YOU HELPED PREPARE FOR

10:11AM 24    MR. KUBUROVICH?

10:11AM 25    A.   AGAIN, I DON'T RECALL THIS SPECIFICALLY, BUT IT DEFINITELY

10:11AM 1    LOOKS LIKE MY WORK, AND I RECOGNIZE THE FORMATTING OF IT.

10:11AM 2    Q.   OKAY.  IS YOUR NAME ON THERE?

10:11AM 3    A.   YES.

10:11AM 4    Q.   SO YOU HAD A RELATIONSHIP WITH MR. KUBUROVICH BEFORE YOU

10:11AM 5    MET WITH MY CLIENT IN -- DO YOU REMEMBER WHAT YEAR IT WAS THAT

10:11AM 6    YOU MET WITH MY CLIENT?

10:11AM 7    A.   I DO NOT.

10:11AM 8    Q.   IS THERE ANYTHING THAT YOU COULD LOOK AT THAT WOULD HELP

10:11AM 9    TO REFRESH YOUR RECOLLECTION?

10:11AM 10   A.   WELL, I KNOW I FORMED SOME DOCUMENTS FOR HER.  IF I SAW

10:11AM 11   THOSE DOCUMENTS, THAT WOULD PROBABLY ASSIST ME.

10:11AM 12   Q.   DO YOU HAVE THE GOVERNMENT'S EXHIBITS UP THERE?

10:11AM 13   A.   I DO NOT.

10:11AM 14            THE CLERK:  WHICH ONE?

10:12AM 15            MS. GILG:  EXHIBIT 52.

10:12AM 16            THE COURT:  SIR, COULD YOU GO TO THE SECOND TO THE

10:12AM 17   LAST PAGE OF THIS EXHIBIT AND SEE IF THAT REFRESHES YOUR

10:12AM 18   RECOLLECTION.

10:12AM 19            THE WITNESS:  EXHIBIT G IS A --

10:12AM 20            THE COURT:  YOU DON'T HAVE TO TELL ME WHAT THAT IS.

10:12AM 21            THE WITNESS:  IT DOES NOT, YOUR HONOR.

10:12AM 22            THE COURT:  OKAY.

10:12AM 23            THE CLERK:

10:12AM 24        (HANDING.)

10:12AM 25            THE WITNESS:  WHAT EXHIBIT?

10:12AM 1      MS. GILG: 52.

10:12AM 2      THE WITNESS: SO IT WOULD PROBABLY BE 2008, MID TO

10:12AM 3  LATE 2008.

10:12AM 4  BY MS. GILG:

10:12AM 5  Q. AND WHILE YOU HAVE THAT DOCUMENT OUT, GOVERNMENT'S

10:12AM 6  EXHIBIT 52, DO YOU RECOGNIZE THAT DOCUMENT?

10:13AM 7  A. I RECOGNIZE WHAT IT IS. I DON'T BELIEVE -- WELL, YES, I

10:13AM 8  RECOGNIZE THE DOCUMENT.

10:13AM 9  Q. AND WOULD THIS BE -- DOES THIS INDICATE THAT IT'S A

10:13AM 10  CERTIFICATE OF LIMITED PARTNERSHIP OF NATA LP; CORRECT?

10:13AM 11  A. CORRECT.

10:13AM 12  Q. AND COULD YOU TELL US WHAT NATA LP IS?

10:13AM 13  A. NATA LP IS A LIMITED PARTNERSHIP.

10:13AM 14  Q. AND WHAT IS THAT?

10:13AM 15  A. LIMITED PARTNERSHIP WE USE COMMONLY IN ESTATE PLANNING FOR

10:13AM 16  HOLDING ASSETS SO THEY'RE -- SO THEY CAN BE DISTRIBUTED LATER

10:13AM 17  OR MANAGED IN ANYWAY.

10:13AM 18  Q. AND NATA LP, WAS THAT CREATED FOR -- WELL, LET ME ASK YOU

10:13AM 19  THIS, WAS THAT DOCUMENT INTENDED FOR ASSISTING IN MY CLIENT,

10:13AM 20  MS. KUBUROVICH, AND HER ESTATE PLANNING?

10:13AM 21  A. YES, HER CLIENT, AND I BELIEVE HER SISTER.

10:13AM 22  Q. AND HER SISTER. AND DO YOU RECALL HER SISTER'S NAME?

10:13AM 23  A. NATALIE, I BELIEVE.

10:14AM 24  Q. AND WERE YOU MADE AWARE OF WHAT NATA STOOD FOR?

10:14AM 25  A. I MAY HAVE AT THE TIME, BUT AGAIN, I DON'T RECALL SITTING

10:14AM 1    HERE TODAY.

10:14AM 2    Q.   NOW, I'M GOING TO SHOW YOU EXHIBIT 53.  THIS IS ANOTHER

10:14AM 3    DOCUMENT THAT APPEARS TO HAVE BEEN FILED WITH THE SECRETARY OF

10:14AM 4    STATE.  DO YOU RECOGNIZE THAT?

10:14AM 5    A.   I DO, AND THAT'S MY SIGNATURE ON THE BOTTOM.

10:14AM 6    Q.   AND WHAT IS THIS DOCUMENT?

10:14AM 7    A.   WELL, WHEN WE DO LIMITED PARTNERSHIPS, THE IDEA OF THE

10:14AM 8    LIMITED PARTNERSHIP IS THE LIMITED PARTNERS DON'T HAVE ANY

10:14AM 9    LIABILITY TO THE ASSET, BUT THE GENERAL PARTNER, WHICH A

10:14AM 10   LIMITED PARTNERSHIP IS REQUIRED TO HAVE, DOES HAVE LIABILITY.

10:14AM 11       SO WHENEVER I FORM A LIMITED PARTNERSHIP, I ALWAYS FORM A

10:14AM 12   LIMITED LIABILITY COMPANY TO ACT AS THE GENERAL PARTNER.

10:14AM 13   Q.   AND FOR WHAT -- WHAT IS THE ENTITY ON THIS FORM?

10:14AM 14   A.   THIS ONE WAS CALLED DESTRO, LLC.

10:14AM 15   Q.   AND WHAT DOES LLC STAND FOR?

10:14AM 16   A.   LIMITED LIABILITY COMPANY.

10:14AM 17   Q.   AND WITH REGARD TO DESTRO, WHAT IS ITS RELATIONSHIP WITH

10:15AM 18   NATA, IF ANY?

10:15AM 19   A.   UM, ITS RELATIONSHIP WOULD BE AS THE GENERAL PARTNER.  SO

10:15AM 20   A LIMITED PARTNERSHIP HAS GENERAL PARTNERS AND LIMITED

10:15AM 21   PARTNERS, AND THIS WOULD BE THE GENERAL PARTNER.

10:15AM 22   Q.   AND WHO WERE THE LIMITED PARTNERS?

10:15AM 23   A.   IT WAS KRISTEL AND NATALIE.

10:15AM 24   Q.   THE SISTERS?

10:15AM 25   A.   CORRECT.

10:15AM 1    Q.   WHO WAS THE MANAGING OR WAS KRISTEL ASSOCIATED WITH DESTRO

10:15AM 2    LLC AT ALL?

10:15AM 3    A.   YES, I BELIEVE -- USUALLY WHEN I FORM THE LLC'S OUT OF

10:15AM 4    GENERAL PARTNERS, THEY'RE SINGLE MEMBERS LLC'S, AND THERE WAS

10:15AM 5    ONLY ONE PERSON THAT WAS THERE, AND IT WAS KRISTEL.

10:15AM 6    Q.   SO THE PEOPLE ASSOCIATED WITH THE DESTRO LLC OR THAT'S

10:15AM 7    THE -- MS. KUBUROVICH IN THIS CASE, THAT WOULD BE THE PERSON

10:15AM 8    WHO WOULD HAVE LIABILITY.  IS THAT FAIR TO SAY?

10:16AM 9    A.   WELL, THAT'S WHY WE FORMED THE LLC AS A GENERAL PARTNER IS

10:16AM 10   SO THAT MS. KUBUROVICH DOES NOT HAVE LIABILITY.  THE LIABILITY

10:16AM 11   WOULD GO TOWARDS THE ENTITY, THE LLC.

10:16AM 12   Q.   THE LLC?

10:16AM 13   A.   CORRECT.

10:16AM 14   Q.   OKAY.

10:16AM 15   A.   THINK OF AN LLC JUST LIKE A CORPORATION, IT JUST HAS A

10:16AM 16   DIFFERENT TAXATION METHOD.

10:16AM 17   Q.   OKAY.  SO THE CORPORATION IS STILL LIABLE, BUT THE

10:16AM 18   INDIVIDUALS ARE NOT?

10:16AM 19   A.   CORRECT.

10:16AM 20   Q.   NOW, COULD YOU -- NOW, WHY DID YOU CHOOSE THIS STRUCTURE

10:16AM 21   TO CREATE THESE ENTITIES?

10:16AM 22   A.   IT'S A VERY COMMON STRUCTURE USED IN ESTATE PLANNING FOR A

10:16AM 23   VARIETY OF CONDITIONS.  I DON'T RECALL SPECIFICALLY WHY WE

10:16AM 24   CHOSE IT HERE, BUT WE USE LLC'S AND LIMITED PARTNERSHIPS

10:16AM 25   FREQUENTLY WHEN WE'RE HOLDING ANY TYPE OF ASSETS.

10:16AM  1    Q.   AND YOU SAY "WE."  IS THAT MEANING THAT YOU AND --

10:16AM  2    A.   THE ATTORNEYS AND THE ESTATE PLANNING COMMUNITY.

10:17AM  3    Q.   OKAY.  AND SO DID MR. KUBUROVICH COME TO YOU AND SAY, HEY,

10:17AM  4    I WANT YOU TO CREATE THIS TYPE OF AN ENTITY FOR MY DAUGHTER, OR

10:17AM  5    WAS IT YOUR PROFESSIONAL ADVICE TO DO THIS?

10:17AM  6    A.   IT WAS MY PROFESSIONAL ADVICE.

10:17AM  7    Q.   NOW, IF YOU COULD TURN TO EXHIBIT 55.  DO YOU RECOGNIZE

10:17AM  8    THIS DOCUMENT?

10:17AM  9         EXCUSE ME ONE MINUTE.

10:17AM  10   A.   AGAIN, I DON'T RECALL IT SPECIFICALLY.  IT HAS MY

10:17AM  11   FORMATTING, AND IT LOOKS LIKE A DOCUMENT I CREATED, YES.

10:17AM  12   Q.   AND WHAT DOES IT APPEAR TO BE?

10:18AM  13   A.   IT IS AN OPERATING AGREEMENT FOR DESTRO, LLC.  SO THIS IS

10:18AM  14   THE AGREEMENT THAT CONTROLS WHAT ACTUALLY DESTRO DOES.

10:18AM  15   Q.   AND IS THIS SOMETHING THAT YOU WOULD HAVE SIGNED?

10:18AM  16   A.   NOT NECESSARILY.  THE MEMBER OF DESTRO WOULD SIGN IT.

10:18AM  17   Q.   OKAY.  AND IF YOU CAN TURN TO PAGE 5516.  THAT APPEARS TO

10:18AM  18   HAVE BEEN SIGNED BY KRISTEL KUBUROVICH; CORRECT?

10:18AM  19   A.   CORRECT.

10:18AM  20   Q.   AND AS FAR AS MEMBERS GO, SHE APPEARS TO BE THE ONLY

10:18AM  21   MEMBER; IS THAT CORRECT?

10:18AM  22   A.   THAT'S WHAT I RECALL.  USUALLY THERE IS ONLY ONE MEMBER IN

10:18AM  23   THE LLC'S THAT I DO FOR A GENERAL PARTNERS OF THE LIMITED

10:18AM  24   PARTNERSHIP.

10:18AM  25   Q.   AND WHEN YOU COMPARE THIS OPERATING AGREEMENT TO

10:19AM 1    EXHIBIT 52 -- WELL, ACTUALLY LET'S JUST GO TO 55-19.  DO YOU

10:19AM 2    SEE HERE WHERE IT SAYS GOYKO KUBUROVICH, MEMBER OF DESTRO, LLC?

10:19AM 3    A.   I DO.

10:19AM 4    Q.   AND WAS IT YOUR INTENT TO HAVE MR. KUBUROVICH BE A MEMBER

10:19AM 5    OF THE LLC?

10:19AM 6    A.   NO.

10:19AM 7    Q.   AND WHICH WOULD HAVE GOVERNED THIS DOCUMENT THAT WAS FILED

10:19AM 8    WITH THE SECRETARY OF ESTATE OR THE OPERATING AGREEMENT,

10:19AM 9    EXHIBIT 55, AS FAR AS WHAT CONTROLLED THE ENTITY?

10:19AM 10   A.   I'D HAVE TO SAY THE OPERATING AGREEMENT.

10:19AM 11        AND THE REASON WHY I STUMBLED EARLIER WHEN I SAW THIS WAS

10:19AM 12   THAT I CAN TELL THAT I DON'T THINK I GENERATED THIS DOCUMENT

10:20AM 13   DUE TO THE TYPING ON THE BOTTOM.

10:20AM 14   Q.   WHICH DOCUMENT IS THAT?

10:20AM 15   A.   55-19.

10:20AM 16   Q.   THAT WOULD BE THE LIMITED LIABILITY -- THE SECRETARY OF

10:20AM 17   STATE FILING?

10:20AM 18   A.   CORRECT.

10:20AM 19   Q.   BUT YOU DID INCLUDE NATA IN YOUR OPERATING AGREEMENT.  THE

10:20AM 20   OPERATING AGREEMENT FOR DESTRO DISCUSSES THE RELATIONSHIP

10:20AM 21   BETWEEN NATA AND DESTRO; CORRECT?

10:20AM 22   A.   AGAIN, I DON'T RECALL.  BUT LOOKING AT THE DOCUMENT AS I

10:20AM 23   SIT HERE TODAY ON THE FIRST PAGE UNDER THE D, IT SAYS THE

10:20AM 24   MEMBER'S SOLE DESIRE TO FORM THIS COMPANY IS TO GOVERN AND ACT

10:20AM 25   AS A GENERAL PARTNER OF NATA LP, YES.

10:20AM 1    Q.   AND THAT WOULD BE KRISTEL?

10:20AM 2    A.   KRISTEL I BELIEVE IS A MEMBER OF THIS, AND THEN SHE WAS

10:20AM 3    CONTROLLING IT FOR THE BENEFIT OF HERSELF AND NATALIE.

10:21AM 4    Q.   OKAY.

10:21AM 5    A.   BECAUSE NATALIE WAS ALSO A LIMITED PARTNER.

10:21AM 6    Q.   OKAY.  AND WOULD YOU SAY THAT THE OPERATING AGREEMENT IS

10:21AM 7    SORT OF THE BIBLE OF ANY LLC OR LP?

10:21AM 8    A.   THE OPERATING AGREEMENT IS THE OPERATING AGREEMENT.  IT'S

10:21AM 9    THE AGREEMENT THAT THE ENTITY IS TO BE OPERATED BY FOR THE LLC,

10:21AM 10   YES.

10:21AM 11   Q.   UH-HUH.  AND SO IF KRISTEL KUBUROVICH HAD DONE SOMETHING

10:21AM 12   CONTRARY TO THAT OPERATING AGREEMENT, WOULD HER SISTER THEN

10:21AM 13   HAVE RECOURSE AGAINST HER?

10:21AM 14   A.   YES -- OR LET ME JUST PHRASE THAT DIFFERENTLY.  THE NATA

10:21AM 15   LIMITED PARTNERSHIP WOULD HAVE RECOURSE AGAINST HER.

10:21AM 16   Q.   OF WHICH?

10:21AM 17   A.   OF WHICH NATALIE IS A 50 PERCENT MEMBER AND KRISTEL WAS A

10:21AM 18   50 PERCENT MEMBER.

10:21AM 19   Q.   SO SHE WOULD ONLY BE IN HALF TROUBLE?

10:21AM 20   A.   IF THAT'S SUCH A THING, YES.

10:21AM 21   Q.   NOW, YOU -- DID YOU REPRESENT MR. KUBUROVICH OR HIS WIFE

10:22AM 22   IN THE BANKRUPTCY PROCEEDINGS?

10:22AM 23   A.   NO.

10:22AM 24   Q.   WERE YOU MADE AWARE OF THE BANKRUPTCY PROCEEDINGS ANY TIME

10:22AM 25   PRIOR TO ME SPEAKING WITH YOU ABOUT THE PRESENT CASE?

10:22AM 1     A.   NOT AT THE TIME.  I BELIEVE YEARS AFTERWARDS I HEARD

10:22AM 2     SOMETHING ABOUT IT, BUT NOT DURING THE TIME THAT HE WAS IN

10:22AM 3     BANKRUPTCY.

10:22AM 4     Q.   DID YOU NOT RECEIVE SOMETHING FROM A SUSAN LUCE AS IT

10:22AM 5     RELATED TO THE BANKRUPTCY PROCEEDING?

10:22AM 6     A.   OH, YES, I RECEIVED A SUBPOENA FROM SUSAN LUCE, AND I DO

10:22AM 7     RECALL THAT IT WAS THE FIRST TIME THAT I HAD EVER RECEIVED A

10:22AM 8     SUBPOENA REGARDING THE FILE.

10:22AM 9     Q.   OKAY.  AND I'M GOING TO ASK YOU TO TURN TO THE DEFENDANT'S

10:22AM 10    BINDER AND GO TO THE SECOND ONE, THE ONE THAT GOES TO O.

10:23AM 11         NOW, BEFORE I GO THERE, COULD YOU TELL US WHO SUSAN LUCE

10:23AM 12    IS, IF YOU KNOW?

10:23AM 13    A.   SUSAN LUCE IS AN ATTORNEY THAT PRACTICES PREDOMINANTLY

10:23AM 14    BANKRUPTCY, AND I KNOW HER IN THE COMMUNITY.  SO I KNEW HER

10:23AM 15    PRIOR TO RECEIVING THIS SUBPOENA.

10:23AM 16    Q.   OKAY.  AND I'M GOING TO NOW SHOW YOU WHAT HAS BEEN MARKED

10:23AM 17    AS DEFENDANT'S EXHIBIT O.  I CAN SEE PART OF IT.

10:23AM 18         THE COURT:  I THINK THERE WAS A STIPULATION THAT

10:23AM 19    THIS WAS RECEIVED IN EVIDENCE.

10:23AM 20         MS. GILG:  YES.  YES.

10:23AM 21         MR. SIMEON:  THAT'S CORRECT, YOUR HONOR.  NO

10:23AM 22    OBJECTION.

10:23AM 23    BY MS. GILG:

10:23AM 24    Q.   AND YOU MENTIONED THE SUBPOENA.  WOULD THAT BE ONE OF THE

10:24AM 25    SUBPOENAS THAT YOU RECEIVED?

10:24AM 1    A.   IT LOOKS LIKE IT, YES, AND IT HAS MY NAME AND CORRECT

10:24AM 2    ADDRESS ON IT.

10:24AM 3    Q.   AND THIS SUBPOENA WAS FOR WHAT?

10:24AM 4    A.   IT WAS A SUBPOENA FOR DESTRO, LLC, FOR DIFFERENT ITEMS,

10:24AM 5    BYLAWS, ARTICLES, PARTNERSHIP AGREEMENTS, GENERAL AND LIMITED

10:24AM 6    PARTNERS, CONTRIBUTIONS, CAPITAL ACCOUNTS, FUNDING, MEMBERS,

10:24AM 7    INVESTORS, ET CETERA, FOR DESTRO, LLC.

10:24AM 8    Q.   AND THEN IT SHOWS THE LICENSE NUMBER FOR DESTRO, LLC, AND

10:24AM 9    WHEN IT WAS FILED WITH THE SECRETARY OF STATE?

10:24AM 10   A.   CORRECT.  I THINK THAT'S THE FILING NUMBER BY THE

10:24AM 11   SECRETARY OF STATE.

10:24AM 12   Q.   AND THIS WAS IN CONJUNCTION WITH MR. KUBUROVICH'S

10:24AM 13   BANKRUPTCY CASE; IS THAT CORRECT?

10:24AM 14   A.   THAT'S WHAT IT LOOKS LIKE IT IS.

10:24AM 15   Q.   AND IT WAS ISSUED TO YOU IN JUNE OF 2012?

10:24AM 16   A.   THAT'S THE DATE ON IT, CORRECT.

10:24AM 17   Q.   AND SO IN YOUR DISCUSSIONS WITH MS. -- WELL, LET'S MOVE ON

10:25AM 18   TO EXHIBIT P BEFORE WE DO THAT.

10:25AM 19        AND DO YOU RECOGNIZE THIS DOCUMENT?

10:25AM 20   A.   YES.

10:25AM 21   Q.   AND WHAT IS THAT?

10:25AM 22   A.   IT'S THE SAME SUBPOENA TO MY OFFICE THAT IS ON TOP FOR

10:25AM 23   MR. KUBUROVICH'S BANKRUPTCY, AND THIS ONE REQUESTS ALL OF THE

10:25AM 24   INFORMATION I STATED EARLIER, BUT THIS IS FOR NATA LP.

10:25AM 25   Q.   AND DID YOU DISCUSS THESE SUBPOENAS WITH MS. LUCE?

10:25AM  1    A.   AGAIN, IT WAS A LONG TIME AGO, BUT SINCE IT WAS THE FIRST

10:25AM  2    ONE THAT I EVER RECEIVED I RECALL CALLING HER UP, AND I KNOW

10:25AM  3    HER PERSONALLY, AND I ASKED HER -- THAT I WAS GOING TO COMPLY

10:25AM  4    AND DO WHATEVER I WAS SUPPOSED TO DO, BUT I WASN'T SURE ABOUT

10:25AM  5    THE PRIVILEGES AT THE TIME, AND I WANTED TO CONTACT THE STATE

10:25AM  6    BAR.

10:25AM  7    Q.   AND DID YOU DO SO?

10:25AM  8    A.   AGAIN, I DON'T RECALL SPECIFICALLY, BUT I REMEMBER CALLING

10:25AM  9    HER BACK AT ONE POINT IN TIME AND CLEARING EVERYTHING.  HER

10:26AM  10   OFFICE WAS RIGHT NEXT DOOR TO MINE, AND I TOLD HER THAT WHEN

10:26AM  11   SHE WANTED TO COME BY TO SEE THE FILES OR DO WHAT SHE WANTED TO

10:26AM  12   DO, SHE WAS WELCOME TO DO THAT.

10:26AM  13   Q.   AND THAT WOULD HAVE BEEN FOR NATA LP?

10:26AM  14   A.   FOR NATA LP AND DESTRO, LLC.

10:26AM  15   Q.   NOW, MS. LUCE, DO YOU KNOW WHAT RELATIONSHIP SHE HAD IN

10:26AM  16   THE BANKRUPTCY PROCEEDING, LIKE WHO SHE WAS?

10:26AM  17   A.   AGAIN, I DON'T RECALL EXACTLY THIS.  I KNOW WHAT SHE DID

10:26AM  18   FOR A LIVING, AND WHAT SHE DID FOR A LIVING WAS REPRESENTED

10:26AM  19   TRUSTEES.  SO SHE WAS PROBABLY THE ATTORNEY REPRESENTING THE

10:26AM  20   TRUSTEE FOR THE BANKRUPTCY COURT.

10:26AM  21   Q.   NOW, BASED ON YOUR DISCUSSIONS WITH HER AND THE RECEIPT OF

10:26AM  22   THESE SUBPOENAS, DID IT APPEAR TO YOU THAT SHE WAS AWARE OF THE

10:26AM  23   ENTITY, NATA?

10:26AM  24   A.   OF COURSE.

10:26AM  25   Q.   AND DESTRO?

10:26AM  1      A.   OF COURSE.

10:26AM  2      Q.   AND ITS RELATIONSHIP TO MR. KUBUROVICH?

10:27AM  3      A.   YES.

10:27AM  4            MS. GILG:  I HAVE NOTHING FURTHER.  THANK YOU.

10:27AM  5            THE COURT:  MR. NICK?

10:27AM  6            MR. NICK:  NO QUESTIONS.  THANK YOU VERY MUCH.

10:27AM  7            THE COURT:  CROSS-EXAMINATION?

10:27AM  8                        **CROSS-EXAMINATION**

10:27AM  9      BY MR. SIMEON:

10:27AM 10      Q.   GOOD MORNING, MR. PARR.

10:28AM 11      A.   GOOD MORNING.

10:28AM 12      Q.   AND MY NAME IS SCOTT SIMEON, AND I'M WITH THE U.S.

10:28AM 13      ATTORNEY'S OFFICE, AND I'M ONE OF THE PROSECUTORS ON THIS CASE.

10:28AM 14      WE HAVE NOT MET BEFORE; CORRECT?

10:28AM 15      A.   NO, WE HAVEN'T.

10:28AM 16      Q.   AND WE HAVE NEVER SPOKEN BEFORE?

10:28AM 17      A.   NO, WE HAVEN'T.

10:28AM 18      Q.   AND YOU DID SAY THAT YOU'VE KNOWN THE DEFENDANTS FOR A

10:28AM 19      LONG TIME; IS THAT RIGHT?

10:28AM 20      A.   I'VE KNOWN MR. KUBUROVICH FOR A WHILE.  I DON'T THINK I

10:28AM 21      TESTIFIED A LONG TIME, BUT IT HAD BEEN A FEW YEARS, YES.

10:28AM 22      Q.   AND APPROXIMATELY HOW MANY YEARS WOULD YOU SAY?

10:28AM 23      A.   I DON'T RECALL, BUT I THINK IT WAS ACTUALLY BEFORE I

10:28AM 24      BECAME AN ATTORNEY.

10:28AM 25      Q.   SO MORE THAN 20 YEARS?

10:28AM 1     A.   PROBABLY.

10:28AM 2     Q.   OKAY.  YOU MENTIONED THAT YOU PRACTICE SEVERAL DIFFERENT

10:28AM 3     AREAS OF LAW, CIVIL LAW, BUSINESS, ESTATE PLANNING.  YOU

10:28AM 4     ACTUALLY HAVE A VERY DIVERSE PRACTICE; IS THAT RIGHT?

10:28AM 5     A.   YES.  OVER THE YEARS I'VE DONE DIFFERENT TYPES OF THINGS,

10:28AM 6     BUT I'VE KIND OF NARROWED IT DOWN TO THAT, AND THAT'S WHAT I DO

10:28AM 7     IN MY FIRM.  THERE'S ANOTHER LAWYER IN MY FIRM THAT DOES OTHER

10:28AM 8     THINGS AS WELL.

10:28AM 9     Q.   OKAY.  AND YOU'VE DONE REAL ESTATE.  IS IT REAL ESTATE LAW

10:29AM 10    OR JUST REAL ESTATE?

10:29AM 11    A.   BOTH.

10:29AM 12    Q.   BOTH REAL ESTATE AND REAL ESTATE LAW?

10:29AM 13    A.   CORRECT.

10:29AM 14    Q.   AND BANKRUPTCY LAW?

10:29AM 15    A.   A LITTLE BIT, YES.

10:29AM 16    Q.   AND YOU CLARIFIED THAT YOU DID NOT REPRESENT

10:29AM 17    MR. KUBUROVICH IN HIS BANKRUPTCY FILING?

10:29AM 18    A.   NO.

10:29AM 19    Q.   NOW, YOU HAVE SPOKEN WITH DEFENSE COUNSEL AT LEAST A

10:29AM 20    COUPLE TIMES DURING THIS CASE; IS THAT RIGHT?

10:29AM 21    A.   I BELIEVE TWICE.

10:29AM 22    Q.   OKAY.  YOU SPOKE WITH MS. GILG YESTERDAY?

10:29AM 23    A.   SHE CALLED ME YESTERDAY REGARDING THE SCHEDULE FOR TODAY,

10:29AM 24    AND THEN WE MET IN MY OFFICE FOR PROBABLY 20 TO 25 MINUTES A

10:29AM 25    FEW WEEKS AGO.

10:29AM  1   Q.   AND YOU TOLD HER YOU COULDN'T RECALL IN GREAT DETAIL THE

10:29AM  2   CIRCUMSTANCES SURROUNDING THE ARRANGEMENT, MEANING NATA LP AND

10:29AM  3   DESTRO, LLC; IS THAT RIGHT?

10:29AM  4   A.   I'VE DONE THESE THINGS A LOT, AND I HAVE A COMMON COURSE

10:30AM  5   OF THINGS OF HOW I DO THEM.  BUT IF YOU WERE TO ASK ME EXACTLY

10:30AM  6   WHAT WE TALKED ABOUT OR WHEN IT WAS OR THOSE TYPES OF THINGS, I

10:30AM  7   DON'T HAVE A DIRECT RECOLLECTION.

10:30AM  8   Q.   DID YOU HAVE ANY NOTES OR ANYTHING YOU COULD REFER TO, TO

10:30AM  9   REFRESH YOUR MEMORY?

10:30AM  10  A.   MS. GILG ASKED ME TO TRY TO FIND SOME DOCUMENTS OR FILES

10:30AM  11  OR THINGS TO BRING TODAY, AND I COULDN'T LOCATE ANYTHING.

10:30AM  12  Q.   SO EVERYTHING THAT YOU'RE TESTIFYING TO TODAY BACK IN 2004

10:30AM  13  AND REGARDING 2008 IS JUST FROM WHAT YOU CAN RECOLLECT WITHOUT

10:30AM  14  ANY NOTES?

10:30AM  15  A.   CORRECT.

10:30AM  16  Q.   OKAY.  NOW, YOU MENTIONED INHERITANCE PLANNING, ESTATE

10:30AM  17  PLANNING AS A WAY IN GENERAL TO PROTECT SOMEONE'S INHERITANCE;

10:30AM  18  IS THAT RIGHT?

10:30AM  19  A.   COULD YOU REPEAT THAT.

10:30AM  20  Q.   SURE.  MAYBE YOU COULD JUST TELL ME AGAIN THE RELATIONSHIP

10:30AM  21  BETWEEN ESTATE PLANNING AND INHERITANCE PLANNING.

10:30AM  22  A.   WELL, ESTATE PLANNING IS MANAGING ASSETS NOT ONLY DURING

10:31AM  23  YOUR LIFETIME BUT WHEN YOU PASS WHERE IT'S GOING TO GO.

10:31AM  24       I THINK I BROUGHT UP INHERITANCE BECAUSE I RECALL

10:31AM  25  SPECIFICALLY SOME OF THESE ITEMS HAD TO DO WITH AN INHERITANCE

10:31AM   1    THAT MS. KUBUROVICH WAS RECEIVING.

10:31AM   2    Q.   DID YOU HAVE PERSONAL KNOWLEDGE OF THAT?

10:31AM   3    A.   I RECALL THAT'S THE CHALLENGING PART ABOUT TRYING TO

10:31AM   4    RECALL BACK TO WHAT IT IS.  I REMEMBER IT WAS AN INHERITANCE,

10:31AM   5    AND I REALLY CAN'T REMEMBER WHAT IT WAS OR HOW IT WAS, BUT I

10:31AM   6    REMEMBER SHE WAS COMING INTO SOME REAL ESTATE OR MONEY.  I

10:31AM   7    CAN'T REMEMBER WHAT IT WAS.

10:31AM   8    Q.   SO IT WAS BASED ON SOMETHING THAT SHE OR HER FATHER TOLD

10:31AM   9    YOU?

10:31AM  10    A.   NO.  WHAT SHE TOLD ME.

10:31AM  11    Q.   WHAT SHE TOLD YOU.  OKAY.

10:31AM  12         NOW, NATA LP AND DESTRO LLC, I BELIEVE ON THOSE FORMS YOU

10:31AM  13    WERE LISTED AS THE AGENT FOR SERVICE OF PROCESS ON BOTH OF

10:31AM  14    THOSE; IS THAT CORRECT?

10:31AM  15    A.   CORRECT.

10:31AM  16    Q.   AND SO WHAT DOES THAT MEAN?

10:31AM  17    A.   SO BASICALLY ALL OF THESE ENTITIES HAVE SOMEBODY WHO IS

10:32AM  18    AVAILABLE TO SERVE, FOR EXAMPLE, SUBPOENAS LIKE MS. LUCE DID.

10:32AM  19    SO WHENEVER I FORM THESE ENTITIES, I REMAIN AS THE AGENT FOR

10:32AM  20    SERVICE OF PROCESS FOR THE ENTITIES USUALLY.

10:32AM  21    Q.   OKAY.  AND THE ILLUSTRATION THAT YOU JUST GAVE, THE

10:32AM  22    RECEIPT OF A DOCUMENT, IS THAT ESSENTIALLY WHAT AN AGENT FOR

10:32AM  23    SERVICE OF PROCESS IS?

10:32AM  24    A.   I SHOULD CLARIFY PROBABLY THE LEGAL PROCESS.  SO IF, FOR

10:32AM  25    EXAMPLE, IF NATA LP GOT SUED OR IF DESTRO GOT SUED FOR

10:32AM 1    SOMETHING THAT THEY DID, THEN THE LAWSUIT WOULD PROBABLY COME

10:32AM 2    TO ME.

10:32AM 3    Q.   OKAY.  DO YOU RECALL, OTHER THAN THIS SUBPOENA, RECEIVING

10:32AM 4    ANY OTHER DOCUMENTS ON BEHALF OF DESTRO OR NATA?

10:32AM 5    A.   I DON'T BELIEVE SO, NO.

10:32AM 6    Q.   OKAY.  SO TO THE BEST OF YOUR RECOLLECTION THE ONLY TIME

10:32AM 7    THAT YOU HAD TO ACTIVELY SERVE AS AN AGENT OF SERVICE OF

10:32AM 8    PROCESS WAS THE RECEIPT OF THIS SUBPOENA?

10:32AM 9    A.   I BELIEVE SO, YES.

10:32AM 10   Q.   AND I UNDERSTAND IT'S BEEN A FEW YEARS.

10:33AM 11   A.   IT'S BEEN A FEW YEARS.  AND WHEN YOU DO A LOT OF THIS WORK

10:33AM 12   THERE'S A LOT OF ENTITIES THAT WE'VE DEALT WITH SO THEY KIND OF

10:33AM 13   MASH TOGETHER.

10:33AM 14   Q.   SURE.  AND YOU SAID YOU'VE BEEN PRACTICING OVER 20 YEARS

10:33AM 15   AND YOU'VE PROBABLY HAD THOUSANDS OF CLIENTS.  IS THAT SAFE TO

10:33AM 16   SAY?

10:33AM 17   A.   I HAVE NO IDEA.

10:33AM 18   Q.   TOO MANY TO COUNT?

10:33AM 19   A.   TOO MANY TO COUNT.

10:33AM 20   Q.   AS AN AGENT FOR SERVICE OF PROCESS, ARE YOU A MEMBER OR AN

10:33AM 21   OFFICER OF THE ENTITY?

10:33AM 22   A.   NO.

10:33AM 23   Q.   OKAY.  DO YOU HAVE THE ABILITY TO MAKE DECISIONS FOR THE

10:33AM 24   ENTITY?

10:33AM 25   A.   NO.

10:33AM 1    Q.   OR SPEAK ON BEHALF OF THE ENTITY?

10:33AM 2    A.   NO.

10:33AM 3    Q.   AND AFTER YOU WRITE UP THE OPERATING AGREEMENT AND ANY

10:33AM 4    ASSOCIATED PAPERS FOR THE BUSINESS, DO YOU HAVE -- ARE YOU

10:33AM 5    INVOLVED IN THE OPERATION OF THAT BUSINESS AT ALL?

10:33AM 6    A.   I HAVE BEEN, BUT IN THIS CASE THE MINUTE THEY WERE ALL

10:34AM 7    SIGNED, I DON'T RECALL BEING INVOLVED.  I DON'T THINK I DID

10:34AM 8    ANYTHING BEYOND THOSE ORIGINAL DOCUMENTS.

10:34AM 9    Q.   OKAY.  AND THAT'S BECAUSE YOU WERE JUST AN AGENT FOR

10:34AM 10   SERVICE OF PROCESS?

10:34AM 11   A.   NO.  THAT'S BECAUSE THAT'S JUST HOW IT HAPPENED I BELIEVE

10:34AM 12   IN THIS CASE.

10:34AM 13       FOR EXAMPLE, IF I WAS TO FORM AN LLC FOR A FAMILY BUSINESS

10:34AM 14   AND THEY HAD QUESTIONS OR THINGS THAT WOULD GO ON, A LOT OF

10:34AM 15   TIMES I WOULD REMAIN AS COUNSEL FOR THAT BUSINESS FOR THINGS

10:34AM 16   THAT COME UP OR WHATEVER IT HAPPENS TO BE.  IN THIS CASE IT WAS

10:34AM 17   NOT LIKE THAT.

10:34AM 18   Q.   I SEE.  SO IN SOME CIRCUMSTANCES YOU ARE STILL RETAINED

10:34AM 19   FOR LEGAL CIRCUMSTANCES AFTER THE CREATION OF THE OPERATING

10:34AM 20   AGREEMENT, BUT THAT WASN'T THE CASE HERE?

10:34AM 21   A.   CORRECT.

10:34AM 22   Q.   OKAY.

10:34AM 23   A.   AND THAT'S COMPLETELY DIFFERENT THAN THE AGENT FOR SERVICE

10:34AM 24   OF PROCESS ROLE.

10:34AM 25   Q.   NOW, EVEN THOUGH YOU WERE NOT INVOLVED IN ANY OF THE

10:35AM 1    OPERATIONS OF THIS BUSINESS, DO YOU KNOW -- ARE YOU FAMILIAR

10:35AM 2    WITH ANY OF THE OPERATIONS THAT YOU CONDUCTED?

10:35AM 3    A.   AGAIN, WHEN IT FIRST CAME TO ME I REMEMBER IT WAS FOR AN

10:35AM 4    INHERITANCE BUT AFTER THAT, NO.

10:35AM 5         ANYTHING THAT I KNOW I'VE LEARNED BECAUSE OF THIS CASE.

10:35AM 6    Q.   DO YOU KNOW IF NATA LP OR DESTRO, LLC, ACQUIRED ANY

10:35AM 7    PROPERTY?

10:35AM 8    A.   I DO NOT.

10:35AM 9    Q.   DO YOU REMEMBER WRITING A LETTER TO MS. LINDA CONLEY AT

10:35AM 10   OLD REPUBLIC TITLE ON MAY 6TH, 2010?

10:35AM 11   A.   NO.

10:35AM 12   Q.   IF I SHOWED YOU A COPY OF THAT LETTER WOULD THAT HELP YOU

10:35AM 13   REFRESH YOUR RECOLLECTION?

10:35AM 14   A.   YES.

10:35AM 15           MR. SIMEON:  YOUR HONOR, MAY I APPROACH THE WITNESS?

10:35AM 16           THE COURT:  YES.  AND SHOW COUNSEL.

10:35AM 17           MR. SIMEON:  YES, YOUR HONOR.  (HANDING.)

10:36AM 18   Q.   MR. PARR, I'M HANDING YOU A LETTER.  IF YOU COULD JUST

10:36AM 19   READ IT TO YOURSELF AND THEN LET ME KNOW WHEN YOU'RE DONE?

10:36AM 20   A.   SURE.  I DON'T RECALL THIS LETTER, BUT IT IS MY SIGNATURE.

10:36AM 21           THE COURT:  JUST A MOMENT.

10:36AM 22           THE WITNESS:  I'M SORRY.

10:36AM 23           THE COURT:  HE HAS TO ASK YOU A QUESTION.

10:36AM 24   BY MR. SIMEON:

10:36AM 25   Q.   DOES THAT REFRESH YOUR RECOLLECTION, SIR?

10:36AM 1     A.   IT DOES.

10:37AM 2     Q.   I'M RETRIEVING.

10:37AM 3     A.   IT DOES NOT REFRESH MY RECOLLECTION BUT I DO -- IT IS MY

10:37AM 4     LETTER.

10:37AM 5     Q.   ALL RIGHT.  SO, MR. PARR, I SHOWED YOU THIS LETTER AND YOU

10:37AM 6     SAID YOU DID NOT RECOLLECT IT.  BUT IS THIS A LETTER THAT YOU

10:37AM 7     WROTE?

10:37AM 8     A.   IT IS.

10:37AM 9     Q.   AND THIS IS DATED MAY 6TH, 2010; CORRECT?

10:37AM 10    A.   IT IS.

10:37AM 11    Q.   AND WHAT IS THIS LETTER?

10:37AM 12    A.   AS I READ THE LETTER, I CAN JUST SPECULATE THAT I WAS

10:37AM 13    CONTACTED BY AN ESCROW COMPANY TO MAKE SURE THAT KRISTEL HAD

10:37AM 14    THE AUTHORITY TO DO SOMETHING, AND I WAS MERELY ACKNOWLEDGING

10:37AM 15    TO THE ESCROW COMPANY THAT SHE IS THE OWNER AND SHE HAS THE

10:37AM 16    AUTHORITY TO ACT ON BEHALF OF NATA AND DESTRO.

10:37AM 17    Q.   OKAY.  AND THIS IS LINDA CONLEY AT OLD REPUBLIC TITLE?

10:37AM 18    A.   CORRECT.

10:37AM 19    Q.   ALL RIGHT.  AND YOU WROTE HER THAT KRISTEL HAS ALL OF THE

10:37AM 20    POWER TO EXECUTE DOCUMENTS, INCLUDING DEEDS OF TRUST; IS THAT

10:38AM 21    RIGHT?

10:38AM 22    A.   CORRECT.

10:38AM 23    Q.   AND WHAT IS A DEED OF TRUST?

10:38AM 24    A.   A DEED OF TRUST IS A SECURITY INSTRUMENT FOR BORROWING A

10:38AM 25    LOAN.

10:38AM 1    Q.   OKAY.  SO, FOR EXAMPLE, IF THERE WERE A LOAN SECURED BY A

10:38AM 2    HOUSE, THE HOUSE WOULD BE SECURED BY THE DEED OF TRUST; IS THAT

10:38AM 3    CORRECT?

10:38AM 4    A.   CORRECT.

10:38AM 5    Q.   MS. HOLLIMAN, COULD YOU PLEASE BRING UP GOVERNMENT'S

10:38AM 6    EXHIBIT 43.

10:39AM 7          THE CLERK:  LET ME DO A QUICK RESET, YOUR HONOR.

10:39AM 8          MR. SIMEON:  I'LL WAIT.

10:39AM 9    Q.   MR. PARR, I'M SHOWING YOU WHAT HAS BEEN ADMITTED INTO

10:39AM 10   EVIDENCE AS GOVERNMENT'S EXHIBIT 43.  THIS IS A STRAIGHT NOTE.

10:39AM 11         MS. HOLLIMAN, IF YOU COULD ZOOM IN ON THE TOP HALF.

10:39AM 12         THIS IS DATED MAY 4TH, 2010, AND THE FIRST LINE READS:

10:40AM 13   "ON OR BEFORE, MAY 7TH, 2012, FOR VALUE RECEIVED, I PROMISE TO

10:40AM 14   PAY TO DAVID M. WARDA AND DONNA E. WARDA, HUSBAND AND WIFE AS

10:40AM 15   COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP OR ORDER, THE SUM

10:40AM 16   OF $150,000 WITH INTEREST FROM MAY 7TH, 2010, UNTIL PAID AT THE

10:40AM 17   RATE OF 20 PERCENT PER ANNUM PAYABLE AT MATURITY."

10:40AM 18         AND AT THE BOTTOM, MS. HOLLIMAN, IF YOU COULD ZOOM IN.

10:40AM 19         IT'S SIGNED KRISTEL KUBUROVICH, GENERAL PARTNER.

10:40AM 20         DID I READ ALL OF THAT CORRECTLY, SIR?

10:40AM 21   A.   I BELIEVE SO.

10:40AM 22   Q.   ALL RIGHT.  MS. HOLLIMAN, COULD YOU SKIP TO THE NEXT PAGE,

10:40AM 23   PLEASE.

10:40AM 24         AND ACTUALLY IF YOU COULD GO -- I'M SORRY.

10:40AM 25         MR. PARR, WHAT IS THIS DOCUMENT?

10:40AM 1      A.   43-2?

10:41AM 2      Q.   YES, 43-2.

10:41AM 3      A.   THAT IS A DEED OF TRUST AND ASSIGNMENT OF RENTS.

10:41AM 4      Q.   AND THIS IS WHAT WE WERE JUST DISCUSSING A MOMENT AGO,

10:41AM 5      RIGHT, A DEED OF TRUST IN GENERAL?

10:41AM 6      A.   AGAIN, I DON'T RECALL.  I DIDN'T DEAL WITH ANY OF THIS,

10:41AM 7      BUT IF YOU'RE ASKING A GENERIC QUESTION IF THIS IS A DEED OF

10:41AM 8      TRUST THAT SECURES A LOAN, I BELIEVE IT IS.

10:41AM 9      Q.   ALL RIGHT.  AND, MS. HOLLIMAN, IF YOU COULD CONTINUE TO

10:41AM 10     THE PAGE 43-5.  IF YOU COULD ZOOM IN ON THE TEXT, PLEASE.

10:41AM 11          NOW, SIR, IT APPEARS THAT THIS IS SIGNED BY

10:41AM 12     KRISTEL KUBUROVICH, NATA LP, A CALIFORNIA LIMITED PARTNERSHIP.

10:41AM 13          COULD YOU -- DO YOU SEE THE NAME LINDA CONLEY BELOW THAT?

10:42AM 14     A.   I DO.

10:42AM 15     Q.   ALL RIGHT.  AND --

10:42AM 16     A.   I SEE L. CONLEY.  I BELIEVE THAT'S LINDA.

10:42AM 17     Q.   AND IS THAT, TO THE BEST OF YOUR KNOWLEDGE, THE SAME

10:42AM 18     LINDA CONLEY THAT YOU WERE WRITING IN YOUR E-MAIL OF

10:42AM 19     DECEMBER 6TH, 2010?

10:42AM 20     A.   YES.

10:42AM 21          MR. NICK:  YOUR HONOR, I'LL WITHDRAW THE OBJECTION.

10:42AM 22     BY MR. SIMEON:

10:42AM 23     Q.   SO THIS WAS THE MS. CONLEY THAT YOU WERE WRITING TO

10:42AM 24     SPEAKING ON BEHALF OF NATA LP AND WHO COULD SIGN FOR NATA LP ON

10:42AM 25     A DEED OF TRUST; IS THAT RIGHT?

10:42AM 1    A.   AGAIN, I DON'T RECALL THE LETTER, BUT THIS IS L. CONLEY

10:42AM 2    FROM IT LOOKS LIKE OLD REPUBLIC TITLE COMPANY, YES.

10:42AM 3    Q.   ALL RIGHT.

10:42AM 4    A.   AROUND THE SAME DATE.

10:42AM 5    Q.   I ASKED BECAUSE PREVIOUSLY YOU SAID AS THE AGENT FOR

10:42AM 6    SERVICE OF PROCESS YOU WOULD SPEAK ON BEHALF OF THE LP BUT

10:42AM 7    PERHAPS YOU JUST DON'T REMEMBER?

10:42AM 8    A.   I DIDN'T -- I DON'T THINK THAT WAS MY TESTIMONY.  I DIDN'T

10:43AM 9    SPEAK ON BEHALF OF THE LLC.  I MERELY ACCEPT DOCUMENTS TO BE

10:43AM 10   SERVED THROUGH LEGAL PROCESS.

10:43AM 11   Q.   I SEE.

10:43AM 12   A.   I WOULD HAVE NO KNOWLEDGE OR CONTROL.  I HAVE NOTHING TO

10:43AM 13   DO WITH THIS AT ALL.

10:43AM 14   Q.   RIGHT, NOT THIS DOCUMENT.  I WAS REFERRING TO THE LETTER,

10:43AM 15   SIR, THAT YOU WROTE TO MS. CONLEY.

10:43AM 16   A.   BUT I BELIEVE THAT WAS -- WELL, COULD YOU REPEAT THE

10:43AM 17   QUESTION.

10:43AM 18   Q.   YES.  I BELIEVE IN THE LETTER YOU WERE SPEAKING ON BEHALF

10:43AM 19   OF NATA LP AND SPEAKING FOR WHO THE MEMBERS WERE; IS THAT

10:43AM 20   CORRECT?

10:43AM 21   A.   I BELIEVE IN THE LETTER, THAT'S NOT IN FRONT OF ME, IS I

10:43AM 22   WAS CONTACTED BY AN ESCROW OFFICER THAT BASICALLY SAID YOU

10:43AM 23   FORMED THESE DOCUMENTS FOR KRISTEL KUBUROVICH AND DOES SHE HAVE

10:43AM 24   THE AUTHORITY TO BIND OR TO EXERCISE IT APPROPRIATELY?

10:43AM 25        AND MY ANSWER WAS YES.

10:43AM 1      BUT AGAIN, THAT'S NOT REALLY AS THE AGENT OF SERVICE OF

10:43AM 2  PROCESS.

10:43AM 3  Q.   YOU DO AGREE THAT THIS IS YOUR LETTER THAT YOU WROTE; IS

10:44AM 4  THAT CORRECT?

10:44AM 5  A.   OH, YES, FOR SURE.

10:44AM 6      MR. SIMEON:  YOUR HONOR, THE GOVERNMENT MOVES THIS

10:44AM 7  INTO EVIDENCE.  IF WE COULD HAVE THIS MARKED FOR IDENTIFICATION

10:44AM 8  AS GOVERNMENT'S EXHIBIT 60.

10:44AM 9      MS. GILG:  NO OBJECTION ON BEHALF OF

10:44AM 10  KRISTEL KUBUROVICH.

10:44AM 11      MR. NICK:  NO OBJECTION, YOUR HONOR.

10:44AM 12      THE COURT:  IT'S MARKED AS 60.

10:44AM 13      (GOVERNMENT'S EXHIBIT 60 WAS MARKED FOR IDENTIFICATION.)

10:44AM 14      THE COURT:  ARE YOU MOVING IT INTO EVIDENCE?

10:44AM 15      MR. SIMEON:  YES, YOUR HONOR.

10:44AM 16      THE COURT:  IT'S RECEIVED WITHOUT OBJECTION.  IT MAY

10:44AM 17  BE PUBLISHED.

10:44AM 18      (GOVERNMENT'S EXHIBIT 60 WAS RECEIVED IN EVIDENCE.)

10:44AM 19  BY MR. SIMEON:

10:44AM 20  Q.   I'M SORRY, SIR.  I WAS ASKING YOU QUESTIONS ABOUT THE

10:44AM 21  LETTER, AND I KNOW YOU HAVE LOOKED AT IT ONCE DURING THE LAST

10:45AM 22  EIGHT YEARS.  SO MAYBE YOU CAN JUST READ THE LETTER, PLEASE.

10:45AM 23  A.   I'VE READ IT.

10:45AM 24  Q.   IF YOU COULD READ IT OUT LOUD, PLEASE.

10:45AM 25  A.   "DEAR LINDA, I HOPE ALL IS WELL.  I WAS CONTACTED BY YOUR

10:45AM 1    ASSISTANT, ANNA, THIS MORNING REGARDING NATA LP.  KRISTEL HAS

10:45AM 2    ALREADY EXECUTED A RESOLUTION AND AUTHORIZATION TO DEMONSTRATE

10:45AM 3    THAT SHE IS THE SOLE CURRENT MEMBER OF DESTRO LLC ALONG WITH

10:45AM 4    THE OPERATING AGREEMENT OF DESTRO LLC.  DESTRO LLC IS THE

10:45AM 5    GENERAL PARTNER OF NATA LP AND HAS ALL OF THE POWER TO EXECUTE

10:45AM 6    DOCUMENTS ON BEHALF OF NATA LP INCLUDING DEEDS OF TRUSTS.  I

10:45AM 7    HOPE THIS ANSWERS ALL OF YOUR QUESTIONS.  IF YOUR TITLE OFFICER

10:45AM 8    HAS ANY FURTHER QUESTIONS, PLEASE DON'T HESITATE TO CALL."

10:45AM 9        SIGNED BY ME.

10:46AM 10   Q.   SO THIS LETTER MEANS THAT NATA LP WAS TAKING OUT A LOAN OR

10:46AM 11   HAD SOME PROPERTY TO USE AS PROPERTY?

10:46AM 12   A.   WHAT DOES THAT LETTER MEAN?

10:46AM 13   Q.   YEAH.

10:46AM 14   A.   THAT LETTER MEANS THAT I WAS CONTACTED BY SOMEBODY SAYING

10:46AM 15   IS IT OKAY IF KRISTEL SIGNS DOCUMENTS TO DO ANYTHING WITH NATA

10:46AM 16   AND IN MY LETTER IT LOOKS LIKE, YES, A DEED OF TRUST WAS

10:46AM 17   REFERENCED.

10:46AM 18   Q.   AND A DEED OF TRUST, AS YOU MENTIONED, WAS A LOAN?

10:46AM 19   ESSENTIALLY, IT'S PART OF A LOAN, SECURITY FOR A LOAN?

10:46AM 20   A.   IT'S SECURITY FOR A LOAN, CORRECT.

10:46AM 21   Q.   AND SO YOU WOULD HAVE BEEN MADE AWARE IN MAY OF 2010 THAT

10:46AM 22   NATA LP HAD SOME ASSETS, EITHER MONEY OR PROPERTY; IS THAT

10:46AM 23   RIGHT?

10:46AM 24   A.   UM, AGAIN, I WAS AWARE THAT -- AGAIN, BY THAT LETTER I'M

10:46AM 25   SPECULATING, BUT BY THAT LETTER I WOULD KNOW THAT NATA LP IS

10:46AM  1    BORROWING MONEY.

10:46AM  2    Q.   OKAY.  AND IF NATA LP IS BORROWING MONEY, THEN IT HAS SOME

10:47AM  3    ASSETS BY DEFINITION; IS THAT CORRECT?

10:47AM  4    A.   NOT NECESSARILY, BUT A DEED OF TRUST USUALLY REFERENCES

10:47AM  5    SOME TYPE OF A REAL PROPERTY INTEREST.

10:47AM  6    Q.   MONEY IS ALSO A TYPE OF PROPERTY; CORRECT?

10:47AM  7    A.   UM --

10:47AM  8            MS. GILG:  OBJECTION.  RELEVANCE.

10:47AM  9            THE WITNESS:  I THINK THAT'S A PRETTY LEGAL --

10:47AM 10            THE COURT:  I WILL OVERRULE THE OBJECTION AND SO YOU

10:47AM 11    CAN ANSWER THE QUESTION.

10:47AM 12            THE WITNESS:  YES.  SORRY, JUDGE.

10:47AM 13        IF YOU WANT MY LEGAL OPINION, I'M NOT SO SURE MONEY IS

10:47AM 14    PROPERTY.  IT'S PROPERTY OF THE UNITED STATES GOVERNMENT THAT

10:47AM 15    WE USE TO PAY DEBTS.  I'M NOT SO SURE IT'S OUR PROPERTY.

10:47AM 16    BY MR. SIMEON:

10:47AM 17    Q.   WELL, YOU DON'T BELIEVE THAT MONEY OR LAND COUNTS AS

10:47AM 18    PROPERTY?

10:47AM 19    A.   I BELIEVE LAND COUNTS AS PROPERTY.

10:47AM 20    Q.   SO YOU WOULD SAY THAT IF A BUSINESS HAD MONEY BUT NO LAND,

10:47AM 21    IT WOULDN'T HAVE ANY PROPERTY OF ANY KIND?

10:47AM 22    A.   I DON'T WANT TO BE CONFUSING ABOUT IT, BUT WHEN YOU TALK

10:47AM 23    ABOUT ACTUAL FUNDS OR CASH, IT'S ACTUALLY OWNED BY THE UNITED

10:47AM 24    STATES GOVERNMENT, AND WE USE IT TO PAY OFF DEBTS.

10:48AM 25    Q.   SO WHAT ABOUT ASSETS, IF I SAID ASSETS?

10:48AM 1     A.   IT'S AN ASSET, YES.  DEFINITELY.

10:48AM 2     Q.   OKAY.  SO YOU WOULD HAVE KNOWN IN MAY OF 2010 THAT NATA LP

10:48AM 3     HAD ASSETS?

10:48AM 4     A.   YEAH.

10:48AM 5          MR. NICK:  OBJECTION.  IT CALLS FOR SPECULATION.

10:48AM 6          THE COURT:  OVERRULED.  THE PREVIOUS ANSWER REMAINS.

10:48AM 7     BY MR. SIMEON:

10:48AM 8     Q.   BUT I THINK TODAY YOU TESTIFIED THAT YOU WEREN'T AWARE OF

10:48AM 9     NATA LP HAVING ANY ASSETS; IS THAT CORRECT?

10:48AM 10    A.   I DON'T RECALL THAT.  I RECALL THAT THERE WAS AN

10:48AM 11    INHERITANCE THAT WAS COMING, AND THEY NEEDED AN ENTITY OR

10:48AM 12    SOMETHING TO HOLD IT FOR ESTATE PLANNING PURPOSES TO MOVE IT

10:48AM 13    DOWN, AND I BELIEVE THERE WAS ALSO AN ISSUE BECAUSE NATALIE AT

10:49AM 14    THE TIME WAS A MINOR BUT WHETHER IT HAD ASSETS OR OBVIOUSLY

10:49AM 15    THERE WAS SOMETHING THERE BECAUSE OBVIOUSLY WE WOULDN'T BE

10:49AM 16    FORMING SOME TYPE OF AN ENTITY.

10:49AM 17    Q.   I THINK WHAT YOU SAID BEFORE WAS, AND YOU CAN CORRECT ME

10:49AM 18    IF I'M WRONG, BUT YOU DIDN'T HAVE ANY INVOLVEMENT IN THE

10:49AM 19    OPERATION OF THE BUSINESS AFTER IT WAS FORMED AND YOU DIDN'T

10:49AM 20    KNOW WHETHER IT ACQUIRED ANY ASSETS?

10:49AM 21    A.   THAT COULD BE TRUE.

10:49AM 22    Q.   OKAY.  BUT IT WAS FORMED IN 2008 AND BY MAY OF 2010 YOU

10:49AM 23    KNEW IT HAD ASSETS; RIGHT?

10:49AM 24    A.   ACCORDING TO THAT LETTER I KNEW THERE WAS A DEED OF TRUST,

10:49AM 25    YES.  BUT AS I SIT HERE TODAY, I WOULD ASSUME THAT THERE WAS

10:49AM 1    ASSETS OR SOMETHING THERE OTHERWISE WE WOULDN'T BE DOING IT.

10:49AM 2    Q.   AND I UNDERSTAND 2010 IS A LONG TIME AGO.

10:49AM 3         SIR, DO YOU REMEMBER ON APRIL 24TH, 2012, TESTIFYING UNDER

10:49AM 4    OATH REGARDING NATA LP?

10:49AM 5              MS. GILG:  YOUR HONOR, OBJECTION.  OUTSIDE OF THE

10:49AM 6    SCOPE.  AND MAY WE APPROACH?

10:49AM 7              THE COURT:  SURE.

10:49AM 8         (SIDE-BAR CONFERENCE ON THE RECORD.)

10:50AM 9              THE COURT:  OKAY, IRENE?  ALL RIGHT.  WE'RE AT

10:50AM 10   SIDE-BAR.  MS. GILG.

10:50AM 11             MS. GILG:  YOUR HONOR, THIS IS GETTING INTO THE LIS

10:50AM 12   PENDENS, AND I DON'T THINK THERE WAS ANYTHING THAT WAS

10:50AM 13   TESTIFIED TO THAT OPENED THAT DOOR.

10:50AM 14             THE COURT:  OKAY.

10:50AM 15             MR. SIMEON:  THERE'S NOTHING SPECIFICALLY ABOUT A

10:50AM 16   LIS PENDENS THAT WILL COME IN, BUT HIS PRIOR SWORN TESTIMONY IS

10:50AM 17   RELEVANT TO WHAT HE SAID TODAY.  SPECIFICALLY IT CONTRADICTS

10:50AM 18   THAT THERE'S NOTHING IN THE DOCUMENT THAT REFERS TO A

10:50AM 19   LIS PENDENS OR --

10:50AM 20             MR. NICK:  CAN WE GET A SPECIFIC OFFER OF PROOF OF

10:50AM 21   WHAT THE QUESTION WILL BE?

10:50AM 22             MR. SIMEON:  I'LL SHOW YOU.  IT'S RIGHT HERE.  IT'S

10:50AM 23   THE TESTIMONY RIGHT HERE (INDICATING).

10:50AM 24             MR. NICK:  WHICH LINE?

10:51AM 25             MR. SIMEON:  19.

10:51AM  1          MR. NICK:  19.  AND I'M LOOKING AT PAGE 41 OF SOME

10:51AM  2   TRANSCRIPT PRODUCED BY DENISE NEBOLON, CERTIFIED SHORTHAND

10:51AM  3   REPORTER.

10:51AM  4          MS. GILG:  I JUST WANT TO MAKE SURE THAT WE DON'T GO

10:51AM  5   INTO LIS PENDENS.

10:51AM  6          MR. SIMEON:  TWO LINES IS AS FAR AS I'M GOING.

10:51AM  7          MS. GILG:  OKAY.

10:51AM  8          THE COURT:  THANK YOU, COUNSEL.

10:51AM  9      (END OF DISCUSSION AT SIDE-BAR.)

10:51AM 10          THE COURT:  MR. SIMEON, COULD YOU REPEAT THE

10:51AM 11   QUESTION.

10:51AM 12   BY MR. SIMEON:

10:51AM 13   Q.  SIR, DO YOU REMEMBER GIVING SWORN TESTIMONY REGARDING NATA

10:51AM 14   LP ON APRIL 24TH, 2012?

10:51AM 15   A.  I RECALL GIVING TESTIMONY.  I DON'T REMEMBER THE DATE, BUT

10:51AM 16   I RECALL THE ONLY OTHER TIME I TESTIFIED WAS THAT TIME, BUT I

10:51AM 17   DON'T RECALL IT AS BEING WITH NATA.

10:52AM 18   Q.  OKAY.  YOU REMEMBER TESTIFYING UNDER OATH AROUND THAT

10:52AM 19   TIME?

10:52AM 20   A.  CORRECT.

10:52AM 21   Q.  I'M LOOKING AT BATES NUMBER 15646.

10:52AM 22      YOUR HONOR, THE GOVERNMENT MOVES THIS PAGE -- IF WE CAN

10:52AM 23   HAVE THIS MARKED AS -- FOR IDENTIFICATION AS GOVERNMENT'S

10:52AM 24   EXHIBIT 61.

10:52AM 25          THE COURT:  WHAT IS THIS?

10:52AM 1          MR. SIMEON:  THIS IS A TRANSCRIPT OF MR. PARR'S

10:52AM 2    TESTIMONY, SWORN TESTIMONY ON THAT DATE, AND IT'S ADMISSIBLE

10:52AM 3    UNDER 801(D)(18) AS A PRIOR INCONSISTENT STATEMENT.

10:53AM 4          MR. NICK:  YOUR HONOR, IT WOULD REQUIRE A

10:53AM 5    DISCUSSION.

10:53AM 6          THE COURT:  DID YOU WANT TO ASK THIS QUESTION -- A

10:53AM 7    QUESTION OF THE WITNESS REGARDING THE STATEMENT?

10:53AM 8          MR. SIMEON:  YES, YOUR HONOR.  HE'S ALREADY GIVEN

10:53AM 9    THE INCONSISTENT STATEMENT, BUT I CAN --

10:53AM 10         MR. NICK:  WELL, YOUR HONOR, I'M GOING TO OBJECT TO

10:53AM 11   THESE CHARACTERIZATIONS.

10:53AM 12         THE COURT:  I UNDERSTAND.  I UNDERSTAND.

10:53AM 13       WHY DON'T YOU ASK THE QUESTION.

10:53AM 14   BY MR. SIMEON:

10:53AM 15   Q.  OF COURSE.  MR. PARR, ON APRIL 24TH, 2012, ON OR ABOUT

10:53AM 16   THAT TIME, DID YOU TESTIFY UNDER OATH THAT YOU WERE NOT AWARE

10:53AM 17   OF ANY ASSETS UNDER NATA LP?

10:53AM 18   A.  I DON'T RECALL.  I RECALL TESTIFYING, BUT I DON'T RECALL

10:53AM 19   WHAT THE TESTIMONY WAS ABOUT OR WHAT I SAID.

10:53AM 20   Q.  IF I SHOWED YOU A COPY OF YOUR TESTIMONY, WOULD THAT

10:53AM 21   REFRESH YOUR RECOLLECTION?

10:53AM 22   A.  IT WOULD.

10:53AM 23         MR. NICK:  YES, PLEASE.  THANK YOU.

10:53AM 24         MR. SIMEON:  (HANDING.)

10:54AM 25   Q.  MR. PARR, DOES THAT REFRESH YOUR RECOLLECTION?

10:54AM 1    A.   I'VE READ THE TESTIMONY, AND I SEE WHAT I SAID NOW.  IT

10:54AM 2    DOES NOT REFRESH MY RECOLLECTION AS I SIT HERE, BUT I SEE WHAT

10:54AM 3    I SAID DURING THAT TESTIMONY.

10:54AM 4    Q.   AND WHAT DID YOU STATE ON APRIL 24TH, 2012?

10:55AM 5    A.   REGARDING?

10:55AM 6    Q.   SORRY.  LET ME BACK UP.

10:55AM 7        IN RESPONSE TO THE QUESTION "DOES THIS PARTNERSHIP HOLD

10:55AM 8    ANY ASSETS THAT YOU'RE AWARE OF," WHAT WAS YOUR TESTIMONY?

10:55AM 9            MS. GILG:  I'M GOING TO OBJECT.  I DON'T THINK IT'S

10:55AM 10   INCONSISTENT WITH HIS TESTIMONY.

10:55AM 11           THE COURT:  OVERRULED.  WHY DON'T YOU READ THE

10:55AM 12   ANSWER AND ASK HIM IF THAT'S WHAT HIS TESTIMONY WAS.

10:55AM 13           MR. SIMEON:  VERY WELL.

10:55AM 14   Q.   SIR, YOUR ANSWER WAS, UM, I'M NOT AWARE OF ANY ASSETS SO,

10:55AM 15   NO.  DOES THAT ACCURATELY REFLECT YOUR TESTIMONY ON THAT DAY?

10:55AM 16   A.   IF THAT'S WHAT THE DOCUMENT SAYS.  I DON'T RECALL SAYING

10:55AM 17   THAT AT THE TIME, BUT I REMEMBER TESTIFYING, YES.

10:55AM 18   Q.   OKAY.

10:55AM 19   A.   AND I'D SAY EVEN THAT LETTER I COULD REQUEST ALL OF THE

10:55AM 20   TIME REGARDING WHO OWNS WHAT, WHAT THIS IS, WHAT THAT IS, AND

10:55AM 21   JUST BECAUSE I READ A LETTER OUT, THAT DEAL MAY HAVE NEVER

10:55AM 22   CLOSED.  I DON'T KNOW.

10:56AM 23   Q.   I UNDERSTAND, SIR.  I UNDERSTAND IT WAS A LONG TIME AGO.

10:56AM 24   THANK YOU.

10:56AM 25           MR. PARR, YOU MENTIONED BEFORE THAT NATALIE WAS A LIMITED

10:56AM 1     PARTNER?

10:56AM 2     A.   CORRECT.

10:56AM 3     Q.   WAS SHE ABLE TO BE A LIMITED PARTNER WHEN SHE WAS UNDER

10:56AM 4     18?

10:56AM 5     A.   YES.

10:56AM 6     Q.   WAS THAT IN THE AGREEMENT OR WOULD THAT BE REFLECTED IN

10:56AM 7     THE PAPERWORK SOMEWHERE?

10:56AM 8     A.   I DON'T RECALL IF IT'S REFLECTED, BUT THAT'S WHAT I RECALL

10:56AM 9     DOING.

10:56AM 10    Q.   RECALL MEANING IT WOULD HAVE BEEN WRITTEN DOWN IN THE

10:56AM 11    PAPERWORK?

10:56AM 12    A.   I'M SURE IT'S WRITTEN DOWN SOMEWHERE, YES.

10:56AM 13         IT PROBABLY WOULD BE WRITTEN DOWN IN EITHER A LIMITED

10:56AM 14    PARTNERSHIP AGREEMENT OR IF NATA LP FILED TAX RETURNS, IT WOULD

10:56AM 15    PROBABLY SHOWED HER AS OWNERSHIP ON TAX RETURNS ALSO.

10:56AM 16    Q.   SO IT MAY NOT BE IN THE OPERATING AGREEMENT, BUT YOU'RE

10:57AM 17    SAYING IT MAY HAVE BEEN WRITTEN DOWN SOMEWHERE ELSE?

10:57AM 18    A.   WELL, AGAIN, I DON'T WANT TO BE HYPER TECHNICAL, BUT

10:57AM 19    NATALIE HAD NOTHING TO DO WITH THE OPERATING AGREEMENT BECAUSE

10:57AM 20    THAT WAS A GENERAL PARTNER, WHICH WAS KRISTEL.  DESTRO LLC WAS

10:57AM 21    OWNED BY KRISTEL AND THAT CONTROLLED NATA LP AND NATA LP, FROM

10:57AM 22    MY RECOLLECTION, WAS OWNED 50 PERCENT BY KRISTEL AND 50 PERCENT

10:57AM 23    BY NATALIE.

10:57AM 24    Q.   ALL RIGHT.  NOW, I THINK YOU SAID REGARDING THE SUBPOENA

10:57AM 25    THAT YOU RECEIVED -- WELL, LET ME BACK UP.  YOU SAID BANKRUPTCY

10:57AM 1   LAW IS SOMETHING THAT YOU'VE PRACTICED BEFORE; IS THAT CORRECT?

10:57AM 2   A.   A LITTLE BIT, YES.

10:57AM 3   Q.   HOW LONG DID YOU DO THAT?

10:57AM 4   A.   THREE YEARS, TWO OR THREE YEARS.

10:57AM 5   Q.   AND YOU SAID THIS WAS THE FIRST TIME THAT YOU HAD RECEIVED

10:57AM 6   A SUBPOENA REGARDING BANKRUPTCY FILINGS; IS THAT CORRECT?

10:57AM 7   A.   CORRECT.

10:57AM 8   Q.   AND YOU SAID --

10:57AM 9          THE COURT:  WHY DON'T YOU TURN THAT MICROPHONE JUST

10:57AM 10  A LITTLE BIT CLOSER.

10:57AM 11         THE WITNESS:  I'M SORRY.

10:57AM 12         THE COURT:  THANK YOU.

10:58AM 13  BY MR. SIMEON:

10:58AM 14  Q.   YOU SAID TO THE BEST OF YOUR RECOLLECTION YOU CALLED

10:58AM 15  MS. WU AND SAID THAT SHE COULD SEE THE FILES THAT HAD BEEN

10:58AM 16  SUBPOENAED; IS THAT RIGHT?

10:58AM 17  A.   NO.

10:58AM 18  Q.   THAT'S NOT CORRECT?

10:58AM 19  A.   I CALLED MS. LUCE.

10:58AM 20  Q.   MS. LUCE, I'M SORRY?

10:58AM 21  A.   WHO I BELIEVE WAS REPRESENTING THE TRUSTEE.  I DIDN'T KNOW

10:58AM 22  MS. WU WAS THE TRUSTEE, BUT I CALLED MS. LUCE AND TOLD HER I

10:58AM 23  WOULD COOPERATE, BUT I WAS CONCERNED ABOUT THE PRIVILEGE ISSUE.

10:58AM 24         AND THEN I RECALL AT SOME POINT IN TIME -- AND THE ONLY

10:58AM 25  REASON WHY I RECALL IT IS THAT SHE WAS RIGHT NEXT DOOR SO I

10:58AM 1    JUST SAID WHEN YOU GET A MINUTE, COME BY, AND THAT'S IT.  SO

10:58AM 2    THAT'S WHAT I RECALL DOING.

10:58AM 3         BUT I DON'T RECALL IF SHE CAME BY OR IF I GAVE HER THE

10:58AM 4    FILE.  I DON'T RECALL WHAT HAPPENED WITH THAT.

10:58AM 5    Q.   SO TO THE BEST OF YOUR RECOLLECTION SHE NEVER SAW A FILE

10:58AM 6    AGAIN THAT YOU CAN REMEMBER?

10:58AM 7    A.   I DON'T KNOW.

10:58AM 8    Q.   OKAY.  THANK YOU, SIR.

10:58AM 9         NO FURTHER QUESTIONS, YOUR HONOR.

10:58AM 10             MS. GILG:  I HAVE NOTHING, YOUR HONOR.

10:58AM 11             THE COURT:  MR. NICK?

10:58AM 12             MR. NICK:  JUST A COUPLE OF QUESTIONS.

10:58AM 13                      **REDIRECT EXAMINATION**

10:59AM 14   BY MR. NICK:

10:59AM 15   Q.   MR. PARR, THE LETTER YOU WROTE, DID IT CONFIRM ONE WAY OR

10:59AM 16   THE OTHER WHETHER THE LOAN HAD BEEN PROCESSED TO ITS FULLEST

10:59AM 17   EXTENT THAT NATA WOUND UP WITH THOSE ASSETS?

10:59AM 18   A.   NO.

10:59AM 19   Q.   AND YOU'RE BASICALLY NOW LOOKING AT THE LETTER.  YOUR TASK

10:59AM 20   WAS -- WELL, LET ME START AGAIN.

10:59AM 21        YOUR TASK IN THE LETTER WAS TO INFORM THE TITLE COMPANY

10:59AM 22   THAT KRISTEL KUBUROVICH HAD THE AUTHORITY TO SIGN THE PAPERS;

10:59AM 23   CORRECT?

10:59AM 24   A.   CORRECT.

10:59AM 25   Q.   NOW, SITTING HERE WHEN YOU'RE SHOWN THE LETTER, YOU'RE

10:59AM 1    ABLE TO LOOK INTO IT AND SEE THAT PERHAPS IT INVOLVED THE LOAN

10:59AM 2    AND IT MAY OR MAY NOT HAVE INVOLVED RECEIVING FUNDS, AND IT MAY

10:59AM 3    OR MAY NOT HAVE INVOLVED PLACING COLLATERAL AS SECURITY FOR

10:59AM 4    THAT LOAN.  WOULD THAT BE CORRECT?

10:59AM 5    A.   THAT'S CORRECT, AND I'M LOOKING AT IT WITH THE DEED OF

10:59AM 6    TRUST THAT WAS ACTUALLY SIGNED, AND MY ONLY POINT WAS THAT I DO

10:59AM 7    THOSE LETTERS ALL OF THE TIME AND THE DEAL NEVER HAPPENED.

10:59AM 8         SO AT THE TIME I DON'T KNOW.

10:59AM 9    Q.   VERY WELL.  THANK YOU VERY MUCH, SIR.

10:59AM 10        I HAVE NOTHING FURTHER.

10:59AM 11             MR. SIMEON:  NOTHING, YOUR HONOR.  THANK YOU.

11:00AM 12             THE COURT:  MAY THIS WITNESS BE EXCUSED?

11:00AM 13             MR. NICK:  YES, YOUR HONOR.

11:00AM 14             MS. GILG:  YES, YOUR HONOR.

11:00AM 15             MR. SCHENK:  YES.

11:00AM 16             THE COURT:  THANK YOU, SIR.  YOU MAY STAND DOWN.

11:00AM 17             THE WITNESS:  THANK YOU, JUDGE.

11:00AM 18             HE COURT:  YOU'RE WELCOME.

11:00AM 19        MS. GILG.

11:00AM 20             MS. GILG:  WE DO HAVE A WITNESS.  COULD WE TAKE A

11:00AM 21   SHORT BREAK BEFORE WE BRING THE WITNESS IN?

11:00AM 22             THE COURT:  OKAY.  LET'S TAKE ABOUT SEVEN MINUTES,

11:00AM 23   LADIES AND GENTLEMEN.

11:00AM 24             MR. NICK:  THANK YOU.

11:00AM 25             THE CLERK:  COURT IS IN RECESS.

11:00AM  1           (RECESS FROM 11:00 A.M. UNTIL 11:09 A.M.)

11:09AM  2           (JURY OUT AT 11:09 A.M.)

11:09AM  3           THE COURT:  PLEASE BE SEATED.  WE'RE BACK ON THE

11:09AM  4  RECORD.  COUNSEL ARE PRESENT, AND THE DEFENDANTS ARE PRESENT.

11:09AM  5           WE'RE OUTSIDE OF THE PRESENCE OF THE JURY.

11:09AM  6           MR. SCHENK:  YES, YOUR HONOR.  I APPRECIATE YOU

11:09AM  7  COMING OUT EARLIER.  I WANTED SOME CLARIFICATION.  WHEN WE HAD

11:10AM  8  SOME CLARIFICATION THIS MORNING ABOUT THE SCOPE OF

11:10AM  9  MR. FORREST'S TESTIMONY, WHAT THE COURT WAS TOLD WAS THAT HE

11:10AM  10  WAS GOING TO TESTIFY IN A VERY LIMITED FASHION ABOUT WHAT

11:10AM  11  MS. KUBUROVICH'S ROLE AT MEDILEAF WAS, AND THEN MR. NICK

11:10AM  12  OPENED, AND DURING OPENING HE SAID THAT MR. FORREST IS GOING TO

11:10AM  13  TALK ABOUT MR. KUBUROVICH'S REPUTATION THAT HE DIDN'T MISUSE

11:10AM  14  FUNDS.  IT GOT EXPANDED.

11:10AM  15           SO ONE IS A QUESTION AND ONE IS A REQUEST.  WHAT ACTUALLY

11:10AM  16  IS THIS WITNESS GOING TO SAY IS THE QUESTION.  THE REQUEST IS

11:10AM  17  NOW DOES THAT NOW NOT OPEN THE DOOR TO REPUTATION EVIDENCE?  IT

11:10AM  18  SEEMS LIKE THEY PUT MR. KUBUROVICH'S REPUTATION BEFORE THIS

11:10AM  19  JURY.  THERE WAS CERTAINLY SOME PROFFER ABOUT HOW HONEST AN

11:10AM  20  INDIVIDUAL MR. KUBUROVICH IS.

11:10AM  21           THE COURT:  YOU KNOW, MR. NICK, I NOTICED THAT AS

11:10AM  22  WELL IN YOUR OPENING.  YOU INDICATED THAT THE WITNESS WOULD

11:10AM  23  TESTIFY THAT -- I THINK WE CAN LOOK UP THE LANGUAGE, BUT IT WAS

11:10AM  24  SOMETHING TO THE EFFECT OF HE WAS KNOWN NOT DO CERTAIN THINGS

11:11AM  25  OR TO DO CERTAIN THINGS WHICH I HEARD AND I THOUGHT, OH, DEAR,

11:11AM 1    HAS THIS OPENED THE DOOR NOW TO CHARACTER EVIDENCE?  IT

11:11AM 2    CERTAINLY WOULD IF YOU PUT THE CLIENT -- EXCUSE ME, IF YOU PUT

11:11AM 3    THE WITNESS ON AND ASK THIS WITNESS HIS OPINION ABOUT YOUR

11:11AM 4    CLIENT'S REPUTATION IN THE COMMUNITY FOR CERTAIN ASPECTS.

11:11AM 5         MR. NICK:  YOUR HONOR, WHAT I TOLD THE JURY IN

11:11AM 6    OPENING STATEMENT WAS THE SAME THING I TOLD THE COURT.  THERE

11:11AM 7    ARE THREE WITNESSES TO SHOW THAT THE GOVERNMENT'S THEORY IS THE

11:11AM 8    MONEY FROM MEDILEAF IS GOING IN MY CLIENT'S POCKET FOR HIS OWN

11:11AM 9    PERSONAL USE.  SO THERE'S THREE WAYS TO EXCLUDE THAT:

11:11AM 10        ONE, HAS THERE EVER BEEN ANY OCCASION THAT HE'S BEEN KNOWN

11:11AM 11   IN THAT BUSINESS TO ABUSE MONEY FOR HIS OWN PERSONAL USE, NOT

11:12AM 12   STEAL IT, OKAY?  THE ANSWER IS, NO.  THAT GOES DIRECTLY TO THE

11:12AM 13   GOVERNMENT'S CASE.

11:12AM 14        THE SECOND IS LOOKING AT THE ACTUAL EXPENSES AND

11:12AM 15   IDENTIFYING THEM AS MEDILEAF EXPENSES.

11:12AM 16        AND THE THIRD WOULD BE HIS OWN PERSONAL INVOLVEMENT IN THE

11:12AM 17   CONTROL OF THE EXPENSES, YOUR HONOR.

11:12AM 18        SO THOSE ARE THE THREE THAT I IDENTIFIED TO THE COURT

11:12AM 19   DURING MY EXPLANATION OF WHAT I WOULD ASK MR. FORREST.  AND I

11:12AM 20   DON'T BELIEVE IT'S CHARACTER EVIDENCE TO SAY, HAS HE EVER USED

11:12AM 21   THE MONEY FOR HIS OWN PERSONAL EXPENSES?  AND THAT WAS --

11:12AM 22   THAT'S A VERY LIMITED AREA.  IT DOESN'T GET INTO HIS HONESTY OR

11:12AM 23   WHETHER HE IS AN HONEST PERSON.  IT'S JUST STRAIGHT UP, YOU'RE

11:12AM 24   AWARE OF THE MONEY, YOU'RE AWARE OF WHAT HAPPENS WITH IT, IS HE

11:12AM 25   USING IT FOR HIS OWN PERSONAL EXPENSES?  THE ANSWER IS NO.

11:12AM 1     MS. GILG:  YOUR HONOR, MAY I TALK TO MR. NICK?

11:12AM 2     THE COURT:  WELL, THAT'S DIFFERENT THAN IF HE'S

11:12AM 3  KNOWN TO.  IF YOU'RE ASKING FOR HIS REPUTATION IN THE

11:13AM 4  COMMUNITY --

11:13AM 5     MR. NICK:  ABSOLUTELY NOT.

11:13AM 6     THE COURT:  -- THAT'S A DIFFERENT STORY.  I THINK

11:13AM 7  THAT'S A LITTLE BROADER.

11:13AM 8     MR. NICK:  YEAH.  AND I WANT TO SAY, YOUR HONOR,

11:13AM 9  ABSOLUTELY NOT.  IT'S MEANT AND INTENDED AND WILL COME OUT ON

11:13AM 10  THE WITNESS STAND PRECISELY THE WAY THAT I INDICATED.  DOES

11:13AM 11  MR. KUBUROVICH USE MEDILEAF MONEY FOR HIS OWN PERSONAL

11:13AM 12  EXPENSES?  I EXPECT THE ANSWER TO BE NO.

11:13AM 13     THE COURT:  AND HAS HE SEEN THAT IN THE RECORDS?

11:13AM 14     MR. NICK:  EXACTLY.

11:13AM 15     MS. GILG:  YOUR HONOR, CAN I SPEAK WITH MR. NICK FOR

11:13AM 16  ONE MINUTE?  AND I JUST WANT TO MAKE SURE WE DON'T OPEN ANY

11:13AM 17  DOORS BECAUSE MY CLIENT HAS AN INTEREST.

11:13AM 18     (DISCUSSION OFF THE RECORD AMONGST COUNSEL.)

11:14AM 19     THE COURT:  ALL RIGHT.  HAVE YOU FINISHED YOUR

11:14AM 20  CONVERSATION?

11:14AM 21     MS. GILG:  YES.

11:14AM 22     MR. NICK:  YES.

11:14AM 23     THE COURT:  LET ME ASK DO THE CONVICTIONS IN STATE

11:14AM 24  COURT INVOLVE USING BUSINESS MONEY FOR PERSONAL EXPENSES?

11:14AM 25     MR. NICK:  YES, THAT WAS THE ALLEGATION.

11:14AM 1      THE COURT:  SO THAT MIGHT PRESENT A PROBLEM

11:14AM 2  DEPENDING ON HOW YOU ASK THIS QUESTION.

11:14AM 3      MR. NICK:  WELL, MAYBE I'LL JUST AVOID THE WHOLE

11:14AM 4  QUESTION.  I THINK THAT'S WHAT I'LL DO, YOUR HONOR.  SO -- AND

11:14AM 5  THERE'S ANOTHER WAY THAT I CAN STILL ARGUE THE SAME THING, YOUR

11:14AM 6  HONOR.  SO I'LL JUST AVOID THAT WHOLE TOPIC.

11:14AM 7      THE COURT:  I'M ASKING IS THIS A PROPHYLACTIC, I

11:14AM 8  SUPPOSE FOR YOUR BENEFIT BECAUSE IF THE DOOR IS OPENED.

11:14AM 9      MR. NICK:  I THINK WHAT I'M SAYING IS, YOUR HONOR,

11:14AM 10  NOW THAT I'M THROUGH THE METHOD THAT I'M BEING CHALLENGED AND

11:15AM 11  THINKING OF IT IN MY HEAD AND THERE'S A WAY THAT I CAN GET TO

11:15AM 12  THE SAME POINT WITHOUT RAISING THIS ENTIRE ISSUE, AND THAT'S

11:15AM 13  WHAT I'M GOING TO ATTEMPT TO DO, YOUR HONOR.

11:15AM 14      THE COURT:  OKAY.  SO YOU'RE NOT GOING TO ASK THAT

11:15AM 15  LAST QUESTION I TAKE IT?

11:15AM 16      MR. NICK:  THAT'S WHAT I INTEND NOT TO DO, YOUR

11:15AM 17  HONOR.  I THINK I'LL LIMIT IT TO WHAT WAS HIS ROLE IN

11:15AM 18  MAINTAINING EXPENSES, AND DID IT HAVE EXPENSES, DID

11:15AM 19  MR. KUBUROVICH HAVE AUTHORITY TO ISSUE EXPENSE CHECKS FOR

11:15AM 20  MEDILEAF.

11:15AM 21      THE COURT:  OKAY.

11:15AM 22      MR. NICK:  AND SHOW HIM SOME OF THE SCHEDULES AND

11:15AM 23  HAVE HIM IDENTIFY WHAT SOME OF THOSE EXPENSES ARE.

11:15AM 24      THE COURT:  MR. SCHENK?

11:15AM 25      MR. SCHENK:  I WOULD ASK IF IT GETS CLOSE THAT THE

11:15AM 1    COURT GIVE US AN OPPORTUNITY TO SPEAK AT SIDE-BAR BEFORE THE

11:15AM 2    CROSS-EXAMINATION BEGINS.  I DON'T WANT TO GO INTO THE AREA IF

11:15AM 3    THE DOOR WAS NOT OPENED, BUT IF IT'S CLOSE, I'D LIKE SOME

11:15AM 4    GUIDANCE.

11:15AM 5             THE COURT:  OKAY.  WELL --

11:15AM 6             MR. NICK:  YOUR HONOR, I WOULD SEEK TO ASK

11:15AM 7    MR. FORREST WHETHER MR. KUBUROVICH RECEIVED A PAYCHECK FROM

11:16AM 8    MEDILEAF AND IF IT WAS, HOW MUCH.

11:16AM 9             THE COURT:  OKAY.

11:16AM 10            MS. GILG:  AND, YOUR HONOR, I'D LIKE TO ASK THE SAME

11:16AM 11   THING ABOUT MY CLIENT, BUT THAT HAS TO DO WITH HER WORKING

11:16AM 12   THERE.  THAT WAS WITHIN THE SCOPE.

11:16AM 13            THE COURT:  ALL RIGHT.  SHOULD WE BRING THE JURY IN

11:16AM 14   NOW?

11:16AM 15        AS WE DO THAT, IT'S NOW QUARTER AFTER 11:00.  HOW MUCH

11:16AM 16   TIME DO YOU THINK WE NEED FOR THIS WITNESS?

11:16AM 17            MR. NICK:  I THINK WE CAN DEFINITELY FINISH THIS

11:16AM 18   WITNESS BY LUNCH.

11:16AM 19            THE COURT:  I'M ASKING -- I'M NOT TRYING TO PUT

11:16AM 20   PRESSURE ON YOU AT ALL.  I'M JUST WONDERING, BECAUSE WE GOT A

11:16AM 21   LATE START AND BECAUSE WE'VE HAD NUMEROUS BREAKS, IF WE CAN

11:16AM 22   FINISH THIS WITNESS BY EVEN GOING INTO THE NOON HOUR, 12:30,

11:16AM 23   BOTTOM OF THE HOUR OR SOMETHING, I THINK WE CAN --

11:16AM 24            MR. NICK:  I THINK WE COULD, YOUR HONOR, IF WE KEPT

11:16AM 25   GOING UNTIL WE FINISHED.

11:16AM 1          THE COURT:  I THINK THAT MIGHT -- THE JURY MIGHT

11:16AM 2     APPRECIATE THAT.

11:16AM 3          MS. GILG:  AND THEN IS IT YOUR INCLINATION TO HAVE

11:16AM 4     US CLOSE TOMORROW IF WE FINISH?

11:16AM 5          THE COURT:  NO, I DON'T THINK SO BECAUSE TOMORROW WE

11:16AM 6     ONLY HAVE HALF A DAY IN THE MORNING.  BUT WHAT I'D LIKE TO DO,

11:17AM 7     IF WE FINISH THIS WITNESS AND THE DEFENSE CASE AND ASSUMING

11:17AM 8     THERE'S NO REBUTTAL OR EVEN IF THERE IS REBUTTAL, IF WE FINISH

11:17AM 9     ALL OF THAT BEFORE THE END OF TODAY, THEN I THINK WE'LL ADVANCE

11:17AM 10    OUR DISCUSSIONS ABOUT INSTRUCTIONS AND SEE HOW FAR WE GET.  IF

11:17AM 11    WE CAN ACCOMPLISH EVERYTHING, THEN MAYBE WE'LL ARGUE IN THE

11:17AM 12    MORNING.

11:17AM 13         MS. GILG:  BUT WE WON'T ARGUE TODAY.

11:17AM 14         THE COURT:  NO, AND I STILL WANT TO HEAR FROM THE

11:17AM 15    GOVERNMENT ON THE RULE 29 MOTION.  SO IT MIGHT BE THAT WE DON'T

11:17AM 16    PRESENT THIS UNTIL WEDNESDAY MORNING TO THE JURY.

11:17AM 17         MS. GILG:  OKAY.  I APPRECIATE THAT.  THANK YOU.

11:17AM 18         MR. NICK:  YOUR HONOR, SHALL --

11:17AM 19         THE COURT:  SO LET'S SEE WHERE WE GO.

11:17AM 20         MR. NICK:  YOUR HONOR, IF I COULD MAKE A REQUEST AND

11:17AM 21    THAT THE COURT WITHHOLD RULING ON MY CLIENT'S RULE 29 MOTION

11:17AM 22    UNTIL I PRESENT THE CLOSING TO THE JURY BECAUSE I THINK THAT

11:18AM 23    THAT WOULD MAKE THE COURT LISTEN TO MY ARGUMENT, AND I WOULD

11:18AM 24    ASK IT TO ADOPT IT AS MY ARGUMENT FOR A RULE 29.

11:18AM 25         THE COURT:  THANK YOU.  ALL RIGHT.  WELL, THIS GIVES

11:18AM 1    ME SOMETHING TO LOOK FORWARD TO, MR. NICK.

11:18AM 2        ALL RIGHT.  LET'S BRING THE JURY IN, AND WHY DON'T WE

11:18AM 3    CONCURRENTLY BRING IN YOUR WITNESS.

11:18AM 4        (JURY IN AT 11:18 A.M.)

11:18AM 5        THE COURT:  PLEASE BE SEATED.  THANK YOU.  PLEASE BE

11:19AM 6    SEATED.  WE'RE BACK ON THE RECORD.  ALL COUNSEL AND THE

11:19AM 7    DEFENDANTS ARE PRESENT.

11:19AM 8        OUR JURY AND ALTERNATES ARE NOW PRESENT.  WE'RE JUST GOING

11:19AM 9    TO CALL UPON THE DEFENSE TO ASK ANOTHER WITNESS TO TESTIFY.

11:19AM 10   LADIES AND GENTLEMEN OF THE JURY, WHAT I'D LIKE TO DO, I

11:19AM 11   REALIZE IT'S ABOUT 20 AFTER 11:00 NOW.  IT MAY BE THAT THIS

11:19AM 12   WITNESS'S TESTIMONY, BOTH DIRECT AND CROSS-EXAMINATION, MAY

11:19AM 13   TAKE US LONGER THAN THE TIME WE HAVE REMAINING BEFORE THE NOON

11:19AM 14   HOUR.

11:19AM 15   I'VE ASKED COUNSEL ABOUT THIS, AND MY SENSE IS THAT WHAT

11:19AM 16   I'D LIKE TO DO IS TO GO INTO THE NOON HOUR A LITTLE BIT IF WE

11:19AM 17   NEED TO, TO COMPLETE THIS WITNESS'S TESTIMONY, AND THEN WE CAN

11:19AM 18   ASSESS WHERE WE ARE.

11:19AM 19   SO I JUST WANT TO LET YOU KNOW, WE WON'T BE BREAKING AT

11:19AM 20   NOON FOR LUNCH.  WE'LL PROBABLY GO INTO THE NOON HOUR A LITTLE

11:19AM 21   BIT TO SEE WHERE WE ARE AT.

11:19AM 22   YOU HAVE A WITNESS TO CALL.

11:19AM 23       MR. NICK:  YES, YOUR HONOR.  WE CALL NEIL FORREST,

11:19AM 24   YOUR HONOR.

11:19AM 25       THE COURT:  SIR, IF YOU WOULD COME FORWARD.  IF YOU

11:20AM 1    COULD COME HERE AND FACE OUR COURTROOM DEPUTY WHILE YOU RAISE

11:20AM 2    YOUR RIGHT HAND, SHE HAS A QUESTION FOR YOU.

11:20AM 3         **(DEFENDANTS' WITNESS, NEIL FORREST, WAS SWORN.)**

11:20AM 4              THE WITNESS:  YES.

11:20AM 5              THE COURT:  PLEASE HAVE A SEAT HERE, SIR, ADJUST THE

11:20AM 6    CHAIR AND MICROPHONE AS YOU NEED.

11:20AM 7         WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE STATE YOUR NAME

11:20AM 8    AND THEN SPELL IT.

11:20AM 9              THE WITNESS:  MY NAME IS NEIL FORREST.  N-E-I-L.  I

11:20AM 10   USE MY MIDDLE INITIAL J.  FORREST.  F-O-R-R-E-S-T.

11:20AM 11             THE COURT:  THANK YOU.

11:20AM 12        MR. NICK, THIS IS YOUR WITNESS.

11:20AM 13             MR. NICK:  ALL RIGHT.  THANK YOU VERY MUCH.

11:20AM 14                      **DIRECT EXAMINATION**

11:20AM 15   BY MR. NICK:

11:20AM 16   Q.   GOOD MORNING, SIR.  DO YOU KNOW MR. GOYKO KUBUROVICH RIGHT

11:20AM 17   THERE WITH THE BLACK SUIT (INDICATING)?

11:20AM 18   A.   I DO.

11:20AM 19   Q.   IS THERE ANOTHER NAME YOU KNOW HIM BY?

11:20AM 20   A.   BATZI.

11:20AM 21   Q.   AND DO YOU KNOW HIS DAUGHTER?

11:20AM 22   A.   YES, I DO.

11:20AM 23   Q.   AND WHAT DO YOU KNOW HER BY, FIRST NAME?

11:20AM 24   A.   KRISTEL.

11:20AM 25   Q.   ALL RIGHT.  AND CAN YOU TELL ME HOW LONG YOU'VE KNOWN THE

11:21AM  1    KUBUROVICHES?

11:21AM  2    A.   I WAS IN REAL ESTATE AND KNEW HIM FROM THERE, AND THEN

11:21AM  3    MORE SPECIALLY I'D SAY AROUND 2007 -- 2006, 2007, AROUND THAT

11:21AM  4    TIME.

11:21AM  5    Q.   AND 2006, 2007 YOU WERE ENGAGING WITH SOME REAL ESTATE

11:21AM  6    TRANSACTIONS WITH MR. KUBUROVICH?

11:21AM  7    A.   AROUND THAT TIME.  I DON'T KNOW THE SPECIFIC DATES.  IT

11:21AM  8    WAS QUITE A WAYS AWAY.

11:21AM  9    Q.   AND LET ME ASK YOU ARE YOU FAMILIAR WITH A BUSINESS NAMED

11:21AM 10    MEDILEAF?

11:21AM 11    A.   I AM.

11:21AM 12    Q.   AND CAN YOU TELL ME APPROXIMATELY WHEN MEDILEAF WAS

11:21AM 13    STARTED, FORMED AS A CORPORATION?

11:21AM 14    A.   I BELIEVE IT WAS AROUND 2008 -- 2007, 2008, RIGHT AROUND

11:22AM 15    THERE.

11:22AM 16    Q.   AND WHAT WAS YOUR POSITION ON MEDILEAF?

11:22AM 17    A.   I WAS A BOARD MEMBER.

11:22AM 18    Q.   AND HOW MANY BOARD MEMBERS WERE THERE?

11:22AM 19    A.   THREE.

11:22AM 20    Q.   AND WHO CONTROLLED THE USE OF PINNACLE -- WELL, FIRST OF

11:22AM 21    ALL, WAS THERE AN ACCOUNT KEPT AT PINNACLE BANK?

11:22AM 22    A.   YES.

11:22AM 23    Q.   AND WHAT WAS THE ACCOUNT USED FOR?

11:22AM 24    A.   FOR PAYING BILLS AND PAYROLL.

11:22AM 25    Q.   AND I BELIEVE YOU WERE A SIGNOR ON THAT ACCOUNT; CORRECT?

11:22AM 1    A.   AT THAT TIME, YES.

11:22AM 2    Q.   AND BATZI KUBUROVICH WAS ALSO A SIGNOR?

11:22AM 3    A.   YES.

11:22AM 4    Q.   AND DID THE BOARD CONTROL THE FLOW OF EXPENSES OUT OF THAT

11:22AM 5    ACCOUNT?

11:22AM 6    A.   WE HAD A BOOKKEEPER THAT WAS CONTROLLING THAT AND

11:22AM 7    REPORTING TO US ON THAT, YES.

11:22AM 8    Q.   AND YOU WOULD REVIEW THE BOOKKEEPER'S TALLIES?

11:22AM 9    A.   YES.

11:22AM 10   Q.   AND DID MR. KUBUROVICH HAVE AUTHORITY TO PAY EXPENSES ON

11:22AM 11   BEHALF OF MEDILEAF?

11:22AM 12   A.   YES.

11:22AM 13   Q.   I WANT TO SHOW YOU SOME DOCUMENTS.

11:23AM 14        DOES THE WITNESS HAVE EXHIBIT 58?  THAT WOULD BE VOLUME 3.

11:23AM 15        YOUR HONOR, IF I COULD HELP HIM TURN TO THE CORRECT PAGE?

11:23AM 16            THE COURT:  SURE.  WHAT PAGE IS IT?

11:23AM 17            MR. NICK:  YES, YOUR HONOR, THAT WOULD BE 58-117.

11:23AM 18   Q.   AND BASICALLY, MR. FORREST, IF YOU LOOK AT THE BOTTOM OF

11:23AM 19   THE PAGE, BECAUSE IT'S EXHIBIT 58, AND IT HAS MULTIPLE PAGES.

11:23AM 20   SO IT WILL HAVE A 58 AND A DASH AND THEN SOME NUMBERS AFTER

11:23AM 21   THAT.  AND I'M LOOKING FOR 58-117, WHICH IS KIND OF TOWARDS THE

11:24AM 22   END.

11:24AM 23            THE COURT:  THIS HAS BEEN ADMITTED, I BELIEVE.  CAN

11:24AM 24   WE PUT IT ON THE SCREEN AS WELL?

11:24AM 25            MR. NICK:  YES, YOUR HONOR.

11:24AM 1          THE WITNESS:  THERE'S A GROUP IN HERE -- I'M LOOKING

11:24AM 2     UNDER THE TAB 58.

11:24AM 3          MR. NICK:  YOUR HONOR, COULD I ASSIST THE WITNESS?

11:24AM 4          THE COURT:  SURE.  COULD WE ASK, MS. HOLLIMAN, COULD

11:24AM 5     YOU PUT THIS UP FOR US, PLEASE.  WE NEED TO SWITCH THE

11:24AM 6     COMPUTER.

11:24AM 7          MR. NICK:  I WAS GOING TO ASK HIM TO TAKE A LOOK AT

11:24AM 8     THE SCHEDULES, YOUR HONOR, AND ASK HIM SOME QUESTIONS.

11:25AM 9          THE COURT:  SURE.

11:25AM 10          MR. NICK:  IF I COULD SHOW HIM WHICH PORTION OF THE

11:25AM 11     EXHIBIT BOOK.

11:25AM 12          THE COURT:  JUST LET US KNOW WHAT PAGES.

11:25AM 13          MR. NICK:  THANK YOU.

11:25AM 14     Q.  MR. FORREST, IF I COULD SEE THE BOOK THAT YOU HAVE RIGHT

11:25AM 15     THERE IN FRONT OF YOU.  THANK YOU, SIR.

11:25AM 16          OKAY.  WE'RE STARTING HERE AT 58-117, YOUR HONOR, WHICH

11:25AM 17     WOULD BE SCHEDULE C.

11:25AM 18          MR. FORREST, WHAT I WAS GOING TO ASK YOU TO DO HERE IN A

11:25AM 19     MOMENT WAS STARTING HERE WITH 58-117, THESE ACCOUNTS THAT HAVE

11:25AM 20     BEEN IDENTIFIED AS BELONGING TO MEDILEAF AND THERE ARE

11:25AM 21     CIRCUMSTANCES AND NOTATIONS REGARDING WHAT THE PAYMENTS WERE

11:26AM 22     FOR ON THE FAR RIGHT-HAND COLUMN.

11:26AM 23          I WAS GOING TO ASK YOU TO REVIEW THOSE AND KEEP GOING

11:26AM 24     THROUGH -- LET'S JUST START WITH 58-117 THROUGH 58-120.

11:26AM 25          AND JUST READ THOSE COMMENTS ON THE FAR RIGHT-HAND COLUMN

11:26AM  1    TO YOURSELF, AND THEN I'LL ASK YOU SOME QUESTIONS ABOUT IT.

11:28AM  2        (PAUSE IN PROCEEDINGS.)

11:28AM  3    BY MR. NICK:

11:28AM  4    Q.   DID YOU HAVE AN OPPORTUNITY TO DO THAT?

11:28AM  5    A.   YES.

11:28AM  6    Q.   ALL RIGHT.  ARE THESE COMMENTS BASICALLY INDICATING THAT

11:28AM  7    EXPENSES FOR MEDILEAF WERE PAID?

11:28AM  8    A.   YES.

11:28AM  9    Q.   DID YOU SEE ANY IN THERE FOR ANY OTHER PURPOSE OTHER THAN

11:28AM  10   EXPENSES FOR THE BUSINESS?

11:28AM  11   A.   IT WOULD BE FOR PAYMENT TO OUR SUPPLIERS.

11:28AM  12   Q.   ALL RIGHT.  BUSINESS EXPENSE IN OTHER WORDS?

11:28AM  13   A.   YES, OKAY.  IT'S A BUSINESS EXPENSE, YES.

11:28AM  14   Q.   ALL RIGHT.  I WANTED TO ASK YOU ALSO IF YOU CAN NOW TAKE A

11:28AM  15   LOOK AT 58-121, AND YOU SEE THIS COMMENCES A WHOLE NEW

11:29AM  16   CATALOGING OF A DIFFERENT ACCOUNT?

11:29AM  17   A.   UH-HUH.

11:29AM  18   Q.   IT'S CALLED SCHEDULE 14.  YOU CAN SEE THAT IN THE UPPER

11:29AM  19   LEFT-HAND CORNER?

11:29AM  20   A.   UH-HUH.

11:29AM  21   Q.   AND I'LL ASK YOU AGAIN TO TAKE A LOOK AT THOSE COMMENTS ON

11:29AM  22   THE FAR RIGHT-HAND COLUMN AND READ ALL OF THE WAY THROUGH 58.

11:29AM  23   THIS ONE IS GOING TO BE A LITTLE BIT LONGER.  58-153 AND AGAIN

11:29AM  24   THE COMMENTS ON THE FAR RIGHT-HAND COLUMN.  IT'S GOING TO BE A

11:31AM  25   LITTLE BIT LONGER.

11:31AM  1          (PAUSE IN PROCEEDINGS.)

11:31AM  2              THE WITNESS:  WHAT WAS THE LAST PAGE AGAIN?

11:31AM  3              MR. NICK:  THAT WOULD BE --

11:31AM  4              THE COURT:  153.

11:31AM  5              MR. NICK:  YES, 58-153.

11:36AM  6          (PAUSE IN PROCEEDINGS.)

11:36AM  7              THE WITNESS:  I'VE COMPLETED.

11:36AM  8   BY MR. NICK:

11:36AM  9   Q.   AFTER REVIEWING ALL OF THESE PAGES, ARE THESE ALL EXPENSES

11:36AM 10   THAT APPEAR TO YOU TO BE FOR THE BUSINESS?

11:36AM 11   A.   CORRECT, I DO.

11:36AM 12   Q.   I'LL ASK YOU TO TAKE A LOOK AT 58-154 THROUGH 58-195, AND

11:36AM 13   PARTICULARLY FOCUSSING ONLY ON THE COMMENTS THAT ARE ON THE FAR

11:36AM 14   RIGHT-HAND COLUMN.

11:40AM 15          (PAUSE IN PROCEEDINGS.)

11:41AM 16              THE WITNESS:  I'M COMPLETE.

11:41AM 17   BY MR. NICK:

11:41AM 18   Q.   MR. FORREST, DO THOSE ALSO APPEAR TO BE EXPENSES FOR

11:41AM 19   MEDILEAF?

11:41AM 20   A.   YES.

11:41AM 21   Q.   AND THAT WOULD BE FOR THE OPERATION OF THE BUSINESS;

11:42AM 22   CORRECT?

11:42AM 23   A.   CORRECT.

11:42AM 24   Q.   NOW, IN THE YEAR 2009 DID MEDILEAF EXPERIENCE UNEXPECTED

11:42AM 25   EXPENSES, LEGAL IN NATURE, AND RELATED TO PERMITTING?

11:42AM 1    A.   YES.

11:42AM 2    Q.   AND DID THAT DRAIN A SUBSTANTIAL AMOUNT OF THE EXCESS OF

11:42AM 3    THE COMPANY?

11:42AM 4    A.   YES, IT DID.

11:42AM 5    Q.   NOW, MR. KUBUROVICH'S POSITION IN THE COMPANY WAS?

11:42AM 6    A.   PRESIDENT.

11:42AM 7    Q.   AND HE WAS ALSO A MEMBER OF THE BOARD?

11:42AM 8    A.   CORRECT.

11:42AM 9    Q.   DECISIONS COULD NOT BE MADE WITHOUT APPROVAL OF THE BOARD,

11:42AM 10   THOUGH; CORRECT?

11:42AM 11   A.   CORRECT.

11:42AM 12   Q.   AND JUST REAL QUICKLY.  THE NATURE OF THE BUSINESS, IS IT

11:42AM 13   CORRECT THAT IT WAS SUCH THAT WHATEVER PRODUCT WAS SOLD INSIDE

11:42AM 14   OF THE MEDILEAF STORES HAD TO BE PURCHASED CASH; IS THAT

11:42AM 15   CORRECT?

11:42AM 16   A.   THAT IS CORRECT.

11:42AM 17   Q.   SO YOU COULDN'T JUST PURCHASE THE PRODUCT FROM A VENDOR

11:42AM 18   WITH A CHECK?

11:42AM 19   A.   CORRECT.

11:43AM 20   Q.   AND WHAT WOULD IT NORMALLY ENTAIL TO GET THAT CASH?  FOR

11:43AM 21   EXAMPLE, WOULD IT BE WRITING A CHECK TO YOURSELF AND THEN

11:43AM 22   CASHING IT AT THE BANK OR HOW WOULD IT DEVELOP?

11:43AM 23   A.   THE CASH WOULD BE OBTAINED EITHER THROUGH CHECK OR FROM MY

11:43AM 24   UNDERSTANDING AND IN TALKING WITH OUR ACCOUNTANT, I WAS NOT

11:43AM 25   THERE FOR ALL TRANSACTIONS, BUT CHECK WOULD BE PRIMARY.

11:43AM 1    Q.   THAT WOULD BE TAKEN TO THE BANK AND CASHED?

11:43AM 2    A.   YES.

11:43AM 3    Q.   INCIDENTALLY, I SAW A NOTATION IN HERE PAYMENTS BEING MADE

11:43AM 4    TO EL TORO, LLC, FOR EXAMPLE.  WHAT WAS EL TORO?  DOES THAT --

11:43AM 5    DOES THAT REFRESH YOUR MEMORY?  IS THAT A SECURITY COMPANY?

11:43AM 6    DOES THAT SOUND CORRECT?

11:43AM 7    A.   YES, THAT'S CORRECT.

11:43AM 8    Q.   AND THEY RAN THE SECURITY FOR MEDILEAF?

11:43AM 9    A.   YES, FOR THE --

11:43AM 10   Q.   AS PRESIDENT, DID THE BOARD SET A PARTICULAR SALARY FOR

11:44AM 11   MR. KUBUROVICH?

11:44AM 12   A.   YES, THEY DID.

11:44AM 13   Q.   DID HE EVER RECEIVE THAT SALARY?

11:44AM 14   A.   RECEIVED PARTIAL SALARY, BUT IT WAS WAY AFTER WE STARTED

11:44AM 15   MEDILEAF.

11:44AM 16   Q.   AND WHEN YOU SAY "WAY AFTER," ABOUT HOW MUCH WAY AFTER?

11:44AM 17   A.   WELL, IT WAS JUST A FEW MONTHS BEFORE WE CLOSED THE

11:44AM 18   OPERATION.

11:44AM 19   Q.   THAT WAS THE FIRST TIME THAT HE RECEIVED ANY SORT OF

11:44AM 20   SALARY PAYMENT?

11:44AM 21   A.   THAT I'M AWARE OF, UH-HUH.

11:44AM 22   Q.   THANK YOU VERY MUCH.

11:44AM 23        I HAVE NOTHING FURTHER.

11:44AM 24   /  /  /

11:44AM 25   /  /  /

**DIRECT EXAMINATION**

BY MS. GILG:

Q.   GOOD MORNING, MR. FORREST.

A.   GOOD MORNING.

Q.   YOU HAD -- DO YOU RECALL PRECISELY -- WELL, LET ME ASK IT

THIS WAY:  WHEN MEDILEAF WAS FORMED, WAS IT FORMED BY FILING

ARTICLES OF INCORPORATION WITH THE SECRETARY OF STATE?

A.   YES.

Q.   AND WOULD THE DATE THAT THAT FILING WAS MADE, WOULD THAT

HELP REFRESH YOUR RECOLLECTION AS TO WHEN IT BEGAN, WHEN THE

ENTITY WAS CREATED?

A.   REPEAT THAT.

Q.   IF I WERE TO SHOW YOU THE DOCUMENT THAT WAS FILED WITH THE

SECRETARY OF STATE, WOULD THAT HELP TO REFRESH YOUR

RECOLLECTION WHEN IT WAS --

A.   YES.

          MS. GILG:  YOUR HONOR, MAY I -- THIS IS NOT AN

EXHIBIT.

          THE COURT:  IT'S NOT IN EVIDENCE?

          MS. GILG:  IT IS NOT.

          THE COURT:  ALL RIGHT.  WHY DON'T YOU SHOW COUNSEL

WHAT YOU'RE USING.

          MS. GILG:  YES.  SHOULD I PUT IT THERE?

          THE COURT:  WHY DON'T YOU SHOW THE WITNESS.

          MS. GILG:  MAY I?

11:46AM  1          THE COURT:  OF COURSE.

11:46AM  2     BY MS. GILG:

11:46AM  3     Q.   WHAT DOES THAT DOCUMENT APPEAR TO BE?

11:46AM  4          THE COURT:  IS THIS TO REFRESH HIS RECOLLECTION?

11:46AM  5     BY MS. GILG:

11:46AM  6     Q.   YES.  I'M SORRY.  DOES THAT REFRESH YOUR RECOLLECTION?

11:46AM  7     A.   CORRECT.

11:46AM  8     Q.   OKAY.  SO WHAT WAS THE DATE WHEN MEDILEAF FIRST FORMED?

11:46AM  9     A.   MAY 29TH, 2009.

11:46AM  10    Q.   AND WHAT WAS THE ENTITY FORMED AS?  WAS IT A CORPORATION?

11:46AM  11    WAS IT AN LLC?  A MUTUAL BENEFIT CORPORATION?  HOW WAS IT

11:46AM  12    ORGANIZED?

11:46AM  13    A.   MUTUAL BENEFIT, NOT FOR PROFIT.

11:46AM  14    Q.   NOW, YOU INDICATED THAT MR. KUBUROVICH STARTED GETTING

11:46AM  15    PAID A FEW MONTHS BEFORE THE -- YOU CLOSED.  DO YOU RECALL

11:47AM  16    CLOSING IN -- WHEN IT WAS THAT IT CLOSED?

11:47AM  17    A.   ON MY BIRTHDAY, DECEMBER 9TH.

11:47AM  18    Q.   OF 2000 AND --

11:47AM  19    A.   -- '10.

11:47AM  20    Q.   AND MY CLIENT, KRISTEL KUBUROVICH, MY CLIENT, DO YOU KNOW

11:47AM  21    HER?

11:47AM  22    A.   YES, I DO.

11:47AM  23    Q.   AND HOW DO YOU KNOW HER?

11:47AM  24    A.   I KNOW HER AS BEING BATZI'S DAUGHTER, AND SHE ALSO DID

11:47AM  25    SOME WORK WITH HIM AT MEDILEAF.

11:47AM 1    Q.   AND WHAT TYPE OF WORK DID SHE DO WITHIN MEDILEAF?  WELL,

11:47AM 2    LET ME ASK IT DIFFERENTLY.

11:47AM 3         DID SHE COME -- DID SHE GET A PAYCHECK?

11:47AM 4    A.   AS FAR AS I KNOW, YES, FOR THAT WORK.

11:47AM 5    Q.   AND SHE WORKED AT THE -- FOR THE ENTITY?

11:47AM 6    A.   YES, ASSISTING CUSTOMERS.

11:47AM 7    Q.   AND DID SHE GO DAILY?  WAS SHE A PERMANENT PART OF THE

11:47AM 8    OFFICE?  LET ME ASK YOU THIS, HOW OFTEN DID SHE WORK?

11:47AM 9    A.   SHE WORKED PRETTY OFTEN.  NOT NECESSARILY FULL TIME.  SORT

11:48AM 10   OF WITH THE PEOPLE AS OUR BUSINESS NEEDS WOULD GO, IT WOULD BE

11:48AM 11   HOW MANY HOURS YOU'D PUT IN.

11:48AM 12   Q.   AND WAS THERE A TIME THAT IT WAS CONTEMPLATED TO ELEVATE

11:48AM 13   HER POSITION WITHIN THE ENTITY?

11:48AM 14   A.   YES, IT WAS.

11:48AM 15   Q.   AND WHAT WAS THE TALK ABOUT WHERE SHE WOULD BE ELEVATED

11:48AM 16   TO?

11:48AM 17   A.   BOARD OF DIRECTORS.

11:48AM 18   Q.   WAS THERE A TIME, IF YOU RECALL, WHEN -- WELL, LET ME BACK

11:48AM 19   UP A LITTLE BIT.

11:48AM 20        MR. NICK HAD ASKED YOU ABOUT SOME EXPENSES, UNEXPECTED

11:48AM 21   EXPENSES RELATING TO PERMITTING THE BUSINESS.  DO YOU RECALL

11:48AM 22   THAT?

11:48AM 23   A.   YES.

11:48AM 24   Q.   AND WAS THERE A TIME DURING THAT PERIOD WHEN THE ENTITY

11:48AM 25   WAS SHORT ON FUNDS?

11:48AM 1    A.   YES.

11:48AM 2    Q.   AND WAS THERE ANYTHING THAT MY CLIENT, KRISTEL KUBUROVICH,

11:49AM 3    WAS ABLE TO DO IN ORDER TO ASSIST THE ENTITY?

11:49AM 4    A.   MY UNDERSTANDING AND WHAT I SAW A LOAN WAS MADE.

11:49AM 5    Q.   AND DO YOU RECALL HOW MUCH THE LOAN WAS MADE FOR?

11:49AM 6    A.   I CAN'T BE CERTAIN OF THAT.

11:49AM 7    Q.   WOULD IT REFRESH YOUR RECOLLECTION TO LOOK AT SOME

11:49AM 8    DOCUMENTS, THE LOAN DOCUMENTS?

11:49AM 9    A.   YES, IT WOULD.

11:49AM 10   Q.   OKAY.  DEFENDANTS' BINDERS A THROUGH H BEFORE THE WITNESS.

11:49AM 11           THE CLERK:  IT'S ON THE RIGHT.

11:49AM 12           MS. GILG:  IT'S A LITTLE BLACK BINDER.

11:49AM 13       AND IF YOU COULD GO TO EXHIBIT F.

11:50AM 14       (PAUSE IN PROCEEDINGS.)

11:50AM 15           MS. GILG:  YOUR HONOR, I WOULD MOVE EXHIBIT F INTO

11:50AM 16   EVIDENCE.

11:50AM 17           MR. SCHENK:  NO OBJECTION.

11:50AM 18           THE COURT:  IT'S RECEIVED.  IT MAY BE PUBLISHED.

11:50AM 19       (DEFENDANTS' EXHIBIT F WAS RECEIVED IN EVIDENCE.)

11:50AM 20   BY MS. GILG:

11:50AM 21   Q.   I'M GOING TO MOVE TO THE SECOND TO THE LAST PAGE AND YOU

11:50AM 22   SEE THE PROMISSORY NOTE.

11:51AM 23   A.   OKAY.

11:51AM 24   Q.   DO YOU RECOGNIZE THAT?  AND YOU CAN ALSO LOOK AT THE

11:51AM 25   SCREEN BECAUSE I'M DISPLAYING IT.

11:51AM   1      A.   YES.

11:51AM   2      Q.   AND WHAT IS THAT DOCUMENT?

11:51AM   3      A.   THE DOCUMENT IS A PROMISSORY NOTE.

11:51AM   4      Q.   AND WHAT DOES IT REFLECT?  WHAT PROMISES?

11:51AM   5      A.   A LOAN FROM KRISTEL FOR 160,000.

11:52AM   6      Q.   AND THAT WAS TO -- A LOAN FROM KRISTEL TO?

11:52AM   7      A.   TO MEDILEAF.

11:52AM   8      Q.   AND THAT WAS IN DECEMBER OF 2009?

11:52AM   9      A.   YES.

11:52AM  10      Q.   AND DOES THAT COMPORT WITH YOUR RECOLLECTION TO ANY LOANS

11:52AM  11      THAT KRISTEL MADE TO MEDILEAF?

11:52AM  12      A.   YES.

11:52AM  13      Q.   NOW, YOU WENT THROUGH SEVERAL BANK ACCOUNTS WITH MR. NICK,

11:52AM  14      AND I BELIEVE IT WAS FOUR ACCOUNTS, IS THAT CORRECT, FOR

11:52AM  15      MEDILEAF?

11:52AM  16      A.   I SAW ACCOUNTS FROM B OF A, AND I SAW ACCOUNTS FROM

11:52AM  17      PINNACLE.

11:52AM  18      Q.   AND DO YOU RECALL SETTING UP ACCOUNTS FOR ANY PARTICULAR

11:52AM  19      REASON, LIKE WAS ONE ACCOUNT FOR PAYROLL, ONE FOR TAXES?

11:53AM  20      A.   I DID NOT SET THOSE UP, BUT, YES, WE HAD SEPARATE

11:53AM  21      ACCOUNTS.  THE ACCOUNTANT WAS VERY STRICT ABOUT ALL OF THAT.

11:53AM  22      Q.   OKAY.  I JUST WANT TO SHOW YOU -- I'M GOING TO PUT THIS ON

11:53AM  23      THE SCREEN GOVERNMENT'S EXHIBIT 58-21, AND IT'S ONE OF THE

11:53AM  24      PAGES OF THE DOCUMENTS THAT YOU LOOKED AT.

11:54AM  25          AND I JUST WANT TO ASK, YOU'LL NOTICE THAT THERE'S SEVERAL

11:54AM 1    ENTRIES OF CASH.  WOULD THAT INDICATE A CASH WITHDRAWAL?

11:54AM 2    A.   FROM THE LOOKS ON THIS LEDGER IT SHOWS DEPOSIT.

11:54AM 3    Q.   OH, THOSE ARE DEPOSITS.  I'M SORRY.

11:54AM 4        WERE THERE CASH WITHDRAWALS MADE FROM THESE BANKS THAT YOU

11:54AM 5    RECALL?

11:54AM 6    A.   I DID NOT SEE THE CHECKS PERSONALLY BUT I -- THERE WAS

11:54AM 7    CASH WITHDRAWALS MADE.

11:54AM 8    Q.   SO FOR YOUR -- WITHOUT LOOKING -- WITHOUT RESORTING TO

11:54AM 9    THESE DOCUMENTS, IT'S YOUR RECOLLECTION THAT THERE WERE CASH

11:54AM 10   WITHDRAWALS MADE FROM THE BANKS OF MEDILEAF?

11:54AM 11   A.   CORRECT.

11:54AM 12   Q.   AND TO YOUR KNOWLEDGE WAS THERE A WAY OF TRACKING WHERE

11:54AM 13   THAT CASH WENT?

11:54AM 14   A.   YES.

11:54AM 15   Q.   AND TO YOUR KNOWLEDGE DID THAT CASH GO TO THE BUSINESS

11:54AM 16   EXPENSES OF THE ENTITY?

11:55AM 17   A.   YES.

11:55AM 18        MS. GILG:  I HAVE NOTHING FURTHER, YOUR HONOR.

11:55AM 19        THE COURT:  CROSS-EXAMINATION?

11:55AM 20                       **CROSS-EXAMINATION**

11:55AM 21   BY MR. SCHENK:

11:55AM 22   Q.   GOOD MORNING, MR. FORREST.  MY NAME IS JEFF SCHENK AND I

11:55AM 23   REPRESENT THE UNITED STATES.  HOW ARE YOU TODAY?

11:55AM 24   A.   WELL, THANK YOU.

11:55AM 25   Q.   AND I JUST WANT TO CLARIFY A COUPLE OF THINGS.  ON THE

11:55AM 1    DIRECT EXAMINATION YOU STARTED WITH MR. NICK SHOWING YOU SOME

11:55AM 2    EXCEL SPREADSHEETS.  THEY WERE CALLED EXHIBIT 58.  DO YOU

11:55AM 3    RECALL THAT?

11:55AM 4    A.   YES.

11:55AM 5    Q.   WHEN YOU WERE EMPLOYED AT MEDILEAF, DID YOU EVER REVIEW

11:55AM 6    RECORDS THAT LOOKED LIKE THAT?

11:55AM 7    A.   NO.

11:55AM 8    Q.   WHEN YOU WERE EMPLOYED AT MEDILEAF, YOU HAD A BOOKKEEPER;

11:55AM 9    RIGHT?

11:55AM 10   A.   CORRECT.

11:55AM 11   Q.   AND YOU ALSO REFERRED TO AN ACCOUNTANT JUST A MOMENT AGO.

11:55AM 12   WAS THAT THE SAME PERSON OR WAS THAT A SEPARATE?

11:55AM 13   A.   YES, THE BOOKKEEPER.

11:55AM 14   Q.   AND THAT'S ALL ONE PERSON?

11:56AM 15   A.   RIGHT.

11:56AM 16   Q.   HOW MANY EMPLOYEES WERE THERE?

11:56AM 17   A.   WE HAD SO MANY THAT WERE PART-TIME.  I WOULD SAY MAYBE 10

11:56AM 18   TO 15.

11:56AM 19   Q.   OKAY.  MR. NICK ASKED YOU TO LOOK JUST AT THE RIGHT COLUMN

11:56AM 20   AND THEN LOOK UP WHEN YOU WERE DONE REVIEWING.  DO YOU RECALL

11:56AM 21   THAT?

11:56AM 22   A.   CORRECT.

11:56AM 23   Q.   AND FOR INSTANCE, THE RIGHT COLUMN WOULD SAY THINGS LIKE

11:56AM 24   CHECK SIGNED BY B. ZIEGELMAN; IS THAT RIGHT?  IS THAT AN

11:56AM 25   EXAMPLE?

11:56AM   1    A.   UH-HUH.

11:56AM   2            THE COURT:  IS THAT A YES?

11:56AM   3            THE WITNESS:  YES.  EXCUSE ME.

11:56AM   4    BY MR. SCHENK:

11:56AM   5    Q.   AND YOU SAID JUST BY LOOKING AT THE RIGHT COLUMN YOU COULD

11:56AM   6    TELL THAT THOSE WERE BUSINESS EXPENSES?

11:56AM   7    A.   I WAS ALSO SCANNING ACROSS, YES.

11:56AM   8    Q.   SO YOU COULDN'T DO IT JUST BY LOOKING AT THE RIGHT COLUMN,

11:56AM   9    EVEN THOUGH THAT'S WHAT MR. NICK ASKED?

11:57AM  10    A.   UH-HUH.

11:57AM  11    Q.   YOU HAD TO LOOK AT OTHER INFORMATION; RIGHT?  I'M SORRY?

11:57AM  12    A.   YES.

11:57AM  13    Q.   AND IT WAS HELPFUL THAT THE INFORMATION WAS LAID OUT LIKE

11:57AM  14    THAT FOR YOU?

11:57AM  15    A.   RIGHT.

11:57AM  16    Q.   YOU COULD SEE THE PAYOR AND THE PAYEE ON THERE; RIGHT?

11:57AM  17    A.   RIGHT.

11:57AM  18    Q.   AND THE DOLLAR AMOUNT?

11:57AM  19    A.   YES.

11:57AM  20    Q.   AND A COMMENT.  AND PUTTING ALL OF THAT TOGETHER YOU WERE

11:57AM  21    ABLE TO DRAW SOME CONCLUSIONS ABOUT THE EXPENSE?

11:57AM  22    A.   YES.

11:57AM  23    Q.   YOU WERE ASKED ABOUT A SALARY THAT MR. KUBUROVICH

11:57AM  24    RECEIVED.  DO YOU RECALL THAT LINE OF QUESTIONING?

11:57AM  25    A.   YES.

11:57AM  1      Q.   AND YOU SAID I THINK IT WAS A PARTIAL SALARY, PRETTY CLOSE

11:57AM  2      TO WHEN MEDILEAF STOPPED OPERATING.  DID I HEAR THAT RIGHT?

11:57AM  3      A.   YES.

11:57AM  4      Q.   AND DO YOU KNOW WHETHER THAT WAS THE ONLY SOURCE OF INCOME

11:57AM  5      FOR MR. KUBUROVICH?

11:57AM  6      A.   I WOULDN'T KNOW OTHER SOURCES OUTSIDE OF MEDILEAF.

11:57AM  7      Q.   YOU DON'T HAVE PERSONAL KNOWLEDGE OF THAT?

11:57AM  8      A.   NO.

11:57AM  9      Q.   HAVE YOU SEEN OR ARE YOU AWARE OF A BANKRUPTCY PETITION

11:58AM  10     THAT MR. KUBUROVICH AND HIS WIFE FILED?

11:58AM  11     A.   YES.

11:58AM  12     Q.   YOU'RE AWARE OF IT?

11:58AM  13     A.   YES.

11:58AM  14     Q.   HAVE YOU SEEN IT?

11:58AM  15     A.   NO.

11:58AM  16     Q.   YOU'VE NEVER LOOKED AT ANY OF THE ENTRIES ON THAT

11:58AM  17     DOCUMENT; RIGHT?

11:58AM  18     A.   CORRECT.

11:58AM  19     Q.   OR ANY OF THE AMENDMENTS THAT WERE FILED?

11:58AM  20     A.   NO.

11:58AM  21     Q.   THEN YOU WERE ASKED SOME QUESTIONS BY MS. KUBUROVICH'S

11:58AM  22     LAWYER ABOUT LOANS THAT MS. KUBUROVICH MADE TO MEDILEAF;

11:58AM  23     CORRECT?

11:58AM  24     A.   CORRECT.  YES.

11:58AM  25     Q.   AND DID YOU AT THE TIME HAVE PERSONAL KNOWLEDGE OF THOSE

11:58AM 1 LOANS?

11:58AM 2 A. I HAD KNOWLEDGE THAT THE LOAN WAS MADE, YES.

11:58AM 3 Q. YOU KNEW WHEN THE LOAN WAS MADE THAT MS. KUBUROVICH WAS

11:58AM 4 MAKING THE LOAN?

11:58AM 5 A. CORRECT.

11:58AM 6 Q. YOU SAID THAT MS. KUBUROVICH ALSO WORKED THERE. SHE

11:58AM 7 WORKED THERE ASSISTING CUSTOMERS; IS THAT RIGHT?

11:58AM 8 A. CORRECT.

11:58AM 9 Q. AND SHE RECEIVED A PAYCHECK TO YOUR UNDERSTANDING?

11:58AM 10 A. AN HOURLY WAGE, YES.

11:58AM 11 Q. AND SHE MADE AN HOURLY WAGE. OKAY. DO YOU KNOW HOW OLD

11:58AM 12 SHE WAS AT THE TIME?

11:58AM 13 A. SOMEWHERE AROUND 20.

11:59AM 14 Q. AROUND 20 YEARS OLD?

11:59AM 15 A. UH-HUH.

11:59AM 16 Q. THE AMOUNT OF THAT LOAN WAS $160,000.

11:59AM 17 A. CORRECT.

11:59AM 18 Q. AND WAS HER SALARY AT MEDILEAF SUFFICIENT TO COVER A LOAN

11:59AM 19 OF THAT SIZE?

11:59AM 20 A. NO.

11:59AM 21 Q. DO YOU KNOW WHAT OTHER SOURCES OF INCOME MS. KUBUROVICH

11:59AM 22 HAD? DO YOU HAVE OTHER PERSONAL KNOWLEDGE OF THEM?

11:59AM 23 A. I KNOW THAT SHE HAD A GRANDFATHER THAT HAD PASSED AWAY.

11:59AM 24 Q. AND WHY DID YOU SAY THAT IN RESPONSE TO WHAT I SAID? WHAT

11:59AM 25 DOES THAT HAVE TO DO WITH HER OTHER SOURCES OF INCOME?

11:59AM  1    A.   IT WOULDN'T BE A SOURCE OF INCOME.  IT WOULD BE WHERE SHE

11:59AM  2    WOULD HAVE PERHAPS HAD THE MONEY.

11:59AM  3    Q.   WHAT DO YOU MEAN PERHAPS?  DO YOU KNOW THAT SHE RECEIVED

11:59AM  4    MONEY FROM A GRANDFATHER OR YOU JUST HEARD THIS, OR ARE YOU

11:59AM  5    SUPPOSING?

11:59AM  6    A.   I HAD HEARD.

11:59AM  7    Q.   YOU HAD HEARD THAT SHE RECEIVED SOME MONEY FROM A

11:59AM  8    GRANDFATHER?

11:59AM  9    A.   YES.

11:59AM  10   Q.   WHO TOLD YOU THAT?

11:59AM  11   A.   THAT WOULD HAVE BEEN MR. KUBUROVICH.

11:59AM  12   Q.   HE TOLD YOU THAT?

11:59AM  13   A.   UH-HUH.

11:59AM  14   Q.   OKAY.  DO YOU RECALL WHEN THAT WAS?

11:59AM  15   A.   NO, I DO NOT.

12:00PM  16   Q.   DO YOU KNOW WHETHER IT WAS BEFORE OR AFTER SHE MADE THE

12:00PM  17   LOAN?

12:00PM  18   A.   I BELIEVE IT WAS AT THE TIME THAT THE LOAN WAS MADE.

12:00PM  19   Q.   THAT YOU HAD THIS CONVERSATION?

12:00PM  20   A.   YES.

12:00PM  21   Q.   AND YOU NEVER HEARD THIS FROM MS. KUBUROVICH; IS THAT

12:00PM  22   RIGHT?

12:00PM  23   A.   RIGHT.

12:00PM  24   Q.   AND YOU NEVER SAW ANY DOCUMENTS OR ANYTHING ELSE.  YOU

12:00PM  25   WERE JUST TOLD THIS?

12:00PM  1    A.   CORRECT.

12:00PM  2    Q.   THANK YOU.

12:00PM  3         NO FURTHER QUESTIONS?

12:00PM  4              THE COURT:  ANYTHING FURTHER?

12:00PM  5                    **REDIRECT EXAMINATION**

12:00PM  6    BY MR. NICK:

12:00PM  7    Q.   MR. FORREST, YOU WERE INVOLVED IN A REAL ESTATE

12:00PM  8    DEVELOPMENT WITH MR. KUBUROVICH?

12:00PM  9    A.   CORRECT.

12:00PM  10   Q.   AND WOULD IT BE VERY CORRECT THAT HE WAS DOING VERY, VERY

12:00PM  11   WELL IN 2006 IN THAT AREA?

12:00PM  12   A.   RIGHT.

12:00PM  13   Q.   AND WHAT ABOUT IN 2007?

12:01PM  14   A.   THINGS WERE GETTING PRETTY BAD.

12:01PM  15   Q.   AND AROUND 2008 WAS HE STILL IN THE DEVELOPMENT BUSINESS?

12:01PM  16   A.   I'M NOT AWARE OF ALL OF THE THINGS THAT HE MAY HAVE BEEN

12:01PM  17   INVOLVED IN, BUT I DO NOT BELIEVE SO.

12:01PM  18   Q.   ALL RIGHT.  LET ME PAINT THE PICTURE TO YOU THIS WAY.

12:01PM  19   WOULD IT BE ACCURATE THEN TO STATE THAT HE HAD MADE A

12:01PM  20   SUBSTANTIAL AMOUNT OF MONEY AT LEAST BY 2006 IN THE REAL ESTATE

12:01PM  21   INDUSTRY?

12:01PM  22   A.   CORRECT.

12:01PM  23   Q.   AND THAT BY 2009 HE WAS NOT?

12:01PM  24   A.   THAT IS CORRECT.

12:01PM  25   Q.   THANK YOU.

12:01PM  1      NOTHING FURTHER.

12:01PM  2              MS. GILG:  NOTHING, YOUR HONOR.

12:01PM  3              MR. SCHENK:  THE WITNESS MAY BE EXCUSED.  THANK YOU.

12:01PM  4              THE COURT:  MAY THIS WITNESS BE EXCUSED?

12:01PM  5              MR. NICK:  YES, YOUR HONOR.

12:01PM  6              MS. GILG:  YES.

12:01PM  7              THE COURT:  THANK YOU, SIR.  YOU CAN STAND DOWN.

12:01PM  8      THANK YOU.

12:01PM  9              MS. GILG:  YOUR HONOR, SUBJECT TO ADMITTING

12:01PM  10     EXHIBITS, THE DEFENSE WILL REST ON THE PART OF

12:02PM  11     KRISTEL KUBUROVICH.

12:02PM  12             MR. NICK:  SAME HERE, YOUR HONOR.  WE REST.

12:02PM  13             THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, LET ME

12:02PM  14     TURN TO THE GOVERNMENT.  ANY REBUTTAL EVIDENCE FROM THE

12:02PM  15     GOVERNMENT?

12:02PM  16             MR. SCHENK:  NO, YOUR HONOR.

12:02PM  17             THE COURT:  ALL RIGHT.  THANK YOU.  LADIES AND

12:02PM  18     GENTLEMEN, WHAT THIS MEANS IS THAT YOU HAVE NOW HEARD ALL OF

12:02PM  19     THE EVIDENCE SUBJECT TO PERHAPS ADDITIONAL EXHIBITS BEING

12:02PM  20     INTRODUCED, BUT YOU'VE NOW HEARD ALL OF THE EVIDENCE THAT YOU

12:02PM  21     WILL HEAR IN REGARDS TO THIS CASE.

12:02PM  22         WHAT NEXT WILL HAPPEN IS I WILL INSTRUCT YOU ON THE LAW ON

12:02PM  23     THE FACTS AS YOU FIND THEM, AND IN FULL DISCLOSURE, THOSE ARE

12:02PM  24     NOT READY YET, AND I'M GOING TO WORK WITH THE LAWYERS ON THAT.

12:02PM  25         LET ME ASK YOU IF YOU COULD RETURN TO YOUR DELIBERATION

12:02PM 1    ROOM FOR JUST A MOMENT.  I ANTICIPATE WHAT IS GOING TO HAPPEN,

12:02PM 2    AND I'LL TALK TO THE LAWYERS, I ANTICIPATE, LADIES AND

12:02PM 3    GENTLEMEN, THAT WE'LL BREAK FOR THE DAY, AND IT'S POSSIBLE THAT

12:02PM 4    WE'LL ENGAGE IN CLOSING ARGUMENT AND INSTRUCTION TOMORROW, BUT

12:02PM 5    I NEED TO TALK TO THESE LAWYERS ABOUT THAT SCHEDULE.

12:02PM 6         SO IF YOU WOULD PARDON US FOR JUST A MOMENT, AND IF YOU

12:03PM 7    COULD RETURN TO THE JURY ROOM WE'LL CALL YOU OUT.

12:03PM 8         (JURY OUT AT 12:03 P.M.)

12:03PM 9         THE COURT:  ALL RIGHT.  PLEASE BE SEATED.  THE

12:03PM 10   RECORD SHOULD REFLECT THAT THE JURY HAS RETIRED TO THE JURY

12:03PM 11   DELIBERATION ROOM, AND THEY'RE NOT PRESENT IN THE COURTROOM.

12:03PM 12        SO WE WILL -- I THINK THIS AFTERNOON WE'LL ENGAGE JURY

12:03PM 13   INSTRUCTION CONVERSATION.  THE GOVERNMENT WISHES TO FILE A

12:03PM 14   WRITTEN RESPONSE TO THE RULE 29.

12:03PM 15        LET ME ASK YOU WHAT IS YOUR TIME SCHEDULE ON THAT?

12:04PM 16        MR. SIMEON:  THANK YOU, YOUR HONOR.  IF THE COURT

12:04PM 17   WOULD ALLOW UNTIL THE END OF THE WEEK, THE GOVERNMENT WOULD

12:04PM 18   APPRECIATE THAT.

12:04PM 19        THE COURT:  OKAY.  WHAT DOES THAT DO FOR OUR JURY?

12:04PM 20        MR. SCHENK:  YOUR HONOR, MY UNDERSTANDING IS THAT

12:04PM 21   BECAUSE THE MOTION HAS BEEN MADE, THE COURT CAN TAKE UNDER

12:04PM 22   SUBMISSION RULING ON THE MOTION UNTIL AFTER THE VERDICT AND

12:04PM 23   THEREFOR GET BRIEFING FROM THE GOVERNMENT.

12:04PM 24        THE COURT:  SO LET ME ASK YOU SCHEDULE WISE IF YOU

12:04PM 25   FILE YOUR MOTION BY NOON, FRIDAY, IS THAT WHAT YOU'RE SAYING

12:04PM  1     YOU COULD DO?

12:04PM  2           MR. SIMEON:  YES, YOUR HONOR, IF THAT'S ACCEPTABLE

12:04PM  3     TO THE COURT.

12:04PM  4           THE COURT:  THIS AFTERNOON WE COULD ENGAGE OUR

12:04PM  5     DISCUSSION, OUR CHARGING CONFERENCE REGARDING THE INSTRUCTIONS.

12:04PM  6        I HAVE AN ENGAGEMENT SCHEDULED AT HASTINGS TOMORROW

12:04PM  7     AFTERNOON THAT IS A SCHOOL THING, BUT I CAN CANCEL THAT.  THEY

12:04PM  8     HAVE I THINK JUSTICE SIMON AND MAGISTRATE JUDGE CORLEY ARE

12:05PM  9     GOING TO APPEAR, AND THEY'RE FAR SMARTER THAN I AM SO IT WON'T

12:05PM  10    BE ANY LOSS.  THERE WON'T BE ANY LOSS.

12:05PM  11       SO LET'S ASSUME THAT I'LL BE AVAILABLE ALL DAY TOMORROW.

12:05PM  12    IT'S POSSIBLE THAT WE COULD ENGAGE CLOSING INSTRUCTION AND

12:05PM  13    CLOSING TOMORROW.

12:05PM  14          MR. NICK:  I WOULD THINK SO, YOUR HONOR.

12:05PM  15          THE COURT:  SO --

12:05PM  16          MR. SCHENK:  THAT SCHEDULE IS FINE WITH THE

12:05PM  17    GOVERNMENT, BUT WE WOULD OFFER IF THE COURT IS INTERESTED IN

12:05PM  18    MAKING ITS COMMITMENT, WE COULD EITHER INSTRUCT, CLOSE, AND

12:05PM  19    THEN SEND THE JURY HOME, AND THEY COULD BEGIN DELIBERATING

12:05PM  20    WEDNESDAY.

12:05PM  21       I KNOW THE COURT'S CONCERN IS IF THEY COME BACK WITH NOTES

12:05PM  22    OR SOMETHING AND THE COURT IS NOT HERE.  WE CAN HAVE THEM NOT

12:05PM  23    DELIBERATE BUT STILL CLOSE TOMORROW.

12:05PM  24          MS. GILG:  I DON'T SEE US ALL FINISHING OUR CLOSING

12:05PM  25    BEFORE 11:30 TOMORROW WITH INSTRUCTING.

12:06PM 1        THE COURT:  RIGHT.  MY SENSE IS THAT ARGUMENTS ARE

12:06PM 2    GOING TO PROBABLY GO A LITTLE LONGER SO IF WE -- I'M GOING TO

12:06PM 3    ASK THEM TO BE -- I KNOW THIS IS CONTRARY TO OUR -- I'M GOING

12:06PM 4    TO ASK THEM TO COME IN AT MAYBE 10:00 O'CLOCK, AND MAYBE BE

12:06PM 5    HEAR ARGUMENTS AT 10:00 O'CLOCK TOMORROW MORNING, AND I

12:06PM 6    ANTICIPATE THAT WE'LL NEED AN EXTRA HOUR TOMORROW TO TALK ABOUT

12:06PM 7    SOME THINGS AND NOT SUGGESTING THAT YOU WON'T BE PRODUCTIVE

12:06PM 8    THIS AFTERNOON, BUT THAT'S WHAT I'LL TELL THEM IS THAT THEY'LL

12:06PM 9    PROBABLY ENGAGE AND BE IN THEIR SEATS AND EVERYBODY BE IN THEIR

12:06PM 10   SEATS AT 10:00 O'CLOCK READY TO RESUME.

12:06PM 11       ANY OBJECTION TO THAT?

12:06PM 12       MR. SCHENK:  NO, YOUR HONOR.

12:06PM 13       MR. NICK:  YOUR HONOR, SO AFTER WE FINISH ARGUMENT

12:06PM 14   TOMORROW, THE JURY CAN START DELIBERATING TOMORROW?

12:06PM 15       THE COURT:  AFTER INSTRUCTIONS.

12:06PM 16       MR. NICK:  VERY WELL.

12:06PM 17       THE COURT:  THAT'S WHAT I INTEND TO DO IS TO GIVE

12:07PM 18   THEM THE CASE TOMORROW.

12:07PM 19       MR. NICK:  VERY WELL.  THANKS.

12:07PM 20       THE COURT:  OKAY.

12:07PM 21    (JURY IN AT 12:07 P.M.)

12:07PM 22       THE COURT:  PLEASE BE SEATED.  THANK YOU.  ALL

12:07PM 23   RIGHT.  PLEASE BE SEATED.  THANK YOU.  WE'RE BACK ON THE

12:07PM 24   RECORD.  OUR JURY AND ALTERNATES ARE NOW PRESENT.

12:07PM 25       AND THANK YOU, LADIES AND GENTLEMEN.  WHAT WE'RE GOING TO

12:07PM 1    DO IS WE'RE GOING TO -- I'M SORRY.  WE'RE MISSING ONE.

12:07PM 2              THE CLERK:  SORRY.

12:07PM 3              THE COURT:  I'M SORRY.  WE'RE MISSING MS. MACARAEG.

12:08PM 4         THAT'S WHY YOU WERE LOOKING INTENTLY TOWARD THE DOOR.

12:08PM 5              THE CLERK:  YOU MIGHT WANT TO ENTER THE OTHER SIDE.

12:08PM 6              THE COURT:  ALL RIGHT.  THANK YOU.  OUR JURY IS NOW

12:08PM 7    PRESENT.  OUR ALTERNATES ARE PRESENT, AND BOTH DEFENDANTS ARE

12:08PM 8    PRESENT, AND BOTH COUNSEL ARE PRESENT.

12:08PM 9         LADIES AND GENTLEMEN, WE HAVE HAD OUR DISCUSSIONS, AND WE

12:08PM 10   ARE GOING TO END OUR COURT DAY TODAY.  WE WILL ENGAGE CLOSING

12:08PM 11   ARGUMENTS AND INSTRUCTION TOMORROW.  I PREVIOUSLY -- I THINK

12:08PM 12   YOUR CALENDARS SUGGESTED THAT WE WERE NOT TO BE IN SESSION

12:08PM 13   TOMORROW AFTERNOON.  I'VE MADE SOME ADJUSTMENTS, BUT WE WILL BE

12:08PM 14   AVAILABLE SO THAT YOU WILL, IT'S MY HOPE THAT YOU'LL HAVE THE

12:09PM 15   CASE TOMORROW.  SO WE WON'T HAVE A BREAK TOMORROW AFTERNOON.

12:09PM 16   WE'LL ENGAGE OUR CLOSING ARGUMENTS AND THEN INSTRUCTION, AND I

12:09PM 17   APOLOGIZE FOR THE LAST MINUTE CHANGE.

12:09PM 18        DOES THAT CAUSE DISRUPTION TO ANYONE'S PREVIOUS SCHEDULE?

12:09PM 19        OH, YES, MS. ALLEN.

12:09PM 20             ALTERNATE JUROR:  BUT I'M AN ALTERNATE SO.

12:09PM 21             THE COURT:  WELL, THAT'S IMPORTANT.

12:09PM 22             ALTERNATE JUROR:  I MEAN, I COULD -- I HAVE TO BE

12:09PM 23   HOME BY 4:30 BECAUSE I'M THE EMERGENCY BACK UP FOR THE BABY

12:09PM 24   BECAUSE MY SON-IN-LAW HAD TO FLY TO BOISE.

12:09PM 25             THE COURT:  OKAY.  I THINK THAT WE WILL HAVE

12:09PM 1      CONCLUDED CLOSING ARGUMENT BY 4:30.  LET ME TURN TO COUNSEL.

12:09PM 2                  MR. NICK:  I HOPE SO, YOUR HONOR.  YES.

12:09PM 3                  ALTERNATE JUROR:  IT TAKES ME AN HOUR TO GET HOME.

12:09PM 4      I LIVE IN APTOS.

12:09PM 5                  THE COURT:  ALL RIGHT.  SO YOU NEED TO BE HOME AT

12:09PM 6      3:30, EXCUSE ME, 4:30.

12:09PM 7                  ALTERNATE JUROR:  YES.

12:09PM 8                  THE COURT:  I THINK WE'LL BE ABLE TO ACCOMMODATE

12:10PM 9      THAT.  AND ABSENT A SITTING JUROR BEING UNABLE TO BEGIN

12:10PM 10     DELIBERATIONS, YOU WOULD NOT GO INTO THE JURY DELIBERATION

12:10PM 11     ROOM.  I THINK WE CAN ACCOMMODATE.  THANK YOU FOR BRINGING THIS

12:10PM 12     TO MY ATTENTION.

12:10PM 13         ANYONE ELSE WITH AN ISSUE?  ALL RIGHT.  LET'S DO THIS

12:10PM 14     THEN, WE'LL HAVE OUR BREAK TODAY.  IT'S MY HOPE -- I'M GOING TO

12:10PM 15     ASK YOU TO BE READY.  WE ARE GOING TO SHOOT TO HAVE YOU IN YOUR

12:10PM 16     SEATS SUCH THAT WE CAN START AT 10:00 A.M. TOMORROW MORNING AND

12:10PM 17     10:00 A.M.  IF YOU COULD COLLECT YOURSELVES DOWNSTAIRS

12:10PM 18     ACCORDINGLY, WE'LL BRING YOU UP AT THAT TIME.

12:10PM 19                 MR. NICK:  YOUR HONOR, I WOULD REQUEST THE

12:10PM 20     SEPARATION ADMONITION AGAIN.

12:10PM 21                 THE COURT:  YES.  YES, OF COURSE.

12:10PM 22                 MR. NICK:  THANK YOU.

12:10PM 23                 THE COURT:  AND I REMIND YOU OF THE ADMONITION THAT

12:10PM 24     I'VE READ TO YOU PREVIOUSLY, AND THAT'S STILL IN PLACE AND IN

12:10PM 25     FULL FORCE UNTIL THE CASE IS OVER AND UNTIL I'VE RELEASED YOU

12:10PM 1   FROM THAT ADMONITION THAT IS IN PLACE, AND YOU RECALL THAT

12:11PM 2   ADMONITION NOT TO DISCUSS OR FORM ANY OPINIONS ABOUT THIS CASE

12:11PM 3   NOR SPEAK TO ANYONE ABOUT THE CASE.

12:11PM 4       ALL RIGHT.  HAVE A GOOD EVENING.  THANK YOU.

12:11PM 5       (JURY OUT AT 12:11 P.M.)

12:11PM 6           THE COURT:  PLEASE BE SEATED.  THANK YOU.  SO LET'S

12:11PM 7   MEET AGAIN AT 1:30, AND WE'LL START OUR DISCUSSION ABOUT JURY

12:11PM 8   INSTRUCTIONS.  OKAY.

12:11PM 9           MR. SIMEON:  THANK YOU, YOUR HONOR.

12:11PM 10          MR. NICK:  THANK YOU, YOUR HONOR.

12:11PM 11          MS. GILG:  THANK YOU, YOUR HONOR.

12:11PM 12          THE COURT:  THANK YOU.

12:12PM 13          THE CLERK:  THE COURT IS IN RECESS.

12:12PM 14      (LUNCH RECESS TAKEN AT 12:12 P.M.)

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 12:12PM | 1 | **AFTERNOON SESSION** |
| 01:36PM | 2 | (JURY OUT AT 1:36 P.M.) |
| 01:36PM | 3 | THE COURT: WE'RE BACK ON THE RECORD OUTSIDE OF THE |
| 01:36PM | 4 | PRESENCE OF THE JURY. ALL DEFENDANTS ARE PRESENT AND ALL |
| 01:36PM | 5 | COUNSEL ARE PRESENT. |
| 01:36PM | 6 | LET ME -- BEFORE WE GET INTO JURY INSTRUCTIONS, I WAS |
| 01:36PM | 7 | INFORMED WE NEEDED TO CLARIFY THE RECORD AS TO CERTAIN |
| 01:36PM | 8 | EXHIBITS, AND I UNDERSTAND COUNSEL HAVE HAD A CHANCE TO |
| 01:36PM | 9 | DISCUSS. |
| 01:36PM | 10 | AND THERE MIGHT BE SOME NEED OF CLARIFICATION AS TO SOME |
| 01:37PM | 11 | EXHIBITS. MR. SIMEON. |
| 01:37PM | 12 | MR. SIMEON: YES, YOUR HONOR. SO TO CLARIFY, THESE |
| 01:37PM | 13 | EXHIBITS WERE ALREADY ADMITTED INTO EVIDENCE. IT WAS |
| 01:37PM | 14 | EXHIBIT -- |
| 01:37PM | 15 | MS. GILG: I'M SORRY. BEFORE WE DO THAT, CAN I JUST |
| 01:37PM | 16 | RUN AND GET MY GOVERNMENT EXHIBIT LIST? |
| 01:37PM | 17 | THE COURT: SURE. |
| 01:37PM | 18 | (PAUSE IN PROCEEDINGS.) |
| 01:38PM | 19 | THE COURT: ALL RIGHT. MR. SIMEON. |
| 01:38PM | 20 | MR. SIMEON: THANK YOU, YOUR HONOR. SO WITH RESPECT |
| 01:38PM | 21 | TO GOVERNMENT EXHIBIT 51, ONLY THREE PAGES FROM EXHIBIT 51 WERE |
| 01:38PM | 22 | ADMITTED AND THAT'S 51-5, 51-78, AND 51-209. |
| 01:38PM | 23 | ALSO FOR EXHIBIT 58, THE ENTIRETY OF EXHIBIT 58 WAS |
| 01:38PM | 24 | ADMITTED INTO EVIDENCE. |
| 01:38PM | 25 | THE COURT: ALL RIGHT. MR. NICK, IS THAT YOUR |

01:38PM 1    UNDERSTANDING?

01:38PM 2                MR. NICK:  YES, YOUR HONOR, IT IS.

01:38PM 3                THE COURT:  AND, MS. GILG, IS THAT YOUR

01:38PM 4    UNDERSTANDING?

01:38PM 5                MS. GILG:  I'M SORRY, YOUR HONOR.  I'M A BIT

01:38PM 6    CONFUSED.  THE ONLY PROBLEM IS I CAN'T FIND MY EXHIBIT LIST SO

01:39PM 7    MAYBE --

01:39PM 8                THE CLERK:  DO YOU WANT TO LOOK AT THE COURT?

01:39PM 9                MS. GILG:  YES, PLEASE.  SORRY.  51-5.

01:39PM 10       YEAH.  SEE I WASN'T -- I DIDN'T MARK DOWN ANY OF 51 COMING

01:39PM 11   IN SO I'LL DOUBLE-CHECK THAT.

01:39PM 12       BUT THE WHOLE THING NOT COMING IN IS MY UNDERSTANDING.

01:39PM 13       THE PROBLEM IS THAT 51 IS NOT IN THE BINDERS.

01:40PM 14               THE CLERK:  IT SAYS REFER TO EXHIBIT C BINDER FOR

01:40PM 15   51.

01:40PM 16               MS. GILG:  IF I MAY HAVE A MOMENT WITH MR. SIMEON.

01:40PM 17               THE COURT:  WE'LL GO OFF THE RECORD FOR JUST A

01:40PM 18   MOMENT.

01:40PM 19       (DISCUSSION OFF THE RECORD AMONGST COUNSEL.)

01:40PM 20               MS. GILG:  OKAY.  I'M SORRY.  THAT'S MY

01:40PM 21   UNDERSTANDING.

01:40PM 22               THE COURT:  ALL RIGHT.  LET'S GO BACK ON THE RECORD.

01:40PM 23   WE'RE BACK ON THE RECORD.

01:40PM 24       MS. GILG, AS TO 51-5, 78, 209?

01:40PM 25               MS. GILG:  ALL OF THOSE, MY UNDERSTANDING IS THAT

01:40PM 1    THEY'RE IN.

01:40PM 2              THE COURT:  AND 58?

01:40PM 3              MS. GILG:  YES, MY UNDERSTANDING IS THAT IT'S IN.

01:41PM 4              THE COURT:  OKAY.  MR. NICK?

01:41PM 5              MR. NICK:  ALL OF THESE HAVE BEEN ADMITTED, YOUR

01:41PM 6    HONOR, AND THAT WOULD BE 51-5, 51-78, 51-209, AND ALL OF THE 58

01:41PM 7    EXHIBITS WERE ADMITTED.

01:41PM 8              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.  ANY OTHER

01:41PM 9    CLARIFICATIONS FOR EXHIBITS THAT WE SHOULD GO OVER?

01:41PM 10        (GOVERNMENT'S EXHIBITS 51-5, 51-78, 51-209, AND 58 WERE

01:41PM 11   RECEIVED IN EVIDENCE.)

01:41PM 12             MS. GILG:  I BELIEVE THAT I NEED TO MOVE SOME OF MY

01:41PM 13   EXHIBITS IN, AND I'D LIKE TO ADMIT D.

01:41PM 14        WITH REGARD TO E, I'M ONLY SEEKING TO ADMIT THE FIRST

01:41PM 15   PAGE, WHICH IS BATES 23352.

01:41PM 16        WITH REGARD TO F, I WOULD MOVE TO ADMIT --

01:41PM 17             THE CLERK:  THAT'S BEEN ADMITTED, YOUR HONOR.

01:42PM 18             THE COURT:  YES.  THAT WAS ADMITTED THIS MORNING.

01:42PM 19             MS. GILG:  OH.  WELL, I'LL TALK TO MR. SIMEON.  I

01:42PM 20   DON'T KNOW IF WE CAN -- I'M HAPPY TO HAVE THE WHOLE THING, BUT

01:42PM 21   I DON'T KNOW IF THAT WAS WHAT THE INTENT OF THE PARTIES WAS,

01:42PM 22   AND I DON'T WANT IT TO SEEM LIKE I SLIPPED SOMETHING IN THERE

01:42PM 23   THAT WAS NOT SUPPOSED TO BE IN THERE.

01:42PM 24             MR. SIMEON:  I THINK WE STIPULATED TO E, F, G, AND

01:42PM 25   H.

01:42PM 1      IS THAT RIGHT?

01:42PM 2          MR. SCHENK:  THE -- YES, THE JOINT STIPULATION OF

01:42PM 3  THE PARTIES THAT THE COURT READ STIPULATION NUMBER 1,

01:42PM 4  GOVERNMENT EXHIBITS 8 AND 46 AND DEFENSE EXHIBITS E, F, G, AND

01:42PM 5  H ARE ADMISSIBLE INTO EVIDENCE.  THOSE EXHIBITS WERE FOUND AT

01:42PM 6  7170 EAGLE RIDGE DRIVE.

01:43PM 7          MS. GILG:  RIGHT, ADMISSIBLE BUT NOT OFFERED.

01:43PM 8      I MEAN, WHAT I'M TRYING TO DO IS I'M SAYING THAT I DO NOT

01:43PM 9  OFFER INTO EVIDENCE G AND H AND THE PORTIONS OF THOSE OTHER

01:43PM 10  EXHIBITS I WOULD NOT OFFER INTO EVIDENCE.

01:43PM 11          THE CLERK:  THE STIPULATION WAS FILED.

01:43PM 12          THE COURT:  OKAY.  WELL, I READ THE STIPULATION TO

01:43PM 13  THE JURY, AND IT INDICATES DEFENSE EXHIBITS E, F, G, AND H ARE

01:43PM 14  ADMISSIBLE INTO EVIDENCE.

01:43PM 15      NOW, WHEN I READ THAT STIPULATION, I UNDERSTOOD THAT THE

01:43PM 16  PARTIES HAD AGREED THAT THESE WOULD BE ADMITTED INTO EVIDENCE.

01:43PM 17  THAT WAS MY UNDERSTANDING, AND THAT WAS THE COURT'S INTENT WHEN

01:43PM 18  IT READ THE STIPULATIONS, THE UNDERSTANDING WAS THAT THESE

01:43PM 19  DOCUMENTS WOULD BE ADMITTED INTO EVIDENCE, THAT'S WHY THERE WAS

01:43PM 20  A STIPULATION.

01:44PM 21          MR. NICK:  I GUESS THE WAY I WOULD PUT IT, YOUR

01:44PM 22  HONOR, IS IF THE GOVERNMENT IS NOT INTERESTED IN HAVING G AND H

01:44PM 23  BEFORE THE JURY, NEITHER ARE WE.

01:44PM 24      SO THAT WOULD BE THE -- SO WE COULD PROBABLY RE-STIPULATE

01:44PM 25  THAT THOSE EXHIBITS WOULD NOT GO BEFORE THE JURY.

01:44PM 1      MR. SCHENK:  YOUR HONOR, OUR UNDERSTANDING, WHEN WE

01:44PM 2  ASKED THE DEFENSE TO STIPULATE, WAS THAT THE GOVERNMENT WANTS

01:44PM 3  TO ADMIT 8 AND 46 WITHOUT THE NEED TO CALL MR. ACKEMANN.  HE

01:44PM 4  WAS THE INDIVIDUAL WHO FOUND GOVERNMENT'S EXHIBIT 8 AND 46 AT

01:44PM 5  THE EAGLE RIDGE PROPERTY.

01:44PM 6      THE DEFENSE THEN SAID, SURE, WE'LL STIPULATE, BUT IF

01:45PM 7  YOU'RE GETTING YOUR EXHIBITS IN VIA STIP AND NOT CALLING

01:45PM 8  MR. ACKEMANN, WE WANT OURS IN, TOO.  WE THOUGHT THAT WAS FAIR.

01:45PM 9  SO THEY GAVE US THE LIST THAT THEY WANTED IN THROUGH

01:45PM 10  MR. ACKEMANN, AND THIS IS WHY WE STIPULATED, AT LEAST THAT WAS

01:45PM 11  OUR UNDERSTANDING.

01:45PM 12      MS. GILG:  YOUR HONOR, I MEAN, IT'S NOT THAT BIG OF

01:45PM 13  A DEAL.  I JUST THOUGHT THEY'RE BULKY DOCUMENTS.  I DON'T THINK

01:45PM 14  THAT THEY'RE RELEVANT.

01:45PM 15      I MEAN, WE DON'T KNOW WHAT IS GOING TO HAPPEN AT THE

01:45PM 16  BEGINNING OF THE TRIAL, AND SO WE ASKED TO HAVE THE STIPULATION

01:45PM 17  THAT THEY WERE FOUND AT THE LOCATION, AND MY UNDERSTANDING IS

01:45PM 18  THAT THEY WOULD BE ADMISSIBLE IF OFFERED.

01:45PM 19      IF THEY ARE IN AND THAT'S THAT, I DON'T WANT TO TAKE A LOT

01:45PM 20  OF TIME ON THIS.

01:45PM 21      I'M JUST SAYING IF THEY'RE NOT IN, I'M NOT OFFERING THEM.

01:45PM 22      IF THEY ARE IN --

01:45PM 23      THE COURT:  ALL RIGHT.  THANK YOU.  MR. NICK,

01:45PM 24  ANYTHING FURTHER?

01:45PM 25      MR. NICK:  NOTHING ELSE.  THANK YOU VERY MUCH, YOUR

01:45PM 1    HONOR.

01:45PM 2              THE COURT:  THANK YOU.  WHEN WE HAD THIS DISCUSSION,

01:45PM 3    IT DID -- THIS STIPULATION WAS PRECEDED BY A DISCUSSION ABOUT

01:45PM 4    MR. ACKEMANN OR ACKEMANN, AND MY UNDERSTANDING WAS THAT YOU

01:46PM 5    WERE TO MEET AND CONFER AND YOU WERE TO DISCUSS WHETHER OR NOT

01:46PM 6    FOR BRUTON REASONS, AND OTHERS, WHETHER OR NOT THIS WITNESS

01:46PM 7    NEEDED TO TESTIFY.

01:46PM 8         THE RESULT OF THAT CONVERSATION I WAS LED TO BELIEVE WAS

01:46PM 9    THE STIPULATION.  ALTHOUGH THE LANGUAGE SAYS ARE ADMISSIBLE

01:46PM 10   INTO EVIDENCE, WGUCG STATES A FACT THAT THEY'RE ADMISSIBLE.

01:46PM 11        I RECOGNIZE THAT IT DOESN'T SAY THAT THEY'LL BE

01:46PM 12   INTRODUCED, BUT THE COURT'S INTENTION IN INFORMING THE JURY OF

01:46PM 13   THAT WAS THAT THESE DOCUMENTS, ALL OF THEM, PURSUANT TO

01:46PM 14   STIPULATION, ARE RECEIVED INTO EVIDENCE, AND THAT WAS THE

01:46PM 15   INTENT OF THE COURT WHEN IT READ THIS STIPULATION.

01:46PM 16        SO I THINK OUR RECORD REFLECTS THAT THEY'RE IN EVIDENCE,

01:46PM 17   AND I WILL INDICATE THAT THEY'RE IN EVIDENCE FOR WHATEVER USE

01:46PM 18   THE PARTIES WISH TO MAKE OF THEM.

01:46PM 19             MR. SCHENK:  I THINK THE DEFENSE JUST MOVED D IN,

01:46PM 20   THOUGH.  WE DON'T HAVE ANY STIPULATION ON D.

01:46PM 21             THE COURT:  NO, NO.  WE'RE JUST TALKING ABOUT OUR

01:47PM 22   JOINT STIPULATION NUMBER 1, AND NOW D IS THE HOLOGRAPHIC WILL

01:47PM 23   OF KRISTEL KUBUROVICH.

01:47PM 24             MS. GILG:  I THOUGHT THAT WAS PART OF THE

01:47PM 25   STIPULATION.

01:47PM 1          THE COURT:  WELL, IT DOESN'T APPEAR IN THE STIP

01:47PM 2    ORDER.

01:47PM 3          MS. GILG:  OKAY.  THEN I WOULD NOT MOVE THAT IN.

01:47PM 4          THE COURT:  ALL RIGHT.

01:47PM 5          MS. GILG:  THEN THE TWO EXHIBITS THAT I WOULD LIKE

01:47PM 6    TO ADMIT ARE I AND J.  THESE ARE PART OF THE BANKRUPTCY FILE,

01:47PM 7    AND ESSENTIALLY WHAT THESE DOCUMENTS REFLECT, IS THE FACT THAT

01:47PM 8    THE CASTLE LAKE HOUSE, IT ACTUALLY STATES THAT THE KUBUROVICHES

01:47PM 9    WERE STILL IN THE CASTLE LAKE HOUSE IN THE SUMMER OF 2010 WHICH

01:47PM 10   WOULD HAVE BEEN AFTER THE PETITION WAS FILED WITH THE

01:47PM 11   CASTLE LAKE ADDRESS, AND IT WAS IMPLIED, AND I'M CERTAIN IT'S

01:47PM 12   GOING TO BE SUGGESTED IN CLOSING ARGUMENT, THAT THAT WAS FALSE,

01:48PM 13   AND THEY THEY HAD BEEN EVICTED FROM THAT HOME, BUT WHAT IT

01:48PM 14   SHOWS IS THAT THEY WERE IN FACT STILL LIVING AT THE HOME AND

01:48PM 15   THE BANK WAS SEEKING RECOURSE FROM THE BANKRUPTCY COURT TO HAVE

01:48PM 16   THEM REMOVED FROM THE HOME.  AND IT GOES THROUGH THAT.

01:48PM 17       SO I THINK THAT THAT IS -- WE DISCUSSED EARLIER, THE

01:48PM 18   PARTIES DID, THAT ANYTHING RELEVANT FROM THE BANKRUPTCY FILE

01:48PM 19   WOULD BE ADMISSIBLE AS LONG AS RELEVANT, AND I FIND THAT THOSE

01:48PM 20   DOCUMENTS ARE RELEVANT AND SO THAT WOULD BE I AND J.

01:48PM 21          MR. SIMEON:  I DON'T THINK THAT THE PARTIES AGREED

01:48PM 22   THAT ANYTHING FROM THE BANKRUPTCY DOCKET WOULD COME INTO

01:48PM 23   EVIDENCE, FIRST OF ALL.

01:48PM 24       SECOND OF ALL, THERE IS ALSO A DECLARATION FROM

01:48PM 25   KRISTEL KUBUROVICH STATING THAT THE ENTIRE FAMILY MOVED OUT OF

01:48PM 1    THE EAGLE RIDGE AND INTO THE NEW HOME IN 2009 IN NOVEMBER.  SO

01:48PM 2    IF WE'RE GOING TO ADMIT THAT DOCUMENT, WHICH I THINK IS

01:49PM 3    PROBABLY HEARSAY, IT'S RELIANCE ON STATEMENTS BY DEFENDANTS

01:49PM 4    ABOUT WHERE THEY LIVED, WHICH WE KNOW IS NOT TRUE.  WE HAVE

01:49PM 5    OTHER THINGS SHOWING THINGS TO THE CONTRARY.

01:49PM 6        THIS IS NOT THE TIME TO ARGUE WHICH COMPETING EVIDENCE

01:49PM 7    COMES IN.  THAT IS SOMETHING THAT COULD HAVE BEEN ADDRESSED

01:49PM 8    DURING THE TRIAL, AND THE GOVERNMENT WOULD HAVE REBUTTAL

01:49PM 9    EVIDENCE AGAINST THAT.

01:49PM 10       MS. GILG:  YOUR HONOR, I PRESENTED THIS -- THESE

01:49PM 11   ADDITIONAL EXHIBITS TWO DAYS AGO.  I HAVE THIS ON MY EXHIBIT

01:49PM 12   LIST WHEN I CAME IN AFTER MR. LAFFREDI TESTIFIED AND SO -- AND

01:49PM 13   I OFFER THESE AS -- INTO EVIDENCE AT THAT POINT.  THIS IS

01:49PM 14   OUR --

01:49PM 15       THE COURT:  YOU OFFERED THEM INTO EVIDENCE?

01:49PM 16       MS. GILG:  WELL, I MEAN, THEY WERE -- IT WAS

01:49PM 17   FRIDAY -- I MEAN -- NO -- YES, FRIDAY WHERE I BROUGHT THEM IN

01:49PM 18   AND I PROVIDED THEM TO THE PROSECUTION AND THEY OBJECTED TO K,

01:49PM 19   L, M, AND N, AND THEN WE DIDN'T -- THEN THEY NEVER DISCOVERED I

01:49PM 20   AND J.

01:50PM 21       THE COURT:  DO YOU HAVE RECOLLECTION OF THAT,

01:50PM 22   COUNSEL?

01:50PM 23       MR. SCHENK:  I'M NOT EXACTLY SURE.  WERE THEY

01:50PM 24   OFFERED IN?  I'M NOT SURE I UNDERSTAND THE STATEMENT.  IS THE

01:50PM 25   DEFENSE POSITION THAT I AND J APPEAR ON THE RECORD OF FRIDAY'S

01:50PM 1   TRANSCRIPT OR THEY WEREN'T DISCUSSED ON FRIDAY?

01:50PM 2             MS. GILG:  THEY WERE PRODUCED ON FRIDAY.

01:50PM 3             THE COURT:  WERE THEY -- DID YOU MOVE THEM INTO

01:50PM 4   EVIDENCE ON FRIDAY?

01:50PM 5             MS. GILG:  NO.

01:50PM 6             THE COURT:  OKAY.

01:50PM 7             MS. GILG:  BUT I DID AT THE CLOSE OF OUR SESSION

01:50PM 8   THIS MORNING, I DID INDICATE THAT I WOULD BE MOVING EXHIBITS

01:50PM 9   INTO EVIDENCE AND THIS IS -- THESE TWO DOCUMENTS ARE SOMETHING

01:50PM 10  THAT THE GOVERNMENT HAS HAD SINCE FRIDAY, AND THEY'VE KNOWN

01:50PM 11  THAT I'VE INTENDED TO MOVE THESE INTO EVIDENCE.

01:50PM 12            THE COURT:  I GUESS WHY AREN'T THESE MOVED IN BEFORE

01:50PM 13  YOU CLOSE I GUESS IS THE QUESTION?

01:50PM 14            MS. GILG:  YOUR HONOR, I DID SAY SUBJECT TO MOVING

01:50PM 15  EXHIBITS INTO EVIDENCE WHICH WERE ALREADY ON THE WITNESS LIST.

01:50PM 16            THE COURT:  WELL, YOU DIDN'T SAY THAT, I DON'T

01:50PM 17  THINK, BECAUSE THE WITNESS LIST AND EXHIBIT LIST ARE TWO

01:50PM 18  DIFFERENT THINGS.

01:50PM 19       BUT WHEN WE TALK ABOUT MOVING DOCUMENTS IN, IT'S -- THIS

01:51PM 20  SOMETIMES HAPPENS IN TRIALS WHERE EXHIBITS ARE DISCUSSED BY A

01:51PM 21  WITNESS, THEY'RE PRESENTED AND IDENTIFIED AND THE WITNESS

01:51PM 22  TESTIFIES ABOUT IT, BUT FOR SOME REASON THERE'S A FAILURE TO

01:51PM 23  MOVE IT INTO EVIDENCE.  THAT HAPPENS IN TRIALS WITH SOME

01:51PM 24  FREQUENCY JUST BECAUSE OF THE NATURE OF IT.

01:51PM 25            AND I, I WILL ALLOW COUNSEL TO MOVE SOMETHING IN THAT HAS

01:51PM 1    ALREADY BEEN TESTIFIED TO WHERE THEY'VE FORGOTTEN TO DO THE

01:51PM 2    FORMALITY OF MOVING SOMETHING IN JUST TO CLARIFY THAT.

01:51PM 3        THIS IS A SITUATION WHERE I RECOGNIZE THAT YOU'VE LISTED

01:51PM 4    SOMETHING ON YOUR EXHIBIT LIST, BUT THERE WAS NO TESTIMONY OR

01:51PM 5    THERE WAS NO FORMAL INTRODUCTION.  IT WASN'T MOVED INTO

01:51PM 6    EVIDENCE AND NOW YOU WANT TO MOVE IT INTO EVIDENCE.  IT'S A

01:51PM 7    DIFFERENT SITUATION, YOU SEE?  THIS IS -- YOU'RE ASKING LEAVE

01:52PM 8    TO REOPEN YOUR CASE IN ESSENCE AND PUT THIS EVIDENCE IN.

01:52PM 9        AND THEN IF I DO THAT, THEN THE GOVERNMENT MAY THEN HAVE A

01:52PM 10   REBUTTAL, AND I'LL HAVE TO ALLOW THEM TO PUT IN ADDITIONAL

01:52PM 11   EVIDENCE.  ALL OF THIS WOULD HAVE TO HAPPEN IN FRONT OF THE

01:52PM 12   JURY BECAUSE I'M NOT GOING TO ADMIT SOMETHING OUTSIDE OF THEIR

01:52PM 13   PRESENCE.

01:52PM 14       SO IT DOES CREATE A BIT OF AN ISSUE.  I DON'T KNOW WHY YOU

01:52PM 15   DIDN'T MOVE THIS IN WHEN YOU -- BEFORE YOU RESTED.  AND THERE

01:52PM 16   WAS NO TESTIMONY ABOUT THESE AS I UNDERSTAND IT.

01:52PM 17           MS. GILG:  NO, AND THERE WOULDN'T BE ACTUALLY.

01:52PM 18           THE COURT:  AND I'M REFERRING TO I AND J, THE I AND

01:52PM 19   J DOCUMENTS.

01:52PM 20       ANYTHING FURTHER FROM THE GOVERNMENT ON THIS?

01:52PM 21           MR. SIMEON:  NOT ON THIS ISSUE, YOUR HONOR.

01:52PM 22           THE COURT:  WELL, COUNSEL, I'M SORRY.  MS. GILG, I'M

01:53PM 23   NOT GOING TO ADMIT THESE.  I THINK THAT IT'S, AS I SAID, IT

01:53PM 24   IS -- I ALWAYS INVITE COUNSEL TO MEET AND CONFER ABOUT EXHIBITS

01:53PM 25   THAT WERE NOT ADMITTED THAT WERE DISCUSSED IN EVIDENCE BUT WERE

01:53PM 1   NOT ADMITTED SUCH THAT THE RECORD COULD BE COMPLETE, BUT THIS

01:53PM 2   GOES A STEP FURTHER.  THIS IS INTRODUCING NEW DOCUMENTS AFTER

01:53PM 3   IN ESSENCE THE EVIDENCE IS CLOSED.

01:53PM 4       SOMETIMES THAT'S APPROPRIATE, BUT THIS RAISES WHOLE

01:53PM 5   ADDITIONAL ISSUES THAT WOULD REQUIRE, FROM WHAT I HEAR

01:53PM 6   MR. SCHENK OR MR. SIMEON SAYING THAT THEY WOULD WANT TO

01:53PM 7   INTRODUCE REBUTTAL, IF YOU WILL, AND I DON'T THINK THAT THIS IS

01:53PM 8   THE APPROPRIATE WAY TO DO THAT.

01:53PM 9           MS. GILG:  OKAY.  I'LL SUBMIT IT, YOUR HONOR.

01:53PM 10          THE COURT:  SO I'LL RESPECTFULLY DECLINE YOUR

01:53PM 11  INVITATION TO ADMIT THESE, I AND J.

01:53PM 12      ALL RIGHT.  ANYTHING ELSE AS FAR AS EXHIBITS OR EVIDENCE?

01:53PM 13          MR. SIMEON:  JUST ONE OTHER MATTER, YOUR HONOR,

01:54PM 14  EXHIBIT 33 WHICH WAS ON THE GOVERNMENT'S EXHIBIT LIST.  THE

01:54PM 15  GOVERNMENT DID NOT MOVE THAT EXHIBIT INTO EVIDENCE.  IT WAS

01:54PM 16  MOVED INTO EVIDENCE BY DEFENSE ON CROSS-EXAMINATION.  THE

01:54PM 17  GOVERNMENT DID NOT OBJECT.

01:54PM 18      I WASN'T AWARE AT THE TIME THAT IT SAID CANNIBIS ON A

01:54PM 19  COUPLE OF THE SHEETS.  THE GOVERNMENT HAS REDACTED OTHER PAGES

01:54PM 20  AT THE DEFENSE REQUEST, AND WE WOULD REQUEST THAT THOSE PAGES

01:54PM 21  BE REDACTED TO REMOVE WHATEVER CANNIBUS OR OTHER REFERENCES

01:54PM 22  THAT THERE ARE TO MARIJUANA SINCE OBVIOUSLY IT WAS THE PARTY'S

01:54PM 23  INTENT TO EXCLUDE THAT ESSENTIALLY FROM THE TRIAL.

01:54PM 24          MR. NICK:  YOUR HONOR, IT PRESENTS THE SAME ISSUE,

01:54PM 25  WHICH IS THAT IT WAS ADMITTED IN FRONT OF THE JURY AND THAT

01:54PM 1    VERY LANGUAGE, ITS EXISTENCE ON THE DOCUMENT WAS THE SUBJECT OF

01:54PM 2    TESTIMONY.

01:54PM 3            THE COURT:  CANNIBIS?

01:54PM 4            MR. NICK:  OH, YES, YOUR HONOR.  I MEAN, I COULD --

01:54PM 5    I CAN ASSURE THIS COURT 101 PERCENT THAT BOTH MS. GARCIA AND I

01:55PM 6    RAISED THE FACT THAT THE PINNACLE BANK RECORDS THAT ARE THE

01:55PM 7    SUBJECT OF EXHIBIT 33, THAT THEY REFER TO THE BUSINESS AS BEING

01:55PM 8    A MEDICAL MARIJUANA COLLECTIVE.

01:55PM 9            THE COURT:  WAS THERE TESTIMONY ABOUT THAT?

01:55PM 10           MR. NICK:  THERE WAS, YOUR HONOR.

01:55PM 11           THE COURT:  WHERE WITNESSES USED THE WORD

01:55PM 12   "CANNIBUS"?

01:55PM 13           MR. NICK:  THAT I CAN'T RECALL, BUT I KNOW THE

01:55PM 14   QUESTION WAS BROUGHT UP, AND I KNOW THERE WAS AN AFFIRMATION

01:55PM 15   FROM THE WITNESS, YES, THAT'S WHAT THESE ACCOUNTS WERE FOR.

01:55PM 16           THE COURT:  FROM MEDILEAF?

01:55PM 17           MR. NICK:  YES, ABSOLUTELY, YOUR HONOR.

01:55PM 18           THE COURT:  BUT CANNIBIS WASN'T MENTIONED?

01:55PM 19           MR. NICK:  YES, IT WAS.

01:55PM 20           THE COURT:  WELL, I KNOW MS. GILG INTERJECTED

01:55PM 21   CANNIBUS ONE TIME WHEN WE HAD SIDE-BAR, AND I WAS SURPRISED

01:55PM 22   WHEN SHE RAISED THAT BECAUSE WE WERE NOT GOING TO TALK ABOUT

01:55PM 23   THAT.  I RECALL THAT ONE TIME.

01:55PM 24           MR. NICK:  I KNOW THAT WHILE MS. KIKUGAWA WAS ON THE

01:55PM 25   STAND SHE WAS SHOWN EXHIBIT 33 AND --

01:56PM 1    THE COURT:  DO YOU INTEND TO ARGUE THAT THIS WAS A

01:56PM 2 CANNIBUS CO-OP GROWER AND THEY HAD ADDITIONAL PROBLEMS BECAUSE

01:56PM 3 OF THE UNIQUENESS OF THE BUSINESS, AND, THEREFORE, THE JURY

01:56PM 4 SHOULD UNDERSTAND THAT BUSINESS IN THEIR CONSIDERATION?

01:56PM 5    MR. NICK:  PARDON ME, YOUR HONOR.  NO.  WHAT I

01:56PM 6 INTEND ON ARGUING IS THAT THE GOVERNMENT CLAIMS THAT THE

01:56PM 7 DEFENDANT HAD ACCESS TO THE FUNDS OF THE BUSINESS AND WAS USING

01:56PM 8 IT FOR HIS OWN PERSONAL USE AND THAT THERE'S ABSOLUTELY NO

01:56PM 9 EVIDENCE OF THAT AND THAT'S WHAT I INTEND.

01:56PM 10    AND SO I -- THAT'S HOW COME WITH THE WITNESS, YOUR HONOR,

01:56PM 11 I ALMOST OPTED TO THE COURT'S POSITION BECAUSE IT DOESN'T

01:56PM 12 MATTER WHAT THE PRODUCT IS, AND THAT'S HOW COME I ASKED HIM THE

01:56PM 13 PRODUCT THAT YOU SOLD HAS TO BE BOUGHT WITH CASH.

01:56PM 14    SO I DON'T NEED -- WE CAN CALL THIS A LOLLIPOP BUSINESS,

01:56PM 15 YOUR HONOR, I JUST -- YOU KNOW, WHAT IS REALLY CRITICAL TO ME,

01:56PM 16 YOUR HONOR, IS THAT THEY UNDERSTAND THAT IT'S A CANNIBIS

01:56PM 17 BUSINESS THAT REQUIRED A WITHDRAWAL OF CASH.

01:56PM 18    THE COURT:  WHY IS IT IMPORTANT THAT IT'S A CANNIBUS

01:57PM 19 BUSINESS?

01:57PM 20    MR. NICK:  YES, AND I CAN EXPLAIN, YOUR HONOR.

01:57PM 21    IT'S HARD FOR THE AVERAGE PERSON TO UNDERSTAND -- JUST PUT

01:57PM 22 THE CANNIBUS BUSINESS ASIDE.  LET'S SAY IT WAS A HARDWARE

01:57PM 23 STORE, AND YOU'RE TRYING TO TELL THE JURY THAT THE PERSON WHO

01:57PM 24 OWNS THE HARDWARE STORE AND IS PURCHASING THE MERCHANDISE HAS

01:57PM 25 TO GO CASH A CHECK AT A BANK AND THEN GO OUT IN THE FIELD AND

01:57PM 1    BUY TOOLS AND WHATNOT TO SELL AT THE HARDWARE STORE, AND NOBODY

01:57PM 2    WOULD BELIEVE THAT BECAUSE EVERYBODY KNOWS THAT THE MAJORITY OF

01:57PM 3    BUSINESSES YOU CAN TRANSACT WITH CREDIT CARDS AND SUCH.

01:57PM 4        HOWEVER, IN THIS CASE YOU HAVE THE GOVERNMENT INTRODUCING

01:57PM 5    THE FACT THAT THE DEFENDANT IS TAKING CASH OUT OF THE BUSINESS.

01:57PM 6    AND THE JURY NEEDS TO UNDERSTAND, NUMBER ONE, THE NUMBER ONE

01:57PM 7    SUPPLY OF THIS BUSINESS MUST BE BOUGHT IN CASH.  I DON'T NEED

01:57PM 8    TO MENTION THE WORD "MARIJUANA," BUT IT IS IN THE RECORD AND

01:57PM 9    SORT OF CORROBORATES THAT ASPECT OF IT, AND THAT'S WHAT IS THE

01:57PM 10   MOST IMPORTANT PART, YOUR HONOR, IS THAT IT'S CREDIBLE AND

01:58PM 11   BELIEVABLE WHEN IT'S A CANNIBIS BUSINESS THAT YOU HAVE TO GO TO

01:58PM 12   A BANK, CASH THE CHECK, AND TAKE THAT CASH, GO OUT INTO THE

01:58PM 13   FIELD AND BUY MARIJUANA DIRECTLY FROM GROWERS.  THAT'S CREDIBLE

01:58PM 14   AND BELIEVABLE, YOUR HONOR.

01:58PM 15       AND SO THE JURY MUST HAVE SOME CONNECTION TO WHAT TYPE OF

01:58PM 16   BUSINESS, WHICH THEY'VE HEARD AT LEAST TWO OR THREE TIMES

01:58PM 17   THROUGHOUT THIS TRIAL.

01:58PM 18        THE COURT:  YOU KNOW, I'VE BEEN VERY CAREFUL TO TRY

01:58PM 19   TO KEEP THAT AWAY NOT TO PREJUDICE THE DEFENSE, BUT ACTUALLY

01:58PM 20   TO, AGAIN, AS I SAY, TO PROTECT YOU FROM ANY UNTOWARD

01:58PM 21   CONSIDERATION ABOUT A BUSINESS THAT MIGHT BE CALIFORNIA LEGAL

01:58PM 22   BUT HAVE OTHER VIEWS FROM THE FEDERAL GOVERNMENT'S POSITION.

01:58PM 23       AND I THOUGHT WE HAD AN UNDERSTANDING, AND NOW AT THE

01:58PM 24   ELEVENTH HOUR IT SEEMS LIKE THE DEFENSE IS VERY HAPPY TO GET

01:58PM 25   CANNIBUS IN AND TO LET THE JURY HEAR THAT IT'S A CANNIBUS

BUSINESS ALL THIS TIME.

I JUST -- YOU KNOW, WHAT'S THAT ALL ABOUT?

MR. NICK:  I KNOW, BUT, YOUR HONOR, I PREFER THAT
THE MEDILEAF BUSINESS NOT BE DISCUSSED AT ALL, BUT WHEN THE
GOVERNMENT PRESENTS EVIDENCE HERE, AND YOU CAN ASK THEM AND
THEY'RE GOING TO ARGUE TO THE JURY THAT MR. KUBUROVICH WAS
USING THE MONEY FROM HIS OWN PERSONAL EXPENSES, AND THAT'S
SHOWING BY THE CASHING OF CHECKS MADE OUT TO CASH.  THAT'S
GOING TO BE THEIR ARGUMENT.

AND SO THE WAY WE REBUT THAT IS BY SAYING, WAIT A SECOND,
THIS IS A VERY UNIQUE TYPE OF BUSINESS THAT REQUIRES BUYING THE
MAIN PRODUCT, CASH, AND THAT'S WHAT THOSE CHECKS REPRESENT AS
MR. FORREST TESTIFIED FROM THE STAND.

SO AS MUCH AS I WOULD LIKE TO NOT DISCUSS THAT TOPIC, IT'S
THE ONLY WAY TO REBUT THAT INFERENCE, YOUR HONOR.

THE COURT:  WHAT PREVENTS YOU FROM INTRODUCING THAT
EVIDENCE THROUGH FORREST AND TALKING ABOUT IT RATHER?  HE'S
ALREADY SAID, YEAH, THAT'S A -- I THINK HE SAID THAT, THAT THE
PRODUCT, I THINK WAS THE WORD THAT YOU USED, WAS PURCHASED BY
CASH.

MR. NICK:  I AGREE, YOUR HONOR, THERE'S PLENTY OF
EVIDENCE IN THERE THAT I COULD ARGUE THE SAME POINT.

MY ONLY CONCERN IS THAT THE JURY HEARS THE DISCUSSION OF A
BANK RECORD THAT HAD THE WORD "MEDICAL CANNIBUS."

THE COURT:  AND SO YOU'RE GOING TO POINT AND TELL

02:00PM 1    THE JURY LOOKING AT 33, LOOK, CANNIBUS IS ALL OVER IT AND NOW

02:00PM 2    YOU UNDERSTAND THAT THIS WAS A MEDICAL MARIJUANA BUSINESS AND

02:00PM 3    IT'S ILLEGAL IN FEDERAL LAW, BUT YOU CAN BUY IT IN CALIFORNIA

02:00PM 4    LAW.  BANKS WON'T TRADE.  YOU CAN'T BANK YOUR MONEY FROM THIS.

02:00PM 5    SO THEY HAD TO DO A CASH BUSINESS, AND THAT'S WHAT ALL OF THESE

02:00PM 6    CHECKS -- THAT'S WHY IT SAYS CASH, CASH, CASH BECAUSE HE WAS

02:00PM 7    BUYING MARIJUANA.  THAT'S YOUR ARGUMENT I THINK.

02:00PM 8         MR. NICK:  THAT'S IN ESSENCE THE ARGUMENT, YOUR

02:00PM 9    HONOR.  I WOULD ONLY SAY THAT THE BANK RECORDS CORROBORATE THAT

02:00PM 10   IT'S A CASH BUSINESS TO A CERTAIN EXTENT.

02:00PM 11        THE COURT:  MS. GILG, ANYTHING TO OFFER?

02:00PM 12        MS. GILG:  I'LL SUBMIT, AND I JOIN MR. NICK'S

02:00PM 13   ARGUMENT.

02:00PM 14        THE COURT:  I DON'T KNOW, WE'VE PLAYED THIS ALL

02:00PM 15   ALONG, AND NOW IT'S AT THE END AND ALL OF A SUDDEN CANNIBUS IS

02:00PM 16   IN.

02:00PM 17        MR. NICK:  AGAIN, YOUR HONOR -- I'M SORRY, YOUR

02:01PM 18   HONOR, BUT THIS IS CREATED BY THE GOVERNMENT'S CASE, WHICH IS

02:01PM 19   THAT THE CLIENT IS USING THE MONEY FROM MEDILEAF FOR HIS OWN

02:01PM 20   PERSONAL EXPENSES, AND THAT NEEDS TO BE REBUTTED SOMEHOW, YOUR

02:01PM 21   HONOR, IN THE MOST RESPECTFUL WAY POSSIBLE WITHOUT GETTING TO

02:01PM 22   THE AREAS OF CONCERN OF THE COURT, AND I THINK I'VE DONE

02:01PM 23   EVERYTHING I CAN TO DO THAT, YOUR HONOR.

02:01PM 24        THE COURT:  AND, WELL, WOULD YOU OBJECT TO HAVING

02:01PM 25   THE CANNIBUS DISCUSSION STRICKEN FROM EXHIBIT 33?

02:01PM 1    MR. NICK: I WOULD, YOUR HONOR, FOR THE REASON THAT

02:01PM 2  IT WAS DISCUSSED BY A WITNESS. THE DOCUMENT WAS DISCUSSED.

02:01PM 3  THE APPEARANCE OF THAT LANGUAGE ON THE DOCUMENT WAS DISCUSSED,

02:01PM 4  AND IT LENDS CREDIBILITY TO THE DEFENDANT'S CASE, WHICH IS THIS

02:01PM 5  IS A CANNIBUS BUSINESS.

02:01PM 6    THE COURT: ANYTHING FURTHER FROM THE GOVERNMENT?

02:01PM 7    MR. SIMEON: JUST BRIEFLY, YOUR HONOR. OTHER

02:01PM 8  EXHIBITS, EXHIBIT 1 THROUGH 4, FOR EXAMPLE, WERE ADMITTED PRIOR

02:01PM 9  TO REDACTIONS UPON THE PARTY'S NOTICING THAT THERE WAS SOME

02:01PM 10  INFORMATION IN THERE THAT SHOULD NOT BE SHOWN TO THE JURY.

02:02PM 11  AFTER THOSE EXHIBITS HAD BEEN PUBLISHED TO THE JURY, THE

02:02PM 12  GOVERNMENT REDACTED THEM AS OTHER EXHIBITS AS WELL.

02:02PM 13    THE COURT: WELL, I HAVE TO EXPRESS MY

02:02PM 14  DISAPPOINTMENT OF THIS COMING UP AT THIS HOUR AFTER WE HAVE

02:02PM 15  SPENT SO MUCH TIME TRYING TO PROTECT THE DEFENDANTS FROM THE

02:02PM 16  POTENTIAL PEJORATIVE FEELING OF A COMMUNITY ABOUT MARIJUANA.

02:02PM 17  THIS CAME IN AT THE -- DURING VOIR DIRE, AND I GUESS THAT

02:02PM 18  SHOULD HAVE BEEN A NOTICE THAT IT WAS GOING TO COME UP AGAIN AS

02:02PM 19  IT CAME UP DURING VOIR DIRE, AND THERE WAS SOME VOIR DIRE

02:02PM 20  PERMITTED ABOUT THIS. I THINK THE DEFENSE ASKED SOME QUESTIONS

02:02PM 21  ABOUT THIS.

02:02PM 22    WE ASKED SOME -- THE COURT ASKED QUESTIONS ABOUT THIS, AND

02:02PM 23  I THINK THERE MAY HAVE BEEN SOME STRIKES, OR AT LEAST THE COURT

02:02PM 24  MAY HAVE EXCLUDED SOME PEOPLE BASED ON THEIR FEELINGS AND VIEWS

02:02PM 25  ABOUT MARIJUANA, AND I NOTE THE EXHIBIT WAS INTRODUCED BY THE

02:03PM 1    DEFENSE, AND I EXPECT THAT ALL PARTIES HAVE SEEN THE DOCUMENT

02:03PM 2    BEFORE.  YOU KNEW WHAT IT CONTAINED.  YOU KNEW WHAT IT SAID

02:03PM 3    WHEN YOU INTRODUCED IT.

02:03PM 4        THE GOVERNMENT KNEW WHAT IT SAID, AND THE GOVERNMENT

02:03PM 5    DIDN'T ASK THAT IT BE STRICKEN PRIOR TO BEING ADMITTED, AND IT

02:03PM 6    WAS ADMITTED.

02:03PM 7        AND NOW THIS IS GOING TO COME BEFORE THE JURY, AND SO I'LL

02:03PM 8    ALLOW IT TO COME IN.  I'LL ALLOW IT TO COME IN.

02:03PM 9        I'M A LITTLE, AS I SAID, DISAPPOINTED.  I THOUGHT WE

02:03PM 10   CLEANED THIS UP.  BUT THE CASE HAS BEEN STRUCTURED IN SUCH A

02:03PM 11   MANNER THAT THE EVIDENCE CAME IN AS IT DID, BUT I'LL ALLOW THAT

02:03PM 12   TO -- I WON'T HAVE IT STRICKEN.

02:03PM 13       ALL RIGHT.  ANYTHING ELSE ABOUT EXHIBITS OR EVIDENCE

02:03PM 14   BEFORE WE MOVE TO JURY INSTRUCTIONS?

02:03PM 15           MR. SCHENK:  NO, YOUR HONOR.

02:03PM 16           THE COURT:  ANYTHING ELSE FROM THE DEFENSE?

02:04PM 17           MS. GILG:  NO, YOUR HONOR.

02:04PM 18           MR. NICK:  NO, YOUR HONOR.  THANK YOU.

02:04PM 19           THE COURT:  OKAY.  THANK YOU.  OKAY.  LET'S TURN TO

02:04PM 20   JURY INSTRUCTIONS.

02:04PM 21       LET ME SAY I'M LOOKING AT DOCUMENT 90, WHICH IS THE UNITED

02:04PM 22   STATES PROPOSED JURY INSTRUCTIONS, I BELIEVE FILED YESTERDAY,

02:04PM 23   PERHAPS YESTERDAY WAS A DOCUMENT ENTITLED UNITED STATES AMENDED

02:04PM 24   PROPOSED JURY INSTRUCTIONS.

02:04PM 25       DOES THIS HAVE A DOCKET?

02:04PM 1          MR. SIMEON:  122, YOUR HONOR.

02:04PM 2          THE CLERK:  YES, 122.

02:04PM 3          THE COURT:  THANK YOU.  I HAVE THAT.

02:04PM 4      AND THEN I HAVE, MS. GILG, I WAS HANDED A PRINTED COPY

02:04PM 5  WITHOUT A DOCKET, AND I DON'T KNOW IF THIS WAS FILED.

02:04PM 6          MS. GILG:  YOUR HONOR, I'M SORRY.  I FOR SOME REASON

02:04PM 7  WAS CONFUSED ON FRIDAY, AND I THOUGHT WE WERE NOT SUPPOSED TO

02:05PM 8  E-FILE THESE BUT JUST TO E-MAIL THEM.  AND SO I DID ASK MY

02:05PM 9  COLLEAGUE, AND SHE WILL BE E-FILING THE DOCUMENT ENTITLED

02:05PM 10  "DEFENDANT'S PROPOSED JURY INSTRUCTIONS, OBJECTIONS TO

02:05PM 11  GOVERNMENT'S PROPOSED INSTRUCTIONS AND REQUESTED MODIFICATION."

02:05PM 12          THE COURT:  ALL RIGHT.  THANK YOU.  I HAVE THAT.

02:05PM 13  IT'S FIVE PAGES LONG.

02:05PM 14      I DID HAVE A QUESTION ABOUT THIS, THOUGH, MS. GILG.

02:05PM 15      THIS DOCUMENT DOES ON PAGE 3 IN PARAGRAPH 3 IT TALKS ABOUT

02:05PM 16  PROPOSED MODIFICATIONS.

02:05PM 17      WAS THERE ANOTHER DOCUMENT THAT WAS SUPPOSED TO ATTACH?

02:05PM 18          MS. GILG:  YES, THERE WERE THE WORD DOCUMENTS THAT

02:05PM 19  WERE E-MAILED.

02:05PM 20          THE COURT:  OKAY.  I THINK I MAY HAVE BEEN JUST

02:05PM 21  HANDED THESE.  I HAVE A NOTE THAT SAYS E-MAILED AT 1:26 P.M.

02:05PM 22  AND THESE ARE -- LET ME IDENTIFY THEM.

02:05PM 23      IT'S -- ONE OF THEM -- IT LOOKS LIKE AN INSTRUCTION

02:06PM 24  CONCURRENCE OF ACT AND INTENT.

02:06PM 25          MS. GILG:  YEAH, THAT'S NOT WHAT WAS E-MAILED

02:06PM 1    YESTERDAY.

02:06PM 2          WHAT WAS E-MAILED YESTERDAY WAS THE WORD OF WHAT IS

02:06PM 3    REFERRED IN PARAGRAPH 3.  I HAVE HARD COPIES OF THOSE.

02:06PM 4              THE COURT:  GREAT.  WHY DON'T YOU DISTRIBUTE THOSE.

02:06PM 5              MS. GILG:  I ONLY HAVE ONE.

02:06PM 6              THE CLERK:  I'LL PRINT THESE OUT.

02:06PM 7              MS. GILG:  I DID SERVE THEM.  THEY WERE SERVED ON

02:06PM 8    THE GOVERNMENT.

02:06PM 9              THE COURT:  OKAY.  WE'LL GET COPIES HERE IN JUST A

02:06PM 10   SECOND.  I JUST NEED TO KNOW THAT REFERENCE.

02:06PM 11             MS. GILG:  I'M SORRY.  I WAS CONFUSED ON HOW TO GET

02:06PM 12   THIS TO THE COURT.

02:06PM 13             THE COURT:  THIS TALKS ABOUT LOOKING AT PROPOSED

02:06PM 14   MODIFICATIONS, AND THERE WAS NOTHING ATTACHED.  SO I HAVEN'T

02:06PM 15   HAD THE BENEFIT OF LOOKING AT THEM.

02:06PM 16             MS. GILG:  OKAY.  SORRY.

02:07PM 17             THE COURT:  DOES THE GOVERNMENT HAVE COPIES OF

02:07PM 18   THESE?

02:07PM 19             MS. GILG:  THEY DO, YOUR HONOR.

02:07PM 20             MR. SIMEON:  WE HAVE ONE COPY, YOUR HONOR.

02:07PM 21             THE COURT:  OKAY.

02:07PM 22             MR. SIMEON:  I'M SORRY, YOUR HONOR.  JUST TO

02:07PM 23   CLARIFY, WE DON'T HAVE THE MOST RECENT ITEM THAT WAS E-MAILED.

02:07PM 24             MS. GILG:  I DON'T THINK ANY OF US DO, ACTUALLY.

02:07PM 25             THE COURT:  WE'LL GET THAT PRINTED OUT FOR THE

02:07PM 1    GOVERNMENT.

02:07PM 2         MS. GILG:  AND IF I COULD ALSO GET A COPY, THAT

02:07PM 3    WOULD BE GREAT.

02:07PM 4         THE COURT:  I COUNT TEN PAGES IS WHAT I HAVE.

02:07PM 5    THEY'RE NOT -- IT'S NOT PAGINATED, BUT WE'LL GO THROUGH IT.

02:08PM 6         I THINK WE HAVE PROVIDED COPIES TO EVERYONE NOW.

02:08PM 7         ALL RIGHT.  WELL, LET ME START.  I'M NOT GOING TO SPEND

02:08PM 8    MUCH TIME ON THE INTRODUCTORY INSTRUCTIONS.  I THINK WE DID

02:08PM 9    THAT THE OTHER DAY, AND I DON'T THINK THERE'S MUCH DISCUSSION

02:09PM 10   THERE, ALTHOUGH I DO SEE A -- IN THE SUBMISSION FROM MS. GILG,

02:09PM 11   THERE'S A 3.8.

02:09PM 12        BUT LET ME TURN TO 122, WHICH IS THE GOVERNMENT'S AMENDED

02:09PM 13   JURY INSTRUCTIONS, AND WHY DON'T WE WALK THROUGH THAT.  I THINK

02:09PM 14   THAT WOULD BE HELPFUL TO START.

02:09PM 15        I NOTE ON -- AND I GUESS THIS WOULD BE COMPARED WITH

02:09PM 16   DOCUMENT 90, WHICH WAS THE INITIAL PROPOSED INSTRUCTIONS.

02:09PM 17        THE FIRST, ON PAGE 2, THE FIRST INSTRUCTION IS COUNT ONE,

02:09PM 18   BANKRUPTCY FRAUD, SCHEME OR ARTIFICE TO DEFRAUD.  IT'S 8.11.

02:09PM 19        MR. SIMEON, DO YOU WANT TO SPEAK TO THIS?  IS THIS

02:09PM 20   DIFFERENT FROM THE DOCUMENT 90 I THINK THAT'S FOUND ON ECF PAGE

02:09PM 21   39?

02:09PM 22        MR. SIMEON:  I THINK THE GOVERNMENT DELETED ONE LINE

02:10PM 23   THAT IT HAD ORIGINALLY ADDED AND THE DEFENSE OBJECTED TO, AND I

02:10PM 24   THINK IT'S FINE TO GET RID OF THAT AND JUST USE WHAT IS HERE AS

02:10PM 25   THE MODEL INSTRUCTION WORD FOR WORD.

02:10PM 1        THE COURT:  WHICH IS ON DOCKET 122?

02:10PM 2        MR. SIMEON:  THAT'S CORRECT, YOUR HONOR.

02:10PM 3        THE COURT:  ALL RIGHT.

02:10PM 4        MR. SIMEON:  AND DOCKET 122 AT PAGE 2.

02:10PM 5        THE COURT:  OKAY.

02:10PM 6        MR. SIMEON:  SO I BELIEVE THAT'S THE NINTH CIRCUIT

02:10PM 7   MODEL INSTRUCTION VERBATIM.

02:10PM 8        THE COURT:  OKAY.  AND YOU WOULD LIKE TO SUBSTITUTE,

02:10PM 9   IF YOU WILL, PAGE 2 OF DOCUMENT 122 FOR PAGE 39 OF DOCUMENT 90?

02:10PM 10       MR. SIMEON:  YES, THAT'S CORRECT, YOUR HONOR.

02:10PM 11       THE COURT:  ANY OBJECTION TO THAT, MR. NICK?

02:10PM 12       MR. NICK:  NO OBJECTION, YOUR HONOR.

02:10PM 13       THE COURT:  MS. GILG?

02:10PM 14       MS. GILG:  I HAVE NO OBJECTION, ALTHOUGH IN OUR

02:10PM 15  SUBMISSION, OUR WORD SUBMISSION ON THE SECOND PAGE WE DID ADD

02:10PM 16  IN THE PARENTHESIS THE PHRASE -- THE DEFINITION OF THE SCHEME

02:11PM 17  TO DEFRAUD.

02:11PM 18       THE COURT:  OKAY.  WELL, THAT'S WHY WE'RE DOING

02:11PM 19  THIS.  WE'LL TALK ABOUT YOUR OBJECTIONS HERE.  I HAVE YOURS.

02:11PM 20  AGAIN, THEY'RE NOT PAGINATED, BUT IT'S THE SECOND OF THE

02:11PM 21  TEN PAGES.

02:11PM 22       MS. GILG:  YES.

02:11PM 23       THE COURT:  AND WHAT IS THE DISTINCTION THAT YOU'D

02:11PM 24  LIKE TO CALL THE COURT'S ATTENTION TO?

02:11PM 25       MS. GILG:  WE HAVE REQUESTED A DEFINITION OF SCHEME

02:11PM 1    TO DEFRAUD.  THE PHRASE SCHEME TO DEFRAUD --

02:11PM 2              THE COURT:  CAN WE GET ANOTHER COPY FOR IRENE,

02:11PM 3    PLEASE.

02:11PM 4              MS. GILG:  "SCHEME TO DEFRAUD MEANS ANY DELIBERATE

02:11PM 5    PLAN OF ACTION OR COURSE OF CONDUCT BY WHICH SOMEONE INTENDS TO

02:11PM 6    DECEIVE, CHEAT, OR DEPRIVE A BANKRUPTCY ESTATE OF SOMETHING OF

02:11PM 7    VALUE."

02:11PM 8        THERE'S ONE CAVEAT WITH WHAT THIS INDICATES, AND THAT IS

02:11PM 9    IN THE NEW MEMO THAT WAS PROVIDED IN WHICH WE WOULD ADD THAT

02:12PM 10   "AN INTENT TO DEFRAUD IS AN INTENT TO DECEIVE AND CHEAT" AS

02:12PM 11   OPPOSED TO "OR CHEAT" AND THAT WOULD BE ONE OF THE TWO NEW

02:12PM 12   DOCUMENTS.

02:12PM 13             MR. NICK:  AND I WOULD JOIN IN THAT REQUEST, YOUR

02:12PM 14   HONOR.

02:12PM 15             THE COURT:  I'M SORRY, YOUR -- THE NEW MEMO.  YOU'RE

02:12PM 16   TALKING ABOUT YOUR MEMO YET TO BE FILED THAT'S ON PAGE 2 AT

02:12PM 17   LINE 18?

02:12PM 18             MS. GILG:  NO.  I'M ACTUALLY TALKING ABOUT -- I'M

02:12PM 19   SORRY.  I THOUGHT WE WERE SUPPOSED TO SUBMIT THESE IN WORD SO I

02:12PM 20   APOLOGIZE FOR THEM NOT BEING PAGINATED.

02:12PM 21       BUT AS FOR OUR INSTRUCTION FOR THE BANKRUPTCY FRAUD, THE

02:12PM 22   18 157, WHICH IS THE INSTRUCTION 1.113, WE SEEK THE

02:12PM 23   MODIFICATION IN THE PARENTHESIS, BUT WE MODIFY THAT

02:13PM 24   MODIFICATION THAT STATING THAT RATHER THAN "CHEAT OR DEPRIVE"

02:13PM 25   THAT IT'S "CHEAT AND DEPRIVE," AND THAT IS BASED ON THE NINTH

02:13PM 1    CIRCUIT MODEL CRIMINAL INSTRUCTION 5.12 MODIFICATION, THE

02:13PM 2    AUTHORITY STATED ON THAT DOCUMENT.

02:13PM 3            THE COURT:  I'M SORRY, I DIDN'T -- I BEG YOUR

02:13PM 4    PARDON.  I DIDN'T TRACK THAT AT ALL.  I BEG YOUR PARDON.

02:13PM 5      I'M LOOKING AT NINTH CIRCUIT 8.11 WHICH IS THE

02:13PM 6    GOVERNMENT'S PROPOSED INSTRUCTION.  I THINK THAT'S WHAT WE'RE

02:13PM 7    TALKING ABOUT.

02:13PM 8            MS. GILG:  YES, YOUR HONOR.  I'M SORRY.  GO AHEAD.

02:14PM 9            THE COURT:  AND I JUST SAID THAT THE GOVERNMENT'S

02:14PM 10   PAGE 2 OF DOCUMENT 122 WOULD REPLACE PAGE 39 OF DOCUMENT 90.

02:14PM 11           MS. GILG:  YOU KNOW, YOUR HONOR, THAT'S FINE.

02:14PM 12           THE COURT:  I THINK THAT'S WHAT WE WERE TALKING

02:14PM 13   ABOUT.

02:14PM 14           MS. GILG:  YES.  AND THERE'S A PARAGRAPH AT THE

02:14PM 15   BOTTOM OF OUR PROPOSED -- THE SECOND PAGE OF THE PROPOSAL.

02:14PM 16           THE COURT:  OKAY.  LET ME FIND THAT FIRST, PLEASE.

02:14PM 17   AND THAT'S YOUR SECOND PAGE; RIGHT?  I THINK I HAVE THAT.  IT'S

02:14PM 18   TITLED COUNT ONE, BANKRUPTCY FRAUD.

02:14PM 19           MS. GILG:  YES.  AND IT SAYS 8.113, WHICH IS A TYPO.

02:14PM 20   SO IT SHOULD BE 8.11 MODIFIED.

02:14PM 21           THE COURT:  OKAY.  AND THEN I SEE IN THE MIDDLE OF

02:14PM 22   THE PAGE YOU HAVE RED LINED OUT THE LANGUAGE "IN DETERMINING

02:14PM 23   WHETHER A SCHEME TO DEFRAUD EXISTS."

02:15PM 24           MS. GILG:  AND THAT IS WHAT THE GOVERNMENT TOOK OUT

02:15PM 25   OF THEIRS BECAUSE WE OBJECTED PREVIOUSLY, AND THEY TOOK IT OUT.

02:15PM 1     SO THAT ISSUE IS RESOLVED.

02:15PM 2              THE COURT:  OKAY.

02:15PM 3              MS. GILG:  SO THE ONLY QUESTION IS THEN THE

02:15PM 4     PARAGRAPH UNDER, "IT DOES NOT MATTER," THAT'S IN PARENTHESIS,

02:15PM 5     WE WOULD ASK THAT THE PHRASE "SCHEME TO DEFRAUD" BE DEFINED.

02:15PM 6              THE COURT:  SO YOU WOULD LIKE THAT SENTENCE, THAT

02:15PM 7     BRACKETED SENTENCE TO BE INCLUDED IN THIS INSTRUCTION?

02:15PM 8              MS. GILG:  CORRECT, BUT WE WOULD LIKE THAT BRACKETED

02:15PM 9     SENTENCE TO BE MODIFIED, I'M SORRY, TO SAY "DECEIVE, CHEAT, AND

02:15PM 10    DEPRIVE" AS OPPOSED TO "DECEIVE, CHEAT, OR DEPRIVE."

02:15PM 11             THE COURT:  OKAY.  LET ME ASK THE GOVERNMENT FOR

02:15PM 12    THEIR --

02:15PM 13             MR. SIMEON:  THAT'S FOR A DIFFERENT OFFENSE, YOUR

02:15PM 14    HONOR.  THAT IS FOR THE BANK FRAUD INSTRUCTION.

02:16PM 15        THE NINTH CIRCUIT HAS A MODEL INSTRUCTION FOR BANKRUPTCY

02:16PM 16    FRAUD, AND I DON'T SEE GOOD REASON TO CHANGE THE MODEL

02:16PM 17    INSTRUCTION.  I REALIZE IN SOME CIRCUMSTANCES THERE MAY BE A

02:16PM 18    REASON.

02:16PM 19        IT SEEMS THAT THE OFFENSE ELEMENTS AS THEY'RE LISTED

02:16PM 20    ESSENTIALLY SAYS WHAT A SCHEME TO DEFRAUD IS.  THAT'S WHAT THE

02:16PM 21    TITLE OF THIS OFFENSE IS, IT'S "BANKRUPTCY FRAUD, SCHEME OR

02:16PM 22    ARTIFICE TO DEFRAUD," AND THE ELEMENTS CLEARLY LAY OUT WHAT THE

02:16PM 23    ELEMENTS MEAN.  I DON'T THINK A FURTHER EXPLANATION HELPS.  IT

02:16PM 24    PROBABLY SERVES TO CONFUSE.

02:16PM 25             THE COURT:  THIS SECTION, MS. GILG, THE BRACKETED

02:16PM 1    SECTION, DOESN'T APPEAR IN THE MODEL INSTRUCTIONS?

02:16PM 2         MS. GILG:  THAT'S CORRECT.  IT IS, AND AS INDICATED

02:16PM 3    BY MR. SIMEON AND IN THE LAST PARAGRAPH OF OUR SUBMISSION THAT

02:16PM 4    THIS IS THE BANKRUPTCY -- I MEAN THE BANK FRAUD DEFINITION.

02:17PM 5         BUT I DON'T SEE, I MEAN, I DON'T SEE WHERE IT DEFINES

02:17PM 6    SCHEME TO DEFRAUD IF YOU HAVE THE FIRST ELEMENT IS DEFENDANT

02:17PM 7    DEVISED OR INTENDED TO DEVISE A SCHEME OR PLAN TO DEFRAUD, AND

02:17PM 8    THEN IT GOES ON TO THE SECOND, THIRD, AND FOURTH ELEMENTS, BUT

02:17PM 9    I DON'T SEE ANYTHING THAT DEFINES WHAT THAT FIRST ELEMENT

02:17PM 10   MEANS.  SO THAT'S WHY I THINK IT'S IMPORTANT TO INCLUDE THAT.

02:17PM 11        THE COURT:  ALL RIGHT.  THANK YOU.

02:17PM 12        IS THERE A DEFINITION NEEDED OF SCHEME TO DEFRAUD,

02:17PM 13   MR. SIMEON?

02:17PM 14        MR. SIMEON:  I DON'T BELIEVE, YOUR HONOR, AND THE

02:17PM 15   LAST SENTENCE SAYS WHETHER THE SCHEME OR PLAN.  I THINK PLAN IS

02:17PM 16   SELF-EXPLANATORY.  THAT'S SOMETHING THAT ANY PERSON WOULD

02:17PM 17   UNDERSTAND, AND IT'S IN THE FIRST SENTENCE OF THE ELEMENTS AS

02:17PM 18   WELL.  IT'S NOT IN THE MODEL INSTRUCTION FOR A REASON.

02:17PM 19        THE COURT:  WELL, I LOOK AT 8.122, THIS IS IN DOCKET

02:18PM 20   90, PAGE 41, ECF 41, WHICH IS "SCHEME TO DEFRAUD VICARIOUS

02:18PM 21   LIABILITY," AND I SUPPOSE THAT HAS A DEFINITION OF SCHEME TO

02:18PM 22   DEFRAUD AND WHAT TOUCHES ON A SCHEME TO DEFRAUD.

02:18PM 23        MS. GILG:  IT TOUCHES ON IT, BUT AGAIN, IT DOESN'T

02:18PM 24   DEFINE IT.

02:18PM 25        MR. SIMEON:  JUST TO -- I DON'T WANT TO GET AHEAD OF

02:18PM 1    THE COURT, YOUR HONOR, BUT ACTUALLY I MEANT TO WITHDRAW THAT

02:18PM 2    INSTRUCTION, AND I APOLOGIZE FOR NOT DELETING IT, AND I KNOW

02:18PM 3    THAT'S ONE ISSUE THAT DEFENSE COUNSEL WAS OPPOSING.  SO I'LL

02:18PM 4    PUT ON THE RECORD NOW THAT I MEANT TO WITHDRAW THAT.

02:18PM 5         THE COURT:  THE VICARIOUS LIABILITY?

02:18PM 6         MR. SIMEON:  YES, YOUR HONOR.

02:18PM 7         THE COURT:  OKAY.  SO THAT'S PAGE 41 OF 48,

02:18PM 8    INSTRUCTION 8.122 IS WITHDRAWN BY THE GOVERNMENT.

02:18PM 9      ANY OBJECTION TO THAT?

02:19PM 10        MS. GILG:  NO, YOUR HONOR.

02:19PM 11        MR. NICK:  NO, YOUR HONOR.  YOUR HONOR, IF I COULD

02:19PM 12   JUST A COUPLE MORE THINGS ABOUT THE SPECIFIED DEFINITION OF

02:19PM 13   SCHEME TO DEFRAUD.  WHILE IT DOES HAVE THE WORD "PLAN," YOUR

02:19PM 14   HONOR, THAT THE UNIQUE CIRCUMSTANCES OF THIS CASE, YOUR HONOR,

02:19PM 15   IS GOING TO HAVE PEOPLE QUESTIONING WHAT IS A SCHEME TO DEFRAUD

02:19PM 16   AND IF THIS IS IN FACT THE CORRECT STATEMENT OF THE LAW, YOUR

02:19PM 17   HONOR, THEN THE COURT IS BEING REQUESTED BY THE DEFENDANTS TO,

02:19PM 18   IN FACT, DEFINE THOSE TERMS FOR THE JURY BECAUSE THEY'RE SO

02:19PM 19   SPECIAL AND IN THIS CASE THE SCHEME AND THE PLAN IS NOT

02:19PM 20   OBVIOUS.

02:19PM 21        THE COURT:  ALL RIGHT.  THANK YOU.

02:20PM 22        MR. SIMEON:  YOUR HONOR, I ACTUALLY DON'T AGREE WITH

02:20PM 23   THIS DEFINITION.  THIS IS MUCH NARROWER THAN WHAT THE

02:20PM 24   BANKRUPTCY FRAUD STATUTE REQUIRES AS IS NOTED IN THE NINTH

02:20PM 25   CIRCUIT.

02:20PM 1    IT'S NOT -- IT'S SIMPLY DEFRAUDING AND USING THE

02:20PM 2    BANKRUPTCY SYSTEM.  NOTHING IN THE BANKRUPTCY ESTATE, FOR

02:20PM 3    EXAMPLE, HAS TO BE DEFRAUDED.  IT'S SIMPLY USING THE BANKRUPTCY

02:20PM 4    SYSTEM TO CARRY OUT A PLAN TO DEFRAUD.  THIS ALTERS THE MEANING

02:20PM 5    OF THE DEFENSE.  IT DOESN'T MAKE IT MORE DIFFICULT, IT JUST

02:20PM 6    CHANGES WHAT THE CRIME IS.

02:20PM 7        THE COURT:  YOU KNOW, I ALSO NOTE 5.12, WHICH IS

02:20PM 8    PAGE 48 OF DOCUMENT 90, DEFINES INTENT TO DEFRAUD.

02:21PM 9      ALL RIGHT.  ANYTHING FURTHER ON THIS?

02:21PM 10        MS. GILG:  SUBMIT IT, YOUR HONOR.

02:21PM 11        MR. NICK:  SUBMIT IT, YOUR HONOR.  THANK YOU.

02:21PM 12        THE COURT:  ANYTHING FURTHER FROM THE GOVERNMENT?

02:21PM 13        MR. SIMEON:  NO, YOUR HONOR.

02:21PM 14        THE COURT:  ALL RIGHT.  THANK YOU.  I'M NOT GOING TO

02:21PM 15    GIVE THE BRACKETED PORTION.  I DO THINK THAT THE INSTRUCTIONS,

02:21PM 16    THE MODEL INSTRUCTIONS AS PREPARED ADEQUATELY INFORM THE JURY

02:21PM 17    AS TO THE NATURE OF THE OFFENSE.  I THINK THE COMBINED

02:21PM 18    INSTRUCTIONS, INCLUDING THE ONE THAT THE COURT MENTIONED,

02:21PM 19    INTENT TO DEFRAUD, 5.12 PROPERLY INFORM THE JURY AS TO THE

02:21PM 20    WORDS DEFRAUD AND DECEIVE AND CHEAT.

02:21PM 21      SO I'LL GIVE THE INSTRUCTION AS MODIFIED, STRIKING THE TWO

02:21PM 22    LINES THAT THE DEFENSE REQUESTED, BUT I WON'T READ THE

02:21PM 23    BRACKETED PORTION.

02:21PM 24        MS. GILG:  I'LL WAIT.

02:21PM 25        THE COURT:  SO IT WOULD BE AS INDICATED THE

02:22PM 1    SUBSTITUTION WOULD -- I'LL READ THE GOVERNMENT'S PROPOSED

02:22PM 2    CHANGE WITH THE STRICKEN LANGUAGE.

02:22PM 3              MS. GILG:  ALL RIGHT.  SO THAT WOULD BE

02:22PM 4    DOCUMENT 122, PAGE 2?

02:22PM 5              THE COURT:  CORRECT.  I'M SORRY.  YOU'RE WITHDRAWING

02:22PM 6    8.122 I THINK; IS THAT RIGHT?

02:22PM 7              MR. SIMEON:  YES, YOUR HONOR.

02:22PM 8              THE COURT:  OKAY.  SO I NOTE THE NEXT PAGE IS THE

02:22PM 9    DEFENSE OBJECTION, SCHEME TO DEFRAUD VICARIOUS LIABILITY --

02:22PM 10             MS. GILG:  RIGHT.  EXACTLY.

02:22PM 11             THE COURT:  -- AND THAT IS WITHDRAWN.

02:22PM 12        NEXT AND GOING TO DOCKET 122 ON PAGE 3 IS AIDING AND

02:23PM 13   ABETTING, 18 U.S.C. SECTION 2, IT'S MODEL INSTRUCTION 5.1.

02:23PM 14        AND DID YOU HAVE OBJECTION TO THIS, MS. GILG, MR. NICK?

02:23PM 15             MS. GILG:  YOUR HONOR, I'M TRYING TO FIGURE OUT WHAT

02:23PM 16   DIFFERENCE --

02:23PM 17             MR. SIMEON:  THE ONLY CHANGE IS IN THE FOURTH

02:23PM 18   ELEMENT WHERE IT STATES THE DEFENDANT ACTED BEFORE THE CRIME

02:23PM 19   WAS COMPLETED, AND SO WE ADDED A BRACKETED PORTION BECAUSE THE

02:23PM 20   UNDERLYING SCHEME OR PLAN HERE IS THE CONCEALMENT OF ASSETS

02:23PM 21   WHICH IS BY DEFINITION ONGOING UNTIL THE DATE OF DISMISSAL OR

02:24PM 22   DISCHARGE, AND IN THIS CASE THERE WAS A DISCHARGE ON THAT DATE.

02:24PM 23             MS. GILG:  I WOULD OBJECT TO THAT.  I THINK THAT

02:24PM 24   THAT'S A QUESTION OF FACT FOR THE JURY AS FAR AS WHEN THE ACT

02:24PM 25   WAS COMPLETED OR, I'M SORRY, WHEN THE CRIME WAS COMPLETED.

02:24PM 1    WE DO HAVE A PROPOSED INSTRUCTION WITH REGARD TO THE

02:24PM 2  CONCURRENCE OF INTENT, AN ACT.

02:24PM 3        THE COURT:  WHERE WAS THAT?

02:24PM 4        MS. GILG:  THAT WAS ONE OF THE THINGS E-MAILED AT

02:24PM 5  1:40 TODAY.

02:24PM 6        THE COURT:  CAN YOU -- INTENT TO DEFRAUD, IS THAT

02:24PM 7  IT?

02:24PM 8        MS. GILG:  NO.  IT'S CONCURRENCE OF ACT AND INTENT

02:24PM 9  WHICH IS ONE OF THE TWO E-MAILS THAT WERE SENT TODAY.

02:24PM 10        THE COURT:  ALL RIGHT.  THIS WAS E-MAILED AT 1:26

02:24PM 11  TODAY.  OKAY.

02:25PM 12        MS. GILG:  YES.

02:25PM 13        THE COURT:  I THINK I HAVE IT.  I'M SORRY.  WHAT

02:25PM 14  WOULD YOU LIKE THE COURT TO DO WITH THIS?  YOU'D LIKE THE COURT

02:25PM 15  TO READ THIS, MS. GILG, INSTEAD OF?

02:25PM 16        MS. GILG:  NO.  I'M STATING THAT I BELIEVE THAT BY

02:25PM 17  PUTTING THE DATE IN THERE, IT'S CONTRARY TO THAT PROPOSED

02:25PM 18  INSTRUCTION AND ALSO I THINK IT'S ENCROACHING ON THE JURY'S

02:25PM 19  FACT FINDING FUNCTION.

02:25PM 20        THE COURT:  OH, OKAY.  YOU'RE BACK ON 122, PAGE 3?

02:25PM 21        MS. GILG:  YES.

02:25PM 22        THE COURT:  AND YOUR OBJECTION TO LINE 13 WHERE IT

02:25PM 23  SAYS FOURTH, THE DEFENDANT ACTED BEFORE THE CRIME WAS COMPLETED

02:25PM 24  AND THEN BRACKETED ON AUGUST 5, 2015?

02:25PM 25        MS. GILG:  CORRECT.

02:25PM 1          THE COURT:  AND YOU'D LIKE THE DATE STRICKEN, IS

02:25PM 2    THAT WHAT YOU'RE SAYING?

02:25PM 3          MS. GILG:  YES.  YES.

02:25PM 4          MR. SCHENK:  YOUR HONOR, THE ARGUMENT WAS -- THAT

02:26PM 5    WAS ENCROACHING ON THE JURY'S DUTY AND THE DATE THE CRIME WAS

02:26PM 6    COMPLETED IS A QUESTION OF FACT, AND ACTUALLY IT'S A QUESTION

02:26PM 7    OF LAW -- AND I'M SORRY, STATUTE OF LIMITATIONS PRETRIAL

02:26PM 8    MOTIONS ARE BASED UPON IT.  CASE LAW IS WHAT DEFINES THE END OF

02:26PM 9    A CONCEALMENT CRIME OR A BANKRUPTCY SCHEME.  IT IS AT

02:26PM 10   DISCHARGE.  IT'S A CONTINUING OFFENSE UNTIL DISCHARGE OR

02:26PM 11   DISMISSAL.  THE PARTIES AGREE ON THAT DATE.  IT IS THIS DATE IN

02:26PM 12   2015.

02:26PM 13       SO I DON'T THINK THE COURT IS DOING ANY FACTUAL LEGWORK

02:26PM 14   FOR THE JURY BY JUST TELLING THEM WHEN THE CRIME HAS BEEN

02:26PM 15   COMPLETED OTHERWISE THEY DON'T HAVE THE TOOLS, THE CASE LAW

02:26PM 16   KNOWLEDGE TO KNOW THAT.

02:26PM 17          THE COURT:  WAS THERE EVIDENCE AS TO THIS DATE THAT

02:26PM 18   THE BANKRUPTCY COURT MADE ITS DECISION OR OTHERWISE GAVE

02:26PM 19   CONTROLLING WEIGHT TO THIS DATE?

02:26PM 20          MR. SIMEON:  YES, YOUR HONOR, MR. LAFFREDI TESTIFIED

02:26PM 21   TO THAT.

02:26PM 22          MS. GILG:  YOUR HONOR, THE FACT IS THAT THE CRIME OF

02:27PM 23   CONCEALMENT COULD GO ON BEYOND THE DATE OF THE DISCHARGE.  I

02:27PM 24   MEAN, IN ACTUALITY IT COULD GO ON FOR TEN YEARS, THE

02:27PM 25   CONCEALMENT.

02:27PM 1     SO I DON'T EVEN THINK IT'S AN ACCURATE STATEMENT OF THE

02:27PM 2  LAW TO BE PERFECTLY HONEST.

02:27PM 3     MR. NICK:  JUST TO REMIND THE COURT, YOUR HONOR,

02:27PM 4  MR. LAFFREDI TESTIFIED THAT EVEN AFTER THE BANKRUPTCY PETITION

02:27PM 5  IS GRANTED, OR I MAY NOT BE USING THE RIGHT TERMS, OR THE

02:27PM 6  DISCHARGE IS GRANTED, THAT THEY HAVE A MECHANISM FOR REOPENING

02:27PM 7  UP THE BANKRUPTCY.

02:27PM 8     SO IT SEEMS TO ME THAT THE CRIME OF BANKRUPTCY FRAUD

02:27PM 9  BASICALLY GOES ON FOREVER INTO PERPETUITY UNTIL THE

02:27PM 10 GOVERNMENT --

02:27PM 11    THE COURT:  COULD THE GOVERNMENT CHARGE IT SUCH?

02:27PM 12    MR. NICK:  WELL, NO, BECAUSE THEY HAVE A ROAD BLACK

02:27PM 13 WITH THE FIVE YEAR STATUTE OF LIMITATIONS FROM THIS CHARGE,

02:27PM 14 YOUR HONOR.  BUT IT'S EVEN A UNIQUE STATUTE OF LIMITATIONS THAT

02:27PM 15 DOESN'T START RUNNING UNTIL THE DISCHARGE IS GRANTED.  SO

02:27PM 16 THAT'S THE OTHER PART.

02:28PM 17    I MEAN, THAT RIGHT THERE, LITERALLY THE STATUTE OF

02:28PM 18 LIMITATIONS STATUTE IS UNIQUE TO BANKRUPTCY AND THE FIVE-YEAR

02:28PM 19 PERIOD DOES NOT START TO RUN UNTIL THE DISCHARGE HAS BEEN

02:28PM 20 GRANTED.

02:28PM 21    THE COURT:  IS AUGUST 5, 2015, THE DISCHARGE DATE?

02:28PM 22    MR. NICK:  IT IS, YOUR HONOR.

02:28PM 23    MS. GILG:  WHAT IT DOES IS GIVE THE JURY SORT OF A

02:28PM 24 STATEMENT OF FACT IN A WAY.

02:28PM 25    THE DEFENDANT ACTED BEFORE THE CRIME WAS COMPLETED ON

02:28PM 1    AUGUST 5TH.  SO, IN OTHER WORDS, IT'S ALMOST LIKE, HEY, THE

02:28PM 2    CRIME WAS COMPLETED ON AUGUST OF 2015.

02:28PM 3            THE COURT:  SO I THINK YOUR OFFENSE IS AT THE WORD

02:28PM 4    "CRIME."

02:28PM 5            MS. GILG:  NO, NO, IT'S HAVING A DATE THERE.  IT

02:28PM 6    LENDS CREDENCE TO THE NOTION THAT THERE WAS A CRIME BECAUSE

02:28PM 7    WE'RE TELLING YOU, JURY, THIS IS WHEN THE CRIME ENDED, AND I

02:28PM 8    DON'T THINK THAT YOU CAN SAY THAT THE CRIME OF CONCEALMENT

02:28PM 9    ENDED ON THE DATE OF DISCHARGE.  I DON'T THINK THAT'S AS A

02:28PM 10   MATTER OF LAW CORRECT.

02:28PM 11       THE CONCEALMENT CAN GO ON BEYOND THE DATE OF DISCHARGE.

02:29PM 12   IT COULD HAVE -- IT COULD HAVE HAPPENED BEFORE THE DATE OF

02:29PM 13   DISCHARGE.

02:29PM 14       SO I JUST THINK IT'S AN INACCURATE STATEMENT OF LAW, FOR

02:29PM 15   ONE, TO HAVE THAT IN THERE, AND I THINK IT JUST GIVES TOO MUCH

02:29PM 16   DIRECTION TO THE JURY TO THINK, OKAY, WELL, THE CRIME WAS

02:29PM 17   COMPLETED, AND THIS IS WHAT THE COURT IS TELLING ME THE CRIME

02:29PM 18   WAS COMPLETED ON SUCH AND SUCH DATE.

02:29PM 19            THE COURT:  ANYTHING FURTHER?

02:29PM 20            MR. SIMEON:  JUST BRIEFLY, YOUR HONOR.  THE FIRST

02:29PM 21   ELEMENT IS THAT SOMEONE HAS COMMITTED THE CRIME.  SO YOU DON'T

02:29PM 22   GET TO THE FOURTH ELEMENT UNLESS YOU'VE ALREADY DECIDED THAT A

02:29PM 23   CRIME WAS COMMITTED.

02:29PM 24            THE COURT:  I SEE THAT, AND IT IS CATEGORICAL.  YOU

02:29PM 25   HAVE TO FIND THE FIRST ELEMENT, BANKRUPTCY FRAUD, AND THEN I

02:29PM 1    SUPPOSE THE WORD "CRIME" SEEMS TO BE OFFENSIVE, AND IF IT SAID

02:29PM 2    THE BANKRUPTCY FRAUD WAS COMPLETED ON, I THINK THAT WOULD

02:29PM 3    ACCOMPLISH THE SAME PURPOSE.

02:29PM 4        BUT THE GOVERNMENT CAN CERTAINLY ARGUE WHEN IT FEELS THE

02:30PM 5    CRIME WAS COMPLETED.

02:30PM 6             MS. GILG:  I WOULD AGREE WITH THAT.

02:30PM 7             THE COURT:  AND THE DEFENSE CAN, TOO.  SO I'LL

02:30PM 8    STRIKE THE DATE.

02:30PM 9             MS. GILG:  THANK YOU.

02:30PM 10            THE COURT:  YOU'RE WELCOME.  IT WILL OTHERWISE READ

02:30PM 11   AS REPRESENTED.

02:30PM 12       AND I THINK -- IS THAT THE ONLY CHANGE, MR. SIMEON?

02:30PM 13            MR. SIMEON:  YES.

02:30PM 14            THE COURT:  SO I'LL LEAVE DOCUMENT 90, PAGE 40 AS

02:30PM 15   IS.  THAT IS HOW THAT WILL BE READ.

02:30PM 16            MR. NICK:  YOUR HONOR, I HEARD THE COURT INDICATE

02:30PM 17   ALSO THAT THE WORD "CRIME" WOULD BE STRICKEN AND REPLACED WITH

02:30PM 18   "BANKRUPTCY FRAUD."

02:30PM 19            THE COURT:  I SAID THAT'S AN ALTERNATIVE, BUT I'M

02:30PM 20   NOT GOING TO DO THAT.  I'LL JUST STRIKE THE DATE.

02:30PM 21            MR. NICK:  SO THE WORD "CRIME" WILL REMAIN?

02:30PM 22            THE COURT:  THAT'S CORRECT.

02:30PM 23            MR. NICK:  YOUR HONOR, WOULD WE BE ABLE TO INDICATE

02:30PM 24   THE FOLLOWING QUALIFYING LANGUAGE INSTEAD, "THE DEFENDANT ACTED

02:30PM 25   BEFORE THE CRIME, IF ANY, WAS COMPLETED"?

02:31PM 1      BECAUSE THAT, THAT CUES THE JURY IN AGAIN THAT IT'S FOR

02:31PM 2   THEM TO DETERMINE WHETHER A CRIME WAS BEING COMMITTED.

02:31PM 3      THE COURT:  WELL, I THINK THE PRESUMPTION OF

02:31PM 4   INNOCENCE GIVES THAT INSTRUCTION.

02:31PM 5      MR. NICK:  IT DOES, YOUR HONOR.

02:31PM 6      THE COURT:  ALL RIGHT.  THAT CAPTURES IT.  THIS

02:31PM 7   IS -- THIS TALKS ABOUT SOMEBODY ELSE COMMITTED A BANKRUPTCY

02:31PM 8   FRAUD, THIS BEING DOCUMENT 90, PAGE 40 FIRST.  THAT'S THE FIRST

02:31PM 9   THING THAT THEY HAVE TO FIND.

02:31PM 10      AND IF THEY STOP THERE, THERE WAS NO BANKRUPTCY FRAUD,

02:31PM 11   THEY DON'T GET TO -- THEY'VE ALREADY SOLVED WHETHER OR NOT

02:31PM 12   THERE WAS A CRIME.

02:31PM 13      SO I'LL READ THAT.

02:31PM 14      MS. GILG:  JUST TO BE CLEAR, THAT WOULD BE THE SAME

02:31PM 15   AS ON DOCUMENT 90, PAGE 40 WE WOULD MAINTAIN THAT INSTRUCTION?

02:31PM 16      THE COURT:  THAT'S CORRECT.  SCHEME TO DEFRAUD,

02:32PM 17   THAT'S 8.122.  THAT'S STILL --

02:32PM 18      MS. GILG:  YES.

02:32PM 19      THE COURT:  I'M STILL ON DOCUMENT 122.

02:32PM 20      MS. GILG:  BEFORE WE MOVE FROM VICARIOUS LIABILITY,

02:32PM 21   CAN WE ALSO STRIKE IT FROM DOCUMENT 90.  DOCUMENT 90, PAGE 41

02:32PM 22   ALSO HAS THE VICARIOUS LIABILITY ALSO.

02:32PM 23      THE COURT:  YES.  YES.  NOW, PAGE 5 OF 122 IS COUNT

02:32PM 24   TWO, CONCEALMENT OF ASSETS IN BANKRUPTCY PROCEEDING.

02:32PM 25      AND, MR. SIMEON, WHAT IS THE CHANGE BETWEEN THIS AND

1    DOCUMENT 90, PAGE 42?

2         MR. SIMEON:  SO ONE CHANGE IS A MISTAKE.  I ACTUALLY

3    DUPLICATED THE SECOND TO THE LAST PARAGRAPH AND THE FIRST

4    PARAGRAPH.  SO BELOW THE ELEMENTS ARE A PERSON FRAUDULENTLY

5    CONCEALS, AND THEN THE NEXT SENTENCE SHOULD BE DELETED.  I

6    APOLOGIZE.  THAT WAS ALREADY IN THE SECOND TO THE LAST

7    PARAGRAPH.

8         THE NEXT SENTENCE WITH FOOTNOTE 4 IS ADDED.

9         THE COURT:  WHAT LINE IS THAT?

10         MR. SIMEON:  THAT IS PAGE 6, LINES 2 AND 3, SINCE

11    THE OFFENSE OF CONCEALMENT IS A CONCEALING ONE.  SO THAT'S THE

12    FIRST CHANGE.

13         THE COURT:  OKAY.

14         MR. SIMEON:  AND THEN THE SECOND CHANGE IS ON LINE

15    10, THE END OF LINE 10 TO THE FIRST WORD OF LINE 11 THAT THE

16    CLAUSE "WHEREVER LOCATED AND BY WHOMEVER HELD," THAT'S FROM THE

17    STATUTE AND ALSO CITED BY THE NINTH CIRCUIT.

18         THE COURT:  OKAY.  ANY OBJECTION?

19         MS. GILG:  YES, YOUR HONOR.

20         THE COURT:  OKAY.

21         MS. GILG:  I WOULD OBJECT TO 2, JUST AS AN INITIAL

22    POSITION, I WOULD OBJECT TO THOSE ADDITIONS.

23         AND IN ADDITION, IF THE COURT WERE TO LOOK AT THE FIFTH

24    PAGE, WE DO HAVE A PROPOSED MODIFIED INSTRUCTION, AND THAT

25    WOULD BE OF THE TEN PAGE PACKET.

02:34PM 1        THE COURT:  AND WHAT IS THE TITLE?

02:34PM 2        MS. GILG:  IT'S CALLED CONCEALMENT OF ASSETS IN

02:34PM 3   BANKRUPTCY PROCEEDING.

02:34PM 4        THE COURT:  OKAY.

02:38PM 5     (PAUSE IN PROCEEDINGS.)

02:38PM 6        MS. GILG:  YOUR HONOR, IF I MAY, WE DID RAISE THIS

02:38PM 7   ISSUE IN OUR DOCUMENT 101 WITH REGARD TO THIS ADDITIONAL

02:38PM 8   LANGUAGE.

02:40PM 9     (PAUSE IN PROCEEDINGS.)

02:40PM 10        THE COURT:  ALL RIGHT.  THANK YOU.  SO IT LOOKS LIKE

02:40PM 11   IN THE DEFENSE YOUR PROPOSAL, YOUR CHANGES ARE IN THE BRACKETS;

02:40PM 12   IS THAT CORRECT?

02:40PM 13        MS. GILG:  THAT'S CORRECT, YOUR HONOR.

02:40PM 14        THE COURT:  ALL RIGHT.  WELL, LET'S GO THROUGH THESE

02:40PM 15   IN COMPARISON.

02:40PM 16     MR. SIMEON, DO YOU HAVE ANY COMMENT ON THE PROPOSED

02:40PM 17   OFFENSE 152(1) INSTRUCTION?

02:41PM 18        MR. SIMEON:  I DON'T HAVE AN OBJECTION TO ADDING

02:41PM 19   KNOWINGLY.  THAT IS IN THE STATUTE IN THE SECOND ELEMENT.

02:41PM 20        THE COURT:  SO THE SECOND ELEMENT WOULD READ,

02:41PM 21   "SECOND, THE DEFENDANT KNOWINGLY AND FRAUDULENTLY"?

02:41PM 22        MR. SIMEON:  I THINK THAT'S A CORRECT STATEMENT,

02:41PM 23   YOUR HONOR.

02:41PM 24        THE COURT:  OKAY.  ALL RIGHT.  ANY OBJECTION TO THE

02:41PM 25   COURT READING THAT INSTRUCTION?

02:41PM 1        MR. NICK:  NO OBJECTION, YOUR HONOR.

02:41PM 2        MS. GILG:  NO OBJECTION.

02:41PM 3        THE COURT:  OKAY.  AND THEN THE NEXT BRACKETED IS ON

02:41PM 4   THE FIRST PAGE, I THINK IT READS, THE BRACKET READS, "THERE CAN

02:41PM 5   BE NO FRAUDULENT CONCEALMENT OF PROPERTY WHERE ALL INTEREST IS

02:41PM 6   TRANSFERRED TO A THIRD PARTY BEFORE THE BANKRUPTCY PETITION IS

02:41PM 7   FILED UNLESS IT IS SHOWN THAT THE TRANSFER WAS MERELY A

02:41PM 8   TEMPORARY EXPEDIENT TO PLACE THE PROPERTY BEYOND THE REACH OF

02:42PM 9   THE TRUSTEE, THE TITLE TO BE RESUMED BY THE DEBTOR AS SOON AS

02:42PM 10  PRUDENCE WILL PERMIT," PERIOD.  I THINK I READ THAT ACCURATELY

02:42PM 11  AS PRINTED.

02:42PM 12      MR. SIMEON?

02:42PM 13       MR. SIMEON:  THE GOVERNMENT OBJECTS, YOUR HONOR.  I

02:42PM 14  HAVE NOT SEEN THE -- I SEE THE CITATION.  IT'S A SECOND CIRCUIT

02:42PM 15  CASE FROM 1911.

02:42PM 16      I'M NOT SURE BANKRUPTCY LAW IS THE SAME AS IT WAS THEN AND

02:42PM 17  I'M NOT SURE, FRANKLY, THAT IS AN ACCURATE STATEMENT.  IT SEEMS

02:42PM 18  TO BE DEFINING FRAUDULENT CONCEALMENT IN THE NEGATIVE, AND IT

02:42PM 19  CONFUSES THE DEFINITIONS THAT ALREADY EXISTS.  THERE ARE THREE

02:42PM 20  OTHER SENTENCES, I BELIEVE, STATING WHAT FRAUDULENT CONCEALMENT

02:42PM 21  IS, AND I DON'T BELIEVE IT'S HELPFUL.  I BELIEVE IT'S MORE

02:42PM 22  CONFUSING THAN NOT, AND I DON'T BELIEVE IT'S AN ACCURATE

02:43PM 23  STATEMENT OF THE LAW.

02:43PM 24       MR. NICK:  YOUR HONOR, HAMMERSTEIN IS A CASE THAT

02:43PM 25  HAS BEEN CITED IN EVERY SINGLE CIRCUIT WITH APPROVAL FOR

02:43PM 1    100 YEARS.  IT IS THE LAW IN THE NINTH CIRCUIT.

02:43PM 2        IN OUR PRETRIAL FILINGS, PARTICULARLY THE MOTION FOR A

02:43PM 3    MORE DEFINITIVE STATEMENT IN THE INDICTMENT, YOUR HONOR, WE --

02:43PM 4    IT'S FOR A BILL OF PARTICULARS, IN ESSENCE, WE BRIEFED THIS

02:43PM 5    ASPECT OF THE LAW AND THE NINTH CIRCUIT'S ACCORD WITH IT.

02:43PM 6        SO UNLESS THE GOVERNMENT CAN COME UP WITH A CASE THAT SAYS

02:43PM 7    THAT'S NOT THE LAW IN THE NINTH CIRCUIT, ALL OF MY RESEARCH

02:43PM 8    INDICATES THAT IT'S NOT ONLY THE LAW IN THIS CIRCUIT BUT EVERY

02:43PM 9    OTHER LAW IN THE UNITED STATES, AND IT'S A PERENNIAL CASE THAT

02:43PM 10   EXEMPLIFIES THE POINT AND THE FACTS IN THE CASE ARE NEARLY

02:44PM 11   IDENTICAL TO WHAT THE GOVERNMENT ALLEGED HERE OCCURRED.

02:44PM 12       SO THE POINT IS TO HAVE THE JURY BE ABLE TO DIFFERENTIATE

02:44PM 13   BETWEEN A REAL GIFT, THAT NO MATTER WHAT THE PERSON INTENDS IN

02:44PM 14   THEIR HEAD IS CONTROLLED BY CERTAIN RULES OF WHO CONTROLS THE

02:44PM 15   PROPERTY VERSUS A PRE-PLANNED SCHEME TO HAVE THE PROPERTY

02:44PM 16   TRANSFERRED BACK TO THE INDIVIDUAL AT SOME POINT IN THE FUTURE

02:44PM 17   WHEN THE COAST IS CLEAR.

02:44PM 18           THE COURT:  CAN YOU TELL ME, DOES THIS SENTENCE

02:44PM 19   REPRESENT -- IT SEEMS TO HAVE SOME GRAMMATICAL PROBLEMS.

02:44PM 20           MR. NICK:  THAT'S BECAUSE IT'S WRITTEN IN 1911, YOUR

02:44PM 21   HONOR.

02:44PM 22           THE COURT:  AND SO HOW WOULD IT READ TODAY?

02:44PM 23           MR. NICK:  IF I COULD HAVE A MOMENT, YOUR HONOR.

02:44PM 24   BASICALLY WE WERE TRYING TO QUOTE THE LANGUAGE RIGHT OUT OF THE

02:44PM 25   CASE SO AS TO NOT CREATE THE LANGUAGE.

02:44PM 1     AND I THINK THE WAY THAT I WOULD --

02:45PM 2          MR. SIMEON:  YOUR HONOR, IF I MAY INTERJECT WHILE

02:45PM 3     WE'RE SITTING HERE.  I JUST DID A WESTLAW SEARCH.  THE CASE HAS

02:45PM 4     21 CITATIONS AND NONE IN THE NINTH CIRCUIT AS FAR AS I CAN TELL

02:45PM 5     SINCE 1911.

02:45PM 6          MR. NICK:  YOUR HONOR, IF WE NEED TO BRIEF THIS

02:45PM 7     ISSUE AGAIN, I'LL RE-BRIEF IT AGAIN, BUT I THINK I WOULD INVITE

02:45PM 8     THE COURT TO TAKE A LOOK AT MY BILL OF PARTICULARS THAT CITES

02:45PM 9     NINTH CIRCUIT LAW IN THIS AREA.

02:45PM 10         I THINK IT WOULD BE GRAMMAR CHANGES, YOUR HONOR, "A

02:45PM 11    FRAUDULENT CONCEALMENT DOES NOT INCLUDE CIRCUMSTANCES WHERE ALL

02:46PM 12    INTERESTS ARE TRANSFERRED TO A THIRD PARTY BEFORE THE

02:46PM 13    BANKRUPTCY PETITION IS FILED UNLESS THE GOVERNMENT HAS SHOWN

02:46PM 14    THAT THE TRANSFER WAS MERELY A TEMPORARY EXPEDIENT," AND I

02:46PM 15    WOULD AGREE WITH THAT LANGUAGE, "TO PLACE THE PROPERTY BEYOND

02:46PM 16    THE REACH OF THE TRUSTEE UNTIL THE BANKRUPTCY PETITION OR THE

02:46PM 17    BANKRUPTCY PROCEEDINGS HAVE BEEN ADJUDICATED, AT WHICH TIME

02:46PM 18    IT'S THE INTENT OF THE DEFENDANT TO HAVE THE PROPERTY RETURNED

02:46PM 19    TO."

02:46PM 20         SO WORDS LIKE PRUDENCE, AND THOSE ARE MORE TURN OF THE

02:46PM 21    CENTURY WORDS, YOUR HONOR, RATHER THAN --

02:46PM 22         THE COURT:  WELL, THE PURPOSE OF OUR CHARGING

02:46PM 23    DISCUSSION AND, YOU KNOW, IT'S HELPFUL TO HAVE EXACTLY WHAT YOU

02:46PM 24    WANT SO WE DON'T DO THIS ON THE FLY HERE.

02:46PM 25         MR. NICK:  YES, YOUR HONOR.  WELL, YOUR HONOR, I

02:46PM 1    AGREE WITH THIS LANGUAGE.

02:46PM 2         MS. GILG:  I DO, TOO.

02:46PM 3         MR. NICK:  YES, YOUR HONOR.  I'M JUST TRYING TO

02:46PM 4    ACCOMMODATE THE COURT.  IF YOU WANT TO HAVE MORE MODERN

02:47PM 5    LANGUAGE, I COULD TAKE OUT THE WORD "PRUDENCE" AND SUBSTITUTE

02:47PM 6    IT WITH SOMETHING ELSE, BUT THIS IS LITERALLY A QUOTE RIGHT OUT

02:47PM 7    OF HAMMERSTEIN.

02:47PM 8         THE COURT:  AND YOU'RE SAYING THAT HAMMERSTEIN IS

02:47PM 9    FOLLOWED IN THIS CIRCUIT?

02:47PM 10        MR. NICK:  IT IS, YOUR HONOR.

02:47PM 11        THE COURT:  MR. SIMEON SAYS THERE'S NO CITATIONS.

02:47PM 12        MR. NICK:  IF I COULD HAVE A FIVE MINUTE BREAK, YOUR

02:47PM 13   HONOR, I'LL COME BACK WITH THE CITATIONS.

02:47PM 14        THE COURT:  OKAY.  WE'RE NOT GOING TO BREAK.  WE'RE

02:47PM 15   GOING TO GO FORWARD, AND WE'LL CONTINUE.  WE'LL PASS THIS FOR

02:47PM 16   JUST A MOMENT.

02:47PM 17        MS. GILG:  YOUR HONOR, ONE THING I'D LIKE TO NOTE IS

02:47PM 18   THAT THE NINTH CIRCUIT DOES NOT HAVE THE MODEL INSTRUCTION FOR

02:47PM 19   THIS PARTICULAR COUNT SO IT MAKES IT A LITTLE BIT MORE

02:47PM 20   DIFFICULT FOR FASHIONING INSTRUCTIONS FOR US.

02:47PM 21        THE COURT:  OKAY.  LET'S SEE.  PAGE 7 OF 122 IS

02:47PM 22   COUNT TWO, CONCEALMENT OF ASSETS.

02:48PM 23      DO YOU HAVE A SUBSTITUTION FOR THAT AS WELL, MS. GILG?

02:48PM 24        MS. GILG:  I'M SORRY.  I THOUGHT THAT'S WHAT WE WERE

02:48PM 25   JUST DISCUSSING.

02:48PM 1        THE COURT:  YES, I'M ON -- LET'S SEE.  I'M ON "COUNT

02:48PM 2   THREE, FALSE STATEMENT IN BANKRUPTCY PROCEEDING."

02:48PM 3      I THINK YOU HAVE SUGGESTED A DEFINITION FOR MATERIAL

02:48PM 4   MATTER?

02:48PM 5        MS. GILG:  RIGHT.  SO THE BRACKETED, THAT IS, "IT

02:48PM 6   HAD A NATURAL TENDENCY TO INFLUENCE," ET CETERA, WOULD BE WHAT

02:49PM 7   WE WOULD ASK TO ADD TO THAT.

02:49PM 8        THE COURT:  OKAY.  MR. SIMEON?

02:49PM 9        MR. SIMEON:  YOUR HONOR, WE ALSO ADDED A DEFINITION

02:49PM 10  OF MATERIAL.  I THINK DEFENSE COUNSEL JUST USED THE DEFINITION

02:49PM 11  FROM ANOTHER COUNT; IS THAT CORRECT?  I AGREE THAT THERE SHOULD

02:49PM 12  BE A DEFINITION ABOUT MATERIALITY, AND I DON'T THINK THERE'S A

02:49PM 13  SIGNIFICANT DIFFERENCE BETWEEN WHAT THE PARTIES HAVE SUGGESTED.

02:49PM 14        MS. GILG:  SHOULD I BE LOOKING AT DOCUMENT 1?

02:49PM 15        MR. SIMEON:  SO OURS IS ON 122-8, ALTHOUGH.

02:49PM 16        THE COURT:  LINE 14 IS DOCUMENT 122-8 HAS THE

02:49PM 17  DEFINITION.

02:49PM 18        MS. GILG:  YEAH, BUT I DIDN'T SEE THAT ADDED.  I

02:49PM 19  THINK OURS ARE THE SAME OTHER THAN -- OH, I SEE, AT THE BOTTOM.

02:50PM 20        MR. SIMEON:  SO, YOUR HONOR, THE DEFINITION THAT I

02:50PM 21  INCLUDED IS ALSO FROM THE SEVENTH CIRCUIT LIKE THE ELEMENTS OF

02:50PM 22  THE OFFENSE, AND I THINK THE DISTINCTION HERE IS MATERIALITY IS

02:50PM 23  SIMPLY EXPLAINED AS A DEFINITION MATTER, AND IT DOESN'T NEED TO

02:50PM 24  BE INJECTED AS PART OF THE ELEMENTS OF THE OFFENSE.

02:50PM 25        AND MATERIALITY HERE IS SLIGHTLY DIFFERENT BECAUSE FALSE

02:50PM 1    STATEMENT IN A BANKRUPTCY PROCEEDING IS ALSO DIFFERENT FROM

02:50PM 2    BANKRUPTCY FRAUD.  THEY'RE JUST DIFFERENT TYPES OF OFFENSES.

02:50PM 3        SO THIS ONE THAT IS INCLUDED AT LINE 14 IS CONSISTENT WITH

02:50PM 4    THE REST OF THE INSTRUCTION BECAUSE THEY BOTH ARE PART OF THE

02:50PM 5    SEVENTH CIRCUIT MODEL INSTRUCTIONS.

02:50PM 6            THE COURT:  SO, MS. GILG, MR. NICK, LINE 14, FIRST

02:50PM 7    OF ALL, LET ME SAY THAT I THINK IT'S APPROPRIATE TO SEPARATE IT

02:50PM 8    FROM THE INSTRUCTIONS.

02:50PM 9            MS. GILG:  I WOULD AGREE WITH THAT, YOUR HONOR.

02:50PM 10           THE COURT:  AND SO I WOULD ADD IT AT THE BOTTOM OF

02:50PM 11   THE FIFTH -- BELOW THE FIFTH ELEMENT.  IT APPEARS ON LINE 14 IN

02:51PM 12   THE GOVERNMENT'S PAGE 8 OF 122, AND I'M INCLINED TO GIVE THAT

02:51PM 13   DEFINITION.

02:51PM 14           MS. GILG:  YOUR HONOR, THE ONLY THING THAT IS

02:51PM 15   CAPABLE.  ALMOST ANYTHING IS CAPABLE OF INFLUENCING.

02:51PM 16       THE ONLY THING I WOULD ASK IS THAT YOU STATE "A NATURAL

02:51PM 17   TENDENCY" AS OPPOSED TO "CAPABLE."

02:51PM 18           MR. SIMEON:  I BELIEVE IT'S IN BOTH INSTRUCTIONS,

02:51PM 19   YOUR HONOR.

02:51PM 20           THE COURT:  THE WORD "CAPABLE"?

02:51PM 21           MR. SIMEON:  YES, YOUR HONOR.

02:51PM 22           MS. GILG:  BOTH WHAT INSTRUCTIONS?  I'M SORRY.

02:51PM 23           MR. SIMEON:  YOURS AND OURS?

02:51PM 24           MS. GILG:  OURS SAYS IT HAS A NATURAL TENDENCY TO

02:51PM 25   INFLUENCE OR CAPABLE OF -- OH, I SEE.

02:51PM 1        THE COURT: I WON'T READ THE NATURAL TENDENCY. I

02:51PM 2  THINK THAT'S CONFUSING.

02:51PM 3     I'M GOING TO READ THE GOVERNMENT'S SECTION -- EXCUSE ME,

02:51PM 4  PAGE 8, DOCUMENT 122, AND THAT WILL BE SEPARATED OUT AS

02:52PM 5  INDICATED.

02:52PM 6        MS. GILG: OKAY.

02:52PM 7        MR. SIMEON: THERE'S JUST ONE OTHER MATTER ON THAT

02:52PM 8  PAGE, YOUR HONOR. I DON'T KNOW IF YOU'VE ALREADY REVIEWED IT,

02:52PM 9  BUT IN THE FIFTH ELEMENT THE DEFENSE SUGGESTS ADDING AFTER

02:52PM 10  KNOWINGLY "AND FRAUDULENTLY" AND THAT IS NOT IN THE SEVENTH --

02:52PM 11  THAT'S NOT IN THE MODEL INSTRUCTIONS.

02:52PM 12     THE GOVERNMENT HAS INCLUDED IT AND AFTER CHECKING ALL OF

02:52PM 13  THE OTHER CIRCUITS, FRAUDULENTLY, WHEN IT'S USED, IS FOLLOWED

02:52PM 14  BY "THAT IS," WITH THE INTENT TO DECEIVE. IN OTHER WORDS,

02:52PM 15  "WITH THE INTENT TO DECEIVE MEANS FRAUDULENTLY," AND THAT'S WHY

02:52PM 16  IT'S NOT IN THE GOVERNMENT'S INSTRUCTIONS.

02:52PM 17        THE COURT: NO, I WASN'T GOING TO READ THAT. I WAS

02:52PM 18  JUST GOING TO --

02:52PM 19        MR. SIMEON: THANK YOU.

02:52PM 20        THE COURT: THANK YOU FOR THAT CLARIFICATION.

02:53PM 21     NEXT IS ON DOCUMENT 122, PAGE 9 IS "KNOWINGLY DEFINED" AND

02:53PM 22  THIS IS NINTH CIRCUIT MODEL 5.7.

02:53PM 23     HOW IS THIS DIFFERENT FROM THE ORIGINAL?

02:53PM 24        MR. SIMEON: IT IS NOT. I SIMPLY INCLUDED ALL OF

02:53PM 25  THE INSTRUCTIONS SO THERE WAS A COMPLETE SET, BUT THERE'S NO

02:53PM 1    CHANGE TO THIS OR TO ANY OF THE SUBSEQUENT INSTRUCTIONS, BUT

02:53PM 2    THEY'RE ALL STRICKEN IN THE MODEL INSTRUCTIONS, YOUR HONOR.

02:53PM 3              THE COURT:  OKAY.  ANY OBJECTION TO THIS BEING

02:53PM 4    GIVEN?

02:53PM 5              MS. GILG:  NO, YOUR HONOR.

02:53PM 6              MR. NICK:  NO.

02:53PM 7              THE COURT:  ALL RIGHT.  THE COURT WILL GIVE

02:53PM 8    KNOWINGLY, 5.7.

02:53PM 9         THE NEXT IS 5.8, DELIBERATE IGNORANCE.  I THINK, MS. GILG,

02:54PM 10   YOU HAD AN OBJECTION TO THAT.

02:54PM 11             MS. GILG:  YES, YOUR HONOR.

02:54PM 12             THE COURT:  THESE APPEAR AT DOCUMENT 90, PAGE 47.

02:54PM 13        MR. SIMEON, WHAT ABOUT THIS?

02:54PM 14             MR. SIMEON:  YES, YOUR HONOR.  THIS IS, AGAIN, IT

02:54PM 15   FOLLOWS THE MODEL JURY INSTRUCTIONS SAVE FOR THE PARTS IN THE

02:54PM 16   INSTRUCTIONS JUST EXPLAIN WHAT THERE IS A HIGH PROBABILITY OF,

02:54PM 17   AND THE REASON FOR THIS INSTRUCTION IS FROM THE BEGINNING

02:54PM 18   DEFENSE COUNSEL STATED, MS. GILG WITH RESPECT TO HER CLIENT,

02:54PM 19   THAT SHE HAD NO IDEA WHAT WAS GOING ON, AND I THINK IN A CASE

02:54PM 20   LIKE THIS WHERE AN INDIVIDUAL IS CHARGED WITH COMMITTING

02:55PM 21   SOMETHING AND THE DEFENSE IS SHE DIDN'T KNOW, DELIBERATE

02:55PM 22   IGNORANCE IS AN APPROPRIATE INSTRUCTION TO GIVE.

02:55PM 23             THE COURT:  ALL RIGHT.

02:55PM 24        MS. GILG?

02:55PM 25             MS. GILG:  I THINK, YOUR HONOR, IT'S INCONSISTENT

02:55PM  1    WITH THE LEVEL OF INTENT AND MENS REA THAT IS REQUIRED FOR THIS

02:55PM  2    PARTICULAR CRIME, PARTICULARLY WHEN WE'RE DEALING WITH AIDING

02:55PM  3    AND ABETTING.

02:55PM  4        SO WE'VE GOT, YOU KNOW, DOUBLE SPECIFIC INTENT SO TO

02:55PM  5    SPEAK, AND I DON'T BELIEVE THAT IT'S AN ACCURATE STATEMENT OF

02:55PM  6    THE LAW AS IT RELATES TO THE AIDING AND ABETTING OF MY CLIENT

02:55PM  7    AND SINCE THAT IS THE ONLY INDIVIDUAL THAT THE GOVERNMENT

02:55PM  8    THINKS THAT THIS APPLIES TO, I WOULD, I WOULD OBJECT.

02:55PM  9        THE COURT:  WHAT ABOUT -- THANK YOU.

02:55PM 10    WOULD THERE BE ANY ADDITIONAL INSTRUCTION THAT YOU

02:55PM 11    THINK -- I KNOW THE COMMENTS SUGGEST ADDING ADDITIONAL

02:56PM 12    INSTRUCTION PURSUANT TO JEWELL, J-E-W-E-L-L.

02:56PM 13        IS THERE ANYTHING THAT IS NEEDED HERE IN THAT REGARD,

02:56PM 14    MS. GILG?

02:56PM 15        MS. GILG:  I'M SORRY, I DON'T HAVE THOSE COMMENTS

02:56PM 16    BEFORE ME.

02:56PM 17        MR. NICK:  YOUR HONOR, IT SEEMS LIKE THE JEWELL

02:56PM 18    CASE, AND I KNOW THIS IS MS. GILG'S CLIENT, BUT THE JEWELL CASE

02:56PM 19    IS FOR LIKE NARCOTICS AND --

02:56PM 20        THE COURT:  WELL, I THINK IT REFERENCES -- THE

02:56PM 21    JEWELL CASE TALKS ABOUT SHOULD THERE BE ADDITIONAL DEFINITIONAL

02:56PM 22    OR OTHER INFORMATIVE INSTRUCTIONS TO ACCOMPANY TO FURTHER

02:56PM 23    EXPLAIN AND REASONING FOR AN INDIVIDUAL ACTING OR FAILING TO

02:57PM 24    ACT IN A CERTAIN WAY.

02:57PM 25        JUST A SECOND HERE.

02:57PM 1      MS. GILG:  I'M NOT SURE THAT WOULD INVOLVE THE SAME

02:57PM 2   SPECIFIC INTENT THAT IS --

02:57PM 3      MR. NICK:  I THINK THE PROBLEM HERE, YOUR HONOR, IS

02:57PM 4   THERE'S NO EVIDENCE OF WILLFULNESS, AND SO IT ALLOWS THE

02:57PM 5   GOVERNMENT TO USE THE INSTRUCTION TO CLAIM IT, YOUR HONOR,

02:57PM 6   WITHOUT BEING ABLE TO REFER TO ANYTHING OTHER THAN SHE WAS

02:57PM 7   THERE, AND SHE SHOULD HAVE KNOWN.

02:57PM 8      MS. GILG:  NO, THERE REALLY ISN'T ANY EVIDENCE OF

02:57PM 9   WILLFUL.

02:57PM 10      THE COURT:  MR. SIMEON, WHAT IS THE BASIS FOR

02:57PM 11   DELIBERATE IGNORANCE?  DOES THE EVIDENCE SUPPORT THIS

02:57PM 12   INSTRUCTION?

02:57PM 13      MR. SIMEON:  I BELIEVE IT DOES, YOUR HONOR.  AND AS

02:57PM 14   I SAID, THE -- THIS COMES UP BECAUSE OF THE DEFENSE ARGUMENT

02:57PM 15   THAT HER CLIENT HAD NO IDEA WHAT WAS GOING ON.

02:57PM 16      I THINK THERE IS CERTAINLY AT A MINIMUM CIRCUMSTANTIAL

02:57PM 17   EVIDENCE THAT OVER THE SEVEN YEAR PERIOD, AGAIN WE'RE TALKING

02:58PM 18   ABOUT A CONTINUING OFFENSE, THAT SHE WAS EITHER -- IT DOESN'T

02:58PM 19   REQUIRE THE DEFENDANTS TO KNOW SPECIFICS, FOR EXAMPLE, OF

02:58PM 20   BANKRUPTCY OR ABOUT ANY OF THE CREDITORS THAT HER FATHER,

02:58PM 21   MR. KUBUROVICH, HAD.

02:58PM 22      SO IT IS, I THINK, APPROPRIATE IN THIS CASE ESPECIALLY

02:58PM 23   GIVEN THE DEFENSE ARGUMENTS THAT SHE DIDN'T KNOW WHAT WAS GOING

02:58PM 24   ON, AND IT IS IGNORANCE.  AND IF IT IS DELIBERATE AND SHE

02:58PM 25   ACTUALLY DID HAVE AN IDEA OF WHAT WAS GOING ON, THIS SEEMS LIKE

THE APPROPRIATE INSTRUCTION.

MR. SCHENK:  YOUR HONOR, IF I MAY ADD ONE ADDITIONAL POINT TO THAT.  I THINK THE VERY FIRST WORDS OUT OF MS. GILG'S MOUTH AT OPENING WAS SHE'S NOT A SUPER HERO.  SHE DOESN'T HAVE THE POWER TO READ MINDS.

THAT DOES SEEM TO BEG FOR THIS TYPE OF AN INSTRUCTION BECAUSE THAT'S NOT AN ELEMENT THAT THE GOVERNMENT HAS TO PROVE, AND THAT ARGUMENT SUGGESTS THAT THE CODEFENDANT IN THIS CASE, IN ORDER TO BE CONVICTED, MUST HAVE SOME ADMISSIONS FOR WHAT IS GOING ON IN THE HEAD OF HER CODEFENDANT.  THAT IS NOT WHAT THE GOVERNMENT HAS TO PROVE.  DELIBERATE IGNORANCE ACTUALLY DOES SOME OF THE WORK OF RESPONDING TO THAT PRECISE ARGUMENT IN OPENING.

THE COURT:  SO WHAT WOULD BE THE BASIS FOR THIS?  I RECOGNIZE WHAT YOU SAID, MR. SCHENK.  BUT IF THE JURY WERE INSTRUCTED WITH THIS INSTRUCTION, YOU WOULD, YOU WOULD ARGUE THAT IT'S HIGHLY LIKELY THAT THE EVIDENCE SUPPORTS THAT SHE WAS AWARE THAT THERE WAS A WITHHOLDING OF EVIDENCE FROM THE BANKRUPTCY COURT AND BANKRUPTCY TRUSTEE AND THAT SHE CLOSED HER EYES, TURNED AWAY, OR SOMEHOW FEIGNED INTEREST IN THAT?

MR. SCHENK:  YOUR HONOR, CORRECT.  I THINK THE ARGUMENT WOULD BE -- I'M SPEAKING AS TO MS. KUBUROVICH.  I WASN'T PRESENT AT A MEETING WITH MR. GREENE WHEN THE DISCUSSION OCCURRED ABOUT WHAT GOES IN THE PETITION AND WHAT DOESN'T SO I'M GOING TO, YOU KNOW, CLOSE MY EYES OR PLUG MY EARS TO WHAT

03:00PM 1    IS IN THE PETITION AND WHAT ISN'T.

03:00PM 2         BUT WHAT I DO KNOW IS THAT I AM PURCHASING THIS PROPERTY

03:00PM 3    IN CASH, I AM -- YOU KNOW, THERE'S BEEN EVIDENCE OF PRE-SIGNED

03:00PM 4    CHECKS THAT WERE AT THE RESIDENCE.  I'M DOING ALL OF THESE

03:00PM 5    THINGS TO ASSIST IN THE BANKRUPTCY FRAUD, TO ASSIST IN THE

03:00PM 6    CONCEALING OF ASSETS, TO AID IN THE ASSETS, BUT I DIDN'T -- I

03:00PM 7    DON'T KNOW WHAT IS IN THAT PETITION.  I DON'T KNOW WHAT WAS

03:00PM 8    DISCUSSED BETWEEN MR. KUBUROVICH AND MR. GREENE WHEN THE FILING

03:00PM 9    WAS DETERMINED AND ITS CONTENTS WERE DECIDED UPON.

03:00PM 10        BUT WHAT I DO KNOW IS THAT I'M GOING TO TAKE THIS CASH AND

03:00PM 11   PUT IT INTO MY ACCOUNTS, AND THEN GIVE IT BACK TO MY DAD

03:01PM 12   WHENEVER HE WANTS IT OR I'M GOING TO BUY THE HOUSE IN A

03:01PM 13   CORPORATE NAME AND THEN ALLOW MY DAD TO USE IT TO LEND.

03:01PM 14        THE COURT:  SO THERE'S EVIDENCE THAT THOSE EVENTS

03:01PM 15   TOOK PLACE, AND I THINK THE WITNESS TODAY, THE LAST WITNESS

03:01PM 16   TODAY TALKED ABOUT THE LOAN, I THINK, FROM MS. KUBUROVICH TO

03:01PM 17   THE BUSINESS ENTITY TO HELP THE BUSINESS ENTITY, I THINK,

03:01PM 18   MR. NICK ELICITED INFORMATION THAT THE BUSINESS MAY HAVE BEEN

03:01PM 19   STRUGGLING DURING THIS TIME PERIOD.

03:01PM 20        AND ON CROSS-EXAMINATION I THINK MR. SCHENK ASKED ABOUT

03:01PM 21   HER INCOME AND WAS THAT ENOUGH TO SUSTAIN A LOAN OF 120,000 AND

03:01PM 22   WHATEVER IT WAS, AND THEN THERE WAS DISCUSSION ABOUT, NOT FROM

03:01PM 23   THE LAST WITNESS, MR. FORREST, BUT OTHER WITNESSES ABOUT HER

03:01PM 24   INHERITANCE, I THINK, AND THOSE TYPE OF THINGS.

03:01PM 25        MS. GILG:  MR. FORREST TESTIFIED TO THAT, TOO.

03:01PM 1    BUT, YOUR HONOR, I THINK THIS DELIBERATE IGNORANCE IS IN

03:02PM 2    COMPLETE CONTRAST TO WHAT THE AIDING AND ABETTING INSTRUCTION

03:02PM 3    STATES, AND I'M LOOKING AT DOCUMENT 122, PAGE 3 WHERE IT SAYS

03:02PM 4    FIRST, "ONE OF THE ELEMENTS IS THAT," THE THIRD ELEMENT I

03:02PM 5    SHOULD SAY, "IS THAT THE DEFENDANT ACTED WITH INTENT TO

03:02PM 6    FACILITATE BANKRUPTCY FRAUD."

03:02PM 7    AND THEN THE PARAGRAPH FOLLOWING THAT SAYS THAT, "IT IS

03:02PM 8    NOT ENOUGH THAT THE DEFENDANT MERELY ASSOCIATED WITH THE PERSON

03:02PM 9    COMMITTING THE CRIME OR UNKNOWINGLY OR UNINTENTIONALLY DID

03:02PM 10   THINGS THAT WERE HELPFUL TO THAT PERSON OR WAS PRESENT AT THE

03:02PM 11   SCENE OF THE CRIME.  THE EVIDENCE MUST SHOW BEYOND A REASONABLE

03:02PM 12   DOUBT THAT THE DEFENDANT ACTED WITH THE KNOWLEDGE AND INTENTION

03:02PM 13   OF HELPING THAT PERSON COMMIT BANKRUPTCY FRAUD."

03:02PM 14   AND I THINK THAT THAT IS THE CORRECT AND ACCURATE

03:02PM 15   STATEMENT OF THE LAW IN THE AIDING AND ABETTING CONTEXT.

03:02PM 16   THERE'S A VERY SPECIFIC REQUIREMENT OF THE MENS REA OF A

03:02PM 17   DEFENDANT IN THIS SITUATION BECAUSE THEY'RE NOT THE ONES WHO

03:03PM 18   HAVE ACTUALLY DONE THE ACT, AND SO THERE'S A LITTLE BIT OF A

03:03PM 19   FURTHER NEED TO PROGRESS.

03:03PM 20   DELIBERATE IGNORANCE, ESPECIALLY WHEN YOU CONSIDER IN THE

03:03PM 21   JEWELL SITUATION WHERE YOU'VE GOT A CONSPIRACY TO DISTRIBUTE

03:03PM 22   DRUGS AND SOMEBODY IS LIKE I DIDN'T KNOW SOMEONE WAS GOING TO

03:03PM 23   DISTRIBUTE DRUGS AND THEY'RE SITTING THERE IN THE GETAWAY CAR,

03:03PM 24   OR HOWEVER THAT WORKS, THAT'S A COMPLETELY DIFFERENT SITUATION

03:03PM 25   WHEN YOU'RE TALKING ABOUT A CONSPIRACY VERSUS AN AIDER AND AN

03:03PM 1    ABETTOR.

03:03PM 2        SO I THINK THIS CONFLICTS WITH WHAT THE MENS REA

03:03PM 3    REQUIREMENT IS FOR AIDING AND ABETTING.

03:03PM 4            THE COURT:  WELL, I WAS ASKING MR. SCHENK THIS

03:03PM 5    BECAUSE I'M TRYING TO FASHION WHERE IT IS IN THE EVIDENCE THAT

03:03PM 6    SUPPORTS -- THIS IS NOT A STRONG -- LET ME SAY THIS, I DON'T

03:03PM 7    THINK IT'S A STRONG CASE FOR THIS INSTRUCTION.

03:03PM 8            MR. SCHENK:  I'M ACTUALLY PERSUADED BY THE ARGUMENT

03:04PM 9    THAT MS. GILG JUST MADE.  IT DOES SEEM TO ME IF YOU LOOK AT THE

03:04PM 10   SPECIFIC SENTENCES IN THE AIDING AND ABETTING INSTRUCTION, SHE

03:04PM 11   MAKES A GOOD POINT ABOUT WHETHER WE SHOULD GIVE THE DELIBERATE

03:04PM 12   IGNORANCE AND SO WE WOULD WITHDRAW.

03:04PM 13           THE COURT:  OKAY.  ANYTHING FURTHER ON MR. GREENE?

03:04PM 14           MS. GILG:  NO, BUT LET'S MARK THE TRANSCRIPT ON THAT

03:04PM 15   BECAUSE MR. SCHENK AGREED WITH ME.

03:04PM 16           THE COURT:  WE'LL SEND IT TO YOU FOR YOUR BIRTHDAY.

03:04PM 17           MS. GILG:  I'M THRILLED.

03:04PM 18           THE COURT:  NEXT IS PAGE 11 OF DOCUMENT 122 IS

03:04PM 19   INTENT TO DEFRAUD, AND IT'S NINTH CIRCUIT MODEL 5.12.

03:04PM 20       IS THERE ANY OBJECTION TO THIS INSTRUCTION FROM THE

03:04PM 21   DEFENSE?

03:04PM 22           MS. GILG:  WELL, IT'S NOT SO MUCH OF AN OBJECTION AS

03:04PM 23   AN -- WELL, THIS WOULD BE ONE OF THE TWO E-MAILS THAT WERE

03:05PM 24   RECEIVED THIS AFTERNOON IS WHAT WE WOULD REQUEST.

03:05PM 25           THE COURT:  OKAY.  I SEE YOURS HERE.  I THINK I HAVE

03:05PM 1    A COPY HERE.  IT REFERENCES 512, CITING UNITED STATES VERSUS

03:05PM 2    MOLINARO, 11 F.3D 853.  IS THAT THE DOCUMENT?

03:05PM 3                MR. NICK:  YES, THAT WOULD BE -- AND THEN IT ALSO

03:05PM 4    HAS A SECOND PARAGRAPH THAT STARTS WITH REGARDS TO THE REQUEST?

03:05PM 5                THE COURT:  I HAVE BRACKETED INFORMATION.  IT SAYS

03:05PM 6    BRACKET, "YOU MAY DETERMINE WHETHER A DEFENDANT HAD AN HONEST,

03:05PM 7    GOOD FAITH BELIEF IN THE TRUTH OF THE SPECIFIC

03:05PM 8    MISREPRESENTATIONS ALLEGED IN THE INDICTMENT IN DETERMINING

03:06PM 9    WHETHER OR NOT THE DEFENDANT ACTED WITH INTENT TO DEFRAUD."

03:06PM 10                MS. GILG:  RIGHT, THAT WOULD BE -- AND DOES IT ALSO

03:06PM 11   CROSS OUT "OR" AND ADD "AND"?

03:06PM 12                THE COURT:  I DON'T SEE THAT IN THE ONE THAT I HAVE.

03:06PM 13                MS. GILG:  BECAUSE I THINK THIS WAS JUST THE ONE

03:06PM 14   THAT WAS SENT TODAY THAT MY COLLEAGUE HAD FOUND AUTHORITY TO

03:06PM 15   FURTHER MODIFY THAT INSTRUCTION AND THAT IS WHY IT WAS E-MAILED

03:06PM 16   LATE.

03:06PM 17       SO WE WOULD WITHDRAW THE ONE THAT THE COURT JUST READ AND

03:06PM 18   TRY TO REPLACE IT WITH --

03:06PM 19                THE COURT:  OH, I SEE.  THERE'S ONE THAT SAYS

03:06PM 20   MODIFIED IN A BRACKET.  IS THAT THE ONE YOU WOULD LIKE?

03:06PM 21                MS. GILG:  YES.  AND IT SAYS -- THE FIRST SENTENCE

03:06PM 22   SAYS, "AN INTENT TO DEFRAUD IS AN INTENT TO DECEIVE," AND "OR"

03:06PM 23   IS CROSSED OUT AND "AND" IS IN BRACKETS.  THAT'S THE ONE.

03:06PM 24                THE COURT:  THAT'S THE ONE.

03:06PM 25                MS. GILG:  AND THE REASON IS, IS BECAUSE THERE IS --

03:06PM 1    AND THAT WOULD BE THE SECOND PARAGRAPH ON THE BOTTOM OF THE

03:07PM 2    PAGE THERE IS AUTHORITY THAT INDICATES THAT THE NINTH CIRCUIT

03:07PM 3    WAS INCORRECT WHEN IT SAID "OR" AND THAT IN FACT THE SUPREME

03:07PM 4    COURT PRECEDENT REQUIRES THAT IT BE, AND THERE'S AN INSTRUCTION

03:07PM 5    THERE.

03:07PM 6           MR. SIMEON:  THERE WAS A MODEL INSTRUCTION, AND I

03:07PM 7    BELIEVE IT WAS JUST UPDATED, AND IT HAS THE SAME LANGUAGE THAT

03:07PM 8    IT HAD BEFORE, AND I'M NOT SEEING WHERE THE SUPREME COURT HAS

03:07PM 9    OVERRULED THE NINTH CIRCUIT INSTRUCTION.  I SEE NO REASON TO

03:07PM 10   DISTURB WHAT THE NINTH CIRCUIT HAS DECIDED IS A PROPER

03:07PM 11   DEFINITION OF INTENT TO DEFRAUD.

03:07PM 12          MS. GILG:  I MISSPOKE WHEN I SAID THE SUPREME COURT,

03:07PM 13   YOUR HONOR.

03:08PM 14          THE COURT:  I SEE IN THE BOTTOM OF YOUR MODIFIED IT

03:08PM 15   LOOKS LIKE COMMENTS.  IS THAT FROM THE MODEL INSTRUCTION?

03:08PM 16          MS. GILG:  NO.  THAT'S FROM ALEXANDER RAHN, AND

03:08PM 17   THAT'S FROM MY COLLEAGUE.  THAT'S HER LITTLE MEMO.

03:08PM 18          THE COURT:  I SEE.  ALL RIGHT.  ANYTHING FURTHER ON

03:08PM 19   THIS?

03:08PM 20          MS. GILG:  AND THEN THERE'S THE SECOND BRACKETED

03:08PM 21   PART OF GOOD FAITH.

03:08PM 22          THE COURT:  I SEE THAT.  THAT DOES NOT APPEAR IN THE

03:08PM 23   MODEL INSTRUCTIONS AS I UNDERSTAND IT, THE BRACKETED PORTION,

03:09PM 24   THE GOOD FAITH LANGUAGE.

03:09PM 25          MS. GILG:  IT IS IN THE COMMENTS, YOUR HONOR.  I

03:09PM 1    BELIEVE IT IS THE COMMENT THAT CITES TO UNITED STATES VERSUS

03:09PM 2    MOLINARO, NINTH CIRCUIT.

03:09PM 3              THE COURT:  ALL RIGHT.  MR. SIMEON, ANYTHING FURTHER

03:09PM 4    ON THIS, THE COMMENT SECTION?

03:09PM 5              MR. SIMEON:  NO, YOUR HONOR, NOTHING FURTHER.

03:09PM 6              MR. NICK:  YOUR HONOR, JUST SOME UPDATES ON -- OH,

03:09PM 7    SORRY, YOUR HONOR.

03:09PM 8              THE COURT:  LET'S STAY ON THIS FOR A MOMENT.

03:09PM 9              MR. NICK:  YES, YES.

03:09PM 10             THE COURT:  I WILL -- WE'LL TAKE A RECESS NOW AND

03:09PM 11   I'LL JUST GO LOOK UP THIS -- I DON'T HAVE IT ONLINE IN FRONT OF

03:10PM 12   ME, THE NEW MODEL INSTRUCTIONS FOR THIS.

03:10PM 13        DO YOU HAVE IT UP?

03:10PM 14             MR. NICK:  NO, YOUR HONOR.  I JUST RESEARCHED THE

03:10PM 15   ISSUE ON HAMMERSTEIN.

03:10PM 16             THE COURT:  OKAY.  SO I'LL LOOK UP THE REFERENCE

03:10PM 17   HERE ON INTENT TO DEFRAUD.

03:10PM 18             MS. GILG:  AND --

03:10PM 19             THE COURT:  JUST A MOMENT.  OKAY.

03:10PM 20             MS. GILG:  AND THERE IS JUST ONE MORE INSTRUCTION,

03:10PM 21   AND THAT'S THE CONCURRENCE OF ACT AND INTENT, AND I THOUGHT IF

03:10PM 22   THE COURT IS GOING TO BE TAKING A BREAK, THERE ARE SOME CITES

03:10PM 23   ALSO ON THAT DOCUMENT.  THIS WAS THE SECOND OF THE TWO THAT

03:10PM 24   CAME IN THIS AFTERNOON.

03:10PM 25             THE COURT:  OKAY.  I THINK I HAVE THAT HERE.

03:10PM 1          IS THAT ONE PAGE?

03:10PM 2                MS. GILG:  YES.

03:10PM 3                THE COURT:  ALL RIGHT.  IS THIS A MODEL INSTRUCTION?

03:10PM 4                MS. GILG:  NO.  IT'S BASED ON THE U.S. SUPREME COURT

03:10PM 5      OF MORISSETI VERSUS UNITED STATES AND WAS FOUND IN WAYNE

03:11PM 6      LAFABE, L-A-F-A-B-E, SUBSTANTIVE CRIMINAL.

03:11PM 7                THE COURT:  AND THE PROPOSED INSTRUCTION READS

03:11PM 8      "CONCURRENCE OF ACT AND INTENT THE GOVERNMENT MUST FOR EACH OF

03:11PM 9      THE OFFENSES CHARGED IN THIS CASE PROVE THAT THE CRIMINAL ACT

03:11PM 10     AND CRIMINAL INTENT REQUIRED EXISTS AT THE SAME MOMENT,"

03:11PM 11     PERIOD.

03:11PM 12         "THIS ELEMENT IS CALLED CONCURRENCE.  IF THE CRIMINAL ACT

03:11PM 13     AND INTENT ARE SEPARATED BY TIME, CONCURRENCE IS LACKING AND

03:11PM 14     DEFENDANT CANNOT BE CONVICTED OF A CRIME."

03:11PM 15         MR. SIMEON?  MR. SCHENK?

03:11PM 16              MR. SCHENK:  YOUR HONOR, THE NINTH CIRCUIT HAS

03:11PM 17     APPROVED MODEL INSTRUCTIONS AFTER 1952, AND THEY DON'T SUGGEST

03:11PM 18     THIS INSTRUCTION.  THERE'S NO NEED TO DISTURB THE MODEL

03:11PM 19     INSTRUCTION EITHER FOR COUNT ONE OR FOR NOW THE COURT'S

03:12PM 20     CONTINUED INSTRUCTIONS TWO OR THREE TO ADD IN AN ADDITIONAL

03:12PM 21     STATEMENT OF LAW THAT I SUPPOSE NO CIRCUIT HAS DECIDED TO GIVE.

03:12PM 22     I, AT LEAST, DON'T SEE A CITATION FOR THAT.

03:12PM 23              THE COURT:  MS. GILG, ANYTHING FURTHER?

03:12PM 24              MS. GILG:  IT'S KIND OF ALWAYS BEEN LIKE BACK IN LAW

03:12PM 25     SCHOOL.  I KEPT SAYING ISN'T THERE A REQUIREMENT THAT THE

03:12PM 1    INTENT ON THE CRIME HAPPENED CONCURRENT, AND I THINK THAT'S

03:12PM 2    JUST KIND OF LIKE THE STANDARD LAW THAT YOU MUST HAVE THE

03:12PM 3    INTENT WHEN YOU COMMIT THE CRIME.

03:12PM 4        I MEAN, I THINK THAT THE GOVERNMENT MAY ARGUE, AND I DON'T

03:12PM 5    KNOW IF THIS IS GOING TO BE THEIR ARGUMENT, BUT THEY MAY ARGUE,

03:12PM 6    WELL, YOU KNOW, WHEN MR. KUBUROVICH GAVE THE -- WELL, LET'S

03:12PM 7    STICK WITH MY CLIENT.

03:12PM 8        WHEN MS. KUBUROVICH ACCEPTED THE MONEY FROM HER FATHER,

03:12PM 9    SHE HAD NO IDEA THAT THERE WAS GOING TO BE A BANKRUPTCY, SHE

03:12PM 10   HAD NO IDEA WHAT HIS FINANCIAL SITUATION WAS OR WHAT WOULD

03:13PM 11   HAPPEN IN 18 MONTHS, BUT WHEN HE FILED FOR BANKRUPTCY AT THAT

03:13PM 12   POINT, SHE HAD THE INTENT TO KEEP THE PROPERTY BECAUSE HE WAS

03:13PM 13   FILING FOR BANKRUPTCY, AND I DON'T THINK THAT THAT IS AN

03:13PM 14   ACCURATE STATEMENT OF THE LAW.

03:13PM 15       IF SHE TOOK THE PROPERTY IN 2008 WITH THE INTENT TO TAKE

03:13PM 16   THE PROPERTY BASED ON THE INHERITANCE, THEN I DON'T SEE HOW

03:13PM 17   THAT BECOMES A CRIME IF IN MAY OF 2010 SHE LEARNS THAT HER

03:13PM 18   FATHER WAS FILING FOR BANKRUPTCY AND HE COULD SURE USE THAT

03:13PM 19   MONEY TO PAY HIS DEBTORS.

03:13PM 20       SO I THINK THE CONCURRENCE OF THE ACT, THE CRIMINAL ACT,

03:13PM 21   AND THE INTENT HAS ALWAYS BEEN A REQUIREMENT OF THE LAW, AND I

03:13PM 22   THINK THIS IS A UNIQUE CASE WHERE I ANTICIPATE THAT THERE MAY

03:13PM 23   BE ARGUMENT THAT THIS IS NOT THE CASE AND THAT'S WHY I'M ASKING

03:13PM 24   FOR THIS INSTRUCTION.

03:13PM 25           THE COURT:  ALL RIGHT.  THANK YOU.  I'M JUST LOOKING

03:14PM 1    THROUGH THE INSTRUCTIONS FOR ANY OTHER INSTRUCTION THAT MIGHT

03:14PM 2    BE HELPFUL HERE.

03:15PM 3        (PAUSE IN PROCEEDINGS.)

03:15PM 4            THE COURT:  ALL RIGHT.  ANYTHING FURTHER FROM THE

03:15PM 5    GOVERNMENT ON THIS?

03:15PM 6            MR. SIMEON:  NO, YOUR HONOR.

03:15PM 7            THE COURT:  ALL RIGHT.  THANK YOU.  ALL RIGHT.

03:15PM 8    LET'S TAKE A RECESS NOW, AND I'LL LOOK UP THIS MOLINARO CASE

03:15PM 9    AND READ IT AND THEN YOU CAN -- DO YOU HAVE INFORMATION?

03:15PM 10           MR. NICK:  YOUR HONOR, MR. SIMEON IS PARTIALLY

03:15PM 11   CORRECT BUT PARTIALLY NOT.

03:15PM 12       IT'S NEVER BEEN CITED IN THE NINTH CIRCUIT, YOUR HONOR,

03:15PM 13   BUT IT'S BEEN CITED, AS HE SAID, 22 TIMES IN THE UNITED STATES

03:15PM 14   BUT WHAT IS CRITICAL IS THAT THE CASE HAS NEVER BEEN

03:15PM 15   CRITICIZED, IT'S NEVER BEEN QUESTIONED, IT'S NEVER BEEN

03:15PM 16   OVERRULED, AND HERE WE ARE ALL OF THESE YEARS LATER AND THE

03:15PM 17   CIRCUIT COURTS AROUND THE COUNTRY ARE STILL CITING IT.

03:16PM 18           THE COURT:  IT'S NEVER BEEN CITED IN THE NINTH

03:16PM 19   CIRCUIT.

03:16PM 20           MR. NICK:  IT NEVER HAS BEEN CITED IN THE NINTH

03:16PM 21   CIRCUIT FOR WHATEVER REASON.  THAT COULD HAVE BEEN JUST THE

03:16PM 22   SHEER LUCK THAT NO CASE LIKE THIS HAS EVER COME UP BEFORE?

03:16PM 23           THE COURT:  THIS IS A CASE OF FIRST IMPRESSION?

03:16PM 24           MR. NICK:  I DOUBT THAT, YOUR HONOR.

03:16PM 25           THE COURT:  ALL RIGHT.  THANK YOU.  LET'S TAKE A

03:16PM  1    RECESS.

03:16PM  2            MR. NICK:  THANK YOU.

03:16PM  3            THE COURT:  AND IN THE INTERIM, DURING THE RECESS,

03:16PM  4    LET ME ASK COUNSEL TO, BASED ON OUR CONVERSATIONS NOW, WHY

03:16PM  5    DON'T YOU PUT TOGETHER YOUR ORGANIZATIONAL SCHEME OF HOW THE

03:16PM  6    JURY INSTRUCTIONS WOULD LOOK.

03:16PM  7        WHEN WE COME BACK WE'LL GO THROUGH THAT SO WE CAN PARSE

03:16PM  8    OUT APPROPRIATE ORDER OF HOW THE INSTRUCTIONS WILL BE READ.

03:16PM  9        LET ME INDICATE, THE 7 SERIES WILL ALWAYS BE READ AT THE

03:16PM  10   END AND THE OTHER -- WE'LL HAVE THE 3 SERIES FIRST AND REALLY

03:16PM  11   WHAT WE'RE TALKING ABOUT ARE THESE SUBSTANTIVE OFFENSE ISSUES

03:16PM  12   WHICH WILL PROBABLY BE IN THE MIDDLE.  THAT'S HOW I THINK IT

03:16PM  13   WILL APPEAR, BUT I JUST WANT TO MAKE SURE THAT WE HAVE THE

03:16PM  14   ORDER CORRECT AND EVERYBODY IS FAMILIAR WITH THAT.

03:16PM  15       OKAY?

03:16PM  16           MR. NICK:  YES, YOUR HONOR.

03:16PM  17           MR. SIMEON:  THANK YOU, YOUR HONOR.

03:16PM  18       (RECESS FROM 3:16 P.M. UNTIL 3:55 P.M.)

03:55PM  19           THE COURT:  WE'RE BACK ON THE RECORD.  THE

03:55PM  20   DEFENDANTS ARE PRESENT AND ALL COUNSEL ARE PRESENT.

03:55PM  21       WHAT I THOUGHT I WOULD DO IS I'VE TRIED TO ASSEMBLE A

03:55PM  22   PACKET THAT I'VE UTILIZED IN DOCKET 90, AS WELL AS

03:55PM  23   INCORPORATING THE DISCUSSIONS THAT WE'VE HAD TODAY, AND I HOPE

03:55PM  24   I CAN GO THROUGH THE INSTRUCTIONS, AND I INVITE YOUR COMMENT IF

03:55PM  25   ANYTHING IS OMITTED OR OUT OF ORDER.

03:55PM 1     SO FIRST LET'S TURN TO 3.1.  I'D LIKE TO START WITH THE 3

03:56PM 2    SERIES, AND I'M GOING TO INDICATE WHAT I WILL READ TO THE JURY,

03:56PM 3    AND I WOULD START WITH 3.1, DUTIES OF JURY TO FIND FACT -- AND

03:56PM 4    I INVITE YOU TO FOLLOW ALONG WITH YOUR PACKET.

03:56PM 5     3.1, DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW.  AND AS

03:56PM 6    I GO THROUGH THESE, PLEASE SING OUT IF THERE ARE ANY OBJECTIONS

03:56PM 7    OR OMISSIONS.  3.1 I WILL READ.

03:56PM 8     AND I AM STARTING WITH DOCUMENT 90, PAGE 19 OF 48, THAT'S

03:56PM 9    WHERE I'M STARTING.

03:57PM 10     3.2, CHARGE AGAINST DEFENDANT, PRESUMPTION OF INNOCENCE,

03:57PM 11    BURDEN OF PROOF, AND THAT'S PAGE 20.

03:57PM 12     3.3, DEFENDANT'S DECISION NOT TO TESTIFY.  AND I'LL JUST

03:57PM 13    MAKE A PLURAL THAT THE DEFENDANTS DID NOT TESTIFY.

03:57PM 14     A DEFENDANT IN A CRIMINAL CASE HAS A CONSTITUTIONAL RIGHT

03:57PM 15    NOT TO TESTIFY IN ARRIVING AT YOUR VERDICT.  THE LAW PROHIBITS

03:57PM 16    YOU FROM CONSIDERING IN ANY MANNER THAT THE DEFENDANTS DID NOT

03:57PM 17    TESTIFY, THAT'S HOW THAT WILL READ.

03:57PM 18     I'M NOT GOING TO READ PAGE 22.  I'M NOT GOING TO READ

03:57PM 19    THAT.

03:57PM 20     I WILL READ 3.5, REASONABLE DOUBT.

03:57PM 21     3.6, WHAT IS EVIDENCE.

03:57PM 22     3.7, WHAT IS NOT EVIDENCE.

03:57PM 23     3.8, DIRECT AND CIRCUMSTANTIAL.

03:57PM 24     3.9 --

03:57PM 25     MR. NICK:  I'M SORRY, YOUR HONOR.  YOU WERE GOING A

03:58PM 1    LITTLE TOO QUICK.  3.8 IS THE BRACKET LANGUAGE, THE RAIN AND

03:58PM 2    THE HOSE THAT THE COURT READ TO THE JURY.

03:58PM 3              THE COURT:  YES.

03:58PM 4              MR. NICK:  AND WE SPOKE AND AGREED THAT THE BRACKET

03:58PM 5    LANGUAGE SHOULD BE READ AGAIN.

03:58PM 6              THE COURT:  YOU WANT THAT READ AGAIN?

03:58PM 7              MR. NICK:  YES, YOUR HONOR.

03:58PM 8              THE COURT:  OKAY.  I'LL DO THAT.  SO WE'LL ADD THAT.

03:58PM 9         AND LET ME SAY, I'M TURNING TO THE GOVERNMENT, I'M GOING

03:58PM 10   TO ASK YOU TO PREPARE THESE, THE GOVERNMENT TO PREPARE THESE.

03:58PM 11             MR. SIMEON:  YES, YOUR HONOR.

03:58PM 12             THE COURT:  THANK YOU.  SO WE'LL INCLUDE THAT

03:58PM 13   BRACKETED GARDEN HOSE IN THIS.

03:58PM 14        3.9, CREDIBILITY I'LL READ.

03:58PM 15        3.10, ACTIVITIES NOT CHARGED I'LL READ.

03:58PM 16        3.13, SEPARATE CONSIDERATION OF MULTIPLE COUNTS, MULTIPLE

03:59PM 17   DEFENDANTS I'LL READ.

03:59PM 18        3.18 I WILL READ.

03:59PM 19        4.1 IS STATEMENTS BY DEFENDANT.  I THINK THERE WAS SOME

03:59PM 20   EVIDENCE OF STATEMENT BY DEFENDANTS, AND I'LL READ THIS, AND

03:59PM 21   I'LL READ IT AS IT IS IN THE SINGULAR.

03:59PM 22        I JUST DON'T RECALL WHETHER THERE WERE MULTIPLE OR I

03:59PM 23   SHOULD SAY STATEMENTS OF BOTH DEFENDANTS.  I'LL READ IT IN THE

03:59PM 24   SINGULAR.

03:59PM 25             MR. NICK:  THERE WAS, OF COURSE, A VIDEO OF

MS. KUBUROVICH.

       THE COURT:  YES.  RIGHT.  SO THAT WOULD BE
APPROPRIATE.  I HAVE A NOTE TO MYSELF TO LOOK AT 4.8 AND
WHETHER OR NOT THAT SHOULD BE READ.  LET ME FIND IT HERE.

       MS. GILG:  4.8, I'M SORRY.

       MR. NICK:  WE DON'T HAVE A 4.8, YOUR HONOR.  SORRY.
IT WAS ONE THE COURT WAS CONSIDERING.

       THE COURT:  AND I JUST MADE A NOTE.  LET ME FIND IT.

  4.8 READS, "YOU HAVE HEARD EVIDENCE," ENTER NAME OF
WITNESS, "A WITNESS," AND THEN SPECIFY THE BASIS FOR
IMPEACHMENT.

  "YOU MAY CONSIDER THIS EVIDENCE IN DECIDING WHETHER OR NOT
TO BELIEVE THIS WITNESS AND HOW MUCH WEIGHT TO GIVE TO THE
TESTIMONY OF THIS WITNESS."

  I ONLY CALL THAT OUT -- I THINK WAS MR. PARR THE ATTORNEY?

       MR. NICK:  YES.

       THE COURT:  AND I THINK HE WAS IMPEACHED OF A PRIOR
INCONSISTENT STATEMENT, AND I DON'T KNOW IF THIS IS NECESSARY
FOR THAT OR RISES TO THAT LEVEL, BUT I SAW IT, AND I WANTED TO
BRING IT TO THE COUNSEL'S ATTENTION.

       MS. GILG:  I DON'T THINK THE STATEMENT WAS
INCONSISTENT.  HE SAID HE WASN'T AWARE OF ASSETS.  HE COULDN'T
EVEN REALLY -- I ONLY SAID IT LOOKS LIKE THIS LETTER CAME FROM
ME.  IT WAS MORE OF A FAILURE TO RECOLLECT.  I WOULD HARDLY
QUALIFY THAT AS A PRIOR INCONSISTENT STATEMENT.

04:01PM 1    HE SAID HERE WHEN HE TESTIFIED HE WASN'T AWARE OF THE

04:01PM 2    ASSETS.  THEN HE SAID ALSO AT THE HEARING, THE OTHER HEARING,

04:01PM 3    HE WASN'T AWARE OF THE ASSETS.  THAT WAS A CONSISTENT

04:01PM 4    STATEMENT.

04:01PM 5        THE ONLY INCONSISTENCY WAS THERE WAS THIS LETTER THAT

04:01PM 6    DIDN'T REALLY REMEMBER THAT INDICATED THAT HE HAD RESPONDED.

04:01PM 7    SO I WOULD OBJECT TO THAT.

04:01PM 8            THE COURT:  I'M NOT ADVOCATING FOR IT.

04:01PM 9        I'M JUST SAYING THAT THERE WAS EVIDENCE OF AN INCONSISTENT

04:01PM 10   STATEMENT.  THE WITNESS WAS CONFRONTED WITH A PRIOR STATEMENT.

04:01PM 11   I CAN'T RECALL IF IT WAS EXACTLY IMPEACHMENT OR WHETHER IT

04:01PM 12   REFRESHED HIS RECOLLECTION.  PERHAPS BOTH.

04:01PM 13       IS THE GOVERNMENT REQUESTING THIS INSTRUCTION?

04:01PM 14           MR. SIMEON:  I DON'T THINK IT'S NECESSARY, YOUR

04:01PM 15   HONOR.

04:01PM 16           THE COURT:  SO WE WON'T GIVE THAT.  THANK YOU.  I

04:01PM 17   WON'T GIVE THAT.

04:01PM 18       NEXT IS CHARTS AND SUMMARIES, AND I THINK THE CORRECT

04:02PM 19   NUMBER IS 4.17, WHICH ARE CHARTS AND SUMMARIES ADMITTED INTO

04:02PM 20   EVIDENCE, AND 4.16 ARE CHARTS AND SUMMARIES NOT ADMITTED INTO

04:02PM 21   EVIDENCE.  I THINK THAT'S THE CORRECT NUMERATION.

04:02PM 22       I'LL GIVE 4.17, BUT LET ME ASK, WERE THERE ANY CHARTS THAT

04:02PM 23   WEREN'T ADMITTED SUCH THAT 4.16 SHOULD BE READ?

04:02PM 24           MR. SIMEON:  NONE FROM THE GOVERNMENT, YOUR HONOR.

04:02PM 25           THE COURT:  ALL RIGHT.

04:02PM 1      MS. GILG:  NO, YOUR HONOR.

04:02PM 2      THE COURT:  ALL RIGHT.  I WON'T GIVE 4.16.

04:02PM 3      BY WAY OF ORDER, 4.1 WOULD BE READ, AND THEN I BELIEVE

04:02PM 4  4.14 SHOULD BE READ, WHICH IS OPINION EVIDENCE, EXPERT WITNESS

04:03PM 5  AND THAT READS:  "YOU HAVE HEARD TESTIMONY FROM," AND YOU CAN

04:03PM 6  INSERT A NAME.  I CAN INDICATE WITNESSES WHO TESTIFIED TO

04:03PM 7  OPINIONS AND REASONS FOR, AND I SUPPOSE HERE THIS WOULD RELATE

04:03PM 8  TO MR. LAFFREDI.

04:03PM 9      MR. NICK:  YES, YOUR HONOR.  HE WAS THE ONLY WITNESS

04:03PM 10 THAT ACTUALLY WAS OFFERED AS AN EXPERT.

04:03PM 11     THE COURT:  I -- MS. KIKUGAWA WAS -- TESTIFIED AS TO

04:03PM 12 OPINIONS, BUT SHE WASN'T ASKED TO BE CERTIFIED AS AN EXPERT,

04:03PM 13 BUT SHE CERTAINLY OFFERED OPINIONS.

04:03PM 14     THE INSTRUCTION READS:  "YOU HAVE HEARD TESTIMONY FROM,"

04:03PM 15 ENTER THE WITNESS NAME, "WHO TESTIFIED TO OPINIONS AND THE

04:03PM 16 REASONS FOR HIS/HER OPINIONS."

04:03PM 17     "THIS OPINION TESTIMONY IS ALLOWED BECAUSE OF THE

04:03PM 18 EDUCATION OR EXPERIENCE OF THIS WITNESS.  SUCH OPINION

04:03PM 19 TESTIMONY SHOULD BE JUDGED LIKE ANY OTHER TESTIMONY.  YOU MAY

04:04PM 20 ACCEPT IT OR REJECT IT, AND GIVE IT AS MUCH WEIGHT AS YOU THINK

04:04PM 21 IT DESERVES CONSIDERING THE WITNESS'S EDUCATION AND EXPERIENCE,

04:04PM 22 THE REASONS GIVEN FOR THE OPINION, AND ALL OF THE OTHER

04:04PM 23 EVIDENCE IN THE CASE," PERIOD.  THAT'S THE INSTRUCTION.

04:04PM 24     I THINK THERE'S AGREEMENT THAT MR. LAFFREDI FALLS UNDER

04:04PM 25 THIS CATEGORY.

04:04PM 1       MR. NICK:  YEAH, I THINK THE -- I WAS GOING TO SAY,

04:04PM 2   YOUR HONOR, EVEN THOUGH MR. LAFFREDI WAS NOT OFFERED -- I MEAN,

04:04PM 3   WAS OFFERED AS AN EXPERT WITNESS, I MEAN, BOTH MR. GREENE,

04:04PM 4   MR. PARR, AND MS. KIKUGAWA USED THEIR EXTENSIVE PROFESSIONAL

04:04PM 5   KNOWLEDGE IN ASSISTING THEM IN TESTIFYING, YOUR HONOR, AND SO.

04:04PM 6       THE COURT:  I COULD JUST READ, YOU HAVE HEARD

04:04PM 7   TESTIMONY FROM WITNESSES --

04:04PM 8       MS. GILG:  YEAH.

04:04PM 9       THE COURT:  -- TO OPINIONS FOR.

04:04PM 10      MR. NICK:  I WOULD BE IN AGREEMENT WITH THAT, YOUR

04:04PM 11  HONOR.

04:04PM 12      MS. GILG:  I WOULD ALSO.

04:04PM 13      MR. SIMEON:  THAT'S FINE, YOUR HONOR.

04:04PM 14      THE COURT:  OKAY.  THEN THAT'S HOW IT WILL READ.

04:05PM 15  I'M LOOKING AT THE SCRIBNER'S NOW.  THAT'S HOW IT WILL READ.

04:05PM 16      "YOU HAVE HEARD TESTIMONY FROM WITNESSES WHO TESTIFIED TO

04:05PM 17  OPINIONS AND THE REASONS FOR THEIR OPINIONS," AND THEN IT WILL

04:05PM 18  FOLLOW.  SO THOSE ARE THE CHANGES.

04:05PM 19      ALL RIGHT.  DID EVERYBODY CAPTURE THAT?  THAT WILL BE READ

04:05PM 20  AFTER STATEMENTS BY DEFENDANT, JUST BY WAY OF ORDER.  SO IT

04:05PM 21  WILL FOLLOW 4.1.

04:05PM 22      AND THEN IT WILL GO 4.14.  THIS OPINION INSTRUCTION, WHICH

04:05PM 23  WILL THEN BE FOLLOWED BY 4.17.

04:06PM 24      MR. SCHENK:  YOUR HONOR, CAN I JUST CONFIRM THE

04:06PM 25  LANGUAGE.  FOR 4.14, I HAVE THE MODEL SAYING YOU HAVE HEARD

04:06PM 1    TESTIMONY FROM PERSONS WHO BECAUSE OF EDUCATION OR EXPERIENCE,

04:06PM 2    BUT THE COURT IS ASKING IT TO SAY, YOU HAVE HEARD TESTIMONY

04:06PM 3    FROM WITNESSES.

04:06PM 4            THE COURT:  THAT'S RIGHT.  AND I HAVE PULLED THIS

04:06PM 5    FROM THE MOST RECENT.

04:06PM 6            MR. SCHENK:  I THINK MINE IS OLDER, SORRY.

04:06PM 7            THE COURT:  RIGHT.  AND I'M HAPPY TO SHARE THIS WITH

04:06PM 8    YOU.  IF YOU WANT THE LANGUAGE, IT'S HERE.

04:06PM 9            MR. SCHENK:  AS LONG AS WHAT I JUST READ IS WHAT THE

04:06PM 10   COURT WANTS, THE PERSON SHOULD BE CHANGED.  WE CAN FIND THAT

04:06PM 11   ONLINE BUT PERSONS CHANGED TO WITNESS.

04:06PM 12           THE COURT:  I THINK THIS IS APPROVED MARCH 2018.

04:07PM 13   "YOU HAVE HEARD TESTIMONY FROM," PUT WITNESSES, "WHO TESTIFY TO

04:07PM 14   OPINIONS AND THE REASONS FOR THEIR OPINIONS."  I THINK THAT'S

04:07PM 15   THE CHANGED LANGUAGE.

04:07PM 16       ALL RIGHT.  AND THEN WE'LL MOVE INTO THE ACTUAL CHARGES,

04:07PM 17   AND THIS IS DOCKET 122, PAGE 2, WHICH IS -- WHICH READS COUNT

04:07PM 18   ONE, BANKRUPTCY FRAUD, SCHEME OR ARTIFICE TO DEFRAUD, AND THEN

04:07PM 19   I'LL READ THAT AS IS ON PAGE 2.

04:07PM 20       AND THEN BACK TO DOCUMENT 90, PARDON ME, PAGE 40, THE

04:07PM 21   AIDING AND ABETTING.

04:08PM 22           MS. GILG:  ACTUALLY, I THINK THAT WE STAY WITH

04:08PM 23   DOCUMENTS 122, YOUR HONOR.  I MEAN, WE CAN JUST CROSS OUT THE

04:08PM 24   DATE.  I SEE WHAT THE COURT DID.  I'M SORRY.

04:08PM 25           THE COURT:  SO IT'S PAGE 40, I THINK WHAT WE AGREED

04:08PM 1     ON, WHAT I INDICATED?

04:08PM 2          MS. GILG:  YES.

04:08PM 3          THE COURT:  IT WILL BE THE AIDING AND ABETTING FOR

04:08PM 4     COUNT ONE.

04:08PM 5        THEN COUNT TWO IS PAGE 5 OF 122, I BELIEVE.  AND THIS IS

04:08PM 6     WHERE WE HAD DISCUSSIONS, I THINK, AND I HAVE THE DEFENSE

04:08PM 7     SUGGESTIONS REGARDING HAMMERSTEIN, AND I'VE LOOKED AT THAT, AND

04:08PM 8     I'M GOING TO NOT GIVE THE HAMMERSTEIN MODIFICATIONS.  I'LL GIVE

04:09PM 9     PAGE 5 AND 6 OF DOCUMENT 122 AS INDICATED.

04:09PM 10          MS. GILG:  YOUR HONOR, WE DID ASK THAT THE ADDITIONS

04:09PM 11    TO THE 2 AND 3 ON PAGE 6, LINES 2 TO 3 AND 10 TO 11 WERE ADDED

04:09PM 12    FROM DOCUMENT 90.  AND IS THE COURT GOING TO GIVE THOSE?

04:09PM 13          THE COURT:  YES, THAT'S GOING TO BE GIVEN.

04:09PM 14          MS. GILG:  OKAY.

04:09PM 15          THE COURT:  THAT READS ON PAGE 5 AND 6 OF 122.

04:09PM 16    WELL, I'M NOT STRIKING ANYTHING FROM THAT.  THAT'S EASIER TO

04:09PM 17    LOOK AT IT THAT WAY.

04:09PM 18          MS. GILG:  YOU'RE NOT STRIKING ANYTHING FROM

04:09PM 19    DOCUMENT 122?

04:09PM 20          THE COURT:  CORRECT.

04:09PM 21          MS. GILG:  MAY I JUST INQUIRE THE ONE THAT REALLY

04:09PM 22    CONCERNS ME IS LINES 2 TO 3, SINCE THE OFFENSE OF CONCEALMENT

04:09PM 23    IS CONTINUING WHEN THE ACTS OF CONCEALMENT MAY HAVE BEGUN

04:09PM 24    BEFORE AS WELL AS AFTER THE BANKRUPTCY PROCEEDINGS BEGAN.

04:09PM 25        I DON'T FIND THE AUTHORITY COMPELLING ON THAT ONE.

04:10PM 1          THE COURT:  WELL, LET ME HEAR FROM THE GOVERNMENT

04:10PM 2   AGAIN.  DO YOU WANT TO STATE A REASON FOR THIS?

04:10PM 3          MR. SIMEON:  YES, YOUR HONOR.  I MEAN, AGAIN, AS WE

04:10PM 4   DISCUSSED BEFORE, THE DEFENSE HAS MADE SOME ISSUE OF THE TIMING

04:10PM 5   AND THE GOVERNMENT HAVING TO PROVE THINGS THAT HAPPENED IN

04:10PM 6   2008.

04:10PM 7       THIS IS A CONTINUING OFFENSE, SO IF THE ARGUMENT IS GOING

04:10PM 8   TO RELY ON TIMING, THE FACT THAT IT IS AN OFFENSE THAT BEGINS

04:10PM 9   AT THE START OF THE OFFENSE IN 2008 AND CONTINUED UNTIL THE

04:10PM 10  DISCHARGE DATE IN 2015, IT SEEMS THAT THIS IS PERFECTLY

04:10PM 11  APPROPRIATE AND DESIGNED FOR THIS TYPE OF A CASE, AND THAT'S

04:10PM 12  WHY MULTIPLE CIRCUITS HAVE HAD THIS AS PART OF THEIR PATTERN

04:10PM 13  JURY INSTRUCTIONS IN THE ABSENCE OF THE NINTH CIRCUIT PATTERN

04:10PM 14  JURY SERVICE INSTRUCTIONS, AND THIS SEEMS APPROPRIATE

04:10PM 15  ESPECIALLY IN THIS CASE.

04:10PM 16         THE COURT:  WHAT I GATHER FROM THE GOVERNMENT IS

04:10PM 17  THAT THEY'RE -- I THINK YOU POINTED IT OUT, MS. GILG AND

04:10PM 18  MR. NICK, IS THAT THE GOVERNMENT IS, IN YOUR OPINION, ASKING

04:10PM 19  THE JURY TO BELIEVE THAT MR. KUBUROVICH, PERHAPS FROM THE

04:11PM 20  DEFENSE PERSPECTIVE, CREATED THIS PLAN WELL BEFORE, AND THIS

04:11PM 21  INSTRUCTION SEEMS TO INDICATE AND CAPTURE THAT WHAT THE

04:11PM 22  GOVERNMENT HAS TO DO AND HAS TO PROVE.

04:11PM 23         MS. GILG:  WELL, I WOULD ASK THEN TO TAKE OUT -- CAN

04:11PM 24  WE MODIFY IT TO THE ACTS JUST AFTER THE COMMA, THE ACTS OF

04:11PM 25  CONCEALMENT MAY HAVE BEGUN BEFORE AS WELL AS AFTER?

04:11PM 1          THE COURT:  OH, AND STRIKE THE "SINCE THE OFFENSE OF

04:11PM 2     CONCEALMENT IS A CONTINUING ONE"?

04:11PM 3          MS. GILG:  YES.

04:11PM 4          THE COURT:  DOES THE GOVERNMENT HAVE STRONG

04:12PM 5     OBJECTION TO STRIKING THAT FIRST CLAUSE?

04:12PM 6          MR. SIMEON:  I DON'T HAVE A STRONG OBJECTION, YOUR

04:12PM 7     HONOR.  I DON'T THINK IT CHANGES THE MEANING OF THE SENTENCE,

04:12PM 8     BUT IT DOES CLARIFY THAT IT IS A CONTINUING OFFENSE.  I DON'T

04:12PM 9     KNOW IF READING THE SECOND CLAUSE BY ITSELF MAKES IT ENTIRELY

04:12PM 10    CLEAR TO THE JURY WHY THAT IS.  IT SEEMS THAT IT IS BY

04:12PM 11    DEFINITION, BY SEPARATION OF LAW A CONTINUING OFFENSE AND

04:12PM 12    THAT'S WHAT THAT FIRST CLAUSE SAYS.

04:12PM 13         THE COURT:  WELL, I'LL STRIKE IT AT YOUR REQUEST,

04:12PM 14    MS. GILG.  THE PARTIES CAN CERTAINLY ARGUE THAT THE OFFENSE IS

04:12PM 15    A CONTINUING ONE.

04:12PM 16      SO THAT LINE 2 WOULD READ -- START WITH THE WORD "THE" AND

04:12PM 17    IT WOULD READ "THE ACTS OF CONCEALMENT MAY HAVE BEGUN BEFORE AS

04:12PM 18    WELL AS AFTER THE BANKRUPTCY PROCEEDING BEGAN," PERIOD.

04:12PM 19         MS. GILG:  THANK YOU, YOUR HONOR.

04:12PM 20         THE COURT:  YOU'RE WELCOME.  WITH THAT MODIFICATION

04:12PM 21    I'LL READ THAT.

04:12PM 22         MR. SIMEON:  YOUR HONOR, BEFORE WE MOVE ON FROM

04:12PM 23    THAT, I -- DEFENSE DID WANT THE WORD "KNOWINGLY" ADDED TO THE

04:12PM 24    SECOND ELEMENT.

04:12PM 25         THE COURT:  YES, AND I THINK THERE WAS AGREEMENT ON

04:12PM 1   THAT.

04:12PM 2           MR. SIMEON:  RIGHT.  I JUST WANTED TO MAKE SURE

04:13PM 3   BECAUSE I JUST PENCILLED THAT IN.  SO KNOWINGLY AND

04:13PM 4   FRAUDULENTLY.

04:13PM 5           THE COURT:  THANK YOU.

04:13PM 6           MR. SIMEON:  AND THEN BEFORE I ACTUALLY REPEATED THE

04:13PM 7   SAME SENTENCE BEGINNING ON LINE 16 OF PAGE 5 AND LINE 14 OF

04:13PM 8   PAGE 6.

04:13PM 9           THE COURT:  CORRECT.

04:13PM 10          MR. SIMEON:  AND DOES THE COURT HAVE A PREFERENCE

04:13PM 11  WHICH ONE I STRIKE?

04:13PM 12          THE COURT:  NO.

04:13PM 13          MR. SIMEON:  OKAY.  I'LL GO BACK TO THE ORIGINAL

04:13PM 14  VERSION.

04:13PM 15          THE COURT:  YES, I THINK THAT'S THE SAFEST.

04:13PM 16      ALL RIGHT.  ANYTHING FURTHER ON COUNT TWO?

04:13PM 17          MS. GILG:  NO.

04:13PM 18          MR. NICK:  YOUR HONOR, I JUST WANT TO OFFER ONE

04:13PM 19  LITTLE BIT ON HAMMERSTEIN.  THE HAMMERSTEIN ISSUE IS THAT THE

04:13PM 20  REAL PROBLEM, I GUESS, IS THAT ALL OF THE CASES THAT DISCUSS

04:13PM 21  HAMMERSTEIN AND THAT EVALUATE IT AND THAT'S -- THROUGHOUT ALL

04:13PM 22  22 CITATIONS BASICALLY COME TO THE CONCLUSION THAT THE

04:13PM 23  GOVERNMENT HAS TO BE ABLE TO PROVE THAT THE TRANSFER TO THE

04:13PM 24  THIRD PERSON WAS NOT ABSOLUTE, THAT THE INDIVIDUAL DEBTOR

04:14PM 25  RETAINED SOME SORT OF AN EQUITABLE INTEREST AND CONTROL OVER

04:14PM  1    THE PROPERTY.

04:14PM  2        SO I THINK THE INSTRUCTION THAT IS BEING GIVEN TO THE JURY

04:14PM  3    DOES NOT GIVE THAT FULL FLAVOR OF THE LAW WHICH IS THAT THE

04:14PM  4    GOVERNMENT IS REQUIRED TO PROVE THAT THE TRANSFER WAS NOT

04:14PM  5    ABSOLUTE, AND THAT IS WHAT I SEE OVER AND OVER AGAIN, THE CASES

04:14PM  6    SAYING TO THE POINT THAT THE COURTS HAVE TO BE VERY CAREFUL AND

04:14PM  7    SAY, WAIT, WE DON'T MEAN TO GO TOO FAR, THESE ARE SITUATIONS

04:14PM  8    WHERE THE PERSON WOULD STILL RETAIN AN EQUITABLE INTEREST.

04:14PM  9        FOR EXAMPLE, IF YOU TRANSFER A CAR AND YOU'RE THE ONE

04:14PM 10    DRIVING IT AND GETTING IT MECHANICALLY CHECKED OUT ALL OF THE

04:14PM 11    TIME AND PAYING FOR ALL OF ITS COSTS.

04:14PM 12        SO I JUST DON'T BELIEVE THAT THE INSTRUCTION AFFORDS THESE

04:14PM 13    DEFENDANTS THAT ASPECT OF THE LAW, AND I WOULD ASK THE COURT TO

04:15PM 14    RECONSIDER THAT ASPECT.

04:15PM 15        THANK YOU VERY MUCH, YOUR HONOR.

04:15PM 16        THE COURT:  OKAY.  THANK YOU.  MR. SCHENK?

04:15PM 17    MR. SIMEON?

04:15PM 18        MR. SIMEON:  SUBMIT IT, YOUR HONOR.

04:15PM 19        THE COURT:  ALL RIGHT.  THANK YOU.  I'LL NOTE YOUR

04:15PM 20    OBJECTIONS.

04:15PM 21        MR. NICK:  THANK YOU, YOUR HONOR.

04:15PM 22        THE COURT:  I'LL OVERRULE THE OBJECTIONS.

04:15PM 23        NEXT I HAVE COUNT TWO, AIDING AND ABETTING, THE AIDING AND

04:15PM 24    ABETTING AS TO COUNT TWO, 5.1.  THIS IS PAGE 7 OF 122, I

04:15PM 25    BELIEVE.  I'LL READ THAT.

04:15PM 1    AND THEN COUNT THREE, FALSE STATEMENT IN BANKRUPTCY

04:15PM 2    PROCEEDING.  THIS IS PAGE 8 OF 122.  I'LL READ THAT.

04:15PM 3    THE NEXT IS THE 5.12 MODIFICATION, THE INTENT TO DEFRAUD.

04:16PM 4    THIS IS PAGE 11 OF 122 AND THE MODIFICATIONS.

04:16PM 5    I DID LOOK FURTHER LOOK AT THE NOTES THAT WERE CITED, THE

04:16PM 6    COMPLETE NOTES OF THE USE NOTES, I SHOULD SAY, THE CITE THAT --

04:16PM 7    AND PERHAPS YOU'VE SEEN THEM.  YOU HAVE THEM IN FRONT OF YOU IN

04:16PM 8    THE NEW INSTRUCTION CITE TO UNITED STATES VERSUS SHIPSEY,

04:16PM 9    S-H-I-P-S-E-Y, 363 FED. 3D 962, NINTH CIRCUIT 2004.

04:16PM 10   AND THE COMMENTS READ:  "THE NINTH CIRCUIT EXPLICITLY

04:16PM 11   APPROVE THE LANGUAGE OF THIS INSTRUCTION AND BECAUSE THE TRIAL

04:16PM 12   COURT GAVE THIS INSTRUCTION, THE PANEL HELD THAT," QUOTE, "'NO

04:16PM 13   GOOD FAITH INSTRUCTION WAS NECESSARY AT ALL,'" END QUOTE.

04:17PM 14   THE NINTH CIRCUIT FOUND THAT THIS ADEQUATELY COVERED ANY

04:17PM 15   DEFENSE OF THEORY OF LACK OF INTENT.

04:17PM 16   THESE CASES ARE ALSO, I THINK, REFLECTIVE OF CHECK FRAUDS

04:17PM 17   AND CHECK KITING AND WHERE THE DEFENSE IS THAT I THOUGHT THAT

04:17PM 18   THE CHECKS WERE GOING TO BE MADE WHOLE OR THERE WAS GOING TO BE

04:17PM 19   PAYMENT MADE ON THE CHECKS.  SO THAT'S HOW THAT INTENT ISSUE IS

04:17PM 20   INTERJECTED, WHICH IS A LEGITIMATE DEFENSE AND THOSE UNIQUE

04:17PM 21   CIRCUMSTANCES.

04:17PM 22   LOOKING AT THE NOTE AND READING FURTHER ON THIS, I THINK

04:17PM 23   THE NINTH CIRCUIT MODEL 512 IS APPROPRIATE, AND I'LL READ THAT

04:17PM 24   AS OPPOSED TO THE INTENT TO DEAD FRAUD OFFERED BY THE DEFENSE,

04:17PM 25   AND I'LL NOTE YOUR OBJECTION.

04:18PM 1          MR. NICK:  502 WILL BE READ, YOUR HONOR?

04:18PM 2          THE COURT:  CORRECT.  AN INTENT TO DEFRAUD IS AN

04:18PM 3  INTENT TO DECEIVE OR CHEAT.  THAT'S THE NINTH CIRCUIT MODEL.

04:18PM 4          NEXT IS 5.7, THIS IS PAGE 9 OF DOCKET 122, KNOWINGLY

04:18PM 5  DEFINED, AND THAT WILL BE READ.

04:18PM 6          THAT CONCLUDES THE SERIES OF INSTRUCTIONS.

04:18PM 7          NOW WE MOVE TO THE 7 SERIES.  DUTY TO DELIBERATE IS 7.1,

04:18PM 8  I'D READ THAT.

04:18PM 9          7.2 IS CONSIDERATION OF EVIDENCE, CONDUCT OF THE JURY,

04:18PM 10  I'LL READ THAT.

04:18PM 11          7.3 IS USE OF NOTES, I'LL READ THAT.

04:18PM 12          7.4 IS CONSIDERATION OF PUNISHMENT, I'LL READ THAT.

04:18PM 13          7.5 IS A VERDICT FORM.

04:18PM 14          WILL THERE BE ANY NECESSITY FOR THE COURT TO EXPLAIN THE

04:18PM 15  VERDICT FORM?  MY SENSE IS THAT IT SHOULD BE PRETTY

04:19PM 16  STRAIGHTFORWARD.

04:19PM 17          MS. GILG:  IT IS PRETTY STRAIGHTFORWARD.

04:19PM 18          MR. NICK:  YES, YOUR HONOR, THERE'S NO NEED TO

04:19PM 19  EXPLAIN.

04:19PM 20          THE COURT:  OKAY.  SO I WON'T READ AN EXPLANATION.

04:19PM 21          THEN FINALLY I'LL READ 7.6, WHICH IS COMMUNICATION WITH

04:19PM 22  THE COURT.  THAT'S THE GENERAL ORDER AND THE INSTRUCTIONS THAT

04:19PM 23  THE COURT INTENDS TO READ.  I'VE NOTED THE DEFENSE OBJECTIONS

04:19PM 24  AND THE GOVERNMENT'S OBJECTIONS.

04:19PM 25          ARE THERE ANY OTHER INSTRUCTIONS THAT EITHER PARTY WISHES

04:19PM 1    TO PROPOSE AT THIS TIME?

04:19PM 2           MS. GILG:  THE CONCURRENCE OF ACT AND INTENT, YOUR

04:19PM 3    HONOR.

04:19PM 4           THE COURT:  LET'S SEE.  DID WE MISS THAT?

04:19PM 5           MS. GILG:  THAT WAS THE STRAGGLER THAT CAME IN THIS

04:19PM 6    AFTERNOON.

04:19PM 7           THE COURT:  OH, OKAY.  LET ME FIND THAT AGAIN.  OH,

04:19PM 8    YES, I THINK WE TALKED ABOUT THIS.

04:19PM 9           MS. GILG:  YES.

04:19PM 10          THE COURT:  RIGHT.  ANYTHING FURTHER ABOUT THIS?  I

04:20PM 11   KNOW YOU'VE TALKED, MS. GILG, ABOUT SINCE LAW SCHOOL WE HAVE

04:20PM 12   BEEN IMPLORED TO FOLLOW THERE MUST BE CONCURRENCE WITH ACT AND

04:20PM 13   INTENT.

04:20PM 14          MS. GILG:  RIGHT.  THAT'S THE DEFINITION OF A CRIME.

04:20PM 15          THE COURT:  THAT'S RIGHT.  OKAY.

04:20PM 16          MR. SCHENK:  WE WOULD SUBMIT IT ON THE ARGUMENTS WE

04:20PM 17   MADE BEFORE THE COURT TOOK ITS RECESS.  THE MODEL INSTRUCTIONS

04:20PM 18   HAVE BEEN REVISED MANY TIMES SINCE 1950.

04:20PM 19          THE COURT:  I'M NOT GOING TO -- THE REASON I DIDN'T

04:20PM 20   MENTION, AND I BEG YOUR PARDON, IS I'M NOT GOING TO GIVE IT.  I

04:20PM 21   APPRECIATE YOUR ARGUMENTS, BUT I'LL -- I'M NOT GOING TO GIVE

04:20PM 22   THAT.

04:20PM 23          MS. GILG:  OKAY.

04:20PM 24          THE COURT:  I THINK THE MODEL INSTRUCTIONS

04:20PM 25   EFFICIENTLY INFORM THE JURY AS TO THAT CONSIDERATION.

04:20PM 1          ALL RIGHT.  ANYTHING FURTHER?

04:21PM 2                  MR. SIMEON:  NOT FROM THE GOVERNMENT.

04:21PM 3                  THE COURT:  AS TO THE INSTRUCTIONS?

04:21PM 4                  MR. NICK:  NO, YOUR HONOR.

04:21PM 5                  MS. GILG:  NO, YOUR HONOR.

04:21PM 6                  THE COURT:  SO IF THESE COULD BE PREPARED IN WORD

04:21PM 7    FORMAT AND THE TITLE OF THE INSTRUCTION -- YOU KNOW WHAT,

04:21PM 8    MS. KRATZMANN WILL E-MAIL YOU A SET THAT WE USED AS A TEMPLATE

04:21PM 9    IF THAT WOULD BE HELPFUL.  SHE'LL E-MAIL THAT TO THE

04:21PM 10   GOVERNMENT, AND THE GOVERNMENT WILL PREPARE THESE AND E-MAIL

04:21PM 11   THEM TO ALL PARTIES, INCLUDING OUR COURTROOM DEPUTY, THE FINAL

04:21PM 12   PROPOSED INSTRUCTIONS.

04:21PM 13       THE TITLES YOU'LL SEE FROM THE TEMPLATE YOU WILL RECEIVE

04:21PM 14   WILL JUST HAVE THE TITLE, THE REFERENCE AS TO MODEL

04:21PM 15   INSTRUCTIONS, AND IT WON'T BE PRINTED OUT AND NEITHER WILL ANY

04:21PM 16   OF THE COMMENTS, THOSE WON'T BE PRINTED OUT AS WELL.

04:21PM 17                  MR. NICK:  YOUR HONOR, I'M JUST CURIOUS IF THE JURY

04:21PM 18   GETS JUST A SINGLE PACKET OF INSTRUCTIONS.

04:21PM 19                  THE COURT:  NO.  I GIVE A COPY TO EACH JUROR.

04:21PM 20                  MR. NICK:  VERY WELL.

04:21PM 21                  THE COURT:  WHEN THEY GO TO THE JURY ROOM.  THEY

04:22PM 22   DON'T GET IT DURING ARGUMENTS.

04:22PM 23                  MR. NICK:  YEAH, WHEN THEY GO TO DELIBERATE THEY'RE

04:22PM 24   EACH GOING TO GET A PACKET.

04:22PM 25                  THE COURT:  THAT'S RIGHT.  THAT'S RIGHT.

04:22PM 1          MS. GILG:  AND DO YOU INSTRUCT PRIOR OR AFTER?

04:22PM 2          THE COURT:  AFTER, AFTER.  SO FIRST ARGUMENT AND

04:22PM 3    THEN INSTRUCTION.

04:22PM 4       I THINK WE CAN GET THIS -- MY SENSE IS THAT WE CAN GET

04:22PM 5    THIS TO THE JURY IN TIME FOR MS. ALLEN TO MAKE HER DEPARTURE AT

04:22PM 6    3:30.  SHE NEEDS TO LEAVE AT 3:30 I THINK SHE SAID.  SO MY

04:22PM 7    SENSE IS WE WILL BE ABLE TO DO THAT I THINK.

04:22PM 8          MS. GILG:  I THINK SO.

04:22PM 9          MR. NICK:  I CALCULATE WE'LL END RIGHT AT 3:30.

04:22PM 10          THE COURT:  SHOULD I TELL MS. ALLEN YOU MADE THAT

04:22PM 11   PROMISE?

04:22PM 12          MR. NICK:  NO.

04:22PM 13          THE COURT:  ALL RIGHT.

04:22PM 14          MR. NICK:  THANK YOU, YOUR HONOR.

04:22PM 15          THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  AND

04:22PM 16   WE'LL -- I'LL BE HERE BEFORE 9:00 O'CLOCK TOMORROW IF ANYTHING

04:22PM 17   SHOULD COME UP, BUT I GAVE A 10:00 O'CLOCK START JUST BECAUSE

04:22PM 18   THINGS HAPPEN.

04:22PM 19          MR. NICK:  VERY WELL.  SO REPORT AT 10:00 A.M. OR

04:22PM 20   BEFORE.

04:22PM 21          THE COURT:  I WOULD BE HERE BEFORE 10:00 BECAUSE AS

04:23PM 22   I TOLD THE JURY THEY'LL BE IN THEIR SEATS, AND YOU'LL BE IN

04:23PM 23   YOUR SEATS AT 10:00 O'CLOCK OR BEFORE.

04:23PM 24          MR. NICK:  VERY WELL, YOUR HONOR.

04:23PM 25          THE COURT:  THANK YOU.

04:23PM 1      MS. GILG:  THANK YOU VERY MUCH.

04:23PM 2      THE CLERK:  COURT IS IN RECESS.

04:23PM 3      THE COURT:  WHAT ABOUT THE VERDICT FORM, HAVE YOU

04:23PM 4  GOT AGREEMENT ON A VERDICT FORM?

04:23PM 5      MS. GILG:  YES.  YES, YOUR HONOR, I THINK WE DO.

04:23PM 6      THE COURT:  ALL RIGHT.  THEN WE DON'T --

04:23PM 7      MR. NICK:  WE DO, YOUR HONOR.

04:23PM 8      THE COURT:  GREAT.

04:23PM 9      MR. SCHENK:  DO YOU NEED A WORD VERSION E-MAIL?

04:23PM 10     THE COURT:  YES, THAT WOULD BE GREAT.

04:23PM 11     (COURT ADJOURNED 4:23 P.M.)

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074

17

18

19               DATED:  OCTOBER 22, 2018

20

21

22

23

24

25